1  Alan Harris (SBN 146079)
   David Zelenski (SBN 231768)
2  HARRIS & RUBLE
   5455 Wilshire Boulevard, Suite 1800
3  Los Angeles, CA 90036
   Telephone:  (323) 931-3777
4  Facsimile:  (323) 931-3366

5  David S. Harris (SBN 215224)
   NORTH BAY LAW GROUP
6  901 Irwin Street
   San Rafael, CA 94901
7  Telephone: (415) 460-5300
   Facsimile: (415) 460-5303

8
   Attorneys for Plaintiffs
9  WALTER PEREZ ESCOBAR, MARGARITO
   GONZALEZ and FRANCISCO CISNEROS-ZAVALA

10

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13

14  WALTER PEREZ ESCOBAR, MARGARITO          Case No. CV-08-1120 WHA
    GONZALEZ and FRANCISCO CISNEROS-
15  ZAVALA, individually and on behalf of all    **PLAINTIFFS' MEMORANDUM OF**
    others similarly situated,                **POINTS AND AUTHORITIES IN**
16                                             **SUPPORT OF MOTION FOR**
                                               **CERTIFICATION OF COLLECTIVE**
17              Plaintiffs,                    **ACTION**

        v.
18
                                               Date:      August 21, 2008
19  WHITESIDE CONSTRUCTION                     Time:      8:00 AM
    CORPORATION, NMS SUPPLY INC., J.W.         Courtroom: 9
20  CONSTRUCTION, INC. and DAVID R.            Judge:     Hon. William Alsup
    WHITESIDE,
21
                Defendants.
22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

I.      Introduction:  The Issue to be Decided ……………………………………………….. 1

3

4

II.     The Law Applicable to a Request for Certification:  Only
        a Modest Showing Needs to Be Made ……………………………………………….... 4

5

III.    Notice ………………………………………………………………………………... 14

6

IV.     Conclusion ……………………………………………………………………….…... 15

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PL.'S MEM. OF P. & A. IN SUPP. OF MOT. FOR CERTIFICATION OF COLLECTIVE ACTION

# TABLE OF AUTHORITIES

*Cases*

Alba v. Papa John's USA
2007 U.S. Dist. LEXIS 28079 (C.D. Cal. 2007) …………………………….......................... 10

Bayles v. Am. Med. Response
950 F. Supp. 1053 (D. Colo. 1996) ………………………………………………………… 6

Biggs v. Wilson
1 F.3d 1537 (9th Cir. 1993) ………………………………………………………………... 5

Blackie v. Barrack
524 F.2d 891 (9th Cir. 1975) ………………………………………………………... 10, 11, 13

Bureerong v. Uvawas
922 F. Supp. 1450 (C.D. Cal. 1996) ……………………………………………………… 7

Caridad v. Metro-North Commuter R.R.
191 F. 3d 283 (2d Cir. 1999) ……………………………………………………………… 13

Castle v. Wells Fargo Fin., Inc.
2008 WL 495705 (N.D. Cal. Feb. 20, 2008) ……………………………………………… 4

Dukes v. Wal-Mart, Inc.
222 F.R.D. 189 (N.D. Cal. 2004) ………………………………………………………… 12

Dukes v. Wal-Mart, Inc.
474 F.3d 1214 (9th Cir. 2007) ……………………………………………………... 11, 12, 13, 14

Eisen v. Carlisle and Jacquelin
417 U.S. 156 (1974) ……………………………………………………... 9, 10, 11, 12, 13

Grayson v. K Mart Corp.
79 F.3d 1086 (11th Cir. 1996) ……………………………………………………………... 4

Hoffman-La Roche, Inc. v. Sperling
493 U.S. 165 (1989) ……………………………………………………………………... 5

In re Visa Check/MasterMoney Antitrust Litig.
280 F.3d 124 (2d Cir. 2001) ……………………………………………………………... 13, 14

In re Wells Fargo Overtime Pay Litigation
2007 WL 4377912 (N.D. Cal. 2007) ……………………………………………………… 6, 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Johnson v. TGF Precision Haircutters, Inc.
319 F. Supp. 2d 753 (S.D. Tex. 2004) ............................................................... 8

Lemus v. Burnham Painting & Drywall Corp.
2007 LEXIS 46785 (D.C. Nev. 2007) ................................................................. 6

Leuthold v. Destination Am.
224 F.R.D. 462, 467 (N.D. Cal. 2004) ................................................................ 6

L.H. v. Schwarzenegger
2007 U.S. Dist. LEXIS 18728 (E.D. Cal. 2007) ................................................ 14

Mitchell v. Lublin, McGaughy & Assocs.
358 U.S. 207 (1959) ............................................................................................ 5

Osmer v. Aerospace Corp.
1982 U.S. Dist. LEXIS 15927 (C.D. Cal. 1982) .............................................. 11

Pendlebury v. Starbucks Coffee Co.
2005 U.S. Dist. LEXIS 574 (S.D. Fla. 2005) ...................................................... 8

Realite v. Ark Rests. Corp.
7 F. Supp. 2d 303 (S.D.N.Y. 1998) ................................................................. 6, 8

Sperling v. Hoffman-La Roche, Inc.
118 F.R.D. 392 (D.N.J. 1988) ............................................................................ 6

Selzer v. Bd. of Educ. of City of New York
112 F.R.D. 176 (S.D.N.Y. 1986) ...................................................................... 12

St. Marie v. E. R.R. Ass'n.
72 F.R.D. 443 (S.D.N.Y. 1976) .......................................................................... 5

Thiessen v. G.E. Elec. Capital Corp.
267 F.3d 1095 (10th Cir. 2001) ...................................................................... 6, 7

Wang v. Chinese Daily News, Inc.
231 F.R.D. 602 (C. D. Cal. 2005) ...................................................................... 4

Wynn v. NBC
234 F. Supp. 2d 1067 (C.D. Cal. 2002) .............................................................. 7

***Statutes & Regulations***

Cal. Civ. Proc. Code § 382 ................................................................................. 5

Fed. R. Civ. P. 23 ................................................ 4, 5, 6, 9, 10, 11, 12, 13, 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

29 U.S.C. § 206 ……………………………………………………………………………….. 1

29 U.S.C. § 207 ……………………………………………………………………………….. 1

29 U.S.C. § 216 ……………………………………………………………………………. 4, 5, 6, 7

29 U.S.C. § 256 ……………………………………………………………………………… 1, 2

29 U.S.C. § 626 ……………………………………………………………………………….. 5

PL.'S MEM. OF P. & A. IN SUPP. OF MOT. FOR CERTIFICATION OF COLLECTIVE ACTION

1    *I.    Introduction:  The Issue to be Decided.*

2        Francisco Cisneros-Zavala, Margarito Gonzalez, and Walter Perez Escobar (collectively

3    hereinafter the "Plaintiffs") have moved this Court for certification of a collective action.  This Court

4    should certify this case as a Fair Labor Standards Act ("FLSA") collective action as to the FLSA claim

5    for relief.  Defendants Whiteside Construction Corporation, NMS Supply, Inc., J.W. Construction, Inc.,

6    and David Whiteside (collectively hereinafter the "Defendants") have pay practices that uniformly

7    deprive hundreds of employees of correct minimum wages and overtime payments.

8        The Complaint's fifth claim for relief states a claim pursuant to the FLSA for the nonpayment of

9    minimum and overtime wages.[1]  Under the FLSA, each participating employee must "opt in" to the

10   lawsuit by filing a written consent:

11       [A]n action commenced on or after the date of the enactment of this Act . . . under the

12       Fair Labor Standards Act of 1938 . . . shall be considered to be commenced on the date

13       when the complaint is filed; except that in the case of a collective or class action

14       instituted under the Fair Labor Standards Act of 1938 . . . it shall be considered to be

15       commenced in the case of any individual claimant—(a) on the date when the complaint is

16       filed, if he is specifically named as a party plaintiff in the complaint and his written

17       consent to become a party plaintiff is filed on such date in the court in which the action is

18       brought; or (b) if such written consent was not so filed or if his name did not so appear—

19       on the subsequent date on which such written consent is filed in the court in which the

20       action was commenced.

21   29 U.S.C. § 256.

22   _____

23       [1] The FLSA requires the payment of overtime wages:

24          [N]o employer shall employ any of his employees who in any workweek . .
             . is employed . . . for a workweek longer than forty hours unless such
25          employee receives compensation for his employment in excess of the
             hours above specified at a rate not less than one and one-half times the
26          regular rate at which he is employed.

27   29 U.S.C. § 207(a)(1).  If one works fewer than forty hours per week, the minimum-wage statute
     requires compensation for all hours worked.  29 U.S.C.§ 206(a)(1)(A).
28

Plaintiffs and the putative California Collective-Action Members were not paid the full minimum and overtime wages owing to them.  The Court should certify a collective action for employees whose minimum and overtime wages were underpaid due to Defendants' routine practice of denying the payment of wages to employees who were forced to work before and/or beyond their scheduled hours. (See Pl. Francisco Cisneros-Zavala's Decl. in Supp. of Mot. for Certification of Collective Action ("Cisneros-Zavala Decl."), attached as Ex. 1 to the Decl. of Alan Harris in Supp. of Pls.' Mot. for Certification of a Collective Action ("Harris Decl."), ¶¶ 7–8; Pl. Walter Perez Escobar's Decl. in Supp. of Mot. for Certification of Collective Action ("Escobar Decl."), attached as Ex. 2 to the Harris Decl., ¶¶ 7–8; Pl. Margarito Gonzalez's Decl. in Supp. of Mot. for Certification of Collective Action ("Gonzalez Decl."), attached as Ex. 3 to the Harris Decl., ¶¶ 7–8.  In many cases, the result is that employees were not paid for overtime hours worked in excess of forty per week.  (See Cisneros-Zavala Decl. ¶¶ 7–8; Escobar Decl. ¶¶ 7–8; Gonzalez Decl. ¶¶ 7–8.)  On occasion, the result was that employees were not paid the applicable minimum wage.  (See Cisneros-Zavala Decl. ¶¶ 7–8; Escobar Decl. ¶¶ 7–8; Gonzalez Decl. ¶¶ 7–8.)  In any event, Plaintiffs' Declarations establish a company-wide policy of denying wages to all employees who worked between reporting to the construction yard at 6 a.m. but were not put on the clock until 7 a.m., as well as those employees who were not paid their wages earned when returning to the construction yard at the end of the day.  (See Cisneros-Zavala Decl. ¶¶ 7–8; Escobar Decl. ¶¶ 7–8; Gonzalez Decl. ¶¶ 7–8.)  Here, individual differences among Defendants' employees are limited solely to readily quantifiable amounts owing on account of wages unpaid when workers were forced to toil off the clock.

Although there are technically three separate Defendants—Whiteside Construction Corporation, NMS Supply, Inc. and J.W. Construction, Inc—the work performed by each of these Defendants' employees was for and with Whiteside Construction Corporation.  (See Cisneros-Zavala Decl. ¶ 4; Escobar Decl. ¶ 4; Gonzalez Decl. ¶ 4.)  All of the projects on which the putative Collective-Action Members worked were at the direction of supervisors and/or employees who worked for Whiteside Construction Corporation.  (See Cisneros-Zavala Decl. ¶ 4; Escobar Decl. ¶ 4; Gonzalez Decl. ¶ 4.)  The equipment and trucks with which the putative Collective-Action Members worked were all marked with the name "Whiteside Construction Corporation."  (See Cisneros-Zavala Decl. ¶ 4; Escobar Decl. ¶ 4;

1    Gonzalez Decl. ¶ 4.)  Although the putative Collective-Action Members received paychecks from any

2    one of the three Defendant entities, the procedures, work, and routine were the same for all workers who

3    worked for Whiteside Construction Corporation, NMS Supply, Inc., and J.W. Construction, Inc.  (See

4    Cisneros-Zavala Decl. ¶ 5; Escobar Decl. ¶ 5; Gonzalez Decl. ¶ 5.)

5         The difference between the usual "off the clock" case and this case is that, here, employees were

6    routinely unpaid for *at least* an hour each day, from 6 a.m. when they were required to report to the

7    construction yard, to 7 a.m. when they "officially" went on the clock.  (See Cisneros-Zavala Decl. ¶¶ 7–

8    8; Escobar Decl. ¶¶ 7–8; Gonzalez Decl. ¶¶ 7–8.)  Plaintiffs and their colleagues were systematically

9    deprived of one hour of work, each day.  As alleged in the First Amended Complaint ("FAC"):

10        10.    WHITESIDE, NMS, JWC and DAVID R. WHITESIDE required that Plaintiffs

11             report to the WHITESIDE construction yard in Richmond, California at 6:00 A.M. each

12             workday.  In many instances, however, the Plaintiffs were required to show up even

13             earlier than 6:00 A.M.  At that time, the Plaintiffs were required to help load the trucks

14             and prepare the equipment for the work that day.  Thereafter, the Plaintiffs would travel

15             from the WHITESIDE construction yard to the WHITESIDE project where they were

16             assigned to work.  Generally, WHITESIDE would assign the Plaintiffs a work schedule

17             that began at 7:00 A.M and ended at 3:30 P.M.

18        11.    Generally, WHITESIDE, NMS, JWC and DAVID R. WHITESIDE did not pay

19             the Plaintiffs for any time spent working prior to 7:00 A.M.  Furthermore, Plaintiffs were

20             not paid for the travel time between the WHITESIDE construction yard in Richmond,

21             California and the location where the Plaintiffs would work that day.  Furthermore, the

22             Plaintiffs generally worked until 3:30 in the afternoon.  Furthermore, the Plaintiffs were

23             never compensated for the afternoon or evening time spent driving from the Defendant

24             construction site to the WHITESIDE yard in Richmond, California.  Once the Plaintiffs

25             returned to the WHITESIDE yard in Richmond, they were required to help unload the

26             trucks but they were never compensated for this work.

27

28

(See FAC ¶¶ 10–11; Cisneros-Zavala Decl. ¶¶ 7–8; Escobar Decl. ¶¶ 7–8; Gonzalez Decl. ¶¶ 7-8.)  Here, individual differences among the hundreds of impacted employees are limited solely to readily quantifiable amounts owing on account of total days worked.[2]

## II.    The Law Applicable to a Request for Certification:  Only a Modest Showing Need Be Made.

Collective actions under the FLSA are governed by 29 U.S.C. § 216(b).  The distinctive feature of a collective action, setting it apart from class actions under Rule 23 of the Federal Rules of Civil Procedure, is that the members of a collective action must affirmatively opt into the action in writing and thus become party plaintiffs.  29 U.S.C. § 216(b).  Party plaintiffs are entitled to the benefits of the action and will be bound by the result.  Persons who do not opt into the action do not become parties, will not share in the benefits, and will not be bound by the result.

Judge Illston of the Northern District recently summarized some of the applicable law:

> Section 216(b) of the FLSA provides that one or more employees may bring a collective action "on behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  "[P]laintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members."  Grayson v. K Mart Corp., 79 3d 1086, 1096 (11th Cir. 1996) (internal citation and quotation omitted), *cert. denied*, 519 U.S. 982 (1996).  Plaintiffs bear the burden of demonstrating a "reasonable basis" for their claim of class-wide discrimination.  See id. at 1097.  "The plaintiffs may meet this burden, *which is not heavy*, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary."  Id. (internal citation and quotation omitted).

Castle v. Wells Fargo Fin., Inc., 2008 WL 495705 at *2 (N.D. Cal. Feb. 20, 2008) (emphasis supplied).

In employment cases, individual actions, whether administrative or civil, are often thwarted by employees' reluctance to challenge their employer.  See Wang v. Chinese Daily News, Inc., 231 F.R.D. 602, 614 (C.D. Cal. 2005) ("Proceeding by means of a class action avoids subjecting each employee to

---

[2] Defense counsel has provided data indicating that some 292 persons are potential Class Members. (Harris Decl. ¶ 7 & Ex. 5.)

the risks associated with challenging an employer"); St. Marie v. Eastern R.R. Ass'n., 72 F.R.D. 443,

449 (S.D.N.Y. 1976) ("The risks entailed in suing one's employer are such that the few hardy souls who

come forward should be permitted to speak for others when the vocal ones are otherwise fully

qualified"), *rev'd on other grounds*, St. Marie, 650 F.2d 395 (2d Cir. 1981).  Class and collective actions

in employment cases are thus viewed favorably.  This is especially true given the remedial nature of the

minimum-wage and overtime laws at issue in this case.  As the Ninth Circuit cautioned, "in construing

the FLSA, we must be mindful of the directive that it is to be liberally construed to apply to the furthest

reaches consistent with Congressional direction.  Mitchell v. Lublin, McGaughy & Assoc., 358 U.S. 207,

211 (1959)." Biggs v. Wilson, 1 F.3d 1537, 1539 (9th Cir. 1993).

    Collective actions are governed by 29 U.S.C. § 216(b).  There are two requirements for certifying

a collective action.  First, the persons other than the named plaintiffs whose claims are to be asserted

collectively must be "similarly situated" with the named plaintiff.  Second, these persons must give their

consent in writing.  The statute permits maintaining against an employer in any federal or state court of

competent jurisdiction suits brought by employees by "any one or more employees for and in behalf of

himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).  "No employee shall

be a party Plaintiff to any such action unless he gives his consent in writing to become such a party and

such consent is filed with the court in which such action is brought."  Id.

    The U.S. Supreme Court has held that courts are authorized to supervise the contents of the

notice to be sent to the absent parties and that discovery of the identity of such absent parties is

authorized.  Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 169–70, 172–73 (1989).[3]  Collective

class actions allow plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of

resources.  See Hoffmann-La Roche, Inc., 493 U.S. at 170.  Implicit in the Hoffman-La Roche opinion is

the fundamental proposition, mandated by the statutory language, that a collective action is distinct and

different from the various forms of class actions for which provision is made in Rule 23 of the Federal

Rules of Civil Procedure and section 382 of the California Code of Civil Procedure.

    There is substantial federal authority for the proposition that the "similarly situated" requirement

---

    [3] The cited case was one arising under the Age Discrimination in Employment Act, 29 U.S.C.
§ 626(b), but that statute, as emphasized throughout the opinion, expressly borrows the collective-action
mechanism found in 29 U.S.C. § 216(b).

is met by a "modest factual showing" that "'requires nothing more than substantial *allegations* that putative class members were victims together of a single decision, policy or plan.'" Bayles v. Am. Med. Response, 950 F. Supp. 1053, 1066 (D. Colo. 1996) (quoting Sperling v. Hoffman-La Roche, Inc., 118 F.R.D. 392, 407 (D.N.J. 1988)) (emphasis supplied). See also Realite v. Ark Rests. Corp., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998). A majority of district courts, including those in the Ninth Circuit, utilize a two-tiered process. See, e.g., Lemus v. Burnham Painting & Drywall Corp., 2007 LEXIS 46785 at *15–16 (D.C. Nev. 2007) ("The court finds that plaintiffs' complaint allegations, coupled with their declarations which aver they regularly worked in excess of forty hours per week without overtime pay compensation, and that all of the painters with whom they worked, worked similar hours and were not paid overtime, meet the plaintiffs' threshold burden. For purposes of the first tier of the two-tier analysis, plaintiffs have established they are similarly situated to other plaintiffs employed by Burnham and Centennial for purposes of Section 216(b) conditional certification and notice. Plaintiffs have made substantial *allegations* that defendants Burnham and Centennial had a policy or plan which deprived the plaintiffs of overtime pay in violation of the FLSA. The fact intensive inquiries concerning whether the plaintiffs are independent contractors or employees for purposes of the FLSA, and detailed analysis of whether the plaintiffs are sufficiently similarly situated to maintain the class are more appropriately decided after notice has been given, the deadline to opt in has passed, and discovery has closed. Once discovery has been completed, the defendants may move to decertify the collective action class on a fully developed record.") (emphasis supplied); In re Wells Fargo Overtime Pay Litigation, 2007 WL 4377912 (N.D. Cal. 2007) ("District courts have taken three different approaches in interpreting the term 'similarly situated' for purposes of section 216(b): '(1) a two-tiered case-by-case approach, (2) the incorporation of the requirements of Rule 23 of the current Federal Rules of Civil Procedure, or (3) the incorporation of the requirements of the pre-1966 version of Rule 23 for "spurious" class actions.' Id. This court will follow the first approach adopted by the majority of courts, including three circuit courts. Leuthold, 224 F.R.D. at 467; see, e.g., Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1102–03 (10th Cir. 2001)"); Edwards v. City of Long Beach, 467 F. Supp. 2d 986, 990 (C.D. Cal. 2006) ("The Court follows the majority approach and applies a two-step approach for determining whether certification of a § 216(b) collective action is appropriate."); Leuthold v. Destination Am., 224 F.R.D.

462, 467 (N.D. Cal. 2004) (proceeding under two-tiered analysis, "given that the majority of courts have adopted it"); <u>Wynn v. NBC</u>, 234 F. Supp. 2d 1067, 1082–84 (C.D. Cal. 2002) (same).

Courts adhering to the two-tiered approach make "two determinations, on an ad hoc, case-by-case basis." <u>Id</u>. at 1082. At the initial "notice stage," the court decides whether a class should be certified based on the pleadings, affidavits, and other evidence in the record.[4] "Due to the minimal evidence at the court's disposal, this determination is made based on a fairly lenient standard, and typically results in a 'conditional certification' of a representative class." <u>Id</u>. The court then proceeds to authorize and monitor the issuance of 'notice' to prospective members. <u>Id</u>.

A second, more rigorous review is undertaken after the plaintiff has propounded discovery, usually on a motion for decertification by the defendant. Here, the court weighs several factors in determining whether the collective plaintiffs are "similarly situated." <u>Id</u>. In addition to the fruits of discovery, the court considers (1) whether a sufficient link exists between the alleged policy and the challenged employer actions, (2) whether individual issues would predominate at trial; and (3) whether a trial of the action could be coherently managed and evidence could be presented in a manner that would not confuse the jury or unduly prejudice any party. <u>Id</u>. at 1084 (citing <u>Thiessen</u>, 267 F.3d at 1103. The inquiry into whether proposed class members are similarly situated is necessarily fact-specific. <u>Id</u>. at 1081.

Here, Plaintiffs are similarly situated vis-à-vis Members of the collective action in that (a) Plaintiffs and the putative Collective-Action Members were employed by Defendants, (b) Plaintiffs and the putative Collective-Action Members were non-exempt employees, and (c) Defendants treated their other employees in the same manner that they treated Plaintiffs, namely, Defendants did not properly pay Plaintiffs and the putative Collective-Action Members minimum and overtime wages by systematically refused to pay for all hours worked, instead cutting the time cards to pay only for scheduled hours. "[T]he federal FLSA . . . is remedial in nature and must be 'liberally construed.'" <u>Bureerong v. Uvawas</u>, 922 F. Supp. 1450, 1469 (C.D. Cal. 1996). Accordingly, this action is maintainable as an opt-in collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid minimum and overtime wages,

---

[4] Judge Illston's decision in <u>Wells Fargo Financial, Inc.</u> was obviously made after extensive discovery was concluded. It is aberrational in that respect.

1   liquidated damages, costs, and attorney's fees under the FLSA.

2          <u>Johnson v. TGF Precision Haircutters, Inc.</u>, 319 F. Supp. 2d 753 (S.D. Tex. 2004), contains a

3   condensed but broad-ranging overview of the law applicable to certifying collective actions. The

4   opinion discusses the two-stage approach. <u>Johnson</u>, 319 F. Supp. 2d at 754. In this approach, the first

5   stage consists of a judicial determination, based on the pleadings and affidavits, as to whether notice

6   should be given to absent class members. <u>Id.</u> The test employed to make this initial determination as to

7   whether the similarly-situated criterion has been met is a lenient one, usually resulting in a "conditional

8   certification" of the class. <u>Id.</u> at 754–55. The court then supervises the giving of notice to the potential

9   members of the collective action and may properly order discovery that is necessary to ascertain the

10  identity and location of such members. <u>Id.</u> Following this, typically after the close of discovery, the

11  defendants may move for decertification. <u>See id.</u> At this second stage, the court makes a factual

12  determination, based on evidence including the fruits of discovery, as to whether the similarly-situated

13  test has been met. <u>Id.</u> If it determines that the class members are similarly situated, then the action

14  proceeds as a representative or collective action. <u>Id.</u> If not, the court dismisses the opt-in plaintiffs

15  *without prejudice* and allows the class representatives to proceed to trial on their individual claims. <u>Id.</u>

16         Plaintiff submits that the two-stage procedure described in <u>Johnson</u> is a common-sense approach

17  that safeguards the essential rights and interests of all concerned. The two-stage approach was followed

18  in <u>Pendlebury v. Starbucks Coffee Co.</u>, 2005 U.S. Dist. LEXIS 574 (S.D. Fla. 2005), with that court

19  following the "fairly lenient standard" and granting conditional certification of a representative FLSA

20  class. <u>Pendlebury</u> at *8.

21         Here, Defendants systematically deprived their employees of their earned minimum and overtime

22  wages. This satisfies the similarly-situated test as recited in cases such as <u>Realite</u>. Accordingly, the

23  Court should issue an order conditionally certifying this case as a collective action insofar as the FLSA

24  allegations are concerned. Following such conditional certification, Defendants should be required to

25  disclose, to the extent that such data have not already been disclosed, the identities and last-known

26  addresses of each of the persons, other than the named Plaintiffs herein, who worked for them. This

27  Court should then approve a form of notice that contains a concise description of the litigation and that

28  specifically advises the recipient that he or she will not be included in the action unless he or she

executes an "opt-in" form.

When the identities of the "opt-ins" have been established, the case should then proceed as a collective action through discovery on the merits. The defense, of course, will have the right to make a motion to decertify at an appropriate time. Again, if such a motion is granted, the action is dismissed *without prejudice* as to the opt-ins. If the motion is denied, then the action will proceed to final disposition as to the opt-ins and Plaintiffs. The evidence will demonstrate that Defendants hired Plaintiffs and the putative Collective-Action Members to work for them but that Defendants did not properly compensate them. All who were underpaid should be entitled to their share of their damages under the FLSA.

Proceeding in the fashion suggested avoids a multiplicity of lawsuits, which is of benefit to the Court and to all parties. It avoids the risk that unpaid current and former employees may, being ignorant of their rights and without sufficient economic means to undertake the litigation on their own, lose all rights to collect the damages and penalties to which they are entitled. Finally, because the procedure requires that each current or former employee affirmatively opt into the litigation in writing, the parties and the Court will know with considerable certainty just how many claimants are involved very soon after the deadline for opting in has expired.

In determining to certify the requested collective action, this Court should not make deep inquiry into substantive evidentiary issues. There is no need for a prolonged briefing schedule and intense discovery. The first major Supreme Court case to address this issue was Eisen v. Carlisle and Jacquelin, 417 U.S. 156 (1974). In Eisen, the district court determined that the Rule 23 class-certification requirements had been satisfied. Id. at 161. In determining which party should bear the cost of providing notice to the class, the district court reasoned that it was unfair to impose the cost of notice on the defendants unless the plaintiffs showed a probability of success on the merits. Id. at 167–68. The Supreme Court reversed, holding that the plaintiffs were required to bear the cost of notice to the class because it found "nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." Id. at 177. Additionally, the Court reasoned that a preliminary inquiry into the merits was improper because it would provide the plaintiffs with a determination on the merits

1   "without any assurance that a class action may be maintained" and so might "color the subsequent

2   proceedings" and "place an unfair burden on the defendant." Id. at 177–78. See also, e.g., Alba v. Papa

3   John's USA, 2007 U.S. Dist. LEXIS 28079 at *14 (C.D. Cal. 2007) ("In deciding a motion to certify a

4   class, the court may not evaluate whether the plaintiff is likely to prevail on the merits of the stated

5   claims.") (citing Eisen, 417 U.S. at 177–78).

6        In Blackie v. Barrack, 524 F.2d 891 (9th Cir. 1975), the Ninth Circuit established its standard

7   concerning a district court's evaluation of the Rule 23 factors:

8        The court is bound to take the substantive allegations of the complaint as true, thus

9        necessarily making the class order speculative in the sense that the plaintiff may be

10       altogether unable to prove his allegations.  While the court may not put the plaintiff to

11       preliminary proof of his claim, it does require sufficient information to form a reasonable

12       judgment.  Lacking that, the court may request the parties to supplement the pleadings

13       with sufficient material to allow an informed judgment on each of the Rule's

14       requirements.

15  Blackie, 524 F.2d at 901 n.17.  The Ninth Circuit also cited Eisen even though Blackie involved a

16  determination of the Rule 23 requirements rather than the apportionment of the cost of providing notice

17  to class members:

18       The Court made clear in Eisen [] that that determination does not permit or require a

19       preliminary inquiry into the merits, 417 U.S. at 177–178; thus the district judge is

20       necessarily bound to some degree of speculation by the uncertain state of the record on

21       which he must rule.  An extensive evidentiary showing of the sort requested by

22       defendants is not required.  So long as he has sufficient material before him to determine

23       the nature of the allegations, and rule on compliance with the Rule's requirements, and he

24       bases his ruling on that material, his approach cannot be faulted because plaintiffs' proof

25       may fail at trial.

26  Id. at 901.

27       Blackie suggests that a district court may not resolve factual disputes.  For example, Blackie

28  mandates that a district court take the factual allegations as true.  Id. at 901 n.17.  Such an inference

1    seems to bar a district court from resolving factual disputes against the plaintiff so long as the plaintiff

2    has alleged sufficient facts to create a dispute.  Additionally, Blackie precludes a district court from

3    putting a plaintiff to preliminary proof of his or her claim.  Id.  Finally, Blackie cites Eisen for the

4    proposition that a court may not make a preliminary inquiry into the merits.  Id. at 901.  This extension

5    of Eisen beyond the notice context suggests that the Ninth Circuit intended to preclude a weighing of

6    evidence at the class-certification stage.

7        One decision to address whether a court may resolve factual disputes is Osmer v. The Aerospace

8    Corp., 1982 U.S. Dist. LEXIS 15927 (C.D. Cal. 1982).  In Osmer, the plaintiff alleged that the defendant

9    had applied certain discriminatory policies on a class-wide basis.  Id. at *2.  The plaintiff submitted

10   affidavits and statistical studies based on a regression analysis of data "on employee advancement and

11   salary."  Id. at *5 n.2.  The defendant submitted declarations "asserting that plaintiff's expert opinion is

12   statistically unsound, that management level personnel made their decisions in a non-discriminatory

13   manner, and affidavits of various female employees who claim they were not held back by any policy of

14   defendant."  Id. at *10.  The Court held that "[t]aking the representations alleged by plaintiff in the

15   complaint, and the statistical proof offered, along with the affidavits, the plaintiff has presented common

16   questions capable of resolution in the context of a class suit."  Id.  The court observed that it was not

17   ruling "on whether the contrary affidavits of defendant are sufficient to prevail on the merits . . . [but

18   instead] that, under the test mandated by Blackie, 524 F.2d at 901, the plaintiff has shown that questions

19   of fact which would be common to the whole class are presented by the pleadings and material

20   submitted."  Id.

21       The Ninth Circuit recently issued an opinion that reiterates the general concept that certification

22   should not be a factually intensive process.  In Dukes v. Wal-Mart, Inc., female Wal-Mart employees

23   alleging sex discrimination brought a Title VII class action against Wal-Mart.  Dukes, 474 F.3d 1214

24   (9th Cir. 2007).  The district court certified the class for certain of the plaintiffs' claims, and the Ninth

25   Circuit affirmed.  Id.

26       One of the principal issues raised by Wal-Mart on appeal was whether the plaintiffs had satisfied

27   Rule 23(a)(2)'s commonality requirement by presenting evidence that Wal-Mart engaged in

28   discriminatory practices that affected all of the plaintiffs in a common manner.  Id. at 1225.  To establish

commonality, the plaintiffs submitted factual evidence, expert opinions, expert statistical evidence, and anecdotal evidence. Id. For example, the plaintiffs' expert sociologist explained that "Wal-Mart has and promotes a strong corporate culture—a culture that may include gender stereotyping." Id. at 1226. The plaintiffs' expert concluded "(1) that Wal-Mart's centralized coordination, reinforced by a strong organizational culture, sustains uniformity in personnel policy and practice; (2) that there are significant deficiencies in Wal-Mart's equal employment policies and practices; and (3) that Wal-Mart's personnel policies and practices make pay and promotion decisions vulnerable to gender bias." Id.

Wal-Mart argued that the expert's third conclusion was vague, imprecise, and failed to satisfy Daubert. However, the district court rejected Wal-Mart's argument, explaining that Wal-Mart's challenges "'are of the type that go to the weight, rather than the admissibility, of the evidence.'" Id. at 1227 (quoting Dukes v. Wal-Mart, Inc., 222 F.R.D. 189, 191–92 (N.D. Cal. 2004)). The Ninth Circuit agreed, explaining that "[t]he district court was on very solid ground here as it has long been recognized that arguments evaluating the weight of evidence or the merits of a case are improper at the class certification stage." Id. (citing Eisen, 417 U.S. at 177 ("[W]e find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."); Selzer v. Bd. of Educ. of City of New York, 112 F.R.D. 176, 178 (S.D.N.Y 1986) ("A motion for class certification is not the occasion for a mini-hearing on the merits.")). The Ninth Circuit also stated that "courts need not apply the full Daubert 'gate-keeper' standard at the class certification stage." Dukes, 474 F.3d at 1227. "Rather, 'a lower Daubert standard should be employed at this [class certification] stage of the proceedings.'" Id. (quoting Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc., 209 F.R.D. 159, 162 (C.D. Cal. 2002)).

Similarly, the plaintiffs' expert statistician presented statistical evidence of class-wide discrimination based on data collected at a regional level. Dukes, 474 F.3d at 1228. Wal-Mart claimed that "the district court erred by not finding Wal-Mart's statistical evidence more probative than the plaintiffs' evidence because, according to Wal-Mart, its analysis was conducted store-by-store" rather than at a regional level. Id. at 1229. The Ninth Circuit rejected Wal-Mart's argument that class certification should not have been granted because Wal-Mart's statistical evidence was more probative:

1   [O]ur job on this appeal is to resolve whether the "evidence is sufficient to demonstrate

2   common questions of fact warranting certification of the proposed class, not whether the

3   evidence ultimately will be persuasive" to the trier of fact. In re Visa

4   Check/MasterMoney Antitrust Litig., 280 F.3d 124, 135 (2d Cir. 2001). Thus, it was

5   appropriate for the court to avoid resolving "the battle of the experts" at this stage of the

6   proceedings. See, Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 292–293 (2d

7   Cir. 1999) (noting that a district court may not weigh conflicting expert evidence or

8   engage in "statistical dueling" of experts).

9   Dukes, 474 F.3d at 1229.

10      Thus, Dukes appears to have established three propositions. First, the Dukes majority explains

11  that challenges to expert opinions constitute merits determinations that go to the weight of the evidence

12  rather than to admissibility. Id. at 1227. Thus, a district court is not permitted to discount the testimony

13  of a plaintiff's expert merely because the defendant has challenged some aspect of the expert's opinion.

14  Id. Second, Dukes extends the holding of Eisen to determinations involving Rule 23 requirements. Id.

15  As discussed above, numerous courts have extended Eisen beyond its original holding, including the

16  Ninth Circuit in Blackie. Finally, the Dukes majority holds that a court may not weigh conflicting

17  evidence in determining whether the Rule 23 requirements have been satisfied. Id. at 1229. Where both

18  plaintiffs and defendants have proffered expert testimony, the court must avoid resolving a "battle of the

19  experts" in a motion for class certification. Id. Therefore, at a minimum, Dukes establishes that a court

20  may not resolve factual conflicts concerning expert opinions in a motion for class certification. Read

21  more broadly, Dukes could be interpreted as holding that a district court may not resolve *any* factual

22  disputes in determining whether the Rule 23 requirements are satisfied.

23      Such a reading of Dukes is essentially required in light of Dukes' reliance on the Second Circuit

24  cases of Caridad v. Metro-North Commuter R.R., 191 F.3d 283 (2d Cir. 1999) and In re Visa

25  Check/Mastermoney Antitrust Litigation, 280 F.3d 124 (2d Cir. 2001). The Ninth Circuit explicitly

26  relied on In re Visa Check/ MasterMoney Antitrust Litigation in concluding that a court should

27  determine whether "'evidence is sufficient to demonstrate common questions of fact warranting

28  certification of the proposed class, not whether the evidence ultimately will be persuasive' to the trier of

1  fact." Dukes, 474 F.3d at 1229 (quoting In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d at

2  135). Even if Dukes does not implicitly adopt the "fatal flaw" standard, its reliance on In re Visa

3  Check/MasterMoney Antitrust Litigation establishes that a court cannot deny a motion for class

4  certification simply because experts disagree over the proper methodology. A plain reading of Dukes,

5  then, clearly demonstrates that the Ninth Circuit intended to prohibit district courts from weighing

6  conflicting evidence when determining whether the Rule 23 requirements have been satisfied.

7      In L.H. v. Schwarzenegger, 2007 U.S. Dist. LEXIS 18728 (E.D. Cal. Feb. 28, 2007), plaintiff

8  juvenile parolees alleged that California has a policy and practice of denying class members with

9  disabilities their statutory rights under the Americans with Disabilities Act. The defendants argued that

10 the class plaintiffs were not in fact disabled and that, therefore, neither of the plaintiffs satisfied the

11 typicality requirement. Id. at *12. In support of their position, the defendants submitted educational

12 records of the plaintiffs. Id. The district court noted that, "although the allegations in the complaint

13 must be taken as true for the purposes of class certification, the court is 'at liberty' to consider evidence

14 that relates to the merits if such evidence also goes to the requirements of Rule 23." Id. at *26 (internal

15 citations omitted). However, the district court went on to reject the defendants' argument that the

16 plaintiffs were not typical because the plaintiffs were not, in fact, disabled. Id. at *34–39. The court

17 explained that "arguments evaluating the weight of evidence or the merits of a case are improper at the

18 class certification stage" and that "plaintiffs need only provide sufficient information for the court to

19 form a reasonable judgment about whether plaintiffs' claims are typical." Id. at *37 (quoting Dukes, 474

20 F.3d at 1227)). The court concluded that, "[i]n examining the allegations set forth in the complaint, as

21 well as the evidence submitted by both plaintiffs and defendants, the court finds that there is sufficient

22 information to conclude that plaintiffs' claims are typical of the class." Id. at *37.

23 **III.    Notice.**

24     A proposed form of Notice is attached to the Harris Declaration as Exhibit 4. Gilardi & Co., LLC

25 ("Gilardi") of California is a full-service class-action claims administrator with a great deal of

26 experience in all aspects of the process, from notice and publication through final distribution and

27 reporting. (Harris Decl. ¶ 6.) Plaintiff suggests that this Court appoint Gilardi as administrator and

28 order Defendants to provide to Gilardi an electronic list of the California class members so that Gilardi

1    may send notice to them by first-class mail.

2    **IV.    *Conclusion.***

3        For all of the foregoing reasons, the Court should certify the requested collective action.

4

5    DATED: July 16, 2008                                          HARRIS & RUBLE

6                                                                 /s/

7                                                     Alan Harris
                                                 Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I am an attorney for Plaintiff herein, over the age of eighteen years, and not a party to the within action. My business address is Harris & Ruble, 5455 Wilshire Boulevard, Suite 1800, Los Angeles, California 90036.  On July 16, 2008, I served the within document(s):

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CERTIFICATION OF COLLECTIVE ACTION**.

I caused such document(s) to be delivered by hand in person to:

> N/A

I caused such document(s) to be delivered by fax or e-mail to:

> N/A

I am readily familiar with the Firm's practice of collection and processing correspondence for mailing. Under that practice, the document(s) would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business, addressed as follows:

> N/A

I caused such to be delivered via the Court's CM/ECF System to:

> Paul Simpson -- psimpson@sgilaw.com

I declare under penalty of perjury that the above is true and correct.

Executed on July 16, 2008, at Los Angeles, California.

/s/<br>
David Zelenski

PL.'S MEM. OF P. & A. IN SUPP. OF MOT. FOR CERTIFICATION OF COLLECTIVE ACTION