PAUL V. SIMPSON, Bar No. 83878
psimpson@sgilaw.com
JENNIFER M. CHAN, Bar No. 182849
jchan@sgilaw.com
TIMOTHY P. O'DONNELL, Bar No.185492
todonnell@sgilaw.com
SIMPSON, GARRITY & INNES
Professional Corporation
601 Gateway Boulevard, Suite 950
South San Francisco, CA 94080
Telephone: (650) 615-4860
Fax: (650) 615-4861

Attorneys for Defendants Whiteside Construction Corporation, NMS Supply, Inc., J.W. Construction, Inc., and David R. Whiteside

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WALTER PEREZ ESCOBAR, MARGARITO GONZALEZ, and FRANCISCO CISNEROS-ZAVALA, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>WHITESIDE CONSTRUCTION CORPORATION, NMS SUPPLY, INC., J.W. CONSTRUCTION, INC., and DAVID R. WHITESIDE<br><br>Defendants. | Case No. CV 08 1120 WHA<br><br>**DECLARATION OF DAVID R.WHITESIDE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION OF FAIR LABOR STANDARDS ACT COLLECTIVE ACTION AND APPROVAL OF NOTICE**<br><br>Date: August 21, 2008<br>Time 8:00 a.m.<br>Courtroom: 9<br>Judge: Hon. William Alsup |

I, DAVID R. WHITESIDE, declare:

1. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify thereto.

2. I am the president and principal shareholder of Defendants Whiteside Construction ("Whiteside"), Inc. NMS Supply, Inc. ("NMS") and J. W. Construction, Inc. ("JW Construction"). (collectively "Defendants") My business address is 1151 Hensley St., Richmond, California.

3. Whiteside is a licensed California contractor primarily engaged in concrete construction building structural foundations, retaining walls, and flat work on projects throughout the San Francisco Bay Area. At all times encompassed by the pending lawsuit and continuing to date Whiteside has employed hourly paid union carpenters, laborers and cement masons. Whiteside is party to collective bargaining agreements with the Northern California District Council of Laborers ("Laborers"), Carpenters 46 Northern California Counties Conference Board ("Carpenters)and District Council of Plasters Cement Masons of Northern California ("Cement Masons"). Whiteside currently employs approximately 68 union construction employees exclusive of its field supervision. Copies of Whiteside's current collective bargaining agreement with the Carpenters, Laborers and Cement Masons are attached hereto as Exhibits 1, 2 and 3 respectively. Said union agreements encompass wages, hours and other terms and condition s of employment of Whiteside construction employees.

4. Plaintiff Francisco Cinesros-Zavallas worked for JW Construction and NMS as driver. His employment ended in August 2007. Plaintiff Walter Escobar worked for NMS for only four weeks at the end of 2007. Neither ever worked for Whiteside Construction. Margarito Gonzalez worked for Whiteside as a union laborer from approximately May 2006 to June 2007. Prior to that Gonzalez worked for JW Construction where he spent many days working in the yard fabricating re-bar.

5. NMS employs non-union hourly paid drivers whose primary function is to deliver materials and supplies to Whiteside construction projects. NMS currently employs three drivers. employees.

6. JW Construction employed non-union construction workers primarily engaged in fabricating re-bar in the yard and installing it on Whiteside construction projects. JW Construction is currently inactive and does not employ any employees.

7. During Plaintiff's employment, including the four year period immediately preceding the filing of the federal civil lawsuit against Defendants on February 25, 2008, Whiteside, JW Construction and NMS maintained a policy and practice whereby their field construction employees, other than those few employees assigned to work trucks, such as dump trucks, could either use their own transportation to report directly to their assigned jobsite or they could come to Whiteside's yard in Richmond, California and line up a ride from there. Some employees drove directly to the jobsites from their residence, others carpooled and others sometimes took advantage of rides offered by their foremen on the way to work. Employees who elected to come to the yard to get a ride to the jobsite were not required or obligated to perform any work at the yard prior to getting a ride. To the best of my knowledge if anyone, other than drivers of company vehicles, loaded tools or material in a truck it was voluntary and, then, only for a few minutes to help the driver.

8. I would arrive at the yard most days before 6:00am which is before any construction workers showed up for a ride to the jobsite. Those workers who came to the yard in the morning would generally arrive between 6:15am to 6:45am and stand around socializing until they left for the jobsites either in private vehicles or Whiteside trucks. At the end of the workday day the employees who rode in company trucks or carpooled from the yard would be driven back to the yard. They would then go home. They were not required to perform work when they returned to the yard.

9. Employees would generally report to the same jobsite each day until a job or particular phase was completed. Employees would be told by their foreman where to go the next day if the assignment changed employees could call the office at the end of the workday, or the morning before work .They could also come to the yard to get their next jobsite work assignment. Each employee, including the three Plaintiffs, signed a company policy in which he acknowledged he could either call the office or come to the office obtain his work assignment if he did not get it

from his foreman. It's my understanding that employees who came to the yard to get a ride to the jobsite used that opportunity to check their work assignments if they were not going back to the prior day's jobsite. Copies of the company policy statements signed by the plaintiffs Escobar, Gonzalez and Cisneros –Zavala are attached hereto as Exhibits 4, 5 and 6 respectively. I have reviewed the declarations of the Plaintiffs in support of their Motion for Fair Labor Standards Act Collective Action and Approval of Notice. Their declarations incorrectly state the policies and practices of Whiteside, JW Construction and NMS.

10. Starting time at jobsites was usually designated for 7:00am. However, there were many occasions where employees riding to work from the yard did not get to the jobsite by 7:00am.

I declare under penalty of perjury under the laws of the State of California and of the United States that the foregoing is true and correct.

Executed this 31st day of July, 2008, at South San Francisco_, California.

David R. Whiteside

# EXHIBIT 1

# CARPENTERS MASTER AGREEMENT FOR NORTHERN CALIFORNIA

Between the

Construction Employers Association of California (CEA)

Home Builders Association of Northern California (HBA)

Concrete Contractors Association (CCA)

NC Contractors Association (NCCA)

Millwright Employers Association (MEA)

Associated Cabinet Manufacturers (ACM)

and

Carpenters 46 Northern California Counties Conference Board

of the

United Brotherhood of Carpenters and Joiners of America (AFL-CIO)

Effective Date June 3, 2003

22

46 NORTHERN CALIFORNIA COUNTIES

# CARPENTERS MASTER AGREEMENT FOR NORTHERN CALIFORNIA

Between the

Construction Employers Association of California (CEA)

Millwright Employers Association (MEA)

Home Builders Association of Northern California (HBA)

Concrete Contractors Association (CCA)

NC Contractors Association (NCCA)

Associated Cabinet Manufacturers (ACM)

and

Carpenters 46 Northern California Counties Conference Board

of the

United Brotherhood of Carpenters and Joiners of America (AFL-CIO)

Effective Date June 3, 2003

22

# TABLE OF CONTENTS


| | SECTION NO. | PAGE |
|---|---|---|
| Annuity Plan | 42 | 26 |
| Appendices | 38 | 17 |
| Apprentices | 39 | 23 |
| Apprentice Wage Rates | 39F | 23 |
| Area Covered | 3 | 2 |
| Audit | 21 | 9-10 |
| Basis for Contributions | 47 | 32-33 |
| Bonding | 37 | 17 |
| Bridge Structure and Highway Related Addendum. . . .Appendix G | | 86-88 |
| Builders Industry Promotion Trust | 45 | 29-30 |
| Building Industry Trust | 45 | 30 |
| Cabinet Manufacturers Agreement. . .Appendix E | | 63-83 |
| California Builders Advancement Program | 45 | 29 |
| California Construction Advancement Program | 45 | 29 |
| Carpenters Work Preservation Committee | 2-A | 2 |
| Carpenters Work Preservation Committee Trust | 45-A | 31 |
| Construction Industry Advancement Fund | 45 | 30 |
| Contract Administration | 45 | 30-31 |
| Contracting | 50 | 36-38 |
| Contributions for Superintendents | 46 | 32 |
| Discharge | 30 | 14-15 |
| Document Signing | 35 | 16 |
| Efficiency | 18 | 8 |
| Employer Membership | 6 | 4 |
| Foreman and General Foreman | 39 | 25 |
| Fringe Benefit Rates | 39 | 21-23 |
| General Saving Clause | 10 | 5 |
| Grievance Procedure | 51 | 38-40 |
| Health and Welfare | 40 | 25 |
| Hiring | 49 | 33-36 |
| Holidays | 25 | 12-13 |
| Independent Agreement | 8 | 4-5 |
| Injury | 34 | 16 |
| Insulators Addendum . . . . . . . . . .Appendix D | | 61-62 |
| Jurisdictional Disputes | 16 | 8 |
| Liability of Parties | 9 | 5 |
| Millwrights Agreement . . . . . . . . . .Appendix B | | 44-56 |
| No Discrimination | 11 | 5-6 |
| No Strike | 15 | 7-8 |
| Non-Union Fabricated Materials | 33 | 16 |
| Overtime | 26 | 13 |
| Owners Working | 12 (3) | 6-7 |
| Parking | 27 | 13-14 |
| Payment of Wages | 31 | 15 |
| Pension Plan | 41 | 25-26 |
| Picket Lines | 17 | 8 |
| Pickup Time | 29 | 14 |
| Preamble | | 1 |
| Pre-Job Conferences | 20 | 9 |
| Prohibition of Piece Work | 32 | 16 |
| Recognition of Employer | 5 | 4 |
| Recognition of Union | 7 | 4 |
| Residential Addendum . . . . . . . . . .Appendix C | | 57-60 |
| Safety | 19 | 9 |
| Scaffold Erection Addendum . . . . . .Appendix F | | 84-85 |
| Shift Work | 23 | 11-12 |
| Show Up Time | 30 | 14-15 |
| Stewards | 14 | 7 |
| Subcontracting | 50 | 36-38 |
| Subcontractor Records | 36 | 16 |
| Subsistence . . . . . . . . . . . . . . . . .Appendix A | | 42-43 |
| Term of Agreement | 2 | 1-2 |
| Termination Pay | 30 | 14-15 |
| Tools | 28 | 14 |
| Training Trust Fund | 44 | 28-29 |
| UBC Health & Safety Fund | 45-B | 31-32 |
| Union Representative | 13 | 7 |
| Union Security | 12 | 6-7 |
| Vacation and Holiday Plan | 43 | 26-27 |
| Wage and Fringe Benefit Increases | 39 | 21-23 |
| Wage Rates | 39 | 17-25 |
| Work Covered | 4 | 2-3 |
| Work Day | 22 | 10-11 |
| Work Fee | 43-A | 27-28 |
| Work Week | 24 | 12 |

## PREAMBLE

This Agreement represents a new beginning of cooperation between signatory employers and the Union in a mutual effort to retain and regain the major portions of the work within the geographic area for unionized construction. The successes of the Agreement will be judged on the ability of the signatory contractors to be successful in obtaining contracts where union employees will be employed.

# CARPENTERS MASTER AGREEMENT

## 46 Northern California Counties

## 2003-2008

### Section 1

THIS MASTER AGREEMENT, made and entered into this 3rd day of June, 2003, by and between the CONSTRUCTION EMPLOYERS' ASSOCIATION OF CALIFORNIA (CEAC), MILLWRIGHT EMPLOYERS ASSOCIATION (MEA) CONCRETE CONTRACTORS ASSOCIATION (CCA), NC CONTRACTORS ASSOCIATION (NCCA) and The Home Builders Association of Northern California (HBA) and their respective members, herein referred to collectively as the Employer, and the CARPENTERS 46 NORTHERN CALIFORNIA COUNTIES CONFERENCE BOARD, on behalf of the Northern California Carpenters Regional Council (NCCRC) and affiliated Local Unions having jurisdiction in the 46 Northern California Counties, hereinafter referred to as the Union. This Agreement amends, modifies, supplements, changes, extends and renews the Agreements dated June 16, 1971, July 18, 1974, June 16, 1977, June 16, 1980, September 1, 1982, January 1, 1986, April 1, 1988, June 16, 1992, June 16, 1996, May 25, 1999 , and is effective July 1, 2003.

### Section 2
### Term of Agreement

This Agreement shall remain in full force and effect from the 1st day of July, 2003 through the 30th day of June, 2008, and shall continue thereafter unless either party, not more than ninety (90) days nor less than sixty (60) days prior to the 30th day of June, 2008, or not more than ninety (90) days nor less than sixty (60) days prior to the 30th day of June of any subsequent year in which the Master Agreement may terminate, serves written notice on the other of its desire to change, modify, amend, supplement, renew, extend or terminate this Agreement.

All notices required to be given to the Union shall be addressed to it at 265 Hegenberger Road, Suite 220 Oakland, California 94621.

While this Agreement continues in effect, neither party will make demands upon the other party for any changes in conditions or benefits or for any new or additional conditions or benefits except at the time and in the manner provided above. Notice to the Employer shall be deemed notice to all individual employers.

The parties to this Agreement recognize the necessity of assuring the competitive position of the parties within the industry during the term of this Agreement. Consistent with that recognition, the parties will continually monitor the effectiveness of this Agreement relative to specific geographic or market areas and will endeavor, by mutual agreement, to initiate such modifications to the Agreement during its term as may be necessary to assure the work opportunities of the employees and the competitive position of the individual employers.

### Section 2-A

## Carpenters Work Preservation Committee

Notwithstanding the provisions of Section 2, the parties to the Agreement hereby establish a Committee composed of three (3) representatives appointed by the Carpenters 46 Northern California Counties Conference Board and three (3) representatives appointed by the Construction Employers' Association of California, Inc. This Committee will review requests for changes in the terms and conditions of the Labor Agreement that may be necessary to preserve work opportunities for employees and individual employers covered by the Agreement. The Committee is authorized to approve such changes as it deems to be in the best interest of the parties to the Agreement.

This Committee shall be empowered to develop rules and procedures, subject to the approval of the bargaining parties, to carry out the intent of the bargaining parties.

### Section 3

## Area Covered

The area covered by this Agreement shall be Northern California, consisting of the forty-six (46) counties located above the northerly boundary of San Luis Obispo County, the northerly boundary of Kern County, and the westerly boundaries of Inyo and Mono Counties, to wit: Alameda, Alpine, Amador, Butte, Calaveras, Colusa, Contra Costa, Del Norte, El Dorado, Fresno, Glenn, Humboldt, Kings, Lake, Lassen, Madera, Marin, Mariposa, Mendocino, Merced, Modoc, Monterey, Napa, Nevada, Placer, Plumas, Sacramento, San Benito, San Francisco, San Joaquin, San Mateo, Santa Clara, Santa Cruz, Shasta, Sierra, Siskiyou, Sonoma, Solano, Stanislaus, Sutter, Tehama, Trinity, Tulare, Tuolumne, Yolo and Yuba.

### Section 4

## Work Covered

All carpentry work on all construction, including, but not limited to, construction, erection, alteration, repair, modification, demolition, addition or improvement of or to a building or any other structure or construction.

All carpentry work on heavy, highway and engineering construction, including, but not limited to, the construction, improvement, modification and demolition of all or any part of streets, highways, bridges, viaducts, railroads, storage elevators, tunnels, airports, water supply, irrigation, flood control and drainage systems, sewers and sanitation projects, dams, power houses, refineries, aqueducts, canals, river and harbor projects, wharves, docks, breakwaters, jetties, quarrying of breakwater or riprap stone, pipelines, offshore construction, or operations incidental to such heavy construction work.



Work in connection with new methods of construction or use of materials established or developed during the term of this Agreement, and the use and application of tools, devices, metal or plastic studs or any substitute thereof, metal or plastic forms or slip form procedures, mechanical power driven or otherwise, customarily and regularly used by carpenters, any mechanical or technological substitutes thereof, whether continuously or intermittently and which are regarded tools of the carpentry trade. This shall include though not be limited to the use and operation of forklifts, platform lifts and operation of concrete chutes.

All carpentry work in connection with plywood decking, beam sides and beam soffits and all concrete form work.

All carpentry work in connection with tilt-up construction including, but not limited to, benchmarks, layout, setting of all forms, blockouts, metal door and window jambs, templates for bolts, lift points, knee braces, stripping of forms, rigging, setting, plumbing and aligning, welding, drilling, cleaning, ledger bolts, setting ledgers, setting of expansion joints, and caulking. Also to include forms for stairs and loading docks (setting and stripping), installation of all doors, installation of laminated beams or precast structures, and operation of the forklift in reference to all of the above work.

All carpentry work in connection with displays, conventions, tradeshows and exhibitions.

All work in connection with self supporting scaffolds over fourteen feet (14') in height whether patent or otherwise constructed.

The work covered by this Agreement shall include all types of wood flooring of any size, shape or pattern, in all its branches and phases including pre-finished wood and hardwood products, such as nailing, filling, laying, stripping, tongue and groove, underlayment, blocks-mastic work, sanding, edging, staining, finishing, basing, application of shellac, varnishes, sealers, waxing and related work.

Should an individual employer party to this Agreement perform work as a drywall contractor or drywall subcontractor, he shall do so under the terms and conditions of the current Drywall/Lathing Master Agreement between the Carpenters 46 Northern California Counties Conference Board and/or the NCCRC and the appropriate Drywall Contractors Association for the 46 Northern California Counties. However, drywall work which is incidental to the work of the individual employer may be performed under the terms and conditions of this Agreement.

Should an individual employer party to this Agreement perform work or subcontract work covered by the Pile Drivers, Divers, Carpenters, Bridge, Wharf and Dock Builders Agreement, the individual employer shall observe the terms and conditions of said Agreement.

Should an individual employer party to this Agreement perform work or subcontract work covered by the Bridge Structure and Highway Related Addendum, the individual employer shall observe the terms and conditions of said Addendum.

Should an individual employer party to this Agreement perform work or subcontract work covered by the Office Modular Systems Addendum, the individual employer shall observe the terms and conditions of the Office Modular Systems Addendum.

### Section 5

## Recognition Of Employer

The Union hereby recognizes the Employer as the sole and exclusive bargaining representative for their respective members, present and future, who are or hereafter become members.

### Section 6

## Employer Membership

This Agreement is made for and on behalf of and shall be binding upon all persons, firms or corporations under any name or style of doing business in the construction industry that, at the time of the execution of this Agreement are, or during the term hereof become, members of the Employer, in the area covered by this Agreement. A list of such individual employer members shall be furnished to the Union upon the execution of this Agreement, and thereafter shall be furnished to the Union not less often than once a month.

All individual employers shall be and remain liable under this Agreement for and during the term thereof, irrespective of whether such individual employers shall resign from membership in the Employer or withdraw from the Carpenter Multiemployer Bargaining Section prior to the expiration date of this Agreement, and such liability shall be deemed to have survived the termination of said membership or withdrawal and remain in force for and during the term of this Agreement. Such individual employers shall be bound by any amendments, modifications, supplements, changes, extensions or renewals of or to this Agreement unless such individual employer gives written notice to the Union not more than ninety (90) days nor less than sixty (60) days prior to July 1, 2008 or July 1 of any year in which this Agreement may terminate.

### Section 7

## Recognition of Union

The Union has requested recognition as the Section 9 (a) representative of the employees covered by this Agreement and has demonstrated or offered to demonstrate through authorization cards that it has the support of the majority of the employees. The Employer and each individual employer expressly acknowledge that they and each of them have satisfied themselves that the Union and/or each of its constituent bodies represents a majority of employees employed to perform bargaining unit work and agrees that the Union and or each of its constituents is the collective bargaining representative of such employees. The Employer on behalf of itself and each of its members and each individual employer specifically agrees that it and they are establishing or have established a collective bargaining relationship by this Agreement within the meaning of Section 9 (a) of the National Labor Relations Act of 1947, as amended. The Union is recognized as the sole and exclusive bargaining agent for itself, the NCCRC and all of its affiliated Local Unions.

### Section 8

## Independent Agreement

In the event the Union establishes special conditions for work covered by the Agreement, those special conditions shall be made available to the Employer or individual employers who wish to perform the designated work in the same locality as provided for in that immediate Area Agreement.



The Union will promptly notify the Employer in writing of any amendment, modification, exception or addendum to this Agreement which might be negotiated in any area covered by this Agreement between the Union, any individual employer or group of individual employers.

### Section 9

## Liability of the Parties

This Agreement is made for and on behalf of, and shall be binding upon all persons, firms and corporations, who at the time of execution of this Agreement are members of Employer, or subsequently become members of Employer as defined in Section 6. This Agreement is binding upon each individual employer regardless of whether or not the individual employer changes the name or style or address of the business. Each individual employer, corporate or other legal entity, or its successor as per Section 6, shall be liable, subject to, and bound by this Agreement. It is agreed that the wages, hours, and working conditions of this Agreement are the wages, hours, and working conditions in the area covered by this Agreement.

Except as may be provided in Section 2 of this Agreement, each employer individually signatory hereto waives any right that he or it may have to terminate, abrogate, repudiate, or cancel this Agreement during its term, during the term of any future modifications, changes, amendments, supplements, extensions, or renewals of or to said Master Agreement, or to file any Petition before the National Labor Relations Board seeking to accomplish such termination, abrogation, cancellation or repudiation.

### Section 10

## General Saving Clause

It is not the intent of either party hereto to violate any laws, rulings, or regulations of any governmental authority or agency having jurisdiction of the subject matter or of this Agreement, and the parties hereto agree that in the event any provision of this Agreement is finally held or determined to be illegal or void as being in contravention of any such laws, rulings or regulations, nevertheless, the remainder of this Agreement shall remain in full force and effect unless the parts so found to be void are wholly inseparable from the remaining portion of this Agreement. The parties agree that if and when any provisions of this Agreement are held or determined to be illegal or void they will then promptly enter into lawful negotiations concerning the substance thereof.

It is the intent of the parties to this Agreement that each and every, all and singular, of the provisions of this Agreement be fully in accordance with Federal and State Law. Its interpretation and the interpretation of each of the provisions of this Agreement are therefore intended to apply no broader than that permitted by law.

### Section 11

## No Discrimination

It is mutually agreed that the individual employer and the Union shall fully comply with all federal and state laws, including but not

limited to all of the provisions of Title 7 of the Civil Rights Act of 1964, as amended; the California Fair Employment and Housing Act, as amended; and the Americans with Disabilities Act of 1991, as amended to the end that no person shall, on the grounds of age, sex, race, color, national origin, sexual orientation, gender, ancestry, disability as defined by the Americans with Disabilities Act of 1991 and the California Fair Employment and Housing Act, or Vietnam Veteran status, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination by not having full access to the contents of this Agreement.

It is further agreed that no person or applicant for employment shall be discriminated against or shall have his/her employment relationship affected by reason of his/her age except as provided in the Trust Agreement, rules and regulations, and statements of procedure governing the Carpenters Training Committee for Northern California.

Nothing in this section and no grievance filed pursuant to this section shall be deemed a waiver of any individual worker's statutory rights provided by federal and/or state laws.

Throughout this Agreement, wherever the masculine gender appears, the feminine form applies equally and may be substituted therefore.

## Section 12

## Union Security

(1) Every person performing work covered by this Agreement who is a member of the Union and in the employment of an individual employer on work covered by this Agreement on the effective date of this Section 12 shall, as a condition of employment or continued employment, remain a member in good standing of the Union or the appropriate Local Union of the Union. Every other person covered by this Agreement and employed to perform work covered by this Agreement shall be required, as a condition of employment, to apply for and become a member of and to maintain membership in good standing in the Union or the appropriate Local Union of the Union which has territorial jurisdiction of the area in which such person is performing work on the expiration of eight (8) days of employment, continuous or cumulative, on such work following the beginning of such employment or the effective date of this Section 12, whichever is later. Membership in any Local Union shall be available to any such person on the same terms and conditions generally applicable to other members. If Federal Law is hereafter amended to permit a lesser requirement for union membership or union membership as a condition of employment than provided in this Section 12, the Employer and the Union will promptly enter into negotiations with regard to such subject.

(2) The individual employer shall not be required to discharge any employee pursuant to this Section 12 until a written notice from the appropriate Local Union of the Union of such employee's non-compliance with this Section 12, stating all pertinent facts showing such non-compliance, shall have been served upon such individual employer and two (2) working days shall have been allowed for compliance therewith.

(3) No person (owner, partner, or officer of any individual employer) shall be permitted to perform work covered by this Agreement unless such person is covered by all the provisions of this Agreement including the payment of all Trust Fund contributions; provided, however, that not more than one (1) owner may be permitted to work with the tools under the same conditions with the exception of Section 12 (1). This section shall not be interpreted so as to diminish work opportunity for employees covered by this Agreement.

Membership in good standing shall be defined as the tendering of uniform initiation fees and dues, including work fee.

## Section 13

## Union Representative

Union representatives shall be permitted at all times upon any place or location where any work covered by this Agreement is being, has been or will be performed.

Where there are visitation restrictions imposed at the jobsite by entities other than the individual employer, the individual employer will use his best efforts to provide access to the site by the union representative.

## Section 14

## Stewards

(1) A steward shall be a working journeyman employee, appointed by the Local Union or the NCCRC of the Union, who shall, in addition to his/her work as a journeyman be permitted to perform, during working hours, such of his/her Union duties as cannot be performed at other times. The Union agrees that such duties shall be performed as expeditiously as possible and the Employer agrees that stewards shall be allowed a reasonable amount of time for the performance of such duties. The Field Representative shall notify immediately the individual employer of the appointment of each steward to be confirmed by letter.

(2) No steward shall be laid off or terminated without concurrence of the appropriate Field Representative except for:

1.Proven dishonesty.

2.Excessive drinking.

3.Chronic failure to report for work.

4.Completion of the carpentry work on the job.

If a steward is discharged as permitted herein, written notice shall be given to the appropriate Local Union or the NCCRC defining the reasons for discharge.

(3) Application or violation of this Section shall be subject to Section 51 "Grievance Procedure."

## Section 15

## No Strike

Except as provided in this Section, there shall be no strike, lockout or work stoppage by any party hereto or any individual employer. The Union may withhold workers or picket the job of any individual employer who fails to pay wages or is in violation of the Piece Rate Prohibition or Trust Fund Contribution provisions of this Agreement. The Union may withhold workers of any subcontractor who fails to pay wages or is in violation of the Piece Rate Prohibition or Trust Fund Contribution provisions of this Agreement. The Union, with five (5) days written notice to the individual employer may withhold workers or picket the job of any individual employ-

er for violation of the Hiring Hall, Union Security or Subsistence provisions of this Agreement only if no dispute exists between the Employer and the Union concerning such alleged violation.

### Section 16
### Jurisdictional Disputes

There shall be no cessation or interference in any way with any work of the Employer or any individual employer by reason of Jurisdictional Disputes between the Union and any other union affiliated with the AFL-CIO or the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America with respect to jurisdiction over any of the work covered by this Agreement. Such disputes will be settled by the Unions themselves, or submitted to the International Presidents of the Unions involved in the dispute, for determination. Until such determination is made and confirmed by the disputing Unions, the work shall proceed as originally assigned by the individual employer. Craft jurisdiction is neither determined nor awarded by classifications or coverage descriptions appearing in this Agreement. The individual employer shall be bound by an agreement between the General Presidents.

### Section 17
### Picket Lines

The parties to this Agreement recognize that it is vital to the Unionized segment of the Construction Industry that the work opportunities of the employee and the individual employer signatory to this Agreement proceed without interruption because of disputes involving employers and/or unions not signatory to this Agreement.

The Union will not discipline, the individual employer will not permanently replace and the parties both agree not to threaten nor cause to be denied the rights of individual workers to respect primary picket lines established at or on the jobsites of the individual employer.

### Section 18
### Efficiency

It is agreed that the carpenters, through their field representatives, use their efforts to encourage greater efficiency on the job and that they refrain from the solicitation of premium payments for employees represented by the Union. The employees and the Union shall use their efforts to encourage greater efficiency compatible with sound construction practices on the job and shall refrain from the solicitation of premium payments for employees.

Except as provided in Section 50 (Work Preservation, Contracting and Subcontracting) hereof, neither party to this Agreement shall by working rules or any other means or device, impose or direct any work limitations affecting quantity restrictions, quotas or units of production, either maximum or minimum, relating to work covered by this Agreement.

No rules, customs or practices shall be permitted that limit production or increase the time required to do any work. There shall be no limitation or restriction of the use of machinery, tools or other labor-saving devices supplied by the individual employer.



### Section 19
### Safety

The Union shall cooperate (1) with the individual employer and with each other in carrying out all of the individual employer's safety measures and practices for accident prevention and (2) employees shall perform their duties in each operation in such a manner as to promote efficient operation of each particular duty and of any job as a whole. The Union and the Employer recognize that drug and alcohol abuse creates an unsafe and inefficient work place. The individual employer must post the name and address of their doctor and the compensation insurance carrier on the jobsite.

All Federal and State safety rules, regulations, orders and decisions shall be binding upon the individual employers and their employees and shall be applied to all work covered by this Agreement. No worker shall be required to work under unsafe conditions.

The individual employer shall be solely responsible for implementation and maintenance of such safety laws, rules, regulations, standards, orders and decisions. Neither the Union nor any Local Union or the NCCRC is responsible for such implementation or maintenance.

All safety equipment required by State or Federal regulations, including hard hats, shall be provided and maintained by the individual employer without cost to his employees. Upon termination the employee shall return such equipment to the individual employer.

### Section 20
### Pre-Job Conferences

(1) The individual employer shall at his option or at the option of the Union or the NCCRC call for a pre-job conference. If the Union or the NCCRC desires, it shall be entitled to a pre-job conference solely with the individual employer. The individual employer may include his subcontractors at such conference.

(2) The individual employer shall advise the Union or the NCCRC in writing, at all times of the names (including trade names and names of individual proprietors or partners who signed the subcontract) and addresses of all subcontractors or his subcontractors employed or to be employed or contracted with for services to be performed under this Agreement. Such written notice shall be made at the pre-job conference or ten (10) days prior to the commencement of work by any such subcontractor.

(3) The individual employer shall, upon request of the Union or the NCCRC, submit letters of past or present work assignment for purposes of clarifying questions of Union jurisdiction.

### Section 21
### Audit

Each individual employer upon request of the Union, the Employer, or any Trust Fund specified in this Agreement, shall permit the Trust Fund Auditors to review any and all records relevant to the enforcement of the provisions of this Agreement and to enter upon the premises of such individual employer during business hours at reasonable time or times to examine and copy such books, records, papers or reports of such individual employer as may be necessary to determine whether or not the individual employer is making full payment of all sums required by this Agreement. The

decision as to the relevancy of records shall be made by the Joint Delinquency Subcommittee and their decision shall be binding on all parties. Such review shall be permitted not less than ten (10) working days after demand. If the individual employer cancels an audit appointment without appropriate two (2) hours' notice to the auditor, the cost of such lost time by the auditor shall be borne by the individual employer.

The cost of audit shall be borne by the individual employer if a shortage disclosed by the audit exceeds $4,500.00 and is not the result of clerical error.

Trustees of the Trust Funds specified in this Agreement are authorized to determine the appropriate formula to be applied to compute appropriate Trust Fund contributions. The individual employer shall be required to comply with such Trust Fund formula and make payments to the Trust Funds immediately upon being advised of the amount due.

Any legal action to compel audit entry shall be filed in the Superior Court of the City and County of San Francisco, State of California, or the United States District Court for the Northern District of California.

Any individual employer who refuses audit entry shall pay all the legal fees and costs necessary for compliance of audit entry.

The Union has the right to withhold workers from any individual employer who refuses to make available relevant records necessary for the completion of the audit.

Information derived from the audit shall be confidential and used solely for the enforcement of this Agreement.

## Section 22
## Work Day

The work day shall be eight (8) hours worked between the hours of 8:00 A.M. and 4:30 P.M.

Upon submission of prior written notice by the individual employer to the appropriate District office of the NCCRC, the regular work day may be changed to eight (8) consecutive hours (exclusive of the lunch period) between 7:00 A.M. and 5:00 P.M. The regular work day may be changed to eight (8) consecutive hours (exclusive of the lunch period) between the hours of 6:00 A.M. and 3:00 P.M. by written approval of the appropriate District office of the NCCRC. Once the regular work day is changed, it shall be for no less than five (5) consecutive regular work days and may be changed only by written notification from the individual employer to the appropriate District office of the NCCRC.

The rate of pay for all hours worked other than the regular established work day shall be governed by Section 26, "Overtime."

Any employee who works more than five (5) hours without a meal period shall be paid for all work in excess of said five (5) hour period at the applicable overtime rate until a meal period is provided. (Such pay shall be reckoned by the hour and half-hour.)

Effective January 1, 2001, every individual employer shall authorize and permit all employees to take rest periods, which insofar as practicable, shall be in the middle of each work period. Nothing in this provision shall prevent an individual employer from staggering rest periods to avoid interruption in the flow of work and to maintain continuous operations, or from scheduling rest periods to coincide with breaks in the flow of work that occur in the course of the work day. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time for every four (4) hours worked, or major fraction thereof. Rest periods shall take place at individual employer designated areas, which may include or be limited to the employee's immediate work area.

Rest periods need not be authorized in limited circumstances when the disruption of continuous operations would jeopardize the product or process of the work. However, the individual employer shall make-up the missed rest period within the same work day or compensate the employee for the missed ten (10) minutes of rest time at his or her regular rate of pay within the same pay period.

A rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

If an individual employer fails to provide an employee a rest period in accordance with the applicable provisions of this Section, the individual employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period was not provided.

All pay shall be reckoned by the day and half-day as follows: Employees who start work at the regular work day or shift shall receive four (4) hours pay or pay for actual hours worked, whichever is greater, regardless of the reason for the inability to complete the regular work day or shift. If the employee voluntarily quits, the employee shall receive pay only for actual hours worked.

Any dispute regarding the provisions of this Section shall be subject to Section 51 (Grievance Procedure) of this Agreement.

## Section 23
## Shift Work

Shift work can only be established upon prior notice from the individual employer to the Union and shall be performed as follows:

Except as provided below, where multiple shifts are worked, if the individual employer elects to work the day shift between the hours of 6:00 A.M. and 5:30 P.M., that shift shall work eight (8) hours and for such work they shall be paid the regular straight time rate for eight (8) hours; the second shift shall work seven and one-half (7-1/2) hours, and for such work they shall be paid the regular straight time rate for eight (8) hours; if a third shift is worked, they shall work seven (7) hours and for such work they shall be paid eight (8) hours regular straight time pay. No multiple shift shall be established or started for less than three (3) consecutive work days.

On tenant improvement or renovation projects in occupied buildings with a total contract value of five (5) million dollars or less, the individual employer may perform multiple shift operations on the basis of eight (8) hours pay for eight (8) hours work on all shifts at the regular straight-time rate.

Overtime rates shall be paid for all hours worked on the second or third shift if less than three (3) consecutive days are worked. The provisions of this Section 23 with regard to rates of pay for shift work shall apply solely to the portion of the job which requires shift operations.

When it is a condition of securing the work, a special single shift may be established that will be for no less than three (3) consecutive days, for off hours between Monday and Friday, and will allow for eight (8) hours pay for eight (8) hours work. Work in excess of eight (8) hours per day shall be subject to the overtime provisions of this Agreement.

All work in excess of eight (8) hours on Saturday and all work on Sundays and holidays shall be double time.

Payments or contributions to each of the Trust Funds provided for in this Agreement shall be based on hours worked or paid for, which include contributions for eight (8) hours per shift. No payment or contribution shall be computed at the rate of time and one-half or double the required rate of payments or contributions per hour, nor shall any such payments or contributions be considered part of the hourly wage rate for the purpose of computing overtime, either under this Agreement, the Fair Labor Standards Act, the Walsh-Healey Act or any other law.

On shift work (a) workers working a shift who come off work on Saturday morning at 8:00 A.M., are to be considered working Friday; (b) workers working a shift who come off work on Sunday morning at 8:00 A.M., are to be considered working Saturday; and (c) workers working a shift who come off work on Monday morning at 8:00 A.M., are to be considered working Sunday.

All regularly scheduled shift work performed on Saturday, Sunday and holidays, shall be in accordance with the overtime rates herein specified. All such work shall be performed under terms and conditions of this Section 23 as to hours worked and rate of pay.

## Section 24
## Work Week

The regular work week shall consist of forty (40) hours of work Monday through Friday. In the event that work cannot be performed Monday through Friday because of inclement weather or major mechanical breakdown, employees may voluntarily make up such day on Saturday and shall be paid at the applicable straight time rates. As a courtesy, the individual employer shall advise the appropriate District office of the NCCRC whenever it intends to implement the Saturday make-up day. (The NCCRC district office phone numbers are as follows: Northern (916) 498-1002, Southern (408) 445-3000, and Central (510) 568-4788.)

On Residential projects as described in Appendix C, "Residential Addendum" the work week shall remain as contained therein.

## Section 25
## Holidays

The following are nationally recognized holidays covered by this Agreement: New Year's Day, Martin Luther King Day, Presidents' Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, the Friday following Thanksgiving Day, and Christmas Day. If any of the above holidays fall on Sunday, the Monday following shall be observed as the holiday.

The parties have agreed that the following four (4) days of each year will be selected by the Union as designated off/holidays:

2003: Friday, February 14th; Friday, May 23rd; Friday, August 29th; Friday, December 26th.



2004: Friday, January 2nd; Friday, May 28th; Friday, September 3rd; Friday, December 24th.

2005: Friday, February 18th; Friday May 27th; Friday July 1st; Friday, September 2nd.

2006: Friday, February 17th; Friday May 26th; Monday, July 3rd; Friday, September 1st.

2007: Friday, May 25th; Friday, August, 31st; Monday, December 24th; Monday, December 31st.

2008: Friday, February 15th; Friday, May 23rd; Friday, August 29th; Friday, December 26th.

The four designated off holidays shall be governed by Section 26 (Overtime).

## Section 26
## Overtime

A. On all building construction, the first two (2) hours prior to the start of the regular or approved day or the first four (4) hours after the end of the approved or regular work day, not to exceed a total of four (4) hours in any one (1) work day shall be paid at time and one-half.

Time and one-half shall be paid for the first eight (8) hours worked on Saturdays.

Time and one-half shall be paid for the first eight (8) hours worked on the four designated off/collectively bargained holidays.

Double time shall be paid on all other holidays referenced in Section 25 (Holidays).

All other time shall be paid at double the straight-time rate.

B. On all heavy, highway and engineering construction, including but not limited to the construction, improvement, modification, and demolition of all or any part of streets, highways, bridges, viaducts, railroads, tunnels, airports, water supply, irrigation, flood control and drainage systems, sewers and sanitation projects, dams, power houses, refineries, aqueducts, canals, river and harbor projects, wharves, docks, breakwaters, jetties, quarrying of breakwater or riprap stone, or operations incidental to such heavy construction work; all overtime worked, other than on Sundays and nationally recognized holidays covered by this Agreement shall be at time and one-half the regular straight time rate. All overtime worked on Sundays and nationally recognized holidays covered by this Agreement shall be at double the regular straight time rate. The first eight (8) hours worked on the four (4) designated off/collectively bargained holidays shall be at time and one-half the regular straight time rate.

## Section 27
## Parking

In the event free parking facilities are not available within 1320 feet (measured by the most direct route on a dedicated vehicular public thoroughfare) of a jobsite, the individual employer will provide such facilities and the individual employer shall have the right to designate parking areas to be used. Where, because of congested parking conditions, it is necessary to use public facilities, the individual employer shall reimburse the employee for the cost of such parking upon being presented with a receipt or voucher certi-

fying to the cost thereof, such reimbursement to be made on a weekly basis or at the conclusion of the project, whichever occurs earlier. Designated parking area shall be drained and hard surface.

### Section 28
### Tools

Carpenters and apprentices shall furnish their own tools, but shall not furnish, rent or lease horses, ladders, mitre boxes, electric drills, automotive equipment to be used for the purpose of hauling or delivering individual employer's materials or equipment, or any kind of power operated machines or saws. Each employee shall arrive on the job with tools in proper condition. To implement this section, the individual carpenter shall provide a toolbox with a lock. If necessary the employee shall be allowed a reasonable amount of time during the work week to sharpen tools on the individual employer's time.

The individual employer shall provide a reasonably secure place where his employees may keep their tools. Where ten (10) or more carpenters are employed on any one (1) job or project the individual employer shall provide a separate tool house, or a separate compartment of a tool house under lock and key, for the exclusive use of carpenters. Failure on the part of the individual employer to comply with the provisions hereof shall be referred to the Joint Adjustment Board. If any individual employee's full kit of working tools is lost by reason of fire or theft while in the individual employer's care, the individual employer shall reimburse the employee for such loss up to a maximum of $500.00. Within two (2) working days from the date of claim for loss of tools as provided herein, the individual employer shall acknowledge liability therefore or reject the claim.

### Section 29
### Pickup Time

A carpenter shall be entitled to pickup time, which shall not be less than five (5) or more than fifteen (15) minutes at the end of each work day, the particular amount of such pickup time depending upon accessibility to the area to which the employee is assigned. The amount of pickup time shall be determined by mutual agreement at a jobsite conference between representatives of the individual employer and the Union.

### Section 30
### Show Up Time, Termination Pay and Discharge

Other than on the first (1st) day of dispatch, in which case two (2) hours shall apply, workers who report for work, for whom no employment is provided, shall be entitled to four (4) hours' pay, except where bad weather conditions beyond the control of the individual employer prevents employment.

Payments of contributions to each of the Trust Funds provided for in this Agreement shall be made with respect to payments required by this Section 30.

Except as hereinafter provided, carpenters who start work, but are discharged between the hours of 8:00 A.M. and 12:00 noon, shall receive four (4) hours' pay; carpenters starting work at 8:00 A.M. who are discharged between the hours of 12:00 noon and 4:30 P.M. shall receive pay only for hours worked.



Carpenters discharged on the first (1st) day of employment for inefficiency, insubordination or intoxication, shall receive pay only for hours worked. Carpenters who voluntarily quit shall receive pay only for hours worked.

DISCHARGED EMPLOYEE. Employees receiving notice of termination for any reason shall be allowed a reasonable time (not less than fifteen (15) minutes) before the end of the regular work day to assemble their tools in addition to the normal pickup time prevailing on the job.

After forty (40) hours of employment, the individual employer may discharge any employee for just cause only. Just cause is subject to Section 51, the grievance and arbitration provision of this Agreement. The individual employer during the first forty (40) hours of employment may reject or discharge any employee for any reason.

Discharge for cause shall be in writing to the employee.

### Section 31
### Payment of Wages

An employee who works the full designated work week shall receive on the last day of that work week pay for not less than the number of hours worked on the Monday of that same work week.

Each individual employer shall provide with each payroll check an itemized check stub showing separately the date of issuance, each contribution and deduction made from the payroll period covered by the check or a separate statement showing the name of the employee, the name and the individual employer's contractor's license number and/or address and the employee's social security number. There shall be no cash payment of any nature or kind whatsoever. Payment by cash or second or multiple checks or combination thereof and the payment of excessive premium rates, excessive travel time or bonuses shall be prima facie evidence of an attempt to violate the provisions of this Section 31.

Should an individual employer compensate an employee with a check for which payment is refused by the individual employer's bank because of insufficient funds, or should an individual employer fail to pay his employees on the regular, established pay day for his job, the obligation of the individual employer to the individual employee shall continue at the employee's regular straight time rate for a period not to exceed forty (40) hours, notwithstanding the above, unless the refusal of payment by the bank is due to the bank's error or omission or to circumstances which are beyond the control of the individual employer. Any question concerning responsibility of the individual employer on whether the omission is beyond his control shall be subject to the grievance procedure of this Agreement. Nothing herein shall, however, prevent the individual employer from changing his payroll date upon five (5) days' notice to the appropriate Local Union of the Union that the employee's pay date is being changed.

If terminated by the individual employer for any reason the employee shall be paid immediately in full. His pay status shall continue for each calendar day until pay is received; provided, however, that not more than eight (8) hours pay shall be charged for any calendar day with a maximum of five (5) days.

## Section 32
## Prohibition of Piece Work

No person shall be employed in work covered by this Agreement at piece rates or under any system of bonus pay. Payments by cash or second or multiple checks or combination thereof and/or the payment of excessive travel time, bonuses or other payments as "Travel Pay" or "Subsistence," where not required or permitted by this Agreement, shall be prima facie evidence of a violation of this Agreement.

If at the time of an audit, piece work or bonus payments are discovered, those amounts will be subject to the conversion formula as set forth in Section 21 (Audit). The foregoing shall not apply to an annual bonus paid to supervisors.

## Section 33
## Nonunion Fabricated Materials

To the extent permitted by law, the individual employer will not require Carpenters to handle nonunion fabricated materials.

## Section 34
## Injury

Employees who are, as a result of industrial injury, unable to complete a full day's work, shall nevertheless be paid for the full day on which such injury occurred; provided the attending physician has certified to the employee's inability to complete his/her regular assigned work on that day of such injury.

An industrial injury shall not be cause for discharge and an applicant for employment shall not be rejected because of prior industrial injury, provided that any such prior industrial injury has not caused the applicant to be incapable of satisfactorily performing the duties and functions required by the job to which he/she is assigned or would be assigned.

## Section 35
## Document Signing

No employee or applicant for employment will be required as a condition of employment or continued employment to sign any document not required by law.

## Section 36
## Subcontractor Records

On residential construction, excluding alteration and repair, the individual employer shall keep a record of all hours worked by persons performing work covered by this Agreement for each subcontractor on each separate job or project.

It is recognized and acknowledged that with respect to certain subcontracted functions such as installation of stairways, formica tops, and marlite, it would be difficult and impractical to record the precise hours worked at such function. On such work the individual employer shall make an estimate of the hours worked by the installing subcontractor. These records shall be submitted monthly to the Trust Funds specified in this Agreement.



## Section 37
## Bonding

The Union may require of any individual employer who is delinquent in Trust Fund contributions and/or whose payroll checks have been returned for insufficient funds ("bounced"), that such individual employer be required to provide a bond not less than $5,000.00 or more than $75,000.00 at the option of the Union or Trust Fund to insure payment of his payroll and/or Trust Fund contributions. An acceptable letter from responsible party or joint checks may be substituted for bond requirement. It shall not be a violation of this Agreement for the Union to withdraw carpenters from the job(s) of such individual employer who may upon demand and notice, fail or refuse to present such bond to the Carpenter Funds Administrative Office, 265 Hegenberger Road, Suite 100, Oakland, California 94621-1480. In the event the defaulting individual employer is a subcontractor of a prime contractor signatory hereto, the latter will be notified and given opportunity to post bond as herein provided prior to the withdrawal of carpenters from the job(s); provided, however, the bonding company is approved by the Carpenter Funds Administrative Office for Northern California, Inc.

## Section 38
## Appendices

The following appendices attached to this Carpenters Master Agreement are incorporated herein and shall be part of this Agreement as though fully set forth herein: Subsistence (Appendix A), Millwrights (Appendix B), Residential (Appendix C), Insulators (Appendix D), Millmen (Appendix E), Scaffold Erection (Appendix F) and Bridge Structure and Highway Related (Appendix G).

## Section 39
## Wage Rates

The following shall be the classifications and minimum hourly rates during the term of this Agreement for the effective dates noted and in the areas listed.

A.Nine (9) Counties Area consisting of the following counties:

Alameda, Contra Costa, Marin, Napa, San Francisco, San Mateo, Santa Clara, Solano and Sonoma:

| Journeyman wage rates effective | 7-01-03 |
|---|---|
| Carpenters | 30.75 |
| Bridge Builders | 30.75 |
| Hardwood Floorlayers | 30.90 |
| Shinglers | 30.90 |
| Power Saw Operators | 30.90 |
| Steel Scaffold & Steel Shoring Erectors | 30.90 |
| Saw Filers | 30.90 |
| Millwrights | See Appendix B |

B.Thirty-Four (34) Counties Area consisting of the following counties:

Alpine, Amador, Butte, Calaveras, Colusa, Del Norte, El Dorado, Fresno, Glenn, Humboldt, Kings, Lake, Lassen, Madera, Mariposa, Mendocino, Merced, Modoc, Nevada, Placer, Plumas, Sacramento, San Joaquin, Shasta, Sierra, Siskiyou, Stanislaus, Sutter, Tehama, Trinity, Tulare, Tuolumne, Yolo and Yuba:

1. Effective July 1, 2003, the following journeyman wage rates shall apply to projects with a total project value of less than twenty-five million dollars ($25,000,000) and to projects which are not covered under the provisions of Section 39 B(2) or B(3) below:

| Journeyman wage rates effective | 7-01-03 |
|---|---|
| Carpenters | 23.52 |
| Bridge Builders | 29.59 |
| Hardwood Floorlayers | 23.67 |
| Shinglers | 23.67 |
| Power Saw Operators | 23.67 |
| Steel Scaffold & Steel Shoring Erectors | 23.67 |
| Saw Filers | 23.67 |
| Millwrights | See Appendix B |

2. Effective July 1, 2003, the following journeyman wage rates shall apply on new public and private projects with a total base bid project value of twenty-five million dollars ($25,000,000) or more that are bid or negotiated after the effective date of this Agreement and prior to July 1, 2004, with the exception of wood frame residential construction of three (3) stories or less. These rates shall not apply to public works projects until such time as these rates have been incorporated in the applicable prevailing wage determinations. Where there is a published or advertised estimate of the construction costs for a project, such estimate shall determine "the total base bid project value," for purposes of the twenty-five million dollar ($25,000,000) threshold. In addition, the provisions of Section 39 B(4) shall apply in determining "the total base bid project value."

| Journeyman wage rates effective | 7-01-03 |
|---|---|
| Carpenters | 27.02 |
| Bridge Builders | 30.75 |
| Hardwood Floorlayers | 27.17 |
| Shinglers | 27.17 |
| Power Saw Operators | 27.17 |
| Steel Scaffold & Steel Shoring Erectors | 27.17 |
| Saw Filers | 27.17 |
| Millwrights | See Appendix B |

3. Effective July 1, 2003, the following journeyman wage rates shall apply for the duration of the project to projects with a total base bid project value of twenty-five million dollars ($25,000,000) or more that are bid or negotiated after August 1, 1999 and prior to the effective date of this Agreement or, for public works projects, as required by the applicable prevailing wage determination. These rates shall not apply to wood frame residential construction of three (3) stories or less. Where there is a published or advertised estimate of the construction costs for a project, such estimate shall determine "the total base bid project value," for purposes of the twenty-five million dollar ($25,000,000) threshold. In addition, the provisions of Section 39 B(4) shall apply in determining "the total base bid project value."

| Journeyman wage rates effective | 7-01-03 |
|---|---|
| Carpenters | 30.75 |
| Bridge Builders | 30.75 |
| Hardwood Floorlayers | 30.90 |
| Shinglers | 30.90 |
| Power Saw Operators | 30.90 |
| Steel Scaffold & Steel Shoring Erectors | 30.90 |
| Saw Filers | 30.90 |
| Millwrights | See Appendix B |



4. 25/50 Million Dollars Defined:

The Employer shall meet and confer with the Union prior to the bid and/or execution of negotiated contract to jointly determine the appropriate rate. Employers failing to participate in this process shall incur monetary liability should it later be determined that the $25/50 million dollar threshold was surpassed.

**Private Bid and Negotiated Work:** In all scenarios, the following Divisions shall be considered "traditionally included work". Customarily included items, supplied by the owner shall be included when defining the applicability of the $25/50 million dollar threshold

Division 1 - General Requirements
Division 2 - Site Work & Demolition
Division 3 - Concrete
Division 4 - Masonry
Division 5 - Metals
Division 6 - Wood & Plastics
Division 7 - Thermal & Moisture Protection
Division 8 - Doors & Windows
Division 9 - Finishes
Division 10 - Specialties
Division 11 - Equipment
Division 12 - Furnishings
Division 13 - Special Construction
Division 14 - Conveying Systems
Division 15 - Mechanical
Division 16 - Electrical

**Equipment:** Equipment, which is integral to the function of the building, customarily furnished and/or installed by the contractor shall be included in the determination of the total base bid value.

**Phased Projects:** Where the work is phased under a single contract, the cumulative total of the contract shall determine the total base value.

**Public Work:** The parties to the agreement shall meet and confer and failing to reach an agreement shall request the awarding body, its designee and/or the Department of Industrial Relations to issue a determination of the project value. If the awarding body fails to issue a determination, the total base bid (excluding alternates) shall govern.

C.Three (3) Counties Area consisting of the following counties:

Monterey, San Benito and Santa Cruz:

1. Effective July 1, 2003, the following journeyman wage rates shall apply to projects with a total project value of less than twenty-five million dollars ($25,000,000) and to projects which are not covered under the provisions of Section 39 C(2) or C(3) below:

| Journeyman wage rates effective | 7-01-03 |
|---|---|
| Carpenters | 24.87 |
| Bridge Builders | 29.87 |
| Hardwood Floorlayers | 25.02 |
| Shinglers | 25.02 |
| Power Saw Operators | 25.02 |
| Steel Scaffold & Steel Shoring Erectors | 25.02 |
| Saw Filers | 25.02 |
| Millwrights | See Appendix B |

2. Effective July 1, 2003, the following journeyman wage rates shall apply on new public and private projects with a total base bid

project value of twenty-five million dollars ($25,000,000) or more that are bid or negotiated after the effective date of this Agreement and prior to July 1, 2004, with the exception of wood frame residential construction of three (3) stories or less. These rates shall not apply to public works projects until such time as these rates have been incorporated in the applicable prevailing wage determinations. Where there is a published or advertised estimate of the construction costs for a project, such estimate shall determine "the total base bid project value," for purposes of the twenty-five million dollar ($25,000,000) threshold. In addition, the provisions of Section 39 C(4) shall apply in determining "the total base bid project value."

| Journeyman wage rates effective | 7-01-03 |
|---|---|
| Carpenters | 28.37 |
| Bridge Builders | 30.75 |
| Hardwood Floorlayers | 28.52 |
| Shinglers | 28.52 |
| Power Saw Operators | 28.52 |
| Steel Scaffold & Steel Shoring Erectors | 28.52 |
| Saw Filers | 28.52 |
| Millwrights | See Appendix B |

3. Effective July 1, 2003, the following journeyman wage rates shall apply for the duration of the project to projects with a total base bid project value of twenty-five million dollars ($25,000,000) or more that are bid or negotiated after August 1, 1999 and prior to the effective date of this Agreement or, for public works projects, as required by the applicable prevailing wage determination. These rates shall not apply to wood frame residential construction of three (3) stories or less. Where there is a published or advertised estimate of the construction costs for a project, such estimate shall determine "the total base bid project value," for purposes of the twenty-five million dollar ($25,000,000) threshold. In addition, the provisions of Section 39 C(4) shall apply in determining "the total base bid project value."

| Journeyman wage rates effective | 7-01-03 |
|---|---|
| Carpenters | 30.75 |
| Bridge Builders | 30.75 |
| Hardwood Floorlayers | 30.90 |
| Shinglers | 30.90 |
| Power Saw Operators | 30.90 |
| Steel Scaffold & Steel Shoring Erectors | 30.90 |
| Saw Filers | 30.90 |
| Millwrights | See Appendix B |

4. 25/50 Million Dollars Defined:

The Employer shall meet and confer with the Union prior to the bid and/or execution of negotiated contract to jointly determine the appropriate rate. Employers failing to participate in this process shall incur monetary liability should it later be determined that the $25/50 million dollar threshold was surpassed.

**Private Bid and Negotiated Work:** In all scenarios, the following Divisions shall be considered "traditionally included work". Customarily included items, supplied by the owner shall be included when defining the applicability of the $25/50 million dollar threshold.

Division 1 - General Requirements
Division 2 - Site Work & Demolition
Division 3 - Concrete
Division 4 - Masonry
Division 5 - Metals



Division 6 - Wood & Plastics
Division 7 - Thermal & Moisture Protection
Division 8 - Doors & Windows
Division 9 - Finishes
Division 10 - Specialties
Division 11 - Equipment
Division 12 - Furnishings
Division 13 - Special Construction
Division 14 - Conveying Systems
Division 15 - Mechanical
Division 16 - Electrical

**Equipment:** Equipment, which is integral to the function of the building, customarily furnished and/or installed by the contractor shall be included in the determination of the total base bid value.

**Phased Projects:** Where the work is phased under a single contract, the cumulative total of the contract shall determine the total base value.

**Public Work:** The parties to the agreement shall meet and confer and failing to reach an agreement shall request the awarding body, its designee and/or the Department of Industrial Relations to issue a determination of the project value. If the awarding body fails to issue a determination, the total base bid (excluding alternates) shall govern.

D. Fringe Benefit Hourly Rates - Entire 46 Counties Area

(July 1, 2003 through June 30, 2004)

| Effective dates: | 7-01-03 | 8-01-03 | 3-01-04 |
|---|---|---|---|
| Health & Welfare | 4.305 | 4.305 | 4.305 |
| Pension | 2.85 | 2.85 | 2.85 |
| Carpenters Annuity | 2.00 | 2.00 | 2.00 |
| Vacation (Carpenters) | 1.80 | 1.80 | 1.80 |
| Work Fee | .97 | .48 | .97 |
| Training | .33 | .33 | .33 |
| Industry Promotion (CEA members only) | .05 | .00 | .05 |
| Industry Promotion (Memorandum Employers only) | .09 | .00 | .09 |
| UBC Health & Safety Fund | .04 | .00 | .04 |
| Carpenters Work Preservation | .06 | .00 | .06 |
| Carpenter Employers Contract Administration | .07 | .00 | .07 |

See Appendix B for Millwright fringe benefit rates.

E. Future Wage and/or Fringe Benefit Considerations: (2004-2008)

July 1, 2004

In the Forty-six (46) Counties Area, One dollar and Seventy-five cents ($1.75) per hour increase to be allocated as follows: Fifty cents ($.50) to be allocated to Wages; One dollar and fifty cents ($1.50) to be allocated to Health & Welfare; Fifteen cents ($.15) to be allocated to Pension; Five cents ($.05) to be allocated to Training; Vacation shall be decreased by Twenty cents ($.20) and Annuity shall be decreased by Twenty-five cents ($.25).

The Union reserves the right to reallocate wage and fringe benefit amounts, excluding pre-allocated Health & Welfare amounts.

In the Thirty-four (34) Counties and Three (3) Counties

Areas for projects with a total base bid project value of fifty million dollars ($50,000,000) or more that are bid or negotiated on or after July 1, 2004 and prior to July 1, 2007 or, for public works projects, as required by the applicable prevailing wage determination, wage rates for the duration of the project shall be three dollars and fifty cents ($3.50) per hour above the applicable Thirty-four (34) Counties or Three (3) Counties wage rates as set forth in Section 39 B (1) and C (1), except for the Bridge Builder classification. In addition, the scheduled increases set forth in this Section E shall apply to such projects. These rates shall not apply to wood frame residential construction of three (3) stories or less. Where there is a published or advertised estimate of the construction costs for a project, such estimate shall determine "the total base bid project value," for purposes of the fifty million dollar ($50,000,000) threshold. In addition, the provisions of Section 39 B(4) and C(4) shall apply in determining "the total base bid project value."

July 1, 2005

In the Forty-Six (46) Counties Area, Two dollars ($2.00) per hour increase to be allocated as follows: One dollar ($1.00) to be allocated to Wages; Twenty-five cents ($.25) to be allocated to Health & Welfare and up to an additional twenty-five cents ($.25) shall be allocated to Health & Welfare from the total two dollars ($2.00) per hour increase, if needed to maintain existing benefits, provided an additional matching amount of up to twenty-five cents ($.25) shall be contributed to the Health & Welfare Trust Fund by Individual Employers*; Twenty cents ($.20) to be allocated to Pension; Five cents ($.05) to be allocated to Vacation; and Twenty-five cents ($.25) to be allocated to Annuity and/or Health & Welfare.

*The bargaining parties shall rely upon the recommendation of the Health & Welfare Board of Trustees as to the amount of increase needed, and enact same. The maximum total increase, effective July 1, 2005 shall be Two dollars and Twenty-five cents ($2.25) per hour, excluding any increases to Work Fee pursuant to Section 43-A of this Agreement.

The Union reserves the right to reallocate wage and fringe benefit amounts, excluding pre-allocated Health & Welfare amounts.

July 1, 2006

In the Forty-Six (46) Counties Area, Two dollars ($2.00) per hour increase to be allocated as follows: One dollar ($1.00) to be allocated to Wages; Fifty cents ($.50) to be allocated to Health & Welfare; Fifteen cents ($.15) to be allocated to Pension; Five cents ($.05) to be allocated to Vacation; Five cents ($.05) to be allocated to Training; and Twenty-five cents ($.25) to be allocated to Annuity and/or Health & Welfare.

The Union reserves the right to reallocate wage and fringe benefit amounts, excluding pre-allocated Health & Welfare amounts.

July 1, 2007

In the Forty-Six (46) Counties Area, Two dollars and Fifty cents ($2.50) per hour increase to be allocated as follows: One dollar ($1.00) to be allocated to Wages; Twenty-five cents ($.25) to be allocated to Health & Welfare and up to an additional twenty-five cents ($.25) shall be allocated to Health & Welfare from the total two dollars and fifty cents ($2.50) per hour increase, if needed to maintain existing benefits, provided an additional matching amount of up to twenty-five cents ($.25) shall be contributed to the Health & Welfare Trust Fund by Individual Employers*; Twenty cents ($.20) to be allocated to Pension; Five cents ($.05) to be allocated to Vacation; Twenty-five cents ($.25) to be allocated to Annuity and/or Health & Welfare; and Fifty cents ($.50) to be allocated to the Building Industry Trust.

*The bargaining parties shall rely upon the recommendation of the Health & Welfare Board of Trustees as to the amount of increase needed, and enact same. The maximum total increase effective July 1, 2007 shall be Two dollars and Seventy-five cents ($2.75) per hour, excluding any increases to Work Fee pursuant to Section 43-A of this Agreement.

The Union reserves the right to reallocate wage and fringe benefit amounts, excluding pre-allocated Health & Welfare amounts.

When an individual project encompasses two (2) geographic wage areas, the higher of the two (2) wage rates shall apply to the entire project.

F. Apprentice Wage Percentage Schedule:

The wage rates for apprentices shall be the following percentages of the applicable journeyman classification in the appropriate geographical area. Effective July 1, 2003, fringe benefit increases will no longer be automatic, based on calendar months from an apprentice's indenture or re-indenture date. Wage and fringe benefit increases for all apprentices shall be governed by the individual Joint Apprentice Training Committees (based on calendar months, work hours and completion of mandatory training classes), provided no apprentice shall suffer a reduction in fringe benefits, effective July 1, 2003.

First Period: 0 to 6 months . . . . . . . . . . . . . . . . . . . . . . 60%
Health & Welfare, Work Fee, Industry Promotion, UBC Health & Safety, Work Preservation, Training, Carpenter Employers Contract Administration

Second Period: 7 to 12 months . . . . . . . . . . . . . . . . . . . . 65%
Health & Welfare, Work Fee, Industry Promotion, UBC Health & Safety, Work Preservation, Training, Vacation, Carpenter Employers Contract Administration

Third Period: 13 to 18 months . . . . . . . . . . . . . . . . . . . . 70%
Health & Welfare, Work Fee, Industry Promotion, UBC Health & Safety, Work Preservation, Training, Vacation, Annuity, Carpenter Employers Contract Administration

Fourth Period: 19 to 24 months . . . . . . . . . . . . . . . . . . . 75%
Health & Welfare, Work Fee, Industry Promotion, UBC Health & Safety, Work Preservation, Training, Vacation, Annuity, Carpenter Employers Contract Administration

Fifth Period: 25 to 30 months . . . . . . . . . . . . . 80% Full Fringes

Sixth Period: 31 to 36 months . . . . . . . . . . . . . 85% Full Fringes

Seventh Period: 37 to 42 months . . . . . . . . . . . 90% Full Fringes

Eighth Period: 43 to 48 months . . . . . . . . . . . . 95% Full Fringes

The following conditions shall be applicable to the classification "Power Saw Operators" and "Steel Scaffold Erectors and/or Steel Shoring Erectors":

(1) If an employee is hired initially as a Power Saw Operator or as a Steel Scaffold Erector and/or Steel Shoring Erector, he shall receive the rate for such classification until he is assigned to work in another classification.

(2) If an employee already employed on a job is assigned to perform Power Saw Operating duties or Steel Scaffold and/or Steel Shoring Erecting duties, he shall receive the rate of the Power Saw Operator classification or the Steel Scaffold Erector and/or Steel Shoring Erector's classification, as the case may be, for the actual hours worked in such classifications.

(3) The operation of a hand-operated skill saw shall not be considered as the performance of Power Saw Operating duties and shall not carry the rate for the Power Saw Operator classification.

(4) Men working from Bos'n chairs, swinging scaffolds, or suspended from a rope, cable, or from a safety belt or any device used as a substitute for in lieu thereof shall receive fifty cents ($.50) per hour above the applicable journeyman or apprentice rate.

The premium specified in this section shall be reckoned by the hour.

When an employee uses survey instruments he shall receive not less than the rate of pay for his regular classification.

Provisions concerning special conditions for Millwrights are set forth in Appendix B of this Agreement and are a part thereof.

The term "Journeyman Carpenter" as used herein means an employee who is qualified by experience and ability to perform work with carpenters' tools, carpenters' level and other such tools or survey instruments as are normally used by carpenters in the performance of carpenters' work.

The foregoing shall be applicable to all work in connection with the building and erection of timber trusses. The framing, assembling and building of the trusses, the raising and putting them in place and the rigging and signaling when power equipment is used are all under the jurisdiction of the United Brotherhood of Carpenters.

The term "Apprentice Carpenter" as used herein means an employee as defined from time to time as an apprentice in the Apprenticeship Standards for the Carpentry Trade in the 46 Counties, who shall be permitted to perform any work done by a journeyman carpenter. The term of apprenticeship shall not exceed a period of four (4) years. It shall be a contractual obligation of contractors party to this Agreement, to re-employ apprentices laid off due to lack of work before employing new apprentices.

An individual employer shall employ apprentices only in accordance with the provisions of this Agreement and the applicable rules and regulations of the Carpenters Training Committee and the Apprenticeship Standards.

An individual employer who is entitled to employ apprentices may employ not more than one (1) apprentice for the first two (2) journeymen regularly employed by him and not more than one (1) additional apprentice for each three (3) additional journeymen employed by him. The first apprentice may not be employed until at least two (2) journeymen are regularly employed by the individual employer. Any individual employer employing five (5) journeymen shall, while employing five (5) journeymen, also employ at least one (1) apprentice. For each additional five (5) journeymen then in his employ, he shall employ at least one (1) additional apprentice.



FOREMAN: If the individual employer determines to use any foremen, they shall be paid one dollar and fifty cents ($1.50) an hour above the current journeyman's wage rate. Effective July 1, 2000, if the individual employer determines to use any foremen, they shall be paid ten percent (10%) above the appropriate journeyman's wage rate. The individual employer shall have the right to determine, in his sole and unlimited discretion, the need for any number of foremen. There shall be a minimum of one (1) foreman for each permanent shop maintained by specialty contractors and/or prime contractors hiring more than three (3) journeymen carpenters.

GENERAL FOREMAN: The rate for general foremen shall be twenty percent (20%) above the straight time rate for foremen. Whether an employee shall be designated general foreman, the person who shall be so designated and the specific assignment for such person shall be within the sole and exclusive judgment of the individual employer and such determination to appoint a general foreman, or not to do so, shall not be subject to the Grievance Procedure (Section 51) of this Agreement.

No person shall be employed in work covered by this Agreement at piece rates or under any system of bonus pay. Excessive amounts paid as hourly wages or under the guise of "travel pay" or "subsistence," where not required or permitted by this Agreement, shall be prima facie evidence of a violation of this Agreement. The foregoing shall not apply to an annual bonus paid to Supervisors.

## Section 40
## Health and Welfare

Each individual employer covered by this Agreement shall contribute to the Carpenters Health and Welfare Trust Fund for California, the amount listed in Section 39 (Wage Rates) for each hour paid for or worked, whichever is greater, by each employee covered by this Agreement for the purpose of providing Health and Welfare benefits for such employees.

Such contributing individual employer agrees to be bound by that certain Trust Agreement establishing the Fund dated March 4, 1953, as such has been or may from time to time be amended or supplemented.

There shall be no duplicating contribution with respect to any employee or the work of any employee.

Individual employer contributions for a foreman and general foreman covered by this Agreement shall be based upon the hourly contribution rate in effect for journeymen in the particular jurisdiction where they are employed. For purposes of interpreting and applying this section, such Trust Fund contributions shall not be considered as compensation.

The total number of hours worked by each employee in each month, for which contributions are made to this Trust Fund, shall be reported by the individual employer to this Trust Fund.

## Section 41
## Pension Plan

Each individual employer covered by this Agreement shall contribute to the Carpenters Pension Trust Fund for Northern California

the amount listed in Section 39 (Wage Rates) for each hour paid for or worked, whichever is greater, by each employee covered by this Agreement, for the purpose of providing Pension benefits for such employees. Such contributing individual employer agrees to be bound by that certain Trust Agreement establishing the Fund dated August 19, 1958, as such has been or may from time to time be amended or supplemented. The Union and the Employer agree that this plan is a Defined Benefit Plan.

There shall be no duplicating contribution with respect to any employee or the work of any employee.

Individual employer contributions for a foreman and general foreman covered by this Agreement shall be based upon the hourly-contribution rate in effect for journeymen in the particular jurisdiction where they are employed. For purposes of interpreting and applying this section, such Trust Fund contributions shall not be considered as compensation.

The total number of hours worked by each employee in each work month, for which contributions are made to this Trust Fund, shall be reported by the individual employer to this Trust Fund.

### Section 42
### Annuity Plan

Each individual employer covered by this Agreement shall contribute to the Carpenters Annuity Trust Fund for Northern California the amount listed in Section 39 (Wage Rates) for each hour paid for or worked, whichever is greater, by each employee covered by this Agreement, for the purpose of providing Annuity benefits for such employees. Such contributing individual employer agrees to be bound by that certain Trust Agreement establishing the Fund dated August 1, 1981, as such has been or may from time to time be amended or supplemented. The Union and the Employer agree that this Plan is and has been a Defined Contribution Plan.

There shall be no duplicating contribution with respect to any employee or the work of any employee

Individual employer contributions for a foreman and general foreman covered by this Agreement shall be based upon the hourly contribution rate in effect for journeymen in the particular jurisdiction where they are employed. For purposes of interpreting and applying this section, such Trust Fund contributions shall not be considered as compensation.

The total number of hours worked by each employee in each work month, for which contributions are made to this Trust Fund, shall be reported by the individual employer to this Trust Fund.

### Section 43
### Vacation and Holiday Plan

Each individual employer covered by this Agreement shall contribute to the Carpenters Vacation and Holiday Trust Fund for Northern California the amount listed in Section 39 (Wage Rates) for each hour paid for or worked, whichever is greater, by each employee covered by this Agreement, for the purpose of providing Vacation and Holiday benefits for such employees. Such contributing individual employer agrees to be bound by that certain Trust Agreement establishing the Fund dated May 1, 1972, as such has been or may from time to time be amended or supplemented.



There shall be no duplicating contribution with respect to any employee or the work of any employee.

Individual employer contributions for a foreman and general foreman covered by this Agreement shall be based upon the hourly contribution rate in effect for journeymen in the particular jurisdiction where they are employed. For purposes of interpreting and applying this section, such Trust Fund contribution shall be considered as compensation.

The total number of hours worked by each employee in each work month, for which contributions are made to this Trust Fund, shall be reported by the individual employer to this Trust Fund.

The parties agree that up to a maximum of $100,000 in any one calendar year shall be provided to insure employer contributions to the Vacation and Holiday Fund, which after all practical legal and administrative means of collection available to the Fund and the Union have been exhausted, have been declared uncollectible by the Joint Delinquency Committee of the Northern California Carpenter Trust Funds. Of this amount, up to $50,000 shall be provided by the Union; and up to $50,000 shall be provided by the Construction Industry Advancement Fund and the California Construction Advancement Program, in proportion to the amount of contributions received in the calendar year by such Fund and Program, respectively.

### Section 43-A
### Work Fee

Effective for all work performed on and after July 1, 1998, it is agreed that upon written authorization, provided by the Union, as required by law, the amount designated below shall be deducted from the Vacation and Holiday benefit of each worker and remitted directly to the Union, or the appropriate Local Union or the NCCRC of the Union, as the Union may from time to time direct. The amount of the deduction shall be specified on a statement transmitted to the worker. Such remittance shall be made to the Union not less than twelve (12) times per year.

Effective July 1, 1998, the amount to be paid by the 46 Counties Supplemental Dues option, in connection with the Vacation and Holiday contribution shall be an amount equal to two and one-fourth percent (2 1/4%) of the total hourly wage-fringe benefit package of the highest carpenter journeyman classification as defined in the Nine (9) Counties Area in this Agreement (excluding Industry Promotion, Contract Administration, and Construction Industry Advancement Fund contributions) in effect on July 1, 1998 or to be in effect July 1, of each succeeding year, to be effective July 1, of such succeeding year.

Effective July 1, 2003, the term "Supplemental Dues" shall be changed to "Work Fee."

Effective July 1, 2004, the amount to be paid by the 46 Counties Work Fee option, in connection with the Vacation and Holiday contribution shall be an amount equal to two and three eighths percent (2.375%) of the total hourly wage-fringe benefit package of the highest carpenter journeyman classification as defined in the Nine (9) Counties Area in this Agreement (excluding Industry Promotion, Contract Administration, and Construction Industry Advancement Fund contributions) in effect on July 1, 2004 or to be in effect July 1, of each succeeding year, to be effective July 1, of such succeeding year.

Effective July 1, 2006, the amount to be paid by the 46 Counties Work Fee option, in connection with the Vacation and Holiday contribution shall be an amount equal to two and one-half percent (2.5%) of the total hourly wage-fringe benefit package of the highest carpenter journeyman classification as defined in the Nine (9) Counties Area in this Agreement (excluding Industry Promotion, Contract Administration, and Construction Industry Advancement Fund contributions) in effect on July 1, 2006 or to be in effect July 1, of each succeeding year, to be effective July 1, of such succeeding year.

The amounts referred to herein shall be remitted by the individual employer as follows:

1. The individual employer shall include such amount in the single check mailed with his/her combined employer report of contributions to the Depository Bank for the Northern California Carpenters Trust Funds.

2. In such report the individual employer shall designate the Depository Bank as his/her or its agent to receive written dues authorizations from employees covered by this Agreement pursuant to Section 302 (c) (4) of the Labor-Management Relations Act, as amended, and any revocation of such authorizations, and shall direct the Bank (a) to deposit the monies reported under the column headed Work Fee (Column B) in a special account, (b) to transfer monthly from such account the monies paid with respect to the work of each employee who has on file with the Bank an unrevoked dues authorization in a form complying with law to the account of the Union as Work Fee and (c) to transfer the remaining monies in said account to the Carpenters Vacation and Holiday Trust Fund for Northern California for credit to the Vacation and Holiday accounts of the other employees. Any delinquency in the payment of such amount shall be subject to the same liquidated damage, interest and other delinquency provisions applicable to contributions to the Northern California Carpenter Trust Funds.

It is the intent and purpose of the parties to comply fully with all laws, rules and regulations applicable to the dues check-off provided by this Section. If any provision of this Section, or any procedure in the implementation or administration of this Section, is determined to violate any such law, rule or regulation, the parties will promptly enter into lawful negotiations to correct such violation.

The Union shall exonerate, reimburse and save harmless the Employer, each individual employer, the Bank or other depository designated pursuant to this Section, and the Carpenter Funds Administrative Office of Northern California, Inc., and their respective officers, directors, agents, and employees, individually and collectively, against any and all liabilities and reasonable expenses arising out of the payment, receipt or a distribution of the amounts listed in Section 39 (Wage Rates) for Work Fee.

## Section 44
## Carpenters Training Trust for Northern California

Each individual employer covered by this Agreement shall contribute to the Carpenters Training Trust for Northern California the amount listed in Section 39 (Wage Rates) for each hour worked by each employee covered by this Agreement for the purpose of providing training and education benefits for such employees.



Such contributing individual employer agrees to be bound by that certain Trust Agreement establishing the Fund dated March 4, 1963, as such has been or may from time to time be amended or supplemented.

There shall be no duplicating contributions with respect to any employee or the work of any employee.

## Section 45
## Contract Administration, California Builders Advancement Program, California Construction Advancement Program, Builders Industry Promotion Trust, Construction Industry Advancement Fund and The Building Industry Trust

Effective July 1, 2003, a total contribution of sixteen cents ($.16) per hour for each hour worked or paid for shall be paid to the California Builders Advancement Program, the California Construction Advancement Program, the Builders Industry Promotion Trust Fund, the Carpenter Employers Contract Administration Trust Fund, and the Building Industry Trust as follows:

**California Construction Advancement Program** — Effective July 1, 2003, each signatory individual memorandum employer shall contribute the sum of one cent ( $.01) per hour worked or paid for to the California Construction Advancement Program which is established for the purpose of protecting, improving and advancing the interests and welfare of the construction industry and its individual employers and employees. The individual employer hereby adopts and agrees to be bound by the terms of the certain Trust Agreement creating the California Construction Advancement Program dated September 12, 1974, as such might be amended from time to time pursuant to the terms thereof, and further agrees to observe and be bound by the actions and determinations of the Trustees of said Trust.

**California Builders Advancement Program** — Effective July 1, 2003, each signatory employer shall contribute the sum of one cent ($.01) per hour worked or paid for to the California Builders Advancement Program which shall be established for the purpose of protecting, improving and advancing the interests and welfare of the unionized building construction industry and its individual employers and employees. The individual employer hereby adopts and agrees to be bound by the terms of the Trust Agreement creating the California Builders Advancement Program, as such might be amended from time to time pursuant to the terms thereof, and further agrees to observe and be bound by the actions and determinations of the Trustees of said Trust.

**Builders Industry Promotion Trust Fund** — Effective July 1, 2003, each signatory employer shall contribute the sum of three cents ($.03) per hour worked or paid for to the Builders Industry Promotion Trust Fund which is established for the purpose of protecting, improving and advancing the interests and welfare of the building construction industry and its individual employers and employees. The individual employer hereby adopts and agrees to be bound by the terms of the certain Trust Agreement creating the Builders Industry Promotion Trust Fund dated January 1, 1992, as

such might be amended from time to time pursuant to the terms thereof, and further agrees to observe and be bound by the actions and determinations of the Trustees of said Trust.

**Construction Industry Advancement Fund** — Effective July 1, 2003, each signatory employer who is a member of the Home Builders Association (HBA) shall contribute the sum of three cents ($.03) per hour worked or paid for to the Construction Industry Advancement Fund Program which is established for the purpose of protecting, improving and advancing the interests and welfare of the construction industry and its individual employers and employees. The individual employer hereby adopts and agrees to be bound by the terms of the certain Trust Agreement creating the Construction Industry Advancement Fund Administrative Agreement dated March 5, 1979, as such might be amended from time to time pursuant to the terms thereof, and further agrees to observe and be bound by the actions and determinations of the Trustees of said Trust.

**Building Industry Trust** — Effective July 1, 2003, each signatory individual memorandum employer shall contribute the sum of four cents ($.04) per hour worked or paid for to the Building Industry Trust which shall be established for the purpose of protecting, improving and advancing the interests and welfare of the unionized building construction industry and its individual employers and employees as provided for in the Labor Management Cooperation Act of 1978 (29 U.S.C. 175 et seq.) and Section 302 (c) (9) of the Labor Management Relations Act, as amended (29 U.S.C. 186 (c) (9)). Effective July 1, 2003, each signatory employer who is a member of the Construction Employers' Association (CEA) or any other association which may so designate, shall contribute the sum of one cent ($.01) per hour worked or paid for to the Building Industry Trust. The individual employer hereby adopts and agrees to be bound by the terms of the Trust Agreement creating the Building Industry Trust, as such might be amended from time to time pursuant to the terms thereof, and further agrees to observe and be bound by the actions and determinations of the Trustees of said Trust.

**Carpenter Employers Contract Administration Trust Fund** — Effective July 1, 2003, each signatory employer shall contribute the sum of seven cents ($.07) per hour worked or paid for to the Carpenter Employers Contract Administration Trust Fund which is established for the purpose of administering the collective bargaining agreement through the grievance procedure or otherwise on behalf of all individual employers signatory to this Agreement. At the discretion of the Trustees of said Trust, contributions to the Carpenter Employers Contract Administration Trust Fund may be increased up to an additional two cents ($.02) per hour during the term of this Agreement. Such increase or increases are to be effective on such dates as determined by the Trustees. The individual employer hereby adopts and agrees to be bound by the terms of the certain Trust Agreement creating the Carpenter Employers Contract Administration Trust Fund dated January 1, 1986, as such might be amended from time to time pursuant to the terms thereof, and further agrees to observe and be bound by the actions and determinations of the Trustees of said Trust.

All contributions and payments required pursuant to this Section or pursuant to the Trusts created hereunder shall not be deemed wages due to the employees with respect to whose work such contributions and payments are made.

Notwithstanding the provisions of this Section, there shall be no



contributions or payments required pursuant to this Section for the period of August 1, 2003 through February 29, 2004.

NOTE: The amount of contributions is subject to further negotiation between the parties provided, however, that the total amount referred to in this section will not be increased but may be subject to redistribution by agreement of the parties.

## Section 45-A

## Carpenters Work Preservation Committee Trust

Effective July 1, 2003, each signatory employer shall contribute the sum of six cents ($.06) per hour for each hour worked or paid for to the Carpenters Work Preservation Committee Trust Fund. Each individual employer hereby adopts and agrees to be bound by the terms of the certain Trust Agreement creating the Carpenters Work Preservation Committee dated January 1, 1986, as such might be amended from time to time pursuant to the terms thereof, and further agrees to observe and be bound by the actions and determination of the trustees of said Trust. At the discretion of the trustees of said Trust, contributions for the Carpenters Work Preservation Committee Trust Fund may be increased up to an additional three cents ($.03) per hour during the term of this Agreement. Such increase or increases are to be effective on such dates as determined by the Trustees.

The Carpenters Work Preservation Committee Trust is established for the purpose of administering the Carpenters Work Preservation Committee as referred to in Section 2-A of this Agreement.

The Carpenters Work Preservation Committee Trust has been created as a tax qualified jointly trusteed trust fund, the purposes of which are to perform the work preservation functions and those functions permitted pursuant to the Labor Management Cooperation Act of 1978 (29 U.S.C. 175 et seq.) and Section 302 (c) (9) of the Labor Management Relations Act, as amended (29 U.S.C. 186 (c) (9)).

It is further agreed that any funds contributed to such fund or funds created for the purposes set forth herein shall not be used for any membership solicitation by any contributor or participant to the Trust Agreement or Trust Agreements or Corporate Articles and By-Laws formed shall be accessible to any signatory employer or employers without regard to membership or non-membership in any employer association which may be signatory to an agreement requiring contributions to the fund or funds created pursuant to this Agreement.

All contributions and payments required pursuant to this Section or pursuant to the Trusts created hereunder shall not be deemed wages due to the employees with respect to whose work such contributions and payments are made.

## Section 45-B

## UBC Health & Safety Fund

Each signatory employer shall contribute to the United Brotherhood of Carpenters and Joiners of America Health & Safety Fund ("Health Fund") the amount listed in Section 39 (Wage Rates) for each hour worked by each employee covered by this Agreement. Each individual employer agrees to be bound by the Agreement and Declaration of Trust for the Health and Safety Fund dated April 2, 1990, as it exists and as it may be amended or

restated and to such rules, regulations and other governing documents adopted pursuant to such Trust

## Section 46

## Contributions for Superintendents

A. The Union and the Employer agree that when employees are working in a supervisory position above the rank of foreman or general foreman (where it appears in this Agreement), the individual employer may make payments with respect to his/her work into the Carpenters Health and Welfare Trust Fund for California and Carpenters Pension Trust Fund for Northern California on the basis of 145 hours per month in accordance with the schedules set forth in the Master Agreement, regardless of hours worked by any such employee in a month; provided, however, the individual employer having made one (1) payment on an employee shall continue to make such payments so long as the employee is in his employ.

B. The Union and the Employer agree that when an employee is working in a supervisory position above the rank of foreman, the individual employer may make payments with respect to his/her work into the Annuity Plans established by this Agreement on the basis of a minimum of 145 hours, or on the basis of a greater number of hours but not less than 145 hours per month, in accordance with the schedules set forth in the Agreement, regardless of hours worked by any such employee in the month; provided, however, the individual employer having made one (1) payment on any employee shall continue to make such payments so long as the employee is in his employ.

C. The Union and the Employer agree that the individual employers covered by this Master Agreement may cover owners or partners in the Carpenters Trust Funds (as in Section 46 A. & B.) by paying contributions with respect to the work of such an individual into these funds monthly on the basis of 145 hours per month, in accordance with the hourly contribution rates set forth in this Master Agreement, regardless of the number of hours worked by any such individual in a month, provided that such individual is performing work within the 46 Northern California Counties area and that, if not an owner or partner would be working as a journeyman carpenter under the terms of this Master Agreement and provided further that the individual employer, having made one (1) payment with respect to the work of such an individual, shall continue to make such payments monthly so long as the individual continues to perform work for the individual employer within the 46 Northern California Counties area in the capacity of an owner or partner. Such individual shall be deemed an employee covered by this Agreement solely for the purpose of participating in said Trust Funds and shall have no other rights or privileges under this Agreement as an employee.

## Section 47

## Basis for Contributions

Payment of contributions for benefits as provided in Sections 40, 41, 42, 43, 43-A, 44, 45, 45-A and 45-B shall be based upon all hours for which an employee has received payment; provided, however, that contributions shall not become compounded by overtime and all overtime hours for purposes of fringe benefit contributions shall be considered straight time hours.

In order to provide for benefits to employees without disruption



during periods of contract negotiations and to assure an orderly means of collecting Trust Fund contributions during such periods, each signatory employer agrees that he or it shall be obligated to contribute to each and every Trust Fund referred to in this Agreement for any period following their termination date of this Agreement unless and until a lawful impasse occurs or until a successor Agreement is negotiated. Each signatory employer further agrees that any or all said Trust Funds may enforce this obligation by action to collect such delinquent contributions filed in any court of competent jurisdiction.

## Section 48

## Subsistence

All subsistence shall be governed by the provisions of Appendix A of this Agreement.

## Section 49

## Hiring

1. The NCCRC shall establish and maintain open and nondiscriminatory employment lists for the use of workers desiring employment on work covered by this Agreement and such workers shall be entitled to use such lists.

2. The individual employer shall first call upon the appropriate Local Union of the NCCRC having work and area jurisdiction for such workers as he or it may from time to time need, and such Local Union shall furnish the individual employer the required number of qualified and competent workers and skilled mechanics of the classifications needed by the individual employer in accordance with the provisions of this Section 49.

3. It shall be the responsibility of the individual employer when ordering workers, to give the appropriate Local Union all pertinent information regarding the workers' employment.

4. The Local Union will furnish in accordance with the request of the individual employer such workers of the classifications needed from among those entered on said lists to the individual employer by use of written referral in the following order of preference and the selection of workers for referral to jobs shall be on a nondiscriminatory basis:

(a) Workers specifically requested by name who have been laid off or terminated as journeymen carpenters in the geographic area of the Local Union or the NCCRC, as the case may be, within three (3) years before such request by a requesting individual employer or a joint venture of which one or more members is a former employer now desiring to re-employ the same workers, provided they are available for employment. This provision shall also apply to individual employers wishing to rehire employees of a joint venture of which the individual employer was a member.

There shall be no restriction on the mobility of workers employed by individual employers in the 46 Northern California Counties.

(b) Workers who within the five (5) years immediately preceding the individual employer's order for workers, have performed work of the type covered by this Agreement within the geographic area of the Agreement, provided such workers are available for employment.

(c) Workers whose names are entered on said lists and who are available for employment.

5. When ordering workers of the skills required, the individual employer will give notice to the appropriate Local Union if possible not later than 2:30 P.M. of the day prior (Monday through Friday) or, in any event, not less than seventeen (17) hours, if possible, before the required reporting time and in the event that forty-eight (48) hours after such notice (Saturdays, Sundays and recognized holidays excluded), the Local Union shall not furnish such workers, the individual employer may procure workers from any source or sources. If workers are so employed, the individual employer shall promptly report to the appropriate Local Union having work and area jurisdiction, each such worker by name. In emergency cases workers may be dispatched other than at such dispatching times.

6. Subject to the foregoing, the individual employer shall have complete freedom of selectivity in hiring and the individual employer retains the right to reject any job applicant referred by the Union for any reason. The individual employer may discharge any employee for just cause as defined in Section 30 (Show Up Time, Termination Pay and Discharge); provided, there shall be no discrimination on the part of the individual employer against any employee for activities on behalf of or representation of the Union not interfering with the proper performance of his duties.

7. It is agreed that, notwithstanding the provisions of this section, the first Foreman and up to twenty-five percent (25%) of the employees employed to perform work covered by this Agreement on any project may be employees designated by the individual employer.

Further, an additional twenty-five percent (25%) of the employees employed to perform work covered by this Agreement on any project may be selected by the individual employer from workers who are registered on the out-of-work list and who are members of the Local Union having jurisdiction over the job or project at any location in the 46 Northern California Counties.

It is further agreed that, notwithstanding the provisions of this subsection, up to fifty percent (50%) of the employees employed to perform work covered by this Agreement on any residential project may be employees designated by the individual employer.

In all cases such employees shall be subject to the provisions of Section 12 (Union Security), and must be properly registered on the appropriate Local Union work list before dispatched.

The ratio of twenty-five percent (25%) and fifty percent (50%) to other employees shall not be increased during any time with respect to the job. Whenever employees are laid off, the ratio cannot be increased.

8. Available for employment shall mean:

(a) All individuals seeking employment under Subsection One (1) of this section above shall comply with NCCRC policy regarding regularly established roll call time.

(b) All individuals eligible for referral shall be present at the Local Union during dispatching hours; provided they may be present at a location where they can be reached by telephone if they live in a remote area. This may be waived if, due to extenuating circumstances they cannot be personally present.

9. Dispatching hours shall be as determined by the NCCRC Hiring Hall Policy.



10. Each individual, upon being referred, shall receive a referral slip to be transmitted to the individual employer representative at the jobsite, indicating his or her name, address, social security number, type of job, date of proposed employment and date of referral.

11. To ensure the maintenance of a current registration list, all individuals who do not re-register within two (2) weeks of their previous registration shall be removed from the registration list. If such individuals re-register pursuant to the provisions of this section they shall maintain their previous position on such list.

12. Individuals shall be eliminated from the registration list for the following reasons:

(a) Dispatched to the job—except that any individual who is rejected by the individual employer or who fails to receive the equivalent of forty (40) hours straight time pay shall retain his or her position on said list.

(b) Failing to accept suitable employment two (2) times during the current week at the time of dispatch. Employment which cannot be reached by an individual because of lack of transportation shall not be deemed suitable as to such individual.

(c) Unavailable for employment during the current week.

(d) Any individual dispatched to a job who fails to report for work or voluntarily terminated prior to receiving the equivalent of forty (40) hours pay shall be placed at the bottom of the list, provided he or she re-registers.

13. No individual who is rejected by the individual employer shall be referred to such individual employer with respect to the same request pursuant to which he was initially referred.

14. The Local Unions shall post in places where notices to applicants for employment with the individual employer are customarily posted, all provisions relating to the functions of the hiring arrangements, including the provisions set forth in this section, and each individual employer shall similarly post in places where notices to employees and applicants for employment are customarily posted, a notice of the hiring arrangements, including the provisions set forth in this section.

15. Selection of applicants for referral to jobs pursuant to this Agreement shall be on a nondiscriminatory basis and shall not be based on, or in any way affected by, union membership, bylaws, rules, regulations, constitutional provisions or any other aspect or obligation of Union membership, policies or requirements, provided that the provisions hereof shall not modify or qualify the requirements of Section 12 (Union Security) of this Agreement.

Any person, including an individual employer aggrieved by the operation of the hiring hall provisions of this section, has the right to submit his grievance to permanent hiring hall neutral arbitrator who shall be Gerald R. McKay, or his successor, provided such submission is made in writing, stating the reasons for the grievance, within ten (10) work days after occurrence of the grievance. The neutral hiring hall arbitrator shall have full power to adjust the grievance and his decision thereon shall be final and binding upon the person submitting the grievance and all parties hereto. Forms for the submission of any such grievance shall be available at all times in the office of each Local Union or the NCCRC. Notices required by this section shall be mailed or delivered to Gerald R. McKay, P.O. Box 406, Burlingame, CA 94011-0406. The date of the postmark or the date of delivery of the grievance, whichever is later, shall

stop the running of the ten (10) day period. The costs of the arbitration should be borne equally by the Employer and the Union regardless of which Local Union, NCCRC or individual employer is involved.

16. Any person dispatched in accordance with this Section by accepting such dispatch shall be deemed to have assigned to the Union his/her rights to collect unpaid wages or Trust Fund contributions.

17. The procedural rules for the operation of the NCCRC Hiring Hall shall be those Uniform Hiring Hall rules as established, amended or modified from time to time by the NCCRC pursuant to its Bylaws.

## Section 50

## Work Preservation, Contracting and Subcontracting

1. The purpose of this Section 50 is to preserve and protect the work opportunities that will be available to employees covered by this Agreement at the jobsite or job yard.

2. The terms and conditions of this Agreement, insofar as it affects the Employer and the individual employer, shall apply equally to any subcontractor of any tier under the control of, or working under oral or written contract with such individual employer on any work covered by this Agreement to be performed at the jobsite or job yard, and said subcontractor with respect to such work shall be considered as an individual employer covered by this Agreement.

3. If an individual employer shall subcontract work herein defined, the work will be subcontracted to a subcontractor signatory to the appropriate Agreement with the Union. Such subcontract shall state that such subcontractor is or agrees to become signatory to an appropriate Agreement with the Union and will comply with all the terms and provisions of said Agreement including the payments of wages, Trust Fund contributions and fringe benefit payments. A copy of the subcontract and signature shall be furnished to the Union upon request.

4. The term "subcontractor" means any person, corporation or other entity, other than an employee covered by this Agreement, who agrees, orally or in writing, to perform for, or on behalf of the individual employer, any part or portion of the work covered by this Agreement. The subcontractor shall be properly licensed as required by the California State Contractors License Law.

5. The individual employer will give written notice to the NCCRC and/or Millwrights Local 102, (see Appendix B, Section 15) as the case may be, of any subcontract involving the performance of work covered by this Agreement within five (5) days of entering such subcontract and/or prior to commencement of work by the subcontractor, unless such notice is prevented by emergency conditions, and shall specify the name and address of the subcontractor.

5a. If thereafter the subcontractor becomes delinquent in the payment of any wages, Trust Fund contributions, or fringe benefit payments, then the NCCRC, Local Union or the Trust Fund office shall give prompt notice of the delinquency, confirmed in writing, to the individual employer and to the subcontractor. The notice shall specify the name and amounts, if known, of the delinquency.



5b. Said notification by the NCCRC, Local Union or the Trust Fund office shall be provided within twenty (20) days of publication of the Delinquency list provided by the Trust Funds or if in the case of failure to pay wages five (5) days from the applicable pay day. If such notice is given, the individual employer shall pay and satisfy only the amount of any such delinquency by such subcontractor occurring within ninety (90) days prior to the receipt of said notice from the Union, and said individual employer may withhold the amount claimed to be delinquent out of the sums due and owing by the individual employer to such subcontractor.

5c. Notwithstanding the provision set forth above, if the subcontractor is found in violation of the hiring provisions of this Agreement, pursuant to the provision of Section 51 (Grievance Procedure), and the Union is unable to collect from the subcontractor the damages determined to be owing for such violation, the individual employer shall then be liable for the payment of such damages. The total of this liability, as it would apply to the individual employer, shall be no more than five (5) days' violation or the total of the subcontractor's retention being held by the individual employer, whichever amount is greater.

6. If the individual employer fails to give written notice as required in this Section 50, he shall, until notice is received, assume liability for any violation of the terms and conditions of this Agreement at that particular jobsite or job yard, as may be determined by Section 51 (Grievance Procedure). If the subcontractor is signatory or otherwise bound to an Agreement with the Union, the individual employer shall be liable only for delinquencies as set forth in subsection 5a of this Section 50 for work on that jobsite or job yard. If the subcontractor is not in compliance with this Agreement then the individual employer shall be liable for any violation of this Agreement on that jobsite or job yard.

7. If the Union or the NCCRC should make demand in writing for exercise of this Section, the individual employer will require that any subcontractor of the individual employer specified in the demand will, if he has not already done so, post a surety bond in an amount not to exceed $75,000.00 to cover payments of wages, Trust Fund contributions and fringe benefit payments specified in this Agreement. Failure of the individual employer to comply with this Section within two (2) days of demand will make the individual employer liable for the delinquencies of the subcontractor occurring on the individual employer's specific job. (The amount of the bonds specified in this subsection in no way affects the amounts specified for bonding purposes elsewhere in this Agreement.)

8. Notwithstanding any other provision of this Agreement or this Section 50, on any residential construction, all work covered by this Agreement shall be performed by the individual employer or prime carpentry contractor, and no such work shall be subcontracted to any other contractor except the installation of foundations, overhead garage doors, plastic sink tops, hardwood floors, roof and exterior wall shingles, traditional normal drywall, patio glass sliding doors, stairs, underlayment, base, acoustical ceilings, steel scaffolding, lathing and insulation. The individual employer or prime carpentry contractor shall provide all materials and the individual employer or prime carpentry contractor shall employ all employees covered by this Agreement who shall be shown on its payroll records except as provided herein. The remedies for default provided in this Section 50 shall apply directly to the individual employer or prime carpentry contractor. The individual employer or prime carpentry contractor shall be responsible for and shall direct-

ly employ employees covered by this Agreement to perform all work in connection with the construction of all walls and roof framing, installation of all sub-flooring, all exterior sheathing, installation of all metal or wood sash, doors, installation of all trim, installation of all types of cabinets, wardrobes and sliding doors.

9. The individual employer has the primary obligation for performance of all conditions of this Agreement. This obligation cannot be relieved, evaded or diminished by subcontracting. Should the individual employer elect to subcontract, the individual employer shall continue to have such primary obligation. Said primary obligation shall be deemed conclusive evidence of the Union's majority status for the purpose of establishing the obligation of the individual employer to bargain collectively pursuant to Section 8(A) (5) of the National Labor Relations Act as amended with the Union upon expiration of this Agreement but for no other statute, rule, regulations or law.

10. The provisions of this Section may be enforced only through the grievance and arbitration provisions of this Agreement.

11. It is the intent of the parties to enforce the provisions of this Section only to the extent permitted by law.

12. Notwithstanding any provisions of this Agreement or any Memorandum Agreement to the contrary, the provisions of this Section shall not be enforced by strike action or any other form of job shutdown or work interference; provided, however, that the rights provided in Section 51 (Grievance Procedure) of this Agreement are retained to enforce primary obligations of any individual employer.

13. Payment by cash or second or multiple checks or combination thereof and the payment of excessive premium rates, excessive travel time, or bonuses shall be prima facie evidence of an attempt to violate the provisions of this Section. The foregoing shall not apply to an annual bonus paid to supervisors.

14. No subcontract shall be in compliance with this Section if the effect of such subcontract is to diminish, eliminate or circumvent the payment of wages and fringe benefits to employees covered by this Agreement.

## Section 51
## Grievance Procedure

Any dispute concerning any application or interpretations of this Agreement shall be subject to the following procedure:

1. In the event that a dispute arises on a job, it shall be first reported to the individual employer and/or the Field Representative of the appropriate Local Union or the NCCRC who shall then attempt to adjust said grievance or dispute at the jobsite level.

2. The grieving parties shall specify the date(s) of the alleged violation(s) and the provision(s) of the Agreement applicable to the dispute.

3. If said grievance or dispute is not satisfactorily adjusted by the appropriate Local Union or the NCCRC or otherwise authorized Union Representative and the individual employer or his representative within three (3) days after submission to the individual employer, the matter may be submitted by either party to a permanent Board of Adjustment created for the settlement of such disputes.

4. The Board of Adjustment shall be composed of one (1) member named by the Union, one (1) member named by the Association and an Impartial Arbitrator. The parties shall select an alternate to the permanent neutral Arbitrator who shall serve only in the event the permanent neutral Arbitrator is unable to serve. At any point in the proceedings should the panel be unable to reach a majority vote the Arbitrator shall participate and his decision shall be final and binding.

5. In addition to any rule or procedure which the panel may adopt, the Board of Adjustment shall be governed by the following provisions:

(a) No briefs shall be submitted nor a transcript made of the hearing except by mutual agreement of the parties or by direction of the Arbitrator. Any transcript ordered by any party shall be at the expense of the party ordering the transcript.

(b) In the case of deadlock, the Arbitrator shall render his decision upon the conclusion of the case at the Board of Adjustment hearing, unless the time is extended by mutual agreement of the parties or at the request of the Arbitrator. The Arbitrator shall not render an expanded opinion in any case unless requested by the parties.

(c) The parties shall select and utilize a permanent Impartial Arbitrator who is willing to abide by the procedures set forth herein. By agreement of both parties, the Impartial Arbitrator may be changed or replaced.

(d) The Board of Adjustment or the Arbitrator may fashion an appropriate remedy to resolve the issue including, but not limited to, back pay, money damages, injunctive relief, audit, payment of wages and fringe benefits to persons damaged by the contract violations, interest or attorneys' fees.

(e) Any grievance involving an individual employer not a member of any of the signatory associations shall be submitted directly to the Arbitrator unless the individual employer agrees to submit the matter to the Board of Adjustment.

6. Disputes arising out of work assignment, which are governed by Section 16 (Jurisdictional Disputes), will not be heard at these panels.

7. The Board of Adjustment shall meet within forty-five (45) days on any item properly before the Board. Failure of either party to meet or to participate shall cause the Board or Arbitrator to hear and decide the matter on a default basis.

8. Decisions of the Board of Adjustment or an Impartial Arbitrator shall be within the scope and terms of this Agreement and shall be final and binding upon all parties hereto.

9. In the event an individual employer fails to comply with any such decisions, the Union may withdraw employees or strike the individual employer, and such action shall not be a violation of this Agreement so long as such noncompliance continues, provided, however, that the Union may not enforce the provisions of Section 50 (Subcontracting) by economic action or picketing.

10. The expenses of the Joint Adjustment Board and the Impartial Arbitrator, including the cost of a court reporter, shall be borne equally by the parties hereto.

11. No proceeding hereunder based on any dispute, complaint or grievance herein provided for, shall be recognized unless the grievance procedure steps outlined above have been followed. The Arbitrator or Board may for good cause, accept a late submission,

which shall then be decided by the Board of Adjustment.

12. The Board of Adjustment shall establish regular meeting dates and administer grievances filed in conjunction with this section as set forth in the rules and procedures, which may be amended from time to time by the parties.

13. A decision of the Board of Adjustment by majority vote, or the decision of a permanent Arbitrator shall be enforceable by a petition to confirm an arbitration award filed in the Superior Court of the City and County of San Francisco, State of California, or the United States District Court for the Northern District of California. Any party who fails or refuses to comply with a decision of a Board of Adjustment or an award of the Arbitrator, as the case may be, shall be responsible for reasonable attorneys' fees for the filing and trial of any petition to confirm and enforce said decision or award in addition to all other remedies available through law, unless the petition is denied.

14. All hearings of the Board of Adjustment shall be in the City and County of San Francisco, and/or County of Alameda, unless mutually agreed to move to another location.

15. Other than matters concerning discharge, no proceedings mentioned hereinabove on any dispute, complaint or grievance shall be recognized unless called to the attention of the Employer and the Union within thirty (30) days after the last date the alleged violation was committed.

16. On all cases relating to discharge or discipline, employees must file their grievances with the Local Union or the NCCRC within three (3) working days after the imposition of the discharge or discipline. Thereafter, the Local Union or the NCCRC must file its grievance with the Board of Adjustment within four (4) working days after the employee files his grievance. The Board shall meet within seven (7) working days following submission of the grievance. The Board of Adjustment or Arbitrator shall be free to sustain the discharge or to find discipline other than discharge to be appropriate and may order reinstatement with full or partial back pay as he or it deems appropriate provided there shall be no discrimination on the part of the individual employer against any employee for activities in behalf of or representation of the Union not interfering with the proper performance of his duties.

17. If failure of a Board of Adjustment to meet within one week (7 working days) is due to the unavailability of the Union, the wage payment and Trust Fund contribution liability shall be limited to the above seven (7) working days. If the Employer or individual employer, or Arbitrator is unavailable to meet, the wage payment and Trust Fund contribution liability shall be continuing.

IN WITNESS WHEREOF, the parties hereto have executed this document this 3rd day of June, 2003, in Oakland, California.

THE CARPENTERS 46 NORTHERN CALIFORNIA COUNTIES CONFERENCE BOARD, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL-CIO



On behalf of:

NORTHERN CALIFORNIA CARPENTERS REGIONAL COUNCIL

for Local Unions No.: 22, 25, 34, 35, 46, 102, 152, 180, 217, 262, 405, 505, 605, 701, 713, 751, 1109, 1240, 1496, 1599, 1618, 1789, 1861, 2035, 2236, 9068, 9083, 9109 and 9144.

By ____________________ By ____________________
Robert Alvarado, Chairman William Feyling, Executive Director

CONSTRUCTION EMPLOYERS' ASSOCIATION OF CALIFORNIA

By ____________________ By ____________________
John Stripe, President Larry Nibbi, Chairman
Carpenters Craft Committee

By ____________________
Michael Walton, Secretary

MILLWRIGHT EMPLOYERS ASSOCIATION

By ____________________
Michael Vlaming, Executive Manager

## Appendix A
## Subsistence

1. On all work covered by this Agreement, as described in this Appendix A, the following shall apply effective July 1, 2000. All jobs bid or awarded, or under construction prior to July 1, 2000, shall be completed under Subsistence requirements in effect prior to July 1, 2000.

(a) No subsistence shall be paid on any job or project located less than fifty (50) road miles from any city hall or post office in the following cities:
Eureka
Santa Rosa
Monterey
Visalia
Fresno
Redding
Kings Beach
South Lake Tahoe
Auburn
Chico
Cloverdale
Woodland
Oakland
Jackson
Manteca
San Jose
Merced
Willits

(b) On any job or project located fifty (50) or more road miles from a city hall or post office located in a city listed in paragraph 1(a), subsistence shall be paid at the rate of twenty-five dollars ($25.00) per day. The individual employer shall pay to each employee covered by this Agreement the amount shown above for each day's work in addition to their regular and overtime wages as subsistence.

(c) The area known as Geysers is a ten dollar ($10.00) subsistence zone.

(d) Work performed at the Mt. Hamilton Observatory or facilities adjacent thereto shall be a subsistence zone.

2. Exemption to the requirement for payment of subsistence:

The individual employer shall not be required to pay subsistence to employees covered by this Agreement where employees are employed to work:

(a) At the individual employer's permanent yard;

(b) At the individual employer's permanent shop;

(c) On buildings of three (3) stories or less which are a part of a residential construction project located within the subsistence area;

(d) On streets, roadways and utilities, which are a part of a residential construction project of buildings of three (3) stories or less, located within the subsistence area.

This exemption does not apply to camps, highways, dams, tunnels or similar heavy engineering projects.

3. On all other work located within the subsistence area when any employee works two (2) or more hours in any one (1) day, he/she shall be paid the subsistence allowance for that day. Such pay shall be paid to employees by separate check.

4. The individual employer's daily charge for board and lodging on jobs where subsistence is paid shall not exceed the daily subsistence allowance paid the employee.

5. Such payments for subsistence shall be excluded from the wages of the employee for the purpose of the Fair Labor Standards Act and shall be paid to such employee by check weekly and identified separately therein. Subsistence is defined as reimbursement for food, lodging and living expenses out of town and is not a wage or reimbursement for time spent going to or from the jobsite.

6. If an employee is transported by the individual employer from a permanent yard or shop located in a free zone to work in a subsistence zone and transported back to the same permanent yard or shop in a free zone, all on the same day, on the individual employer's time, he shall not receive subsistence.

7. Both parties agree to meet and confer relative to subsistence where extremely adverse conditions exist with respect to jobsite access.

**APPENDIX B**

## 46 Counties of Northern California

## MILLWRIGHTS AGREEMENT

TABLE OF CONTENTS


| | SECTION NO. | PAGE |
|---|---|---|
| Foreman | 3 | 47 |
| Millwright Annuity Plan | 5 | 51 |
| Millwright Employers Construction Advancement Program | 7 | 51-52 |
| Outside Contracting | 16 | 56 |
| Overtime | 11 | 53 |
| Pickup Time | 9 | 53 |
| Pre-Job Conference | 13 | 55 |
| Safety | 14 | 55-56 |
| Show-Up Time | 2 | 46-47 |
| Subcontracting | 15 | 56 |
| Tools | 8 | 52 |
| Travel and Subsistence | 1 | 44-46 |
| Wage Rates | 4 | 47-51 |
| Welders | 10 | 53 |
| Work Covered | 12 | 53-55 |
| Work Fees | 6 | 51 |


## In Addition to the

## 46 Counties Carpenters Master Agreement

In addition to the working rules and conditions of the 46 Counties Carpenters Master Agreement, the following working rules and wage rates shall apply to Millwrights.

Effective December 1, 2003, these conditions, rules and wage rates shall cover the Millwright Local Union within the 46 Counties.

### Section 1

### Travel and Subsistence

No Millwright shall use his vehicle for other than personal travel to and from the job.

1. If transportation is not furnished by the employer, Millwrights shall receive travel and/or subsistence expense as follows:

a. For the counties of Alameda, Contra Costa, Marin, San Francisco, and San Mateo, travel shall be established from the center of the Oakland Bay Bridge 0.2 miles west of the westerly end of the Yerba Bueno Tunnel. In the remaining counties covered by this Agreement, from the City Halls of Chico, Eureka, Fresno, Modesto, Monterey, Redding, Sacramento, San Jose, Santa Rosa, Stockton, Vallejo, and Visalia. Travel from the above-defined points shall be as follows:

b. Over fifty (50) miles in free zone. $15.00 per day worked.

c. Millwrights employed in the subsistence area set forth in the subsistence map in the 1968-71 Carpenters Agreement shall receive beginning January 1, 1986 - $32.50 per day worked.

d. Special condition for Humboldt County and Ft. Bragg proper is subsistence for non-residents only. *Travel shall apply for residents as set forth in 1.a. above.

*Residents of Ft. Bragg proper shall be defined as living within twenty (20) road miles of Ft. Bragg city hall.



e. Map Description - Area No. 1 Free Zone

Commencing with the mouth of the Carmel River in Monterey County, thence easterly along the north bank of Carmel River to Tularcitos Junction, thence southeasterly along Tularcitos Road to Arroyo Seco Road, thence along south fork of Arroyo Seco Road to Greenfield and Highway 101, thence southerly along center line of Highway 101 to San Lucas, thence easterly along center line of Highway 198 to Coalinga, thence southerly along center line of Highway 33 to Kern County line, thence easterly along north boundary line of Kern County of intersection of said county line and Highway 65, thence northerly along center line Highway 65 through Porterville, Exeter, Badger to intersection of Highway 65 and Highway 180, thence on a straight line in a northwesterly direction to Pine Ridge, thence along center line of county road to Auberry, thence northerly along center line of county road to North Fork, Lakeview, to intersection of said county road and Highway 41, thence northerly along center line of Highway 41 to intersection of Highway 41 and Highway 49, thence northerly along center line of Highway 49 through Mariposa, Coulterville, Chinese Camp, Sonora, Jackson, Placerville, Auburn, Grass Valley to San Juan, thence on a northerly line to Challenge, thence along center line of county road through Woodleaf to Strawberry Valley, thence northerly along west boundary of Plumas County to intersection of Highway 36, thence northwesterly along center line of Highway 36 to intersection of Highway 36 and Highway 89, thence northerly along Highway 89 to intersection of Highway 89 and west boundary to Section 22, Township 30 north, Range 4 east of Mount Diablo Base and Meridian, thence northerly to northwest corner of Section 3, Township 30 north, Range 4 east, thence westerly along Township 30 north, to the intersection of Mount Diablo Meridian, thence northerly to the northeast corner of Township 34 north, Range 1 west, thence westerly along Township 34 north, to eastern boundary of Trinity County, thence southerly to intersection of county road, thence southerly along center line of county road to Tower House, thence westerly along center line of Highway 299 to intersection of eastern boundary of Trinity County, thence southerly along east boundary to Trinity County Line to the intersection of the west boundary of Range 7 west, thence south to southwest corner of Township 30 north, Range 7 west, thence southerly along western boundary of Range 6 west to the intersection of Colusa County line of western boundary to Township 16 north, Range 6 west, thence southerly along east boundary of Lake County to intersection of Highway 20, thence westerly along center line of Highway 20 to intersection of Highway 101, thence southerly along Highway 101 to intersection of county road, thence westerly along center line of county road to Comptche, thence from Comptche south to southwest corner of Township 16 north, Range 15 west, thence easterly to northwest corner of Township 15 north, Range 14 west, thence southerly to southwest corner to Township 14 north, Range 14 west, thence easterly to northwest corner of Township 13 north, Range 13 west, thence southerly to southwest corner of Township 13 north, Range 13 west, thence easterly to northeast corner of Township 12 north, Range 12 west, thence southerly to southwest corner of Township 11 north, Range 12 west, thence easterly to northwest corner of Township 10 north, Range 11 west, thence southerly along western boundary of Range 11 west to southwest corner

of Township 8 north, Range 11 west, thence westerly to southeast corner of Section 33 of Township 8 north, Range 12 west, thence southerly along coastline of California to north bank of Carmel River, the point of beginning.

The following map descriptions shall be called Area 3 and shall be a subsistence zone within Area 1:

Commencing with the southwest corner of Township 7 south, Range 3 east, Mount Diablo Base and Meridian, thence northerly along the easterly line of Range 2 east to the intersection of the northerly boundary of the Santa Clara County line, thence easterly along said county line to the easterly line of Range 4 east, thence southerly along said easterly Range line to the southeasterly corner of Township 7 south, Range 4 east, thence westerly along southerly boundary of said Township 7 south to the point of beginning.

Map Description - Area No. 2 Subsistence Zone

From the Pacific Ocean at the southwest corner of Township 2 north, Range 3 west, Humboldt Base and Meridian, thence easterly to northwest corner of Township 1 north, Range 1 west, thence southerly to southwest corner of Township 1 north, Range 1 west, thence easterly along Humboldt Baseline, to northwest corner of Township 1 south, Range 1 east, thence southerly along Humboldt Meridian to intersection of county road north of Honeydew, thence northeasterly along center line of county road to Dyerville, thence on a straight northeasterly line to Bridgeville, thence northeasterly on Highway 36 to intersection of eastern boundary of Township 1 north, Range 3 east, thence northerly on eastern boundary of Range 3 east, to northwest corner of Township 9 north, Range 4 east, thence westerly along center line of county road through Martin's Ferry to Orick, thence south along coastline to the point of beginning.

F. Travel expenses in subsistence areas as outlined above will be paid, at the rate of $15.00 at the beginning and at the completion of each job, or termination of the employee, except for jobs performed in one (1) day or less and the employee is paid or furnished transportation.

## Section 2
## Show-Up Time

A. When workers are ordered and dispatched for work and report for work on the same day, they shall be paid hours worked plus two (2) hours reporting, but not to exceed eight (8) hours on a regular eight (8) hour shift.

B. Except on the first day of employment when workers report to work and no work is provided, they shall receive four (4) hours pay and travel or subsistence, whichever may apply. If a Millwright employee is required to report to work and no work is provided as a result of inclement weather, the employee shall be paid subsistence or travel for the day as spelled out in Section 1 (Travel and Subsistence), whichever may apply.

C. The regular lunch period for Millwrights shall start no less than three and one-half (3 1/2) nor more than five (5) hours after the start of any regular shift. Any Millwright who works more than a five (5) hour period without a meal period shall be paid for all work in excess of said five (5) hour period (at the prevailing overtime rate) until a meal is provided (such pay shall be reckoned by the hour and the half hour). The established lunch period will constitute the reckoning of the day or half day. If the job circumstances require Millwrights to work more than ten (10) hours on a shift, they shall have a second meal period of one-half (1/2) hour and an additional meal period every four (4) hours thereafter. Such meal period shall be paid for at the prevailing overtime rate by the employer.

D. Notwithstanding the multiple shift three (3) day requirement, a single or multiple approved shift may be established where the premises cannot be vacated in whole or in part until the close of business. Workers then reporting for work shall be paid on the basis of eight (8) hours pay for seven and one-half (7 1/2) hours work. Any work prior to the approved shift and any work after the approved shift period shall be at time and one-half not to exceed four (4) hours. Overtime work in excess of four (4) hours shall be double time.

## Section 3
## Foreman

A. When two (2) or more Millwrights are employed on a job, one (1) shall be foreman and be paid foreman's pay.

B. In all 46 Counties a Millwright Foreman may not supervise more than one (1) jobsite. No one (1) Millwright Foreman shall supervise more than ten (10) Millwrights. Foremen shall receive two dollars ($2.00) per hour over Millwright's scale. Either a Millwright Foreman or General Foreman, having supervision over other crafts, shall receive not less than the regular hourly rate of the highest paid classification over which he has supervision, providing that the employee receiving the highest rate of pay (other than a Millwright) shall be on the individual employer's payroll. In the above case the Millwright shall not receive less than the Millwright Foreman or General Foreman's scale.

C. When there are three (3) or more Millwright Foremen employed by the individual employer on the jobsite, there shall be designated one (1) General Foreman and he shall receive the General Foreman rate, one dollar and fifty cents ($1.50) per hour over Millwright Foreman's scale.

## Section 4
## Wage Rates

The following shall be the classifications and minimum hourly rates during the term of this Agreement for the effective dates noted and in the areas listed.

A. Nine (9) Counties Area consisting of the following counties:

Alameda, Contra Costa, Marin, Napa, San Francisco, San Mateo, Santa Clara, Solano and Sonoma:

| Journeyman wage rates effective | 7-01-03 |
|---|---|
| Millwrights | $30.85 |

B. Thirty-Four (34) Counties Area consisting of the following counties:

Alpine, Amador, Butte, Calaveras, Colusa, Del Norte, El Dorado, Fresno, Glenn, Humboldt, Kings, Lake, Lassen, Madera, Mariposa, Mendocino, Merced, Modoc, Nevada, Placer, Plumas, Sacramento, San Joaquin, Shasta, Sierra, Siskiyou, Stanislaus, Sutter, Tehama,

Trinity, Tulare, Tuolumne, Yolo and Yuba:

1. Effective July 1, 2003, the following journeyman wage rates shall apply to projects with a total project value of less than twenty-five million dollars ($25,000,000) and to projects which are not covered under the provisions of Section 4 B (2) or B (3) below:

| Journeyman wage rates effective | 7-01-03 |
|---|---|
| Millwrights | 26.02 |

2. Effective July 1, 2003, the following journeyman wage rates shall apply for the duration of the project to projects with a total base bid project value of twenty-five million dollars ($25,000,000) or more that are bid or negotiated after August 1, 1999 and prior to December 1, 2003 or, for public works projects, as required by the applicable prevailing wage determination. These rates shall not apply to wood frame residential construction of three (3) stories or less. Where there is a published or advertised estimate of the construction costs for a project, such estimate shall determine "the total base bid project value," for purposes of the twenty-five million dollar ($25,000,000) threshold. In addition, the provisions of Section 39 B(4) of the Carpenters Master Agreement shall apply in determining "the total base bid project value."

| Journeyman wage rates effective | 7-01-03 |
|---|---|
| Millwrights | 30.85 |

3. Effective December 1, 2003, the following journeyman wage rates shall apply on new public and private projects with a total base bid project value of twenty-five million dollars ($25,000,000) or more that are bid or negotiated after December 1, 2003 and prior to July 1, 2004, with the exception of wood frame residential construction of three (3) stories or less. These rates shall not apply to public works projects until such time as these rates have been incorporated in the applicable prevailing wage determinations. Where there is a published or advertised estimate of the construction costs for a project, such estimate shall determine "the total base bid project value," for purposes of the twenty-five million dollar ($25,000,000) threshold. In addition, the provisions of Section 39 B(4) of the Carpenters Master Agreement shall apply in determining "the total base bid project value."

| Journeyman wage rates effective | 12-01-03 |
|---|---|
| Millwrights | 29.52 |

C. Three (3) Counties Area consisting of the following counties:

Monterey, San Benito and Santa Cruz:

1. Effective July 1, 2003, the following journeyman wage rates shall apply to projects with a total project value of less than twenty-five million dollars ($25,000,000) and to projects which are not covered under the provisions of Section 39 C(2):

| Journeyman wage rates effective | 7-01-03 |
|---|---|
| Millwrights | 27.37 |

2. Effective July 1, 2003, the following journeyman wage rates shall apply for the duration of the project to projects with a total base bid project value of twenty-five million dollars ($25,000,000) or more that are bid or negotiated after August 1, 1999 and prior to July 1, 2004 or, for public works projects, as required by the applicable prevailing wage determination. These rates shall not apply to wood frame residential construction of three (3) stories or less. Where there is a published or advertised estimate of the construction costs for a project, such estimate shall determine "the total base bid project value," for purposes of the twenty-five million dollar ($25,000,000) threshold. In addition, the provisions of Section 39 C (4) of the Carpenters Master Agreement shall apply in determining "the total base bid project value."

| Journeyman wage rates effective | 7-01-03 |
|---|---|
| Millwrights | 30.85 |

D. Millwrights Fringe Benefits Hourly Rates (Entire 46 Counties Area ):

| Effective dates: | 7-01-03 | 12-01-03 |
|---|---|---|
| Health & Welfare | 4.305 | 4.305 |
| Pension | 2.85 | 2.85 |
| Appr. Training | .33 | .33 |
| Millwrights Vacation | 1.70 | 1.70 |
| Work Fee | 1.16 | .62 |
| Industry Promotion | .15 | .15 |
| Work Preservation | .05 | .00 |
| UBC Health & Safety | .04 | .00 |
| Millwrights Annuity Fund | 3.25 | 3.25 |

E. Future Wage and/or Fringe Benefit Considerations:

December 1, 2003:

In the Forty-six (46) Counties Area, Sixty-three cents ($.63) per hour of fringe benefits will be waived through June 30, 2004, as follows: Fifty cents ($.50) per hour from Work Fee (Section 43A); Four cents ($.04) per hour from UBC Health & Safety and Apprenticeship; Five cents ($.05) per hour from Work Preservation; Four cents ($.04) per hour from Section 6 (Millwright Vacation and Work Fee).

July 1, 2004:

In the Forty-six (46) Counties Area, reinstatement of the sixty-three cents ($.63) per hour of fringe benefits that were waived for the period of December 1, 2003 through June 30, 2004 as follows: Fifty cents ($.50) per hour to Work Fee (Section 43A); Four cents ($.04) per hour to UBC Health & Safety and Apprenticeship; Five cents ($.05) per hour to Work Preservation; Four cents ($.04) per hour to Section 6 (Millwright Vacation and Work Fee).

In the Forty-six (46) Counties Area, One dollar and Seventy-five cents ($1.75) per hour increase to be allocated as follows: Fifty cents ($.50) to be allocated to Wages; One dollar and fifty cents ($1.50) to be allocated to Health & Welfare; Fifteen cents ($.15) to be allocated to Pension; Five cents ($.05) to be allocated to Training; Vacation shall be decreased by Twenty cents ($.20) and Annuity shall be decreased by Twenty-five cents ($.25).

The Union reserves the right to reallocate wage and fringe benefit amounts, excluding pre-allocated Health & Welfare amounts.

In the Thirty-four (34) Counties and Three (3) Counties Areas for projects with a total base bid project value of fifty million dollars ($50,000,000) or more that are bid or negotiated on or after July 1, 2004 and prior to July 1, 2007 or, for public works projects, as required by the applicable prevailing wage determination, the millwright wage rate for the duration of the project shall be three dollars and fifty cents ($3.50) per hour above the applicable Thirty-four (34) Counties or Three (3) Counties wage rate as set forth in Section 4 B (1) and C (1), provided said rate

shall not exceed the 9 Counties wage rate. In addition, the scheduled increases set forth in this Section D shall apply to such projects. These rates shall not apply to wood frome residential construction of three (3) stories or less. Where there is a published or advertised estimate of the construction costs for a project, such estimate shall determine "the total base bid project value," for purposes of the fifty million dollar ($50,000,000) threshold. In addition, the provisions of Section 39 (Wage Rates) B (4) and C (4) of the Carpenters Master Agreement shall apply in determining "the total base bid project value."

July 1, 2005:

In the Forty-Six (46) Counties Area, Two dollars and Fifty cents ($2.50) per hour increase to be allocated as follows: One dollar ($1.00) to be allocated to Wages; Seventy-five cents ($.75) per hour to be allocated to Health & Welfare; Twenty cents ($.20) per hour to be allocated to Pension; Five cents ($.05) per hour to be allocated to Vacation; Twenty-five cents ($.25) per hour to be allocated to Annuity and/or Health & Welfare; Twenty-five cents ($.25) per hour to be allocated to Annuity; Five cents ($.05) per hour to be waived from Section 6, Work Fee, until July 1, 2006.

The Union reserves the right to reallocate wage and fringe benefit amounts during the term of the agreement, excluding the minimum pre-allocated Health & Welfare amount.

July 1, 2006:

In the Forty-Six (46) Counties Area, Two dollars ($2.00) per hour increase to be allocated as follows: One dollar ($1.00) per hour to be allocated to Wages; Fifty cents ($.50) per hour to be allocated to Health & Welfare; Fifteen cents ($.15) per hour to be allocated to Pension; Five cents ($.05) to be allocated to Vacation; Five cents ($.05) per hour to be allocated to Training; and Twenty-five cents ($.25) per hour to be allocated to Annuity and/or Health and Welfare; Five cents ($.05) per hour reinstated to Section 6 Work Fee.

The Union reserves the right to reallocate wage and fringe benefit amounts during the term of the agreement, excluding the minimum pre-allocated Health & Welfare amount.

July 1, 2007:

In the Forty-Six (46) Counties Area, Two dollars and Twenty-five cents ($2.25) per hour increase to be allocated as follows: One dollar ($1.00) per hour to be allocated to Wages; Seventy-five cents ($.75) per hour to be allocated to Health & Welfare; Twenty cents ($.20) per hour to be allocated to Pension; Five cents ($.05) per hour to be allocated to Vacation; Twenty-five cents ($.25) per hour to be allocated to Annuity and/or Health & Welfare.

The Union reserves the right to reallocate wage and fringe benefit amounts during the term of the agreement, excluding the minimum pre-allocated Health & Welfare amount.

In the Thirty-four (34) Counties and Three (3) Counties Areas for projects with a total base bid project value of fifty million dollars ($50,000,000) or more that are bid or negotiated on or after July 1, 2007, or, for public works projects, as required by the applicable prevailing wage determination, wage rates for the duration of the project shall be the applicable Thirty-Four (34) or Three (3) Counties wage rates.



## Section 5
## Millwright Annuity Plan

A. Effective July 1, 2000, each individual employer covered by this Agreement will contribute the sum of three dollars and twenty-five cents ($3.25) per hour for each hour paid for or worked by Millwrights employed by such individual employer under this Agreement to the Annuity Plan as established pursuant to this Agreement.

B. Such contributing individual employer agrees to be bound by that certain Trust Agreement establishing the Fund dated July 1, 1980, as such has been or may from time to time be amended or supplemented. The Union and the Employer agree that this plan is and has been a Defined Contribution Plan.

C. The individual employer further agrees that he or it does irrevocably designate and appoint the employer members of said Trust Fund as his or its attorneys in fact for the selection, removal and substitution of the Trustees or Board members as provided in said Trust Agreement as may be provided by or pursuant to said Trust Agreement or Annuity Plan.

D. There shall be no duplicating contribution with respect to any employee or the work of any employee.

## Section 6
## Millwright Vacation and Work Fee

Effective July 1, 2003, each individual employer covered by this Agreement will contribute the sum of one dollar and seventy cents ($1.70) per hour for each hour paid for or worked by Millwrights employed by such individual employer under this Agreement to the Millwrights Vacation Plan as established pursuant to this Agreement.

Effective for all work performed on or after August 1, 1983, there shall be a nineteen cents ($.19) Work Fee established for each hour worked or paid for under Appendix B of this Agreement to be paid to Millwrights Local Union #102. This Work Fee shall be established on the same basis and shall be paid in addition to that currently being paid under Section 43-A (Work Fee) of this Agreement. Effective July 1, 2005 through June 30, 2006, five cents ($.05) of the Work Fee shall be waived until July 1, 2006, at which time the five cents ($.05) per hour worked or paid shall be reinstated to the Work Fee for a total of nineteen cents ($.19).

## Section 7
## Millwright Employers Construction Advancement Program

The Millwright Employers Association, being a party to the collective bargaining agreement with the Carpenters 46 Northern California Counties Conference Board, United Brotherhood of Carpenters and Joiners of America, AFL-CIO, and a signatory Association devoted exclusively to contractors who employ large numbers of Millwrights, will participate in the Construction Industry Advancement Program as contained in the Carpenters Agreement,

Carpenters 46 Northern California Counties Conference Board. Accordingly, the Carpenter Trust Fund office will be advised to assign a Trust Fund Association code number to the Millwright Employers Association and a fifteen cent ($.15) per hour contribution for each hour worked or paid for will be credited to the Millwright Employers Association for all of their members performing work under the collective bargaining agreement as well as all independent, unassigned and/or National Millwright contractor hours.

Effective July 1, 1996, Employers working under this Appendix shall contribute the sum of five cents ($.05) per hour for each hour worked or paid for to the Carpenters Work Preservation Committee Trust.

## Section 8
## Tools

A. The individual employer shall provide on each jobsite a reasonably secure place where Millwrights may keep their tools and special protective clothing. Where five (5) or more Millwrights are employed on a single job or project, the individual employer shall provide a separate and secure place, under lock and key, for the exclusive use of the Millwrights. The individual employer shall also provide seven hundred and fifty dollars ($750.00) indemnification to protect Millwrights against loss or damage to entire kit of tools or special protective clothing while in the individual employer's care, resulting from loss or damage due to a fire or theft.

B. In the event a Millwright has more than one kit or tools on the job, indemnification shall be the replacement value of this inventory, but in no event to exceed one thousand-five hundred dollars ($1,500.00). Millwrights shall not furnish the following tools: Open or box end wrenches or sockets over one and one-fourth inch (1 1/4"), master levels, drill bits, taps and reamers, micrometers over one inch (1"), or no more than two (2) dial indicators.

C. A cap of ten (10) working days will be placed on the time the employer has to reimburse the employee for loss of tools. The employee is required to provide the employer with an inventory of all of his tools used on the job at the start of the job.

D. On all jobsites where inclement weather, heat, dust, cold or other adverse conditions prevail, and/or another craft has a change area, a safe and secure change area shall be provided for the sole use of the Millwrights on the jobsite or job yard.

E. Welding hoods, gloves and sleeves shall be considered tools and, therefore, shall be replaced, in kind, if damaged or stolen on the jobsite.

F. The individual employer, at his own option, may also replace individual tools lost or damaged on the jobsite. The individual employer shall replace any tool owned by an employee modified at the individual employer's request, but such modified tools shall then become the property of the employer.

G. The individual employer shall furnish all necessary safety protection equipment. When normal protective equipment cannot be used, there shall be a meeting of the union and the individual employer to work out a mutually agreeable safety practice.

H. The individual employer shall furnish waterless hand cleaner and rags for personal cleanup.



## Section 9
## Pickup Time

A. Each Millwright shall be entitled to pickup time for personal tools at the end of each day, which shall not be less than five (5) or more than fifteen (15) minutes, exact time to depend on accessibility to actual place of work, and to be established by mutual agreement at a jobsite conference between a representative of the individual employer and a representative of the Union.

B. Millwrights receiving notice of discharge or layoff shall be allowed a reasonable time not less than thirty (30) minutes before the end of the shift in addition to pickup time prevailing on the job to assemble their tools.

## Section 10
## Welders

A. A qualified Millwright welder is one who has passed a qualification test (such as ASME test, or one equivalent thereto) given by a recognized testing laboratory within the prior twenty-four (24) months. When a Millwright welder, certified within the past twenty-four (24) months by a recognized testing laboratory, is required to pass another test, the individual employer shall pay for time required for such test and testing lab fee.

B. When as a condition of employment, an employer requires a certified welder to re-certify at the jobsite, the employer shall provide the employee with a copy of his certification papers upon layoff or completion of job. It is understood this section shall not apply to employees who quit or are discharged for cause.

## Section 11
## Overtime

A. On all construction, the first two (2) hours prior to the start of the regular or approved day or the first four (4) hours after the end of the approved or regular work day, not to exceed a total of four (4) hours in any one (1) day shall be paid at time and one-half.

Time and one-half shall be paid for the first eight (8) hours worked on designated off days and/or Saturdays.

All other time shall be paid at double the straight-time rate.

If work is to be performed on a specific construction jobsite on Saturday, Sunday, designated off days or holidays, Millwrights employed the preceding five (5) regular work days shall be given the opportunity to work such overtime.

B. **Special Single Shift:** A single approved shift may be established where the premises cannot be vacated in whole or in part until the close of business. Workers then reporting for work shall be paid on the basis of eight (8) hours pay for seven and one-half (7 1/2) hours work. Any work prior to the approved shift and any work after the approved shift period shall be at time and one-half, not to exceed four (4) hours. Overtime work in excess of four (4) hours shall be double time.

## Section 12
## Work Covered

A. This Agreement shall cover and apply to all work of the indi-

vidual employer falling within the recognized jurisdiction of the Millwright Union as spelled out in the UBC Jurisdictional Claims Handbook approved by the General Executive Board of the United Brotherhood of Carpenters and Joiners of America dated January 1, 1961, including, but not limited to all recognized tools and equipment of the trade on new construction, repair, modifications, or maintenance work, including, but not limited to, all moving of machinery and/or equipment installed by Millwrights, making of skids and crates, skidding and unskidding, crating and uncrating: and installation of lubrication and/or Hydraulic lines or piping (on machines set by Millwrights) that come to the jobsite prefabricated, and computer floors.

B. The work of the Millwright as spelled out in the Jurisdictional Claims Handbook referred to in Section A, above, is as follows:

The term "MILLWRIGHT AND MACHINE ERECTORS" shall mean the unloading, hoisting, rigging, skidding, moving, dismantling, aligning, erecting, assembling, repairing, maintenance, and adjusting of all machinery and equipment installed either in buildings, factories, structures, processing areas either under cover, underground or elsewhere, required to process material, handle, manufacture or servicing, be it powered or receiving power manually by steam, gas, electric, gasoline, diesel, nuclear, solar, water, air, or chemically, and in industries such as and including (identified for the purpose of description but not limited to) the following: woodworking plants, canning industries, steel, coffee roasting plants, paper and pulp, cellophane, stone crushing, gravel and sand washing and handling, refineries, grain storage and handling, asphalt plants, sewage disposal, water plants, laundry, bakery, mixing plant, can, bottle and bag packing plant, textile mills, paint mills, breweries, milk processing plants, power plants, aluminum processing or manufacturing plants, amusement and entertainment field. Installation of mechanical equipment in atomic energy plants; installation of reactors in power plants, installation of control rods and equipment in reactors, installation of mechanical equipment in rocket missile bases, launchers, launching gantry, floating bases, hydraulic escape doors and any and all component parts thereto, either assembled, semi-assembled or disassembled.

The installation of, but not limited to, the following: setting of all engines, motors, generators, air compressors, fans, pumps, scales, hoppers, conveyors of all types, sizes and their supports, escalators, man lifts, moving sidewalks, hoists, dumbwaiters, all types of feeding machinery, amusement devices, mechanical pin setters and spotters in bowling alleys, refrigeration equipment and installation of all types of equipment necessary and required to process material either in the manufacturing or servicing, the handling and installation of pulleys, gears, sheaves, fly wheels, air and vacuum drives, worm drives and gear drives, directly or indirectly coupled to motors, belts, chains, screws, legs, guards, boots, boot tanks, all bin valves, turn heads and indicators, shafting, bearing, cable sprockets, cutting all key seats in new and old work, troughs, chippers, filters, calendars, rolls, winders, rewinders, slitters, cutters, wrapping machines, blowers, forging machines, rams, hydraulic or otherwise, planing, extruder, boll, dust collectors, equipment in meat packing plants, splicing of ropes, cables.

The laying out, fabrication and installation of protection equipment including machinery guards, making and settling of templates for machinery, fabrication of bolts, nuts, pans, drilling of holes for any equipment which the Millwrights install regardless of materials; all welding and burning regardless of types, fabrication of all lines, hoses or tubing used in lubricating machinery, installed by Millwrights, grinding, cleaning, servicing and machine work necessary for any part of any equipment installed by Millwrights, and the breaking in and trial run of any equipment or machinery installed by the Millwrights. Dock levelers, dock bumpers, manual or power actuated roll up doors, security doors, door seals, and airport x-ray and bomb detection equipment. Air inlet filter houses, air inlet filters, air inlet ducts and power actuated dampers, flex line, fuel piping and flex connections, all power generation power island equipment, including, but not limited to, turbines, generators, gear reducers, diffusers and expansion joints. Thermal blankets and gear boxes. All water treatment/sewage treatment plant equipment, including, but not limited to, all types of pumps, compressors, chain of flygt conveyance systems, aeration basin equipment, primary/secondary clarifier mechanisms, sludge thickeners, mechanical/stationary bar screens and trash racks, and stop logs.

C. It is understood that no dispute, complaint or grievance shall be filed under Section 51 (Grievance Procedure) of the Master Labor Agreement alleging violation of this Section 12, as a result of assignment of work as set forth in this section to other crafts working under collective bargaining agreements; but rather such dispute, complaint, or grievance shall be handled under Section 16 (Jurisdictional Disputes) of the Master Labor Agreement.

D. The individual employer and the Local Union will cooperate promptly in attempting to resolve jurisdictional disputes that may arise on any job or project.

E. When requested in writing by the Millwright Union, individual employers who are parties to this Agreement shall furnish signed letters promptly on a date mutually agreed upon by both parties, but in no case more than thirty (30) days, on the letterhead of the individual employer, stating he is employing or had employed Millwrights on a specific type of work and specific job and paid the negotiated scale of wages and fringe benefits for such work.

## Section 13
## Pre-Job Conference

A. Whenever an individual employer or his representative holds a pre-job conference pursuant to Section 20 of the Master Labor Agreement, separate individual notice shall be given to the Millwright Local having jurisdiction over the project in the same format used to notify the other crafts attending.

B. A markup meeting for the purpose of discussing jurisdiction shall be mandatory upon written request of the Local Union on all jobs whose total cost is one million dollars ($1,000,000.00) or more. Markup meetings on jobs of less than one million dollars ($1,000,000.00) shall be optional upon mutual consent of the individual employer and the unions involved. This is not necessarily an exclusive Millwright Markup. At a Markup meeting where plans or mock-ups are to be used, the Union will be given reasonable time to review such plans or mock-ups prior to the start of the meeting.

## Section 14
## Safety

A. As a safety factor, no Millwright shall be required to work alone while making repairs or adjustments on machinery and/or

equipment that is in operation or capable of being operated. Since this is a safety factor, the second individual is not necessarily a Millwright, but must be a responsible individual capable of starting, stopping and operating said machinery. If the second individual is not a Millwright, he shall not be allowed to perform Millwright tasks. No Millwright employee shall be discharged for refusing to work under unsafe conditions.

### Section 15

### Subcontracting

A. The individual employer shall not subcontract Millwright work as set forth in Section 12, to any subcontractor without notifying the union, in writing, of the subcontractor's name, address, phone number and license number within five (5) days after selecting the subcontractor or five (5) days before starting the job, whichever is longer, except in emergencies. Such subcontracting shall be done in accordance with Section 50 (Work Preservation, Contracting and Subcontracting) of the Master Agreement.

### Section 16

### Outside Contracting

Any outside firm undertaking any Millwright work within the territory where this Agreement applies shall be allowed to bring in one (1) non-resident Foreman or General Foreman, subject to the Hiring Provisions of Section 49 (Hiring) of the Master Labor Agreement. Such non-resident shall register for Health and Welfare, Vacation Plan, Annuity, and Retirement Plan at the office of the Local Union, and shall be furnished a copy of the current Agreement for his future guidance prior to starting any job. The Local Union office shall inform such workers of the proper compensation due him/her under this Agreement and may later require specific proof of conformance. The second Foreman shall be a local Millwright. All Foremen or General Foremen shall receive the wages and conditions of this Agreement.

MILLWRIGHT EMPLOYERS ASSOCIATION

____________________ ________
Michael Vloming Date

MILLWRIGHTS LOCAL UNION #102

____________________ ________
Bill Napier, Business Manager Date

CARPENTERS 46 NORTHERN CALIFORNIA COUNTIES CONFERENCE BOARD

____________________ ________
Robert Alvarado, Chairman Date

____________________ ________
William Feyling, Executive Director Date



## Appendix C

## Residential Addendum

The terms and conditions of this Addendum shall apply on the work description contained herein, provided the job(s) are registered as per Section C-5 of this Addendum and all the terms and conditions of the Carpenters Master Agreement shall remain in full force and effect unless specifically amended by this Addendum.

C-1.Residential Wood Frame Structures are defined as single family residences, condominiums, town houses, cluster homes and multiple unit, multi-story wood frame residential structures as permitted by the applicable building code.

Due to the constantly changing aspects of the residential construction industry, the parties to this addendum reaffirm the conditions of Section 2 (Term of Agreement), paragraph 4, and Section 2-A (Carpenters Work Preservation Committee) of the Master Agreement shall particularly apply to all phases of this Residential Addendum.

C-2.Work Description:

Residential work processes include, but are not limited to, fabrication and installation of concrete forms and foundations; floor framing members; subfloors; wall, ceiling and roof framing; exterior siding, roof and exterior wall shingles, shakes or asphalt shingles; lathing; normal and traditional drywall; steel scaffolding; windows and sliding glass patio doors; stairs; underlayment and base; installation and finishing of hardwood floors including pre-finished hardwood floors regardless of the method of installation, acoustical ceiling; installation of all interior trim including cabinets, counter tops, pre-finished marble counter tops and vanities; customer service or warranty work; and other work incidental to the performance of the work covered and work performed by using the tools recognized as and regarded as tools of the trade.

C-3.The terms and conditions of Section 39 (Wage Rates) of the Master Agreement are amended as follows:

Seven (7) Counties Area consisting of the following counties. Alameda, Contra Costa, Marin, San Francisco, San Mateo, Santa Clara, and Solano.

| Journeyman wage rates effective | 7/1/03 |
|---|---|
| Carpenters | $30.15 |
| Hardwood Floorlayers | $30.30 |
| Shinglers | $30.30 |
| Power Saw Operators | $30.30 |
| Steel Scaffold & Steel Shoring Erectors | $30.30 |
| Saw Filers | $30.30 |

Three (3) Counties Area consisting of the following counties: Napa, San Benito and Sonoma.

| Journeyman wage rates effective | 7/1/03 |
|---|---|
| Carpenters | $24.87 |
| Hardwood Floorlayers | $25.02 |
| Shinglers | $25.02 |
| Power Saw Operators | $25.02 |
| Steel Scaffold & Steel Shoring Erectors | $25.02 |
| Saw Filers | $25.02 |

Apprentice Wage Percentage Schedule: The wage rates for apprentices shall be the following percentages of the applicable Journeyman classification in the appropriate geographical area.

First Period: 0 to 6 months . . . . . . . . . . . . . . . . . . . 60%

Health & Welfare, Work Fee, Industry Promotion, UBC Health & Safety, Work Preservation, Training, Carpenter Employers Contract Administration

Second Period: 7 to 12 months . . . . . . . . . . . . . . . . . . . 65%
Health & Welfare, Work Fee, Industry Promotion, UBC Health & Safety, Work Preservation, Training, Vacation, Carpenter Employers Contract Administration

Third Period: 13 to 18 months . . . . . . . . . . . . . . . . . . 70%
Health & Welfare, Work Fee, Industry Promotion, UBC Health & Safety, Work Preservation, Training, Vacation, Annuity, Carpenter Employers Contract Administration

Fourth Period: 19 to 24 months . . . . . . . . . . . . . . . . . . 75%
Health & Welfare, Work Fee, Industry Promotion, UBC Health & Safety, Work Preservation, Training, Vacation, Annuity, Carpenter Employers Contract Administration

Fifth Period: 25 to 30 months . . . . . . . . . . 80% Full Fringes

Sixth Period: 31 to 36 months . . . . . . . . . . 85% Full Fringes

Seventh Period: 37 to 42 months . . . . . . . . . . 90% Full Fringes

Eighth Period: 43 to 48 months . . . . . . . . . . 95% Full Fringes

Pre-Apprentices

In order to encourage persons who have not traditionally entered the carpentry trade to enter and complete the necessary apprenticeship program and to increase the potential for successful completion of all those who become indentured apprentices, the parties hereto agree to create a pre-apprenticeship program, the purpose of which will be to introduce the Trade to such persons.

Such pre-apprenticeship program may be utilized by Employers under the following conditions:

On private residential projects covered and registered as per Appendix C, a pre-apprentice period is established as follows:

Period of time 180 calendar days. Wage rates 35% of the applicable journeyman rate plus fringe benefit contributions as follows: Training, Work Fee, Industry Promotion, UBC Health & Safety, Work Preservation and Carpenter Employers Contract Administration.

An individual employer may employ one (1) pre-apprentice for each apprentice in his employ that has entered the third or higher period of apprenticeship. Pre-apprentices shall not be considered in computing the journeyman-apprentice ratio.

The use of pre-apprentices is to be considered a privilege by an individual employer and violation of the pre-apprentice ratio shall cause the privilege to be denied, subject to Section 51 (Grievance Procedure).

The Employer and the Union shall establish rules governing the use of and criteria for advancement of pre-apprentices into the Apprenticeship program.

Except as specifically amended in this Section C-3 of this addendum, the terms and conditions of Section 39 (Wage Rates) of the Master Agreement remain unchanged.

C-4. The work week will be governed by the terms of Section 24 (Work Week) of the Agreement.



C-5. Job Registration

A. Individual Employers shall register all jobs to be performed under the terms and conditions of this Addendum. An individual employer who opts to subcontract covered work shall register any such subcontractor. An individual employer acting as a subcontractor shall register all jobs to be performed under the terms of this Addendum.

B. Each individual employer shall notify the Union in writing, on a Job Registration Form to be provided by the Union of the location of each job on which he or it will be performing work covered by the Agreement. Such notice shall be given prior to the commencement of work and shall contain all the information required by the Union. On jobs where the time factor does not permit all registration of jobs prior to their commencement, the contractor shall notify the appropriate Local Union or the NCCRC office by telephone, giving all pertinent information regarding the specific job. Such notification must be confirmed in writing on the regular Job Registration Form provided by the Union within forty-eight (48) hours thereafter.

C. In the event a contractor takes over the performance of a contract covered by the terms of this Agreement for another contractor, the successor contractor shall notify the Union by certified mail of its intent to undertake performance of the contract. Such notice shall be given prior to commencing work. Failure to give such notice shall subject the successor contractor to any liability for any delinquent fringe benefits of the predecessor contractor through Section 51 (Grievance Procedure) in addition to any other claims which may arise because of such failure.

D. The information to be contained on the registration form shall include, but not be limited to, the following:

1. Individual employer's name, address, telephone number, Contractor's License number, Carpenters Trust Fund account number, and Workers Compensation carrier and policy number.

2. Name and address of project; jobsite phone (if any); name of contractor's job supervisor; proper term for Federal, HUD, or State project I.D. number; estimated starting and completion dates

3. Job description, i.e., single family tract, remodel, apartment, etc., number of units, square footage, estimated number of hours of covered work to be performed.

4. Name and account number of payroll bank account

5. List of all subcontractors performing work covered by this Addendum of the Agreement, including address, Carpenter Trust Fund account number, if known, estimated hours, if available, and description of work to be performed.

E. Nothing in this Addendum shall in any way abridge, amend or detract from Section 50 of the Master Agreement, entitled "Work Preservation, Contracting and Subcontracting," provided, however, compliance with the registration of subcontractors as required herein shall satisfy the written notice requirement of Section 50 paragraph 5.

C-6. In the event that the Union negotiates more favorable terms and conditions for work covered by this Addendum in the Ten County Area, such more favorable terms and conditions shall be available to any employer signatory to this Addendum provided, however, any signatory desiring to take advantage of the different terms and conditions must adopt all the terms and conditions applicable to such other agreement. This provision shall not apply to any

project agreements negotiated by the Union. The terms of Section 2-A (Carpenters Work Preservation Committee) of the Agreement shall also apply to this Addendum.



## Appendix D
## Insulators Addendum

The following special conditions shall apply between the CARPENTERS 46 NORTHERN CALIFORNIA COUNTIES CONFERENCE BOARD and the individually signatory INSULATION CONTRACTORS and are in addition to and shall prevail over conflicting provisions of the foregoing Master Agreement.

1. For work on occupied residences only, no overtime will be required for work on Saturdays, except to the extent an employee works in excess of forty (40) hours in a week and provided the Union is notified in advance of this change in the work week.

2. The Union will recommend to the involved Local Unions and the NCCRC that no "foreign dues" will be charged to workers who work within different union jurisdictions, provided the individual employee obtains a dispatch by telephone before going to the job.

3. On blower crews only, to accommodate the weather conditions, and subject to advance notice to the Union, an individual employer may commence the work day as early as 6:00 A.M.

4. Travel pay from the individual employer's warehouse or shop to the furthermost jobsite and return to the employer's headquarters shall be paid one way only, at the employee's regular hourly rate, provided that if a company vehicle breaks down on the return trip to the shop after completing a job, time and one-half shall be paid for all time in excess of thirty (30) minutes caused by the breakdown, and provided further that overtime will be paid only in excess of eight (8) straight time hours worked in any one (1) day.

5. The job classification, "Hopper or Blower Operator" is established at a wage rate of 50% of applicable Journeyman rate and all fringe benefit contributions. Pre-Apprentices and Apprentices may be assigned to the Hopper-Blower operation as a part of their training for a period not to exceed sixty (60) calendar days. An Apprentice or Pre-Apprentice so assigned shall receive their normal wage rate and fringe benefits for the sixty (60) calendar day period and shall receive no less than the Hopper Blower Operator wage and fringe benefit rates after the expiration of the sixty (60) day period.

6. When a Local Union is not able to supply a sufficient number of Journeymen, the ratio of Apprentices to Journeymen may be increased but not to exceed one (1) Apprentice to each Journeyman.

7. To facilitate overtime work permits, the individual employer may make arrangements by telephone rather than by personal visits.

8. An Insulator Apprentice Program will be established to provide competent Journeymen. The period of apprenticeship shall be thirty-six (36) months. The periods, wage percentage of Journeyman rate, fringe benefit contributions shall be as follows:

| | | Wage Percentage/Fringes |
|---|---|---|
| First Period | 0 to 6 months | 60% |
| | Health & Welfare, Work Fee, Industry Promotion, UBC Health & Safety, Work Preservation, Training, Carpenter Employers Contract Administration | |
| Second Period | 7 to 12 months | 65% |

Health & Welfare, Work Fee, Industry Promotion, UBC Health & Safety, Work Preservation, Training, Vacation, Carpenter Employers Contract Administration

| | | |
|---|---|---|
| Third Period | 13 to 18 months . . . . . . . . . . . . . . . . . 70% Health & Welfare, Work Fee, Industry Promotion, UBC Health & Safety, Work Preservation, Training, Vacation, Annuity, Carpenter Employers Contract Administration | |
| Fourth Period | 19 to 24 months . . . . . . . . . . . . . . . . . 75% Health & Welfare, Work Fee, Industry Promotion, UBC Health & Safety, Work Preservation, Training, Vacation, Annuity, Carpenter Employers Contract Administration | |
| Fifth Period | 25 to 30 months . . . . . . . . . . 80% Full Fringes | |
| Sixth Period | 31 to 36 months . . . . . . . . . . 85% Full Fringes | |

Pre-Apprentices shall be covered by the terms set forth in Appendix C of the Master Agreement but shall not be limited to residential projects only. The individual employers shall be entitled to one (1) pre-apprentice and not be in violation of the pre-apprentice: apprentice ratio set forth in Appendix C.

9. When the Adjustment Board Arbitration Panel is scheduled to hear a grievance involving an insulation contractor who is party to this Agreement, the employer panel members will be represented by the individually signatory members.



## Appendix E
## Associated Cabinet Manufacturers
## and
## Carpenters 46 Northern California Counties Conference Board on behalf of its affiliated Local Unions
## Master Agreement
## July 1, 2004 through June 30, 2008

TABLE OF CONTENTS


| | SECTION NO. | PAGE |
|---|---|---|
| Apprenticeship | 6 | 67-68 |
| Apprentice Wage Rates and Schedule of Benefits | | 79 |
| Associate Cabinet Manufacturers Addendum "A" | | 80 |
| Foreman and Layout Man | 17 | 72 |
| General Provisions | 7 | 68-69 |
| Grievance Procedure, Discharge and Retirement | 15 | 71-72 |
| Handicapped Workers | 8 | 69 |
| Holidays | 4 | 66 |
| Leave of Absence | 14 | 71 |
| Maintenance | 9 | 69 |
| Mill-Cabinet Industry Apprenticeship & Training/Employee Benefit Fund | 20 | 74-75 |
| Notice to Union Confirming Order For Referral of Personnel | | 82 |
| Notice to Local Union of Employee Hire | | 83 |
| Overtime | 3 | 65-66 |
| Rights of Union Representatives | 11 | 69 |
| Seniority | 13 | 70-71 |
| Shop Steward | 10 | 69 |
| Show-Up Time | 18 | 72 |
| Union Label | 12 | 69-70 |
| Union Security | 1 | 64-65 |
| Vacation | 5 | 66-67 |
| Wage Schedule "A" | | 76-79 |
| Work Day/Work Week | 2 | 65 |
| Work Performed Away From Plant | 19 | 73-74 |
| Work Preservation Committee | 16 | 72 |


### Preamble

In addition to the working rules and conditions of the 46 Counties Carpenters Master Agreement, the following special working rules and wages shall apply to Mill-Cabinet and related work:

THIS AGREEMENT is made and entered into this 1st day of July, 2004, by and between the ASSOCIATED CABINET MANUFACTURERS (ACM), representing and on behalf of those member firms in the counties of Alameda, Contra Costa, Marin, San Benito, Santa Clara, San Francisco, and San Mateo whose employees are legally represented by one of the signatory Unions, (firms bound by the Agreement at the date of the signing are listed on the applicable addendum, and firms subsequently joining the Association whose employees are legally represented by the Union shall come under this Agreement upon notice to the Carpenters 46 Northern California Counties Conference Board from the Association that such firm has become a party to this Agreement), each of said firms being hereinafter referred to as the Employer and Locals 262 and

2236, affiliated with the Carpenters 46 Northern California Counties Conference Board, for and on behalf of the Northern California Carpenters Regional Council and their affiliated Local Unions being hereinafter referred to as the Union. The geographical application of this Agreement shall be extended to other counties in Northern California in accordance with the provisions of Section 3 hereof or otherwise by agreement of the parties hereto.

This Mill-Cabinet Agreement amends, modifies, supplements, changes, extends and renews the Agreement dated May 1, 1987, June 15, 1990, August 1, 1992, June 16, 1996, May 25, 1999, and is effective July 1, 2004. The terms and conditions of this Agreement shall apply to all individual employers signatory to the Millmen's Seven Bay Area Northern California Counties Memorandum Agreement.

### Section 1

## Union Security

(a) Every employee covered by this Agreement who is a member of the Union and in the employ of the Employer shall, as a condition of employment or continued employment, remain a member in good standing of the appropriate Local Union. Every other employee covered by this Agreement shall be required, as a condition of employment or continued employment, to apply for and become a member of, and to maintain membership in good standing in the appropriate Local Union on or after the expiration of thirty-one (31) continuous or cumulative days of employment. In the event that Federal law setting forth the time limitations for requiring membership are changed so as to allow a shorter limitation for requiring membership or changed so as to allow a shorter period before membership must be obtained, the parties hereto agree that shorter periods as may be allowed, by law, shall be applicable hereto.

For purposes of this Section "good standing" shall be defined to mean employees who tender the periodic dues, initiation and reinstatement fees uniformly required as a condition of acquiring or retaining membership. The Union agrees to accept Non-member employees into membership on the same terms and conditions generally applicable to other member employees.

Upon written notice from the Union or failure on the part of any individual to complete membership in the Union or to maintain membership in the Union as required by this Section, the Employer shall immediately discharge said employee.

(b) The Employer shall notify the appropriate Local Union of job vacancies before hiring new, additional or replacement employees before the vacancy is filled.

If the notice is other than in writing, the Employer shall confirm such notice that same date using form OFE-1 (Order for Employees) set out as Exhibit "2" attached to and made part of this Agreement.

The Local Union shall be permitted an opportunity to refer applicants to fill such vacancies within forty-eight (48) hours of such notice, excluding Saturdays, Sundays, and holidays. The Employer may fill a vacancy from any source if the Local Union is not able to supply qualified applicants for employment within such period. The Employer may temporarily fill the vacancy from any source. Where the Employer hires an employee covered by this Agreement from any source, he shall immediately report the name, address, classification, rate of pay, Social Security number and date of hire in writing to the appropriate Local Union using Form NOH-1 (Notice of Hire) set out as Exhibit "3" attached to and made part of this Agreement with a copy to the Shop Steward, if any.



(c) The Employer, party to this Agreement, agrees that no more than one (1) member of the firm shall work with the tools of the trade unless he is a union member. "Member of the firm" shall mean one (1) owner or a corporate manager with full authority to act on behalf of the firm, who has been designated by prior notice to the Union.

### Section 2

## Work Day/Work Week

(a) The Union agrees that signatory employers may utilize a 4 X 10 workweek if a majority of the affected employees are in favor. The Union and the ACM will meet promptly to finalize the procedures to be used in implementing a 4 X 10 work schedule. No 4 X 10 workweek will be implemented unless and until said procedures are finalized.

(b) Eight (8) hours shall constitute a regular work day. The regular work day shall be between 8:00 a.m. and 5:00 p.m. Five (5) days shall constitute a regular work week from Monday through Friday, inclusive. The starting time of the regular work day may be changed by written agreement between the Employer and the Union.

(c) A pay period shall be any seven (7) consecutive days. Employees shall be paid on a regularly designated payday each week for all work performed during the previous pay period. Checks shall be distributed before the regular quitting time on the regular payday.

(d) Should an Employer compensate an employee with a check for which payment is refused by the Employer's bank because of insufficient funds or should an Employer fail to pay his employees on the regular established payday for work performed, the Employer shall be obligated to pay a penalty equal to eight (8) hours straight-time pay for each work day thereafter up to a total of forty (40) hours penalty pay in addition to the Employer's obligation to pay for hours worked.

Such penalty shall not apply when there is a bank error or omission or when the failure to make timely payment is totally beyond the control of the Employer. The penalty payments shall commence on the first work day following notice to the employer of the bank's refusal to honor the check.

### Section 3

## Overtime

(a) The first two (2) hours prior to the start of the regular work day or the first four (4) hours after the end of the regular work day, not to exceed a total of four (4) hours in any one (1) work day shall be paid at time and one-half.

1. Time and one-half shall be paid for the first eight (8) hours worked on Saturdays.
2. All work in excess of eight (8) hours on Saturdays and all work on Sundays and holidays shall be double time.

(b) All travel time shall be paid in accordance with Section 19 (d) & (e).

(c) Overtime shall be first offered to the employee whose job is

working. If he is unable to work, it shall then be offered to qualified employees in the seniority pool.

## Section 4
## Holidays

The following are nationally recognized holidays covered by this Agreement:

2004: Monday, July 5th (Fourth of July); Monday, September 6th (Labor Day); Thursday, November 25th (Thanksgiving Day); Friday, November 26th (Day after Thanksgiving); Friday, December 24th (Christmas Eve); Friday, December 31st (New Year's Eve).

2005: Monday, January 17th (Martin Luther King's Birthday); Monday, February 21st (President's Day); Monday, May 30th (Memorial Day); Monday, July 4th (Fourth of July); Monday, September 5th (Labor Day); Thursday, November 24th (Thanksgiving Day); Friday, November 25th (Day after Thanksgiving); Monday, December 26th (Christmas Day).

2006: Monday, January 2nd (New Year's Day); Monday, January 16th (Martin Luther King's Birthday); Monday, February 20th (President's Day); Monday, May 29th (Memorial Day); Tuesday, July 4th (Fourth of July); Monday, September 4th (Labor Day); Thursday, November 23rd (Thanksgiving Day); Friday, November 24th (Day after Thanksgiving); Monday, December 25th (Christmas Eve); Tuesday, December 26th (Christmas Day); Monday, January 1st (New Years Eve).

2007: Tuesday, January 2nd (New Year's Day); Monday, January 15th (Martin Luther King's Birthday); Monday, February 19th (President's Day); Monday, May 28th (Memorial Day); Wednesday, July 4th (Fourth of July); Monday, September 3rd (Labor Day); Thursday, November 22nd (Thanksgiving Day); Friday, November 23rd (Day after Thanksgiving); Monday, December 24th (Christmas Eve); Tuesday, December 25th (Christmas Day); Monday, December 31st (New Year's Eve).

2008: Tuesday, January 1st (New Year's Day); Monday, January 21st (Martin Luther King's Birthday); Monday, February 18th (President's Day); Monday, May 26th (Memorial Day).

Should a holiday provided for in this Section fall on Sunday, the day observed by the State or Nation shall be considered the holiday.

Employees who are required to work on any of the above holidays shall be paid double time rate.

## Section 5
## Vacation

Each individual employer covered by this Agreement shall contribute to the Carpenters Vacation and Holiday Trust Fund for Northern California the amount listed in Wage Schedule "A" for each hour paid for or worked, whichever is greater, by each employee covered by this Agreement, for the purposes of providing Vacation and Holiday benefits for such employees. Such contributing individual employer agrees to be bound by that certain Trust Agreement establishing the Fund dated May 1, 1972, as such has been or may from time to time be amended or supplemented. The Union and the Employer agree that this plan is and has been a Defined Contribution Plan.



There shall be no duplicating contribution with respect to any employee or the work of any employee.

For purposes of interpreting and applying this section, such Trust Fund Contribution shall be considered as compensation.

The total number of hours worked by each employee in each work month, for which contributions are made to this Trust Fund, shall be reported by the individual employer to this Trust Fund.

1. To be eligible for the following vacation time off the job, an employee must have twelve (12) successive months of continuous employment as defined in Section 13 of this Agreement following an anniversary date of the employee's date of hire.

FIRST YEAR through FOURTH YEAR—10 days vacation

*FIFTH YEAR or MORE—15 days vacation

* The Employer may require one (1) week of any three (3) weeks vacation to be taken at any time between October 1 and April 1 and separate from the other two (2) weeks.

2. All vacation pay shall be allocable to the period worked and not to the period when paid.

3. If a holiday occurs during that calendar week in which the vacations are taken by any of the employees, one additional vacation day may be taken because of such holiday.

4. Vacations shall be taken at a time mutually agreeable to the Employer and the employee. Promptly after January 1 of each year, each employee who has reason to believe that he will be entitled to a vacation, shall notify the Employer in writing, specifying the vacation time he desires prior to April 1 the Employer shall post a vacation schedule on the bulletin board. As possible, vacations shall be granted at the time specified by the employee. In cases of conflict, employees shall be given preference of choice according to seniority.

## Section 6
## Apprenticeship

(a) An apprentice shall not be less than seventeen (17) years of age when starting his apprenticeship. An apprentice shall undergo a course of training under the direction of the Local Joint Apprenticeship Committee. The period of shop training shall be four (4) years unless the apprentice is given credit for previous work experience by the Committee.

(b) The employment of apprentices shall not exceed one (1) apprentice to every two (2) journeymen except where only one (1) journeyman is employed one (1) apprentice may also be employed. Handicapped workers, Truck Drivers and production workers, regardless of wage scale, shall not be included in this computation.

(c) It shall be a contractual obligation to employ apprentices who might have been laid off due to lack of work before employing new apprentices.

(d) It is agreed between the parties hereto that apprenticeship training shall conform to the Apprenticeship Standards prepared by the Local Joint Apprenticeship Committee and approved by the Administrator of Apprenticeship. Apprentices shall be indentured in accordance with the Shelley-Maloney Act. The apprentice rates provided for in the wage schedule shall apply only to Indentured apprentices. (Note: See Section 20 (Mill-Cabinet Industry

Apprenticeship & Training/Employee Benefit Fund) for apprentice training contributions.)

## Section 7
## General Provisions

(a) No employee will be required to pass through a picket line sanctioned by the appropriate Local Central Labor Council and/or the appropriate Local Building Trades Council, and/or the United Brotherhood of Carpenters and Joiners of America, and/or the appropriate Local Joint Council of Teamsters.

(b) The Employer shall maintain a bulletin board in a prominent and easily accessible location in the plant upon which board the Union shall have the privilege of posting necessary notices pertinent to the conduct of Union business.

(c) There shall be a ten (10) minute break with pay once in the first part of any shift and a ten (10) minute break with pay in the second part of any shift. Where an Employer is signatory to another agreement that provides for a longer break period to other employees such longer break period shall apply to all persons covered by this Agreement who work on the premises.

(d) In the event of a death in the immediate family (father, father-in-law, mother, mother-in-law, legal guardian or former legal guardian, wife, husband, brother, sister, son, daughter or grandparents), the employee shall be entitled to a maximum of three (3) days off with pay to attend the funeral or memorial service. The compensable day or days must fall within the employee's regular scheduled work week, excluding weekends and holidays. Payment of compensation shall be made in accordance with Section 7, (f) below.

(e) When an employee, covered by this Agreement, is called for jury duty in any municipal, county, state or federal court, he shall advise the Employer upon receipt of such call, and if absent from his work for such service, shall be reimbursed as provided herein for any loss of wages while actually performing such services, provided he exhibits to the employer his properly endorsed check or voucher he received for such service and permits the employer to copy same. The amount the employee shall be reimbursed shall be determined by subtracting the amount he received as a per diem for such service from the amount he would have earned at his regular straight-time hourly rate during the regular working hours he missed while performing such service, it being understood that such reimbursement is limited to a maximum of twenty (20) days annually.

(f) Payment for funeral leave, memorial services leave, and/or jury duty shall be made by the employer to the employee after the submission of the claim and after the employer has been paid by the Jointly Administered Benefit Fund, provided such employer has been a contributor to the Fund and is not delinquent in contributions to any of the Trusts at the time the claim is made and at the time the claim was incurred. Payment under this paragraph shall be limited to the amount of the gross wages of the employee involved. Gross wages shall mean vacation/holiday pay, supplemental dues, annuity and the hourly wage rate.

(g) Production workers shall perform work covered by wage Schedule "A".

(h) The provisions of Section 8 shall not apply to newly organized operations for the first twelve (12) months from the effective date of such Employer becomes signatory. The Union will notify Employer (ACM) in writing of any amendment to this Agreement given to a newly signatory Employer.

## Section 8
## Handicapped Workers

An employee who is incapacitated by age, physical or mental handicaps or other infirmities, or who is temporarily disabled may be employed at an hourly rate of wage below the minimum established by this Agreement provided he shall first have obtained a written dispensation from his Local Union.

## Section 9
## Maintenance

Maintenance of machinery or equipment or the resetting or replacement of machinery or equipment already installed may be done at the convenience of the Employer. The rate of wage for such work shall be the regular rate of wage of journeymen millmen, except that the rate of wage for overtime shall be time and one-half regardless of the day or hour. This Section is not applicable to grinding, changing knives, saw filing or setting up of machines for production. Maintenance work on Saturdays and Sundays shall be at time and one-half. Maintenance employees referred to in this Section are intended to include employees of the Employer engaged in the ordinary upkeep and repair of the Employer's machinery and equipment.

## Section 10
## Shop Steward

The Shop Steward shall make himself known to the Employer. There shall be no discrimination against the shop steward because of Union activities, provided that same are performed without undue loss of time or inconvenience to the Employer.

## Section 11
## Rights of Union Representatives

Business Agents of the Local Union shall have access to the Plant during working hours at their own risk.

## Section 12
## Union Label

It is hereby understood and agreed by the Employer and the Union that an application shall be made for the Union Label to the First General Vice President of the United Brotherhood of Carpenters and Joiners of America. If the application is approved, and the Union Label is issued by the United Brotherhood of Carpenters and Joiners of America to be placed upon the Employer's products, it is understood and agreed that the Label shall remain the property of the United Brotherhood of Carpenters and Joiners of America, and shall be at all times in the possession of a member of the United Brotherhood of Carpenters and Joiners of America; and that said Union Label shall at no time be used in any manner that will be detrimental to the interest and welfare of the members of the United Brotherhood. Use of said Label may be

withdrawn from the mill, shop, factory, or manufacturing establishment of the Employer at any time at the discretion of the "International Union."

## Section 13
## Seniority

(a) Seniority shall apply to any employee who is in the continuous employ of the Employer for ninety (90) calendar days or more and, thereafter, for the period he remains in continuous employ. For purposes of this Agreement continuous employ is defined as employment uninterrupted by absence due to either:

1. Discharge for just cause or quit unless rehired within thirty (30) days or reinstated as a result of a decision of the grievance committee or arbitrator, or

2. Accident, sickness or layoff for lack of work for a continuous period of more than nine (9) months, unless such period is extended by mutual agreement.

The employee may be required to present satisfactory proof that his absence was due to accident or illness.

Time lost as a result of an Industrial injury or Industrial accident recognized by Worker's Compensation, suffered during the course of employment, shall be counted as part of continuous employment. However, acceptance of employment elsewhere during such period shall interrupt continuous employ unless the employee has requested less strenuous work which the Employer is unable to provide.

(b) The parties agree and understand that for the store fixture, commercial cabinetry and architectural millwork, seniority shall apply only as follows:

1. The Employer may layoff and recall employees from the seniority pool based on the Employers need.

2. No new employee will be hired while any member of the seniority pool remains on layoff, except that new production workers may be hired when all such laid-off members of the seniority pool have been first offered the work in the production worker classification.

3. Recall rights extend for nine (9) months from the date of layoff.

4. No employee enters the seniority pool until sixty (60) continuous days from the date of hire.

Apprentices shall not attain seniority until they have been an apprentice for twelve (12) months of employment and meet the above requirements.

The seniority provision of the agreement, pertaining to lay-off and rehire, shall not apply during this twelve (12) month period.

5. Production workers shall not attain seniority.

Apprentices in the continuous employ of the employer shall attain seniority after their twelfth (12th) month of employment.

(c) Employees laid-off shall keep the Employer advised of their current telephone number and mail or telegraph address. Notice to report shall be given by mailing same to such address or by telegram to the employees outside the contract area and shall be deemed delivered on the day following sending same. All employees covered by this Agreement shall be subject to call and shall forfeit seniority and/or recall rights if they fail to inform the employer, within two (2) working days after being notified to return, as to whether they will return to work or if thereafter they fail to return to work without good cause within five (5) days after being called or notified by the Employer; provided, that if any employee is away from town when called for work, the time reasonably required by such employee to return to work shall be added to the said five (5) day period. The Employer may hire temporary employees until recalled employees return to work.

(d) Whenever a vacancy occurs in a skilled job and there are at the time employees who have sufficient aptitude and experience to fill the job, such employees shall be entitled to fair trial to qualify for said job. In the event that such employee shall, in the opinion of the Employer, fail to qualify, he shall revert to his former job without prejudice.

(e) During a leave of absence granted under Section 14, seniority shall accrue for the first ninety (90) days in the same manner as though the employee was working. Where a leave of absence is more than ninety (90) days, seniority shall be frozen as of the ninetieth (90th) day unless otherwise extended by mutual agreement between the Local Union and the Employer.

## Section 14
## Leave of Absence

(a) The Employer may, upon written request, grant a leave of absence. Such written leave of absence shall not be considered a break in "continuous employ." A copy of such leave of absence shall be furnished to the Local Union.

(b) A leave of absence without pay for pregnant employees shall be in accordance with applicable Federal and State Laws.

## Section 15
## Grievance Procedure, Discharge and Retirement

(a) Effective July 1, 2004, the parties agree to utilize the grievance procedure contained in Section 51 (Grievance Procedure) of the Carpenters Master Agreement. A representative selected by the ACM will serve as the Employer panel member for grievances arising under Appendix E. Written notification of the designated panel member will be sent to the Union. This grievance procedure shall apply prospectively. As such, it shall apply only to matters or grievances which arise on or after July 1, 2004.

(b) The Employer shall not discriminate against any employee because of activities in, or on behalf of, any Local Union. Such Union activities shall not interfere with production.

(c) An Employee may be discharged or suspended for just cause, such as failure or refusal to perform work as directed; intoxication which shall be defined as any impairment of an employee's ability to properly perform his job resulting from consumption of alcohol or drugs, or any such consumption during working hours, dishonesty, or chronic absenteeism. Absenteeism shall not include employee time off for sickness. Grievances in connection with discharges or suspension shall be subject to the provisions of Section 51 of the Carpenters Master Agreement and employees may be reinstated with or without full or partial back pay if the Grievance

Committee or Arbitrator decides that grounds for discharge or suspension were not established. The Employer shall give written notice of suspension or discharge to the employee in person, or if absent, by mail and a copy of same shall be sent to the Union on the date the notice is served on the employee. The written notice shall state all the reasons for the discharge or suspension.

(d) The normal retirement age shall be in accordance with applicable Federal and State Laws.

## Section 16

## Work Preservation Committee

The parties to the Agreement hereby establish a Committee composed of three (3) representatives appointed by the 7 Bay Counties Millmen Conference Board and three (3) representatives appointed by the Associated Cabinet Manufacturers.

Each party may select two (2) alternates who will serve on the Committee and vote in the absence of one (1) of the regularly appointed members. Each of the parties shall be entitled to one (1) vote. The Committee shall have a chairman, selected by labor, and a secretary selected by management.

This Committee will review requests for short term modifications of the terms and conditions of this Agreement that may be necessary to preserve work opportunities for employees and individual employers covered by this Agreement. The Committee is authorized to approve such changes as it deems to be in the best interest of the parties to this Agreement.

This Committee shall be empowered to develop rules and procedures, subject to the approval of the bargaining parties, to carry out the intent of the bargaining parties.

## Section 17

## Foreman and Layout Man

(a) If an employee is voluntarily selected by the Employer as a foreman, he shall be paid a minimum of fifty cents ($.50) per hour above the current journeyman's minimum wage rate when acting as such.

(b) If an employee is voluntarily selected by the Employer to work primarily as a layout man, he shall be paid a minimum of twenty-five cents ($.25) per hour above the current journeyman's wage rate when acting as such.

## Section 18

## Show-Up Time

Unless notice is given to the employee, prior to 6:00 p.m. on the preceding day, not to report for work, an employee who reports for work at the start of his regular work day shall be paid for two (2) hours at straight time if no work is provided, and a minimum of four (4) hours at straight-time if any work is performed, unless failure to provide work is caused by fire, rain, flood or other causes beyond the control of the Employer.



## Section 19

## Work Performed Away from Plant

The following conditions shall apply for all work performed at the construction jobsite:

(a) The Employer may install their products which are manufactured under the terms of this Agreement at 85% of the Carpenters nine (9) Counties Commercial or Residential rate whichever is applicable. This rate applies only to his Millmen employees and shall not apply to Construction Carpenters who are hired from Construction Locals and shall not apply to any work that may be subcontracted out.

(b) Any and all items not manufactured by the Employer shall be installed under the terms and conditions of the applicable Carpenters Master Agreement.

Regular employees of the Employer may perform work on the jobsite that is permissible under the terms of the Carpenters Master Agreement. Such regular employees who are assigned to such work shall apply for dispatch slips at the appropriate office of the appropriate Regional Council or Local Union and such dispatch slips shall be issued for such employees for jobsite work for the duration of their employment with such Employer. Such regular employees shall be subject to the hours in accordance with the terms and conditions of the Carpenters Master Agreement except for travel time, mileage and subsistence and other matters specifically provided for herein. The Employer shall hire temporary additional employees for work at the construction site as needed directly from the Union or the appropriate Regional Council in accordance with the terms and conditions of the Carpenters Master Agreement applicable to the geographical area of the assignment.

(c) If an employee leaves from the plant to go to the jobsite during his regular work hours and returns to the plant within the same regular work day he shall be paid for all travel time at the regular inside Millmen's rate and in addition, all mileage as required. If an employee leaves from his home to go to the jobsite or if any employee returns to his home from the jobsite, car mileage, when required and travel time, shall be paid between the jobsite and his home or between the jobsite and the plant site, whichever is the shorter distance, provided, however, that payment for car mileage or travel time shall not be required to or from the jobsite located less than twenty-five (25) miles distance from either his home or the plant (payment commences with the 26th mile for mileage and travel time.)

(d) Travel time outside the regular work day as defined in Sections 2 and 3 of this Agreement or the regular work week as defined in the Carpenters Master Agreement will be paid at the rate of time and one-half of the regular inside Millmen's rate and in addition all mileage as required. Travel time from job to job during the regular work day, as defined in Section 2 of this Agreement, will be paid at the appropriate straight-time rate as provided in paragraph A of this section.

(e) Car mileage shall be paid at the rate of twenty-nine cents ($.29) per mile for the use of an employee's car when transportation is not furnished by the Employer.

(f) Jobsite work outside of Alameda, Contra Costa, Marin, San Francisco, San Mateo and Santa Clara Counties or jobsite work requiring overnight stay within said counties, shall be known as "out of town work" for employees working under the terms and conditions of this Agreement.

When "out of town work" is required, transportation shall be provided or the transportation costs shall be borne by the Employer. Adequate room and board must be provided for the individual employee or a minimum overnight subsistence of thirty dollars ($30.00) per night shall be paid, whichever is greater.

(g) Special arrangements shall be made between the Employer and the employee prior to doing work on any jobsite work presenting unusual circumstances not adequately covered by this Agreement.

(h) Nothing herein shall be construed to require the terms of this Agreement to be applicable to construction carpenters employed by the Employer.

## Section 20
## Mill-Cabinet Industry Appreticeship & Training/Employee Benefit Fund

(a) Each Employer signatory hereto shall contribute the amount of ten cents ($.10) per hour for each hour worked by each employee in each calendar month to the Mill-Cabinet Industry Apprenticeship and Training/Employee Benefit Trust Fund.

It is agreed that nine cents ($.09) from the above amount will be contributed to the Mill-Cabinet Apprenticeship and Training/ Employee Benefit Trust Fund for:

1. journeymen, apprenticeship and other training programs,

and

2. as a fringe reserve for the purpose of reimbursing employees for bereavement leave or jury duty pursuant to Section 7 (General Provisions) (E) and (F), Appendix E of the Carpenters Master Agreement for Northern California, provided such Employer has been a contributor to the Mill-Cabinet Industry Apprenticeship and Training/Employee Benefit Trust Fund.

These monies shall be allocated jointly by the Trustees and representatives of the local unions. The bargaining parties acknowledge that the Trustees of the Mill-Cabinet Apprenticeship and Training/Employee Benefit Trust Fund are responsible for the allocation of these funds.

(b) It is further agreed, that the remaining one cent ($.01) per hour from the contribution rate of ten cents ($.10) will be contributed to the National Labor-Management Committee for the Custom Wookworking Industry for all hours worked by employees covered by this agreement. The averaging of all hours worked during the preceding calendar year (January to December) will determine the contribution amount to be made each month from the Apprenticeship Training/Employee Benefit Trust Fund to the National Labor-Management Committee for the Custom Woodworking Industry (NLMCCWI), 101 Constitution Avenue NW, Washington, DC 20001.

By the execution of this Agreement, each individual Employer, the Employer, each individual local union and the Unions hereby agree to accept and be bound by the provisions of the Mill-Cabinet Industry Apprenticeship and Training/Employee Benefit Fund Trust Agreement and the National Labor-Management Committee for the Custom Woodworking Industry Trust Agreement, as each is established and as each may be amended from time to time in accordance with their terms.



Each individual Employer, the Employer, each individual local union and the Unions shall have all rights, privileges and obligations as set forth in each Trust. No amendment to the Trusts may increase the obligation of any Employer to contribute to the Funds. The costs of establishing and maintaining the Funds shall be borne out of contributions to the Funds.

## WAGE SCHEDULE "A"

| JOB CLASSIFICATION | Effective 07/01/04 |
|---|---|
| Journeyman | 23.30 |
| Foreman | 24.30 |
| Layout | 24.05 |
| Maintenance | 23.30 |
| Truck Driver | 22.80 |
| * Production Worker I | 16.05 |
| ** Production Worker II | 14.05 |

| FRINGE BENEFITS | Effective 07/01/04 |
|---|---|
| Health & Welfare | 5.055 |
| Pension | 3.00 |
| Annuity | 1.00 |
| Vacation/Holiday | 1.85 |
| Work Fee | .87 |
| Apprenticeship/Employee Benefit Fund | .10 |
| NCMCICAF | .02 |

* Fringes for Production Worker I: H&W, VAC, WF, ANNUITY
** Fringes for Production Worker II: H&W, VAC, WF

**PRODUCTION WORKER HIRING RATIO:**

Each individual employer is entitled to hire one (1) Production Worker. Thereafter the following ratio will prevail: One (1) additional Production Worker for every five (5) employees employed, of which at least one (1) must be an Apprentice.

VACATION AND WORK FEE AMOUNTS ARE ADDED TO THE HOURLY RATE TO ESTABLISH THE GROSS PAY. THE GROSS AMOUNT IS SUBJECT TO NORMAL PAYROLL DEDUCTIONS. AFTER NORMAL DEDUCTIONS, THE FULL VACATION AND WORK FEE CONTRIBUTIONS ARE DEDUCTED, REPORTED AND PAID TO THE APPROPRIATE TRUST FUND.

**FUTURE RATES:**

**Effective July 1, 2004**

The work fee rate for Employers signatory to Appendix E shall be set at twenty cents ($0.20) lower than the rate established under the Carpenters Master Agreement. This lower work fee shall be paid by all signatory employers (ACM members and Independents). Eighty-five cents ($0.85) shall be paid as part of the taxable wage paid to employees and shall be contributed to the Vacation B Account on behalf of each individual employee.

Two cents ($0.02) on all hours worked or paid for, from the twenty cent ($0.20) reduction in the work fee shall be contributed by all Employers signatory to Appendix E into a newly established "Northern California Mill Cabinet Industry Contract Administration Fund" (NCMCICAF). The contributions will be collected in an escrow account until such time as this non-profit organization is formed. The Union will provide legal assistance towards the creation of same. The Union will fund the initial cost for filing fees, etc.

The Contract Administration Fund contributions will be collected by the Carpenters Funds Administration Office and forwarded to the NCMCICAF with a service fee to be established by the Trust consistent with the service fees charged to similar contract administration and industry promotion funds.



**Effective July 1, 2005**

Increase wages by twenty-five cents ($0.25) per hour. The increase shall be applied to all classifications as listed in Schedule "A". The Apprentice rate percentages shall remain unchanged and shall be recalculated based on the new journeyman rate.

The Plan B Health and Welfare contribution rate shall be increased by eighty-five cents ($0.85) to five dollars and ninety and one-half cents ($5.905) per hour.

The Pension contribution rate shall be increased by twenty cents ($0.20) to three dollars and twenty cents ($3.20) per hour.

The Vacation and Holiday contribution rate shall be increased by five cents ($0.05) to one dollar and ninety cents ($1.90) per hour.

The work fee rate for Employers signatory to Appendix E shall be set at twenty cents ($0.20) lower than the rate established under the Carpenters Master Agreement. This lower work fee shall be paid by all signatory employers (ACM members and Independents). Ninety cents ($0.90) shall be paid as part of the taxable wage paid to employees and shall be contributed to the Vacation B Account on behalf of each individual employee.

Two cents ($0.02) on all hours worked or paid, from the twenty cent ($0.20) reduction in the work fee shall be contributed by all Employers signatory to Appendix E into a newly established "Northern California Mill Cabinet Industry Contract Administration Fund" (NCMCICAF). The contributions will be collected in an escrow account until such time as this non-profit organization is formed.

The Contract Administration Fund contributions will be collected by the Carpenters Funds Administration Office and forwarded to the NCMCICAF with a service fee to be established by the Trust consistent with the service fees charged to similar contract administration and industry promotion funds.

The Union reserves the right to reallocate the wage and fringe benefit amounts during the term of the Agreement, excluding the agreed upon health and welfare contributions.

**Effective July 1, 2006**

Increase wages by twenty-five cents ($0.25) per hour. The increase shall be applied to all classifications as listed in Schedule "A". The Apprentice rate percentages shall remain unchanged and shall be recalculated based on the new journeyman rate.

The Plan B Health and Welfare contribution rate shall be increased by eighty-five cents ($0.85) to six dollars and seventy-five and one-half cents ($6.755) per hour.

The Pension contribution rate shall be increased by fifteen cents ($0.15) to three dollars and thirty-five cents ($3.35) per hour.

The Vacation and Holiday contribution rate shall be increased by five cents ($0.05) to one dollar and ninety-five cents ($1.95) per hour.

The work fee rate for Employers signatory to Appendix E shall be set at twenty cents ($0.20) lower than the rate established under the Carpenters Master Agreement. This lower work fee shall be paid by all signatory employers (ACM members and Independents). One dollar and one cent ($1.01) shall be paid as part of the taxable wage paid to employees and shall be contributed to the Vacation B Account on behalf of each individual employee.

Two cents ($0.02) on all hours worked or paid, from the twenty cent ($0.20) reduction in the work fee shall be contributed by all Employers signatory to Appendix E into a newly established "Northern California Mill Cabinet Industry Contract Administration Fund". The contributions will be collected in an escrow account until such time as this non-profit organization is formed.

The Contract Administration Fund contributions will be collected by the Carpenters Funds Administration Office and forwarded to the NCMCICAF with a service fee to be established by the Trust consistent with the service fees charged to similar contract administration and industry promotion funds.

The Union reserves the right to reallocate the wage and fringe benefit amounts during the term of the Agreement, excluding the agreed upon health and welfare contributions.

**Effective July 1, 2007**

Increase wages by twenty-five cents ($0.25) per hour. The increase shall be applied to all classifications as listed in Schedule "A". The Apprentice rate percentages shall remain unchanged and shall be recalculated based on the new journeyman rate.

The Plan B Health and Welfare contribution rate shall be increased by eighty-five cents ($0.85) to seven dollars and sixty and one-half cents ($7.605) per hour.

The Pension contribution rate shall be increased by twenty cents ($0.20) to three dollars and fifty-five cents ($3.55) per hour.

The Vacation and Holiday contribution rate shall be increased by five cents ($0.05) to two dollars ($2.00) per hour

The work fee rate for Employers signatory to Appendix E shall be set at twenty cents ($0.20) lower than the rate established under the Carpenters Master Agreement. This lower work fee shall be paid by all signatory employers (ACM members and Independents). One dollar and seven cents ($1.07) shall be paid as part of the taxable wage paid to employees and shall be contributed to the Vacation B Account on behalf of each individual employee.

Two cents ($0.02) on all hours worked or paid, from the twenty cent ($0.20) reduction in the work fee shall be contributed by all Employers signatory to Appendix E into a newly established "Northern California Mill Cabinet Industry Contract Administration Fund" (NCMCICAF). The contributions will be collected in an escrow account until such time as this non-profit organization is formed.

The Contract Administration Fund contributions will be collected by the Carpenters Funds Administration Office and forwarded to the NCMCICAF with a service fee to be established by the Trust consistent with the service fees charged to similar contract administration and industry promotion funds.

The Apprenticeship/Employee Benefit contribution rate shall remain at ten cents ($0.10) per hour for the duration of the Agreement.

The Union and the A.C.M. agree to meet, following the execution of this Extension Agreement, for the purpose of exploring the possibility of establishing an agreement covering production work. This agreement shall be subject to mutual agreement of the parties.

It is agreed that there shall be no cap of hours applied to any wages or benefit contributions required by the Carpenters Master Agreement or this Appendix E.



The Union reserves the right to reallocate the wage and fringe benefit amounts during the term of the Agreement, excluding the agreed upon health and welfare contributions.

**APPRENTICE WAGE RATES AND SCHEDULE OF BENEFITS**

**Effective July 1, 2004**

Increase wages by twenty-five cents ($0.25) per hour. The increase shall be applied to all classifications as listed in Schedule "A". The Apprentice rate percentages shall remain unchanged and shall be recalculated based on the new journeyman rate.

The Plan B Health and Welfare contribution rate shall be increased by eighty-five cents ($0.85) to five dollars and five and one-half cents ($5.055) per hour.

The Pension contribution rate shall be increased by fifteen cents ($0.15) to three dollars ($3.00) per hour.

The Vacation and Holiday contribution rate shall be increased by five cents ($0.05) to one dollar and eighty-five cents ($1.85) per hour.

Effective Date 07/01/04

| Apprentice Training Period | Work Hours | School Hours | Shop Rates | Rate of % | Outside Rate |
|---|---|---|---|---|---|
| First Period 0 to 6 months | | | 11.07 | 47.5% | 12.62 |
| Second Period 7 to 12 months | 600 | 72 | 11.07 | 47.5% | 12.62 |
| Third Period 13 to 18 months | 1200 | 144 | 12.82 | 55% | 14.61 |
| Fourth Period 19 to 24 months | 1800 | 216 | 14.56 | 62.5% | 16.60 |
| Fifth Period 25 to 30 months | 2400 | 288 | 16.31 | 70% | 18.59 |
| Sixth Period 31 to 36 months | 3000 | 360 | 18.06 | 77.5% | 20.58 |
| Seventh Period 37 to 42 months | 3600 | 432 | 19.81 | 85% | 22.58 |
| Eighth Period 43 to 48 months | 4200 | 504 | 21.55 | 92.5% | 24.57 |
| Journeyman | 4800 | 576 | 23.30 | 100% | 26.56 |

First six (6) months through fourth six (6) months: H&W, WF, APPR-EBF, VAC

Fifth six (6) months through eighth six (6) months: ALL FRINGES

Effective July 1, 2004 — Fringe Benefit Rate:

H & W ............ 5.055 per hour
WORK FEE ............ 0.85
*APPR/EBF ............ 0.10
PENSION ............ 3.00
VACATION ............ 1.85
ANNUITY ............ 1.00
NCMCICAF ............ 0.02

**UNIFORM SUBSTANCE ABUSE POLICY:**

The Carpenters 46 Northern California Counties Uniform Substance Abuse Policy is available to all employers signatory to Appendix E.

**ASSOCIATED CABINET MANUFACTURERS**

**ADDENDUM "A"**

MEMBER FIRMS OF ASSOCIATED CABINET MANUFACTURERS:

Commercial Casework, Inc.
41780 Christy Street
Fremont, CA 94538

Design Workshop
486 Lesser Street
Oakland, CA 94601

East Bay Fixture Company
941 Aileen Street
Oakland, CA 94608

Lloyd Gordon Mfg. Company
5225 Central Avenue
Richmond, CA 94804

Mission Bell Manufacturing
15749 Concord Circle
Morgan Hill, CA 95037

Plant Architectural Woodworking
300 Newhall Street
San Francisco, CA 94124

Tamalpais Commercial Cabinetry
200 Ninth Street
Richmond, CA 94802



The following Sections of the Carpenters Master Agreement for Northern California shall not apply to the Millmen's Agreement:

Sections:

| | |
|---|---|
| Section 2-A | CONTRACT WORK PRESERVATION COMMITTEE |
| Section 12 | UNION SECURITY |
| Section 13 | UNION REPRESENTATIVE |
| Section 14 | STEWARDS |
| Section 17 | PICKET LINES |
| Section 22 | WORK DAY |
| Section 24 | (DESIGNATED OFF DAYS) WORK WEEK |
| Section 25 | HOLIDAYS |
| Section 26 | OVERTIME |
| Section 27 | PARKING |
| Section 29 | PICKUP TIME |
| Section 30 | SHOW UP TIME, TERMINATION PAY & DISCHARGE |
| Section 31 | PAYMENT OF WAGES |
| Section 32 | PROHIBITION OF PIECE WORK |
| Section 36 | SUBCONTRACTOR RECORDS |
| Section 37 | BONDING |
| Section 39 | WAGE RATES |
| Section 44 | APPRENTICESHIP |
| Section 45 | CONTRACT ADMINISTRATION, WORK PRESERVATION, CALIFORNIA CONSTRUCTION ADVANCEMENT PROGRAM, AND CONSTRUCTION INDUSTRY ADVANCEMENT FUND |
| Section 48 | SUBSISTENCE |
| Section 49 | HIRING |

APPENDIX A-B-C-D

NOTICE OF HIRE

**NOTICE TO UNION**
**CONFIRMING ORDER**
**FOR REFERRAL OF PERSONNEL**

TO: Local Union No.______ Date:______________________

This will confirm our order for qualified personnel, described below

Date of order___________. May be telephone___. Other___

| **Number** | **Job Title or Description** |
|---|---|
| 1. | |
| 2. | |
| 3. | |

Special requirements:______________________________

Signed by:______________________
Name and Title

Signed by:______________________
Company and Address

a) Union has 48 hours, excluding Saturdays, Sundays and Holidays to fill this order. Time being as of time of original order.

b) This form is to be mailed the same day if order for personnel is placed by telephone or given personally to a union representative.



NOTICE OF HIRE

**EXHIBIT 2**
**NOTICE TO LOCAL UNION**
**OF EMPLOYEE HIRE**

TO: Local Union No.______ Date:______________________

This constitutes the required notice of our having hired the following employee:

Name ______________________________

Address ______________________________

Social Security # ______________ Telephone # ______________

Date Hired ______________ Date began work ______________

Job Hired for ______________________________

Rate of Pay ______________________________

Signed by:______________________
Name and Title

Form to be completed and mailed within one (1) day of employee's beginning work.

Signed by:______________________
Company and Address

## Appendix F
## Carpenters Master Agreement
## Scaffold Erection Addendum

The terms and conditions of this work addendum shall apply to Scaffold/Shoring erection and dismantling work only and all terms and conditions of the Carpenters Master Agreement shall remain in full force and effect unless specifically amended by this Addendum.

1. The work day shall be eight (8) consecutive hours worked.

2. Travel pay from the employer's warehouse or shop in a company vehicle to the furthermost jobsite shall be paid one way only at the regular scaffold wage rate. Fringe benefits are not to be included for travel pay.

3. There shall be no restrictions on the mobility of regular workers of the individual employers in the 46 Northern California Counties.

4. After the fifth (5th) working day of employment, the individual employer may discharge any employee for just cause only. Just cause is subject to Section 51, the grievance and arbitration provision of the Carpenters Master Agreement. The individual employer during the first five (5) working days of employment may reject or discharge any employee for any reason.

5. The training of scaffold/shoring erectors will be accomplished by establishing a four (4) year apprenticeship program. This program will be complimented with on-the-job training by the individual employer.

The wage rates for apprentices shall be the following percentages of the applicable journeyman classification in the appropriate geographical area:

| Period | Months | Rate |
|---|---|---|
| First Period | 0 to 6 months<br>Health & Welfare, Work Fee, Industry Promotion , UBC Health & Safety, Work Preservation, Training, Carpenter Employers Contract Administration | 60% |
| Second Period | 7 to 12 months<br>Health & Welfare, Work Fee, Industry Promotion, UBC Health & Safety, Work Preservation, Training, Vacation, Carpenter Employers Contract Administration | 65% |
| Third Period | 13 to 18 months<br>Health & Welfare, Work Fee, Industry Promotion, UBC Health & Safety, Work Preservation, Training, Vacation, Annuity, Carpenter Employers Contract Administration | 70% |
| Fourth Period | 19 to 24 months<br>Health & Welfare, Work Fee, Industry Promotion, UBC Health & Safety, Work Preservation, Training, Vacation, Annuity, Carpenter Employers Contract Administration | 75% |
| Fifth Period | 25 to 30 months | 80% Full Fringes |
| Sixth Period | 31 to 36 months | 85% Full Fringes |
| Seventh Period | 37 to 42 months | 90% Full Fringes |
| Eighth Period | 43 to 48 months | 95% Full Fringes |



6. Scaffold erectors may be allowed to drive company equipment and materials to all job sites.

7. The Union and the individual employer will cooperate to ensure that all signatory Scaffold/Shoring contractors are in compliance with the terms and conditions of the Carpenters Master Agreement.

CARPENTERS 46 NORTHERN CALIFORNIA COUNTIES CONFERENCE BOARD

By ____________________ By ____________________
Robert Alvarado, Chairman William Feyling, Executive Director

CONSTRUCTION EMPLOYERS' ASSOCIATION OF CALIFORNIA

By ____________________
Michael Walton, Secretary

## Appendix G

## Carpenters 46 Northern California Counties Bridge Structure and Highway Related Addendum to the 2003-2008 Carpenters Master Agreement

Notwithstanding the working rules and conditions of the 46 Counties Carpenters Master Agreement, the following special terms and conditions shall apply to Highway work as described herein.

The Carpenters 46 Northern California Counties Conference Board, for and on behalf of its affiliates, agrees to the following Addendum to the above Agreement:

### Section 1—Coverage

All work performed by Bridge Builder Carpenters on highway construction including the construction, improvement, modification and demolition of all or any part of streets, highway and bridges.

### Section 2—Mobility and Hiring

There will be no restrictions on the free movement of workers employed by a signatory employer from one job to another anywhere within the 46 Northern California Counties. Should an employer require additional workers (new hires) on any given job that has commenced, such workers shall be hired from the hiring hall having primary geographical jurisdiction over the work site.

### Section 3—Work Registration

The Union will provide a separate format for work registration as a Bridge Builder Carpenter in their hiring hall procedures. When the individual Employer requests a Bridge Builder Carpenter, the Union will only dispatch those members who have indicated Bridge Builder work experience. The dispatch of apprentices shall not be subject to this provision.

The parties agree that to adequately respond to the needs of the bridge building industry, the Union has agreed to establish a one-stop hiring procedure. The Union has agreed to establish a 1-800 number for Bridge Builder dispatch requests.

### Section 4—Wages & Fringe Benefits

(a) Wage and fringe benefit rates for Bridge Builder Carpenters shall be as provided in Section 39 A, B, C and D of the 2003-2008 Carpenters Master Agreement, effective July 1, 2003.

(b) Future wage and/or fringe benefit considerations.

Wage and Fringe benefit increases will be uniform throughout the entire 46 Northern California Counties pursuant to Section 39 (E) of the 2003-2008 Carpenters Master Agreement.

In addition, the following wage only increase shall apply to projects with a total project value of less than twenty-five million dollars ($25,000,000) and to projects which are not covered under the provisions of Section 39 B(2), B(3), C(2) or C(3) of the Carpenters Master Agreement to equalize Bridge Builder wages throughout the 46 Northern California Counties.

Three (3) Counties Area

January 1, 2004 $0.88

Thirty-Four (34) Counties Area

January 1, 2004 $1.16



### Section 5—Holiday/Designated Off Days

(a) Thirty-Four (34) Counties and Three (3) Counties Area:

Section 25 (Holidays) of the Master Agreement shall be modified as follows:

The following are recognized holidays: New Year's Day, Martin Luther King Jr. Day, Presidents' Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, the Friday following Thanksgiving Day, and Christmas Day. If any of the above holidays fall on Sunday, the Monday following shall be observed as the holiday.

(b) Nine (9) Counties Area:

The nationally recognized holidays and designated off days shall be in accordance with the provisions of Section 25 (Holidays) of the Carpenters Master Labor Agreement.

### Section 6—Four by Ten (4 x 10) Workweek

An individual Employer may establish a workweek for four (4) consecutive days of ten (10) consecutive hours. The applicable overtime rate shall be paid for all work before a shift begins, after ten (10) hours, and on Fridays, Saturdays, Sundays, and holidays. In the event two (2) shifts are employed, the first shift shall work (exclusive of meal period) ten (10) consecutive hours for which ten (10) hours shall be paid; the second shift shall be ten (10) consecutive hours of work, exclusive of meal period, and shall constitute a shift's work for which ten (10) hours shall be paid. Provided, further, all shifts are worked the same four (4) consecutive days during a 4 x 10 workweek, except as may be changed by mutual agreement.

In the event that work cannot be performed Monday through Thursday, (4 x 10 hour workweek) because of inclement weather or major mechanical breakdown beyond the control of the Employer, employees (at their option) may make-up such lost work day(s) on Friday and shall be paid at the applicable straight time rate.

The Union and the Employer will commit to proposing and supporting legislation to change existing law to allow for a 4 x 10 workweek on all Bridge Structure and Highway Related work.

### Section 7—Make Up Day

In the event that work cannot be performed Monday through Friday because of inclement weather or major mechanical breakdown, Bridge Builder Carpenters (at their option) may make up such day on Saturday and shall be paid at the applicable straight time rate.

### Section 8—Substance Abuse Testing

The Carpenters 46 Counties Conference Board will actively participate in the negotiation of a Basic Trades Uniform Substance Abuse Policy with the Cement Masons, Laborers, Operating Engineers, Pile Drivers and Teamsters during the life of this Agreement.

An Individual Employer may initiate unannounced lottery testing; a selection process where all company employees are selected for testing and each company employee has an equal chance of being selected for testing. If an Individual Employer initiates such lottery testing, all company employees shall be subjected to such testing. An individual Employer who initiates lottery testing shall specifically state in its notice to the Union and its notice to employees that employees will be subject to lottery testing. The Individual Employer shall give thirty (30) days notice to the Union and employees prior

to implementing a lottery drug testing program. Any such lottery testing shall be administered by an independent third party.

**Section 9—Shift Work**

When a job site access has been limited by the construction user, a special shift may be established during off hours, Monday through Friday, when required as a condition of securing the work. The employer may pay eight (8) hours pay for eight (8) hours work on such shift. Work in excess of eight (8) hours shall be subject to the overtime provisions of the Agreement.

No special shift shall be established or started for less than three (3) days duration unless the contracting authority specifies work tasks of only one (1) or two (2) days duration. Work performed during special shifts of less than three (3) days duration shall be paid at the wage rate of 12.5% premium pay for a minimum of eight (8) hours. If as a result of working such special shift(s) a Bridge Builder loses the opportunity to work his/her regular workweek, then all work performed on such special shift(s) shall be paid at the normal overtime rate.

**Section 10—Maximum Utilization**

An employer may maximize the utilization of all its United Brotherhood of Carpenters members by working them under the terms and conditions of the Bridge Structure and Highway Related Addendum.

**Section 11**

In all other respects, the terms and conditions of the 2003-2008 Carpenters Master Agreement, or any other Master Agreement to which a bridge building employer may be bound, shall continue in full force and effect for the remainder of said term.

Construction Employers' Association

By: ______________________________

Michael Walton, Secretary

Carpenters 46 Northern California Counties Conference Board

By: ______________________________

Robert Alvarado, Chairman

By: ______________________________

William Feyling, Executive Director

# EXHIBIT 2

# 2006-2010
# MASTER AGREEMENT

## for

## NORTHERN CALIFORNIA

## between

## ENGINEERING & UTILITY CONTRACTORS ASSOCIATION

## and

## LABORERS





# TABLE OF CONTENTS


| Section | Title | Page |
|---|---|---|
| SECTION 1 | GENERAL PROVISIONS | 4 |
| SECTION 2 | BARGAINING REPRESENTATIVES | 7 |
| SECTION 3 | EMPLOYMENT AND DISCHARGE | 8 |
| SECTION 4 | SHOW-UP TIME | 14 |
| SECTION 5 | HIGHER WAGES | 15 |
| SECTION 6 | LUNCH TIME | 15 |
| SECTION 7 | RECORDS | 15 |
| SECTION 8 | NO CESSATION OF WORK | 15 |
| SECTION 9 | GRIEVANCE PROCEDURE | 16 |
| SECTION 9A | ENGINEERING & UTILITY CONTRACTORS ASSOCIATION INDUSTRY PROMOTION FUND | 18 |
| SECTION 9B | INDUSTRY STABILIZATION FUND | 19 |
| SECTION 9C | JOINT MARKETING TRUST FUND | 19 |
| SECTION 10 | PAYMENT OF WAGES | 19 |
| SECTION 11 | SUBCONTRACTORS | 20 |
| SECTION 12 | CONFLICTING CONTRACTS | 21 |
| SECTION 13A | ELIMINATION OF RESTRICTIONS ON PRODUCTION | 21 |
| SECTION 13B | PROTECTIVE CLOTHING | 22 |
| SECTION 13C | SAFETY | 22 |
| SECTION 14A | ADDITIONAL WORK OR CLASSIFICATIONS | 23 |
| SECTION 14B | JURISDICTIONAL DISPUTES | 24 |
| SECTION 15 | PRE-JOB CONFERENCE | 24 |
| SECTION 16A | EMPLOYER'S MEMBERSHIP | 24 |
| SECTION 16B | AGREEMENT BINDING UPON PARTIES | 25 |
| SECTION 17 | CONTRACTING-PIECE WORK | 25 |
| SECTION 18 | WAGES | 25 |
| SECTION 19 | WAGES APPLICABLE TO CLASSIFICATIONS | 25 |
| SECTION 20A | OVERTIME RATES, HOURS AND WORKING CONDITIONS | 26 |
| SECTION 20B | PARKING | 29 |
| SECTION 21 | STATUS OF FOREMEN | 29 |
| SECTION 22 | STEWARD | 29 |
| SECTION 23 | RECOGNIZED HOLIDAYS | 30 |
| SECTION 24 | GUNITE, SHOT CRETE, PANEL CRETE AND SIMILAR TYPE WORK INCLUDING ALL PLACING, FINISHING AND PATCHING OF SHOT CRETE OR GUNITE | 30 |
| SECTION 25 | WRECKING WORK; GARDENING, HORTICULTURAL AND LANDSCAPING WORK | 30 |
| SECTION 26 | LIABILITY OF THE PARTIES | 30 |
| SECTION 27 | EMPLOYEES NOT TO BE DISCHARGED FOR RECOGNIZING AUTHORIZED PICKET LINES | 31 |






| | | |
|---|---|---|
| SECTION 28A | HEALTH AND WELFARE PLAN, PENSION/ANNUITY PLAN, VACATION-HOLIDAY-DUES SUPPLEMENT PLAN, TRAINING RETRAINING/APPRENTICESHIP PLAN | 31 |
| SECTION 28B | DELINQUENCY WITHDRAWALS | 33 |
| SECTION 28C | SECURITY FOR INDIVIDUAL EMPLOYER PAYMENTS INTO TRUST FUNDS | 33 |
| SECTION 28E | SUPPLEMENTAL DUES | 34 |
| SECTION 28F | WAGE AND FRINGE INCREASE | 34 |
| SECTION 29 | GENERAL SAVING CLAUSE | 35 |
| SECTION 30 | CHANGE OF NAME OR STYLE | 35 |
| SECTION 31 | WARRANTY | 35 |
| SECTION 32 | EFFECTIVE AND TERMINATION DATE | 36 |
| SUPPLEMENT NO. 1 | LABORERS WAGE RATES | 38 |
| SUPPLEMENT NO. 2 | GUNITE, SHOTCRETE, PANELCRETE AND SIMILAR TYPE WORK INCLUDING ALL PLACING, FINISHING AND PATCHING OF SHOTCRETE OR GUNITE | 47 |
| SUPPLEMENT NO. 3 | WRECKING WORK | 49 |
| SUPPLEMENT NO. 4 | GARDENERS, HORTICULTURAL & LANDSCAPE WORKERS | 50 |
| SUPPLEMENT NO. 5 | LABORERS' APPRENTICESHIP PROGRAM | 52 |
| SUPPLEMENT NO. 6 | ZONE PAY | 53 |
| SCHEDULE "A" | DISTRICT COUNCIL OF LABORERS HIRING HALL LOCATIONS | 57 |





**2006-2010**
**MASTER AGREEMENT**
**for**
**NORTHERN CALIFORNIA**
**between**
**ENGINEERING & UTILITY**
**CONTRACTORS ASSOCIATION**
**and**
**LABORERS**

THIS AGREEMENT, made and entered into this 7th day of April, 2006 and effective the 26th day of June, 2006 through June 30, 2010, by and between the ENGINEERING & UTILITY CONTRACTORS ASSOCIATION, herein after referred to as COLLECTIVE BARGAINING REPRESENTATIVE OF EMPLOYER, and the NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, hereinafter referred to as UNION, modifying, amending and changing the Agreement made and entered into the 17th day of May, 1951, as modified by the Agreements dated June 4, 1952; July 14, 1953; April 13, 1954; April 12, 1955; April 30, 1956; April 19, 1957; June 30, 1959; July 28, 1961; June 27, 1962; July 1, 1965; June 16, 1968; June 16, 1971; July 2, 1974; May 10, 1977; April 30, 1980; January 18, 1983; March 20, 1986; July 1, 1989; July 15, 1992; June 14, 1996, June 28, 1999 and June 30, 2002 by and between the ENGINEERING & UTILITY CONTRACTORS ASSOCIATION and the NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS of the LABORERS' INTERNATIONAL UNION OF NORTH AMERICA.

WITNESSETH:

## Section 1 General Provisions

A. Definitions

(1) (a) The term "Employer" shall refer to the Engineering & Utility Contractors Association.

(b) The term "Individual Employer" shall mean (1) an employer who has authorized the Association (Employer) to represent said Individual Employer with respect to collective bargaining with the Union; or (2) is bound to the terms and conditions of this Agreement under the subcontracting requirements of this Agreement; (3) directly signs this Agreement with the Union as an Independent or Non-Association Member. The Employer agrees to provide the Union with a current list of Individual Employers for whom it has authority to represent.





(2) The term "Union" shall refer to the Northern California District Council of Laborers.

(3) This Agreement shall apply to any employee who performs work falling within the presently recognized jurisdiction of those Local Unions of the Laborers' International Union of North America affiliated with the Northern California District Council of Laborers; except that this Agreement shall not apply to superintendents, assistant superintendents, general foremen, civil engineers and their helpers, timekeepers, messenger persons, confidential employees and office help.

(4) This Agreement shall apply to Northern California, which term means that portion of the State of California above the Northerly boundary of Kern County, the Northerly boundary of San Luis Obispo County, and the Westerly boundaries of Inyo and Mono Counties, which includes the following counties; Alameda, Alpine, Amador, Butte, Calaveras, Colusa, Contra Costa, Del Norte, El Dorado, Fresno, Glenn, Humboldt, Kings, Lake, Lassen, Madera, Marin, Mariposa, Mendocino, Merced, Modoc, Monterey, Napa, Nevada, Placer, Plumas, Sacramento, San Benito, San Francisco, San Joaquin, San Mateo, Santa Clara, Santa Cruz, Shasta, Sierra, Siskiyou, Solano, Sonoma, Stanislaus, Sutter, Tehama, Trinity, Tulare, Tuolumne, Yolo and Yuba.

(5) The "method of delivery of notices", required by this Agreement shall be satisfied by one of the following means of delivery; email, fax, certified mail, regular mail or telegram

B. Coverage and Description of Laborers' Work Covered by this Agreement.

(1) This Agreement shall cover all work coming within the recognized jurisdiction of the Laborers' International Union of North America.

(2) Subject to the preceding paragraph and subject also to the provisions of Section 14 of this Agreement, it is agreed that Laborers' work shall include but not be limited to: All Laborers' work necessary to tend the carpenters and other building trades craftsmen, stripping of concrete forms, handling and raising of slip forms, sewer cleaners, gardening, horticulture, landscaping, trackmen (construction, maintenance, repair), all cleanup of debris, grounds and buildings, steam cleaning and all General Laborers' work. In accordance with Green Book Decision dated August 2, 1920 - December 11, 1924, the loading and unloading, carrying and handling of all rods and materials for use in reinforcing concrete construction shall be done by Laborers under the supervision of such person as the Employer may designate. The hoisting of rods shall be done by Laborers, except when a derrick or outrigger operated by other than hand power is used.

All Laborers' work in connection with excavation for building and all other construction, including digging of trenches, piers, foundations and holes; digging, lagging, sheeting, cribbing and bracing of foundations, holes, caissons and cofferdams, manning, setting and moving all manually movable pumps. (This does not restrict the Laborers from performing other work.)

All Laborers' work in connection with concrete work, including chipping and grinding, sandblasting,





mixing, handling, shoveling, conveying, pouring, concrete pumps and similar type machines, grout pumps, nozzlemen (including gunmen and potmen), vibrating, guniting and otherwise applying concrete, whether done by hand or any other process, and wrecking, stripping, dismantling and handling concrete forms and false work, including tending of plasterers and brick and block layers.

All Laborers' work in the excavation, grading, preparation concreting, asphalt and mastic paving, paving, ramming, curbing, flagging and laying of other stone materials, and surfacing of streets, ways, courts, underpasses, overpasses and bridges.

All work in connection with the operation of spreader boxes, such as True-Lay, Rola Pavers and Laytons or similar type models, including but not limited to all shoveling and shifting material and cleaning of boxes, shall be the work of the Laborers. All Laborers' work in connection with the cutting of streets and ways for all purposes, including aligning by any method, digging of trenches, manholes, etc., handling and conveying of all materials for same; concreting of same; and the backfilling, grading and resurfacing of same. All Laborers' work in connection with the construction of caissons, cofferdams, subways (except as covered by Master Tunnel Agreement), aqueducts, water lines, culverts, flood controls, airports, drains and sewers, and any type of conduit, no joint pipe, including the cribbing, lagging, bracing, sheeting, checking grade for pipelaying, trench jacking and handling of lagging hammers on all open trenches and ditches. All Laborers' work in connection with shoring, underpinning including cutting, fitting, placing and raising of all structures.

All Laborers' work in connection with drilling, all work of loading, placing and blasting of all powder and explosives of whatever type regardless of the method used for such loading and placing.

All signaling and rigging in connection with Laborers' work.

All Laborers' work in connection with the wrecking of buildings and other structures.

All Laborers' work in connection with the slinging, handling and placing of all rip-rap, rock and stone on highways, jetties, retaining walls or wherever used.

All wrecking work on construction and/or razing sites: all Laborers' work on pre-casting or prefabrication at the construction project site or at a precast or prefabrication yard specifically established and operated for that one particular construction job.

All work in connection with the operation of such equipment that is necessary and incidental to carry out the work of the Laborer.

All Laborers' work in connection with Trenchless Technology, including pipe installation, bursting, relining or similar trenchless laborer work.

All Laborers' work in connection with Dry Utilities, including electrical and telecommunication

conduit layer, joint utility trench laborer including gas.

All Laborers' work in connection with Remediation/Land Restoration, including wetlands restoration, mitigation, or re-vegetation of lands (ornamental landscape is not included in this classification).

(3) All classifications listed in Supplement No. 1 of this Agreement which are not listed under this Section shall be included in the coverage and description of Laborers' work just as though incorporated in full in this Section.

(4) Should an Individual Employer signatory to this Agreement subcontract the masonry or plastering portion of a project, said contract shall specify that the work to be performed shall be done under the terms and conditions of the current Masonry and/or Plaster Tender Agreement that has been negotiated by the Northern California District Council of Laborers or its affiliates, which is in effect in the territory in which the work is performed. However, Masonry work which is incidental to the work of the Individual Employer may be performed under the terms and conditions of this Agreement.

(5) Any Employer not signatory to both the Tunnel and Laborers' Master Agreement shall agree that whenever work is performed which is covered by the terms of the Laborers' Master Tunnel Agreement for the forty-six (46) Northern California Counties, the provisions of that Agreement shall be fully applicable to and binding upon the Individual Employer.

## Section 2 Bargaining Representatives

A. Union's Recognition of Collective Bargaining Representative of Employer.

The Union hereby recognizes and acknowledges that the Collective Bargaining Representative of Employer includes in its membership a majority of the Individual Employers in the highway, general building and heavy construction industry, and said Individual Employers are performing the greater percentage of work therein. By reason of such facts the Union hereby recognizes that the Collective Bargaining Representative of the Employer, as herein-above referred to, is the collective bargaining representative for all Individual Employers who authorize the Employer to represent them with respect to Collective Bargaining with the Northern California District Council of Laborers. A list of said Individual Employers shall be furnished to the Union at the commencement of negotiations and the Employer shall furnish the Union with a complete monthly report of any additions and deletions to the list of Individual Employers represented by the Employer.

In the event the Union (District Council) enters into any other agreement with other employers or employer associations concerning the type of work covered hereby in the area which shall have terms more favorable to such employers or employer associations and the members thereof than this Agreement, then such more favorable provisions shall become a part of and apply to this Agreement only in the geographical area where such other agreement is in effect.





B. Employers' Recognition of Union as Collective Bargaining Representative of Employees.

The Employer and the Individual Employers covered hereby recognize and acknowledge the Northern California District Council of Laborers of the Laborers' International Union of North America as the collective bargaining representative for the employees in the area aforementioned covering the jurisdiction of the Union.

C. Access to Project.

A Union Representative shall have access to the project during working hours for the purpose of checking the manner of compliance with which the terms of this Agreement are being complied.

## Section 3 Employment and Discharge

A. Union Security

(1) Every person performing work covered by this Agreement who is a member of the Union and in the employment of an Individual Employer on work covered by this Agreement on the effective date of this subsection 3A shall, as a condition of employment or continued employment, remain a member in good standing of the Union in the appropriate Local Union of the Union. Every person covered by this Agreement and employed to perform work covered by this Agreement shall be required, as a condition of employment, to apply for and become a member of and to maintain membership in good standing in the Union in the appropriate Local Union of the Union which has territorial jurisdiction of the area in which such person is performing work on or after the expiration of eight (8) days of employment on such work following the beginning of such employment or the effective date of this revised subsection 3A, whichever is later. Membership in any such Local Union shall be available to any such person on the same terms and conditions generally applicable to other members.

If Federal law is hereafter amended to permit a lesser requirement for Union membership or Union membership as a condition of employment than provided in this subsection, the Collective Bargaining Representative of the Employer and the Union will promptly enter into negotiations with regard to such subject.

(2) The Individual Employer shall be required to discharge any employee pursuant to this subsection 3A only when a written notice from the Union or Local Union, with an immediate copy of such notice to the Union, of such employee's non-compliance with this subsection, stating all pertinent facts showing such non-compliance, shall have been served upon such Individual Employer and a reasonable time (not to exceed 48 hours) has been allowed for compliance therewith.

B. Employment

(1) The Union or Local Union shall maintain open and non- discriminatory hiring halls for the use of workmen desiring employment on work covered by this Agreement and such workmen shall be entitled





to use such hiring halls. It is mutually agreed by the Employer and the Union to fully comply with all of the provisions of Title 7 of the Civil Rights Act of 1964, Presidential Executive Order #11246, the Americans with Disabilities Act of 1990, and the California Fair Employment Practices Section, to the end that no person shall, on the grounds of sex, race, color, disability, or national origin, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination by not having full access to the contents of Section 3 of this Agreement. (A list of Local Unions, their telephone numbers and daily dispatching hours is attached hereto as "Schedule A" for convenience only.)

The Union shall retain full power to change the location of any hiring hall listed herein, to change the daily dispatching hours listed herein or to cause the merger, amalgamation or consolidation of any two or more hiring halls listed herein. The Union shall give notice in writing to the Employer whenever any such change, merger, amalgamation or consolidation becomes effective. If the Employer desires a location of a hiring hall or daily dispatching hours other than as specified herein, notice of such desire shall be given to the Union in writing and the Collective Bargaining Representative shall promptly enter into negotiations with regard to such subject.

(2) Each person desiring employment shall register through such hiring hall by appearing personally and by indicating his/her name, address, telephone number, Social Security Account Number, qualifications and employment desired. Each such person shall be listed numerically in the order in which he/she registers.

In the territorial jurisdiction of the following Locals only 73 Stockton, 139 Santa Rosa, 185 Sacramento, 270 San Jose, 291 San Rafael (Napa/Lake Counties only), 294 Fresno, 297 Salinas, 326 Solano and 1130 Modesto, a person may register by phone if his residence is more than ten (10) miles from the nearest hiring hall maintained by said Local.

Distance for interpreting this subsection shall be determined by using the nearest Class "A" road or highway.

(3) No person shall be entitled to have his name placed on any employment list which is applicable to a particular type or classification of work unless he/she has been employed in such type or classification of work for six months consecutively or accumulatively within a period of three (3) years immediately preceding the date of his/her registration.

(4) The Individual Employer shall contact the appropriate hiring hall of the local Union having work and area jurisdiction for all Laborers as he/she or it may from time to time need, and the Local Union shall furnish to the Individual Employer the required number of qualified and competent Laborers of the classifications needed by the Individual Employer in accordance with the provisions of this subsection 3B, if such Laborers are available.

(5) When requesting Laborers, the Individual Employer shall submit job orders indicating the number of





persons desired, qualifications of each person desired, the location of the job, the reporting date and time and the representative of the Individual Employer to be contacted on the job site.

(6) The appropriate hiring hall of the Local Union of the Union having work and area jurisdiction will furnish in accordance with the request of the Individual Employer such qualified and competent Laborers of the classifications needed from among those entered on said lists to the Individual Employer by use of a written referral in the following order of preference:

Persons shall be referred in the order in which they are registered if their registration indicates that they are qualified for and desirous of taking such referral, unless they are not available for referral, subject to the following conditions: First,

(a) Notwithstanding any other provision of this Agreement, the Individual Employer may request a person by name, out of order, and such person must be dispatched if such person is registered on the out-of-work list and if such person was employed previously by such Individual Employer or member of a joint venture within three years prior to such request within the territorial jurisdiction of the appropriate Local Union of the Union.

(b) In addition to requests permitted by the provision of subsection 6(a), the Individual Employer may request any person registered on the out-of-work list out of order for any reasons; provided, however, that at no time shall any job contain more than 50% of persons requested under subsection 6(b). It will not be a violation of this Agreement for an owner (1 person) to perform Laborers' work when needed, provided that said owner is performing work with at least one (1) additional Laborer on the job site.

(c) Any Local Union, may at its option, permit a percentage of individual requests greater than 50% on any job. Such permission shall not be deemed a violation of this Agreement.

(d) Notwithstanding the above, the mobility of all employees who have been employees of the Individual Employer for a period of three hundred sixty (360) hours out of the immediate preceding six (6) months, shall not be restricted for any reason subject to Section 3A, Union Security. In order for the Individual Employer to exercise the mobility provisions set forth in this paragraph, the Individual Employer shall:

(1) Provide the appropriate Local Union with a current list of names and Social Security Numbers of those employees who are eligible for mobility, prior to any employee being moved; and

(2) The Individual Employer shall notify the appropriate Local Union of a job or project of more than five (5) day's duration.

(3) In cases where an Individual Employer is found to have dispatched certain employees





not eligible for mobility to a job site as defined herein, then the Local Union having jurisdiction in the project area shall notify the employer of such violation or error. The Individual Employer, upon notification by the Union, shall within one (1) working day, correct said violation or error to the satisfaction of the Union. Additional laborers shall be obtained in accordance with the hiring hall procedures from the Local Union in the area where work is performed. All laborers shall have in their possession proof of proper dispatch and Union status which shall be produced upon request of Local Union representative in the area where the job is located. Any violation not resolved to the mutual satisfaction of the parties shall be subject to Section 9 of this Agreement.

(4) No Employee of the Individual Employer shall suffer loss of mobility for a break in service of two (2) months or less with the employer if the break in service is due to illness, extended vacation or winter shutdown.

(e) No person shall be dispatched pursuant to the provisions of subsection 6(a), 6(b) or 6(c) of this Section unless the Individual Employer's request is in writing, dated, is signed by an appropriate management representative, specifies whether the person is a rehire and names the job for which rehire is requested.

Second, persons who, within five (5) years immediately preceding the job order, performed work covered under this Agreement in the geographical area covered by this Agreement in the order in which they registered.

Third, persons who are registered in the order in which they registered by qualification.

(7) Available for employment shall mean: All persons eligible for referral shall be present at the hiring hall or present at their residence phone if they live at a location specified in subsection (2) of this subsection 3B during dispatching hours, unless excused for the following reasons:

(a) When a death or imminent death occurs in the immediate family, from the date of death and not exceeding one week after the date of burial, however, they shall produce bona fide proof of such death or imminent death from hospital or family doctor.

(b) Persons on jury duty, providing they produce bona fide proof that they are serving on a jury.

(c) Persons temporarily serving in the U.S. Military Reserve, providing they show bona fide proof of such service.

(d) Attendance at Workers' Compensation Hearing or any administrative or court appearance.

(8) When ordering workers, the Individual Employer will give notice to the appropriate hiring hall of the





Local Union, if possible, not later than 2:30 p.m. of the day prior (Monday through Friday) or, in any event, not less than seventeen and one-half (17-1/2) hours, if possible, before the required reporting time. In the event that forty-eight (48) consecutive hours after such notice (Saturday, Sundays and recognized holidays excluded), the Local Union shall not furnish such workers, the Individual Employer may procure workers from any other source or sources. If workers are so employed, the Individual Employer shall promptly report to the appropriate hiring hall of the Local Union, in writing or by phone with written confirmation within forty-eight (48) hours, the name, address and Social Security Account Number of the employee procured from such other source or sources and the date of employment and the location of the job on which he/she is employed. Workers who report on the first day are to be paid from the time they report to the Individual Employer's designated location.

(9) Dispatching hours shall be as specified in subsection (1) of this subsection 3B or as specified in the notice or notices submitted pursuant to subsection (1) of this subsection 3B. In emergency cases, individuals may be dispatched other than at such dispatching hours.

(10) Each person, upon being referred, shall receive a written referral to be transmitted to the Individual Employer representative at the job site indicating the name, address, Social Security Account Number, type of job, date of proposed employment and date of referral.

(11) To insure the maintenance of a current registration list, all persons who do not re-register or answer roll call, as the case may be, on each regularly scheduled roll call day (which shall not be more often than once a week), shall be removed from the registration list unless excused in accordance with subsection 3B(7). Any person may re-register by phone and must be personally present at the phone during dispatch hours. If a referral is made by phone, a written dispatch slip must be sent to the Individual Employer and worker. Any person who is permitted to register by telephone under this subsection 3B must appear personally at the appropriate hiring hall on roll call day. If such persons re-register or answer roll call pursuant to the provisions of this Section, they shall maintain their previous position on such list, subject to the provisions of subsection (12) of subsection 3B.following, such person shall not be entitled to the position he/she held prior to his/her elimination in the event he/she re-registers or answers roll call, as the case may be. Persons will be excused from answering roll call only for the reason enumerated in subsection 3B(7).

(12) Persons shall be eliminated from the registration list for the following reasons:

(a) Dispatched to a job- except that any person who is rejected by the Individual Employer or who fails to complete two (2) full days of work shall retain his/her position on said list; provided, no person who is rejected by the Individual Employer shall be re-referred to such Individual Employer with respect to the same request pursuant to which he/she was initially referred.

(b) Failing to accept suitable employment one time during the current week at the time of dispatch. Employment which cannot be reached by an individual because of lack of transportation shall not be deemed suitable as to him/her.





(c) Unavailable for employment.

(d) Any person dispatched to a job who fails to report for work.

(13) Notwithstanding the provisions of this Section 3B, upon the same notice as required in Section 3B(6)(e) being given to the appropriate Local Union of the Union, an Individual Employer shall have complete freedom to employ the first key Laborer.

(14) Subject to the provisions of this Agreement, the Individual Employer shall have complete freedom of selectivity in hiring and the Individual Employer retains the right to reject any job applicant referred by the Union for just cause including but not limited to persons unable to produce legal residence documentation as required under the Immigration Reform and Control Act of 1986. In the event an Individual Employer receives two (2) referrals from the Local Union not meeting the skill requirements of the hiring request, the Individual Employer shall be free to secure such skilled person from any available source subject to Section 3A of this Agreement.

(15) The Local Unions and the Union shall post in places where notices to applicants for employment with the Individual Employers are customarily posted, all provisions relating to the functioning of the hiring arrangements, including the provisions set forth in this Section, and each Individual Employer shall similarly post in places where notices to employees and applicants for employment are customarily posted, a notice of the hiring arrangements set forth in this Section.

(16) Selection of applicants for referral to jobs pursuant to this Agreement shall be on a non-discriminatory basis and shall not be based on, or in any way affected by, Union membership, bylaws, rules, regulations, constitutional provisions, or any other aspect or obligation of Union membership, policies or requirements, provided that the provisions hereof shall not modify or qualify the requirements of Subsection A of this Section 3.

(17) Any person aggrieved by the operation of the hiring hall shall submit his/her grievance to the permanent hiring hall neutral arbitrator provided that such submission is made in writing stating the reasons for the grievance within ten (10) working days after the occurrence of the grievance.

The Arbitrator shall have full power to adjust the grievance, and his decision thereon shall be final and binding upon the person submitting the grievance and all parties hereto. Forms for the submission of any such grievance shall be available at all times in the office of the Union and each Local Union.

The permanent hiring hall neutral arbitrator shall be Gerald R. McKay and notices required by this Section shall be mailed or delivered to P.O. Box 406, Burlingame, CA 94011-0406. The date of this postmark and/or date of delivery of the grievance, whichever is later, shall toll the running of the ten (10) day period. The costs of arbitration shall be borne equally by the Employer and the Local Union regardless of who the Local Union or Individual Employer is.





C. Discharge

No employee shall be discharged or discriminated against for activity in or representation of the Union or any Local Union. The Local Union shall be the sole judge of the qualifications of its members.

The Individual Employer shall be the sole judge of the qualifications of all of their employees, and may on such grounds, discharge any of them. No employee shall be discharged without just cause. In the event of discharge without just cause, the employee shall, if he/she so desires, be reinstated with payment for time lost. In the event of a dispute, the existence of "just cause" shall be determined under the grievance procedure provided for in Section 9 hereof. In the event of reinstatement, the amount of back pay awarded under Section 9 hereof may not exceed 90 days unless the grievant was employed by the Individual Employer who discharged him/her for more than 1500 hours in the two (2) years preceding the date of discharge.

D. The Individual Employer may notify the Local Union hiring hall of all employees who have quit, or been terminated or recalled during the week. Such notification may be on a written form which will include the following information:

NAME OF EMPLOYER COMPANY
NAME OF EMPLOYEE
DATE OF TERMINATION
DATE OF RECALL
REASON FOR TERMINATION

E. No employee may be transferred from an Individual Employer's payroll to another Individual Employer's payroll except in accordance with subsection 3B, except any transfer to and/or from a joint venture of which the Individual Employer is a partner.

## Section 4 Show-Up Time

A. The Individual Employer is not obligated to pay show-up time to any applicant/employee who fails to comply with the company code of safe practices.

B. When any employee reports for work and there is no work provided by the Individual Employer, he/she shall be paid two (2) hours show-up time at the applicable rate plus zone pay where applicable, provided, however, no show-up time will be payable to any person who reports for work without the necessary and legally required documentation to establish work right status under applicable Immigration and Naturalization Laws. If work is suspended on account of weather conditions, the employee shall be entitled to show-up time only if he/she remains on the job site for two (2) hours pending abatement of such weather unless sent home earlier by the Individual Employer. If work is to be suspended for any reason, the employee shall be notified at least two (2) hours before being required to report for work. The employee shall keep the Individual Employer informed at all times of his/ her correct address, and if he/she has a telephone, his/her telephone number. If an employee does not keep the Individual Employer so informed, the Individual Employer shall be relieved of the duty of

giving such notice and further he/she shall not have to pay such employee show-up time. Radio and/or TV notice is acceptable on remote projects as means of notification providing the Union is notified in writing at the commencement of the job.

## Section 5 Higher Wages

No employee receiving a higher rate of pay shall suffer a reduction of pay by reason of the execution of this Agreement.

## Section 6 Lunch Time

There shall be a regularly established meal period. The meal period shall be one-half (1/2) hour and shall be scheduled to begin not more than one-half (1/2) hours before and completed not later that one (1) hour after the midpoint of the regularly scheduled hours of work for each Employee's shift.

If the Individual Employer requires the Employee to perform any work through his/her scheduled meal period, the Employee shall be paid at the applicable overtime rate for such meal period and shall be afforded an opportunity to eat on the Individual Employer's time. However, no employee shall be required to work more than five (5) hours without time off for a meal period, which shall be not less than one-half (½) hour.

Any employee required to work more than two (2) hours overtime at the end of a shift shall be permitted a one-half (½) hour meal period for which he/she shall receive regular overtime pay. No work shall be performed by him/her during such meal period. (Meal periods may be staggered from the 10th to the 11th hour.)

## Section 7 Records

A. Each Individual Employer shall provide a proper means for registering the reporting, quitting time, and as supplied by the employee, the address and telephone number of all employees covered by this Agreement. In the event of a dispute, such records shall be accessible to the business representative of the Union or Local Union during working hours.

B. Each Individual Employer, upon request of any Trust Fund specified in this Agreement, shall permit a Trust Fund Auditor to review any and all records relevant to the enforcement of the provisions of this Agreement pertaining to the Trust Funds. Such review shall be permitted not less than ten (10) working days after demand.

## Section 8 No Cessation of Work

It is mutually agreed and understood that during the period when this Agreement is in force and effect, the Union or any Local Union will not authorize any strike, slow-down, or stoppage of work in any dispute, complaint, or grievance arising under the terms and conditions of this Agreement, except such disputes, complaints, or grievances as arise out of the failure or refusal of any Individual Employer to comply with the provisions of the hiring clause, Section 3A or #B hereof, or as permitted under Section 28B and C hereof or whenever an Individual Employer pays Laborers improperly with checks which do not clear for collection. As to any Individual Employer who shall fail or refuse to comply with





the provisions of the sections specified herein, so long as such failure or refusal continues it shall not be a violation of this Agreement if the Union or any Local Union withdraws its members who are subject hereto from the performance of any work for such Individual Employer, and such withdrawal for such period shall not be a strike or work stoppage within the terms of this Agreement. In the event that any employees of any Individual Employer should be withdrawn by reason of any dispute, complaint, or grievance arising out of the violation of any similar hiring clause in any agreement between Employer and any other Union, then the Union or any Local Union may respect such withdrawal and for the period thereof may refuse to perform any work for such Individual Employer, and such refusal for such period shall not be a violation of this Agreement.

Any employees so withdrawn or refusing to perform any work as herein provided shall not lose their status as employees, but no such employee shall be entitled to claim or receive any wages or other compensation for any period during which he/she has been so withdrawn or refused to perform any work.

## Section 9 Grievance Procedure

Any dispute concerning the interpretation or application of this Agreement, other than a jurisdictional dispute or a dispute arising out of Section 3A or 3B, or a dispute arising out of subsection 13C(4), or a dispute of Section 28 (Health & Welfare Plan, Pension/Annuity Plan, Vacation-Holiday-Dues Supplement Plan, Training- Retraining/Apprenticeship Plan) which said Sections and the Subsections thereof are specifically exempted by the provisions of this Section, the following procedure will apply:

1. In the event that a dispute arises on a job, it shall be first reported to the Individual Employer and/or the Business Agent of the appropriate Local Union who shall then attempt to adjust said grievance or dispute at the job site level.

2. The grieving parties shall specify the date(s) of the alleged violations(s) and the provision(s) of the Agreement applicable to the dispute.

3. If said grievance or dispute is not satisfactorily adjusted by the appropriate Local Union or otherwise authorized Union Representative and the Individual Employer or his/her representative within three (3) days after submission to the Individual Employer, the matter may be submitted by either party to a permanent Board of Adjustment created for the settlement of such disputes.

4. The Board of Adjustment shall be composed of two (2) members named by the Union, two (2) members named by the Association and an Impartial Arbitrator. At any point in the proceedings, should the panel be unable to reach a majority vote, the Arbitrator shall participate and his decision shall be final and binding.

5. In addition to any rules or procedures which the panel may adopt, the Board of Adjustment shall be governed by the following provisions:

   (a) No attorney shall be utilized unless either party notifies the other of its intent to do so with a





minimum of fourteen (14) calendar days in advance of the hearing.

(b) No briefs shall be submitted nor a transcript made of the hearing except by mutual agreement of the parties or by direction of the Arbitrator.

(c) In the case of a deadlock, the Arbitrator shall render his decision upon the conclusion of the case at the Board of Adjustment hearing unless the time is extended by mutual agreement of the parties or at the request of the Arbitrator, in which case the Arbitrator shall render a decision not later than thirty (30) days after submission. The Arbitrator shall not render an expanded opinion in any case unless requested by the parties.

(d) The parties shall select and utilize one (1) permanent impartial arbitrator who is willing to abide by the procedures set forth herein. The impartial arbitrator may be changed or replaced at the request of either party.

6. The Board of Adjustment shall meet not less than once each calendar month with the exception of the discharge cases which must be heard at the earliest possible date not to exceed fifteen (15) working days. Failure of either party to meet or participate in the procedure shall relieve the charging party of further compliance with the grievance procedure.

7. Decisions of the Board of Adjustment or an Impartial Arbitrator shall be within the scope and terms of this Agreement, and shall be final and binding upon all parties hereto.

8. In the event an Individual Employer fails to comply with any such decisions, the Union may withdraw employees or strike the Individual Employer and such action shall not be a violation of this Agreement so long as such noncompliance continues

9. The expenses of the Joint Adjustment Board and the Impartial Arbitrator, including the cost of a court reporter, shall be borne by the Engineering & Utility Contractors Association Industry Promotion Fund.

10. No proceedings hereunder based on any dispute, complaint or grievance herein provided for, shall be recognized unless the grievance procedure steps outlined above have been followed. The Board of Adjustment may, by majority vote, for good cause, accept a late submission.

11. The Board of Adjustment shall establish regular meeting dates and administer grievances filed in conjunction with this Section as set forth in the rules and procedures which may be amended from time to time by the parties.

12. A decision of the Board of Adjustment by majority vote, or the decision of a permanent arbitrator shall be enforceable by a petition to confirm an arbitration award filed in the Superior Court of the City and County of San Francisco, State of California.





13. All hearings of the Board of Adjustment shall be in the County of Contra Costa and/or County of Alameda, unless mutually agreed to move to another location.

14. No proceedings hereunder based on any dispute, complaint, or grievance herein provided for shall be recognized unless adequate notice was given to the Employer and/or Union or Local Union within ten (10) days after the alleged violation was committed.

15. In the case of discharge, the Board shall meet within fifteen (15) working days. The Board of Adjustment or Arbitrator shall be free to sustain the discharge or to find discipline other than discharge to be appropriate and may order reinstatement with full or partial back pay as he or it deems appropriate provided there shall be no discrimination on the part of the Individual Employer against any employee for activities in behalf of, or representation of the Union not interfering with the proper performance of his/her duties.

16. If failure of a Board of Adjustment to meet on a discharge case within fifteen (15) working days is due to the unavailability of the Union, the wage payment and Trust Fund contribution liability shall be limited to the above fifteen (15) working days. If the Employer or Individual Employer is unavailable to meet, the wage payment and Trust Fund contributions shall be continuing.

17. The Board of Adjustment shall settle any dispute or grievance involving a subcontractor as defined in Section 11 who has agreed under contract with the Employer, or any Individual Employer, or a subcontractor of the Employer, or any Individual Employer to perform on the job site any part or portion of the construction work covered by the prime contract, including the operation of equipment, performance of labor and installation of materials.

    When liabilities are assessed against a subcontractor for hiring violations as a result of a Board of Adjustment held under the provisions of Paragraph 17 and said subcontractor fails to satisfy said obligations, the Union shall promptly give written notice to the Individual Employer and subcontractor and the Individual Employer shall pay such obligations from the retention of such subcontractor.

18. The procedures specified herein shall be applicable to any Individual Employer whether or not he or she is a member of Employer or any other associations.

19. In those instances where the Individual Employer is not a member of the Employer, the Joint Adjustment Board shall establish procedures whereby the Employer members of the Joint Adjustment Board may consist of one Individual Employer who is not a member of the Employer.

## Section 9A Engineering & Utility Contractors Association Industry Promotion Fund

Each Individual Employer covered by this Agreement shall pay into the Engineering & Utility Contractors Association Industry Promotion Fund according to the following schedule: Effective June 28, 1999 - ten cents ($.10) per hour.





The costs of establishing and maintaining the Engineering & Utility Contractors Association Industry Promotion Fund shall be borne out of contributions to said Fund. No portion of the funds may be used for lobbying or promoting legislation harmful to the Union, subsidizing Individual Employers during a strike, or any other action that would be adverse to the interests of the Union.

The Union shall not be liable or responsible for the receipt, safekeeping or disposition of the contributions to the Fund, and any expenditures of monies from said Fund shall be at the sole discretion of the Engineering & Utility Contractors Association.

The amount specified herein is in addition to any and all other specified wage rates or trust fund contributions.

The Union shall be entitled to a full and complete audit report of the Promotion Fund annually at the expense of the Promotion Fund.

## Section 9B Industry Stabilization Fund

The Individual Employer shall contribute, effective September 1, 2007, eleven cents ($.11) per hour for each hour paid for or worked by workers in work covered by this Agreement to the Industry Stabilization Fund. Of the $.11 per hour, eight cents ($.08) per hour is earmarked for California Alliance for Jobs and one cent ($.01) per hour is earmarked for the Construction Industry Force Account Council (CIFAC).

The purpose of such funds shall be to enhance the monitoring of public works projects relative to Employer compliance with State, Federal or other public agency public works wage and hour laws. Such contributions shall continue until written notice by the parties signatory hereto. Such trust fund shall be administered jointly by the signatory parties.

## Section 9C Joint Marketing Trust Fund

A trust fund entitled the Joint Marketing Trust Fund shall be established, funded and utilized with the express purpose of promoting Union contractors and expanding unionized market share and opportunities. The contributions into the Fund shall be mutually agreed upon and reviewed on an annual basis. A Trust Fund shall be established in accordance with law. Trustees shall be selected by the Employer and Union in accordance with a trust agreement to be executed by the parties. Contributions to said Trust shall commence with the work month following notice to Employer.

Effective June 28, 1993, each individual Employer shall contribute two cents ($.02) per hour, for each hour paid for or worked by workers in work covered by this Agreement to the Joint Marketing Trust Fund.

## Section 10 Payment of Wages

A. Each employee shall be paid wages in full each week before or at quitting time on the Individual Employer's regular pay day unless specific arrangements to the contrary are made in writing between the Individual Employer and appropriate Local Union of the Union. Employees who quit or are laid off or discharged shall be paid in accordance with the laws of the State of California.





B. Each employee shall be given a statement with the Individual Employer's name and address, itemizing the employee's gross amount earned, hours worked, Social Security tax, withholding tax and all other deductions, also a statement of hours applicable to Health and Welfare, Pension/Annuity, Vacation-Holiday-Dues Supplement and Training-Retraining/Apprenticeship Plans.

## Section 11 Subcontractors

The terms and conditions of this Agreement insofar as it affects Employer and the Individual Employer shall apply equally to any subcontractor of any tier under the control of, or working under oral or written contract with such Individual Employer on any work covered by this Agreement to be performed at the job site or job yard, and said subcontractor with respect to such work shall be considered the same as an Individual Employer covered hereby. Subject to the provisions of this Section and any other Section of this Agreement applicable to subcontractors, if an Individual Employer shall subcontract work herein defined, such subcontract shall state that such subcontractor agrees to be bound by and comply with the terms and provisions of this Agreement. A subcontractor is defined as any person, firm or corporation who agrees under contract with the Employer, or any Individual Employer, or a subcontractor of the Employer, or any Individual Employer to perform on the job site any part or portion of the construction work covered by the prime contract, including the operation of equipment, performance of labor and installation of materials. The Individual Employer has the primary obligation for performance of all conditions of this Agreement. This obligation cannot be relieved, evaded or diminished by subcontracting. Should the Individual Employer elect to subcontract, the Individual Employer shall continue to have such primary obligation. Said primary obligation shall be deemed conclusive evidence of the Union's majority status for the purpose of establishing the obligation of the Individual Employer to bargain collectively pursuant to Section 8(a)(5) of the National Labor Relations Act as amended with the Union upon expiration of this Agreement, but for no other purpose, statute or law.

An Individual Employer who provides in the subcontract that the subcontractor will pay the wages and benefits and will observe the hours and all other terms and conditions of this Agreement shall not be liable for any delinquency by such subcontractor in the payment of any wages or fringe benefits provided herein, including payments required by Section 28 (Health and Welfare, Pension/Annuity, Vacation-Holiday-Dues Supplement and Training-Retraining/Apprenticeship Funds), except as follows:

The Individual Employer will give written notice to the Union of any subcontract involving the performance of work covered by this Agreement within five (5) days of entering such subcontract, and shall specify the name and address of the subcontractor. Written notice at a pre-job conference shall be deemed written notice under this provision for those subcontractors listed at the pre-job only. Notification to the Union of any subcontractor not listed in writing at the pre-job must still be given in accordance with this paragraph.

If thereafter such subcontractor shall become delinquent in the payment of any wages or benefits as above specified, the Union shall promptly give written notice thereof to the Individual Employer and to the subcontractor specifying the nature and amount of such delinquency.

If such notice is given, the Individual Employer shall pay and satisfy only the amount of any such delinquency by such subcontractor occurring within seventy-five (75) days prior to the receipt of said notice from the Union, and said





Individual Employer may withhold the amount claimed to be delinquent out of the sums due and owing by the Individual Employer to such contractor.

In the event the Individual Employer fails to give written notice of a subcontract as required herein such Individual Employer shall be liable for all delinquencies of the subcontractor on that job or project without limitation.

The Individual Employer shall not be liable for any such delinquency if the Local Union where the delinquency occurs refers any employee to such subcontractor after giving such notice and during the continuance of such delinquency. The provisions of this Section 11 shall be applied only to the extent permitted by law and, notwithstanding any other provision of this Agreement, no aspect of the subcontractors' clause, including its enforcement, may be enforced by or subject to strike action.

## Section 12 Conflicting Contracts

Any oral or written agreement between Employer or any Individual Employer and an individual employee, which conflicts or is inconsistent with this Agreement, or any supplemental agreements hereto, disestablishes or tends to disestablish relationship of Employer and employee, or establishes a relationship other than that of Employer and employee, shall forthwith terminate. No oral or written agreement which conflicts or is inconsistent with this Agreement, or any supplemental agreements thereto, shall hereafter be entered into by and between Employer, or an Individual Employer, and any individual employee performing work covered by this Agreement. Any practice of the Employer or Individual Employer contrary to this Agreement shall forthwith terminate. Any such future practice shall not be binding on the Union or effect the interpretation of this Agreement unless specifically authorized by the Union in writing.

## Section 13A Elimination of Restrictions on Production

No rules, customs or practices shall be permitted that limit production or increase the time required to do any work. There shall be no limitation or restriction of the use of machinery tools or other labor-saving devices.

The Union and Employer recognize that drug and alcohol abuse by employees shall not be tolerated for safety reasons.

The Union agrees to cooperate with the Employer and the Individual Employer in establishing drug and alcohol abuse policies to the extent legally possible.

**Management Rights Regarding Substance Abuse:** Notwithstanding any other provisions of this agreement, the Employer expressly reserves the right, in its discretion, to undertake the following measures:

(1) In the sole discretion of the Employer and the Individual Employer, requiring covered employees to submit to physical examination by competent medical personnel to determine whether there is a probability that the employee is suffering from any physical impairment which might cause the employee to be a safety hazard to him/herself or others, or which might cause the employee to be unable to perform assigned tasks within the coverage of this agreement in a prompt and competent





manner. Such tests may include, in the discretion of the Employer and the Individual Employer, such tests of the employee's bodily fluids as the Employer and the Individual Employer may reasonably believe will elicit evidence of the employee's use of substances which are reasonably likely to alter or impair the employee's ability to perform his/her duties in a prompt, competent and safe manner.

(2) Implementation of rules regarding the discipline and/or discharge of any employees that the Employer and the Individual Employer determines, as a result of the tests described in subparagraph (1), are reasonably likely to become voluntarily impaired or disabled from the safe performance of their work tasks as a result of the ingestion of alcohol or performance-impairing drugs.

(3) An Individual Employer may initiate unannounced random testing, a selection process where affected Employees are selected for testing and each employee has an equal chance of being selected for testing. If an Individual Employer initiates such testing, all employees shall be subjected to such testing. The Individual Employer may establish two random testing pools, one for DOT regulated employees and one for all others. An Individual Employer who initiates random testing shall specifically state in its notice to the Union and its notice to employees that employees will be subject to random testing. The Individual Employer shall give thirty (30) days notice to the Union and employees prior to implementing a random drug testing program.

(4) Implementation of a voluntary employee assistance program, to provide counseling, therapy and monitoring of those employees who request employer assistance in controlling and overcoming problems related to the use of drugs and alcohol.

Disputes arising from the implementation of the provisions of this paragraph shall be subject to the grievance procedures set forth in Section 9 of this Agreement.

## Section 13B Protective Clothing

The Individual Employer shall furnish the necessary goggles, hard hats or other protective clothing. Laborers working in rain, snow or sleet shall be furnished with waterproof clothing. Laborers working in gunite or handling concrete and/or cement shall be furnished rubber boots and gloves. Laborers working in mud or water shall be furnished boots. Such equipment shall be furnished by the Individual Employer free of charge and returned by the employee in the same condition as received subject to reasonable wear and tear. Such equipment shall be sanitized before reissue.

## Section 13C Safety

(1) The Union shall cooperate with the Individual Employer and with each employee in carrying out all pertinent rules and regulations dealing with health, safety and welfare of employees promulgated by the Department of Industrial Relations of the State of California. All employees shall perform their duties in each operation in such manner as to promote safe and efficient operations of each particular duty and of any job as a whole.





(2) All State and/or Federal and/or Local Safety Laws, Standards, Rules and Regulations shall be applicable to all work covered by this Agreement. The Individual Employer is solely responsible for implementing and maintaining such Laws, Standards, Rules and Regulations. Neither the Union nor any Local Union is responsible for implementing or maintaining such Laws, Standards, Rules or Regulations.

(3) Adequate first-aid equipment shall be maintained and provisions shall be made for the safety of employees covered by this Agreement on each job by each Individual Employer. Each Individual Employer shall arrange for adequate and prompt transportation to a hospital or doctor for any employee who is injured on the job and may require doctor's care or hospitalization or both. Each Individual Employer must post the name and address of its doctor and of the Worker's Compensation Insurance carrier on the job site.

(4) No employee shall be discharged for refusing to work under conditions injurious to his health or safety as determined under any rule or regulation of the United States or State of California or any political subdivision. Such determination shall be made by a responsible agent of the State of California or OSHA or any of its political subdivisions, or by a safety inspector from the applicable insurance carrier.

(5) When drilling holes in rock or other dust producing material with air or power controlled drilling equipment (excluding jack hammer), dust shall be controlled by water, chemical or other suitable means within the maximum acceptable concentration as set forth in the California or OSHA Construction Safety Orders.

(6) Should the Individual Employer desire a change in variance in the California or OSHA Construction or any applicable Safety Orders, they will notify the Union in writing not less than thirty (30) days prior to making a request for such change.

(7) Manhaul trucks regularly used for personnel transport but not designed for this purpose shall be provided with safe seating and side and end protection to prevent falls. Some convenient means of mounting and dismounting the truck shall be provided. Adequate protection shall be provided during inclement weather. A bell or other means of communication with the driver shall be installed.

(8) Employees who as a direct result of an on-the-job industrial injury are unable to complete a full day of work shall nevertheless be paid for the full day on which such injury occurred; provided, however, that said injury requires the attention of a licensed physician.

(9) The Local Union with area jurisdiction shall be notified within twenty-four (24) hours of any industrial injury which results in death or requires hospitalization.

## Section 14A Additional Work or Classifications





This Agreement shall not prevent the Employer from negotiating or making agreements with the Union for any work or classification not covered by this Agreement.

Whenever any work covered by this Agreement is to be eliminated or modified by the introduction of any new machine, mechanized process, new or different material, or new or different method or technology with respect to the performance of such work, persons employed under this Agreement and subject thereto, will be given preference for employment and will be assigned such work where it is not in conflict with International jurisdictional agreements with respect to such new machine, mechanized process, new or different material, or new or different method or technology and the use of any such new machine, mechanized process, new or different material, or new or different method or technology shall be subject to and covered by this Agreement regardless of the nature, size or characteristics of such new machine, mechanized process, new or different material or new or different method or technology.

It is not the intent of the parties to provide work where no job exists.

### Section 14B Jurisdictional Disputes

There shall be no cessation or interference in any way with any work of the Employer or any Individual Employer by reason of jurisdictional disputes between the Union and any other Union with respect to jurisdiction over any of the work covered by this Agreement. Such disputes will be settled by the Unions, themselves, or submitted to the International Presidents of the Union involved in the dispute for determination. Until such determination is made and confirmed by the disputing Unions, the work shall proceed as originally assigned by the Individual Employer. Craft jurisdiction is neither determined nor awarded by classifications or coverage descriptions appearing in this Agreement.

### Section 15 Pre-Job Conference

There shall be a pre-job conference prior to the start of a job or project, at the option of either party, where the agreed or estimated price to be paid the Individual Employer and any of his or its subcontractors is one million dollars ($1,000,000) or more where construction conditions or remoteness of the project warrant it. The Individual Employer shall notify, in writing, the appropriate Local Union of the Union of an award of work within ten (10) days thereof so that a pre-job conference can be arranged.

### Section 16A Employer's Membership

This Agreement is made for, and on behalf of, and shall be binding upon all persons, firms or corporations that at the time of the execution of this Agreement have given or subsequently give bargaining authorization to the Employer as defined in Section 2A.

Once an Individual Employer is bound by the Agreement, they shall remain bound by the Agreement for the term thereof and shall remain bound by any modifications, extensions or renewals thereto unless that Individual Employer gives appropriate written notice to the Northern California District Council of Laborers prior to the termination of the Agreement.





**Section 16B Agreement Binding Upon Parties**

This Agreement shall be binding upon the heirs, executors, administrators, successors, purchasers and assigns of the parties hereto.

**Section 17 Contracting-Piece Work**

No work shall be let or paid for by piece work, contract or lump sum direct with laborers for labor services.

**Section 18 Wages**

Wages for General Laborers and for special classifications are set forth in the Supplements attached hereto and made a part hereof as if set forth in full herein and shall be effective on June 26, 2006, and on succeeding anniversary dates as herein provided on all work, both old and new.

A. Zone pay for employees performing work under the terms of this Agreement is set forth in Supplement No. 6 attached hereto and made a part hereof as if set forth in full herein.

B. On a job where a Craft with whom the Individual Employer has negotiated a short work week terminates early on Friday, the Individual Employer will keep the laborer employed the balance of the work day when the Individual Employer determines that work is available.

C. On public work projects where wage determinations exist, such pre-determined wage and fringe rates referenced in the bid specifications shall remain in effect for the duration of said project, provided, however, that each segment let by the Owner shall be deemed the project; provided, further that this provision shall not apply to projects where the formal advertised sealed bid procedure is not used. Whenever non-signatory and/or non-union contractors appear on a public works plan holders list and where the prevailing wage determination is less than that which is provided for in the current Master Labor Agreement, the employer signatory to the 2006-2010 Laborers' Master Agreement may bid the project pursuant to the prevailing wage determination attached to and part of the bid specifications for that project. Payments to the Health and Welfare Trust Fund shall be maintained at the Laborers' Master Agreement rates. In no event shall wages be frozen for more than thirty-six (36) months on any one project. Employers should notify the appropriate local Union whenever utilizing this provision.

**Section 19 Wages Applicable to Classifications**

Wage rates shall be recognized as applying to classifications rather than to persons and any worker performing work shall be paid at the rate which the classification of their work calls for, except when it is necessary to temporarily transfer workers from one classification to another, in which event such workers shall be paid on the basis of the highest rate and the duration of payment at the highest rate shall be reckoned by the day and the half day.





When workers are requested for one classification and this work is no longer available at the rate and type of work they were requested for, then the workers have the right to accept or reject the employment offered. If the worker so desires, worker shall be given a written notice of reduction in force, stating that the classification that the worker was originally hired for is no longer available; or the worker may have the choice of a lesser rate of pay.

### Section 20A Overtime Rates, Hours and Working Conditions

1. Work Day

Eight (8) consecutive hours (exclusive of meal period), shall constitute a day's work for straight time rates unless the job or project is on a four-ten (4 x 10) hour day work week in which case the workday shall be ten (10) consecutive hours (exclusive of meal period) at straight time rates. (If all basic Crafts employed by the Individual Employer on the job site and/or contract, are employed on the basis of a four-ten (4 x 10) hour day work week, the Laborers' shall work on the same basis.)

2. Work Week

On single shift work and on the first shift of a multiple shift operation, five (5) consecutive days of eight (8) consecutive hours (exclusive of meal period), Monday through Friday, shall constitute a week's work except as otherwise provided for in this Agreement. The regular starting time of such shift shall be 8:00 a.m.

(a) Where in any locality, existing traffic conditions, job conditions or weather conditions render it desirable to start the day shift at an earlier hour, not earlier than 5:00 a.m., or a later starting time not later than 10:00 a.m., the Individual Employer is permitted to do so.

(b) Special Single Shift*: When the Individual Employer produces evidence in writing to the appropriate Local Union or the Union of a bona fide job requirement which certifies that work can only be done outside the normal shift hours, and notifies the appropriate Local Union or the Union at least three (3) days prior to the start of such special shift, the Individual Employer may initiate such special shift of eight (8) consecutive hours, exclusive of meal period, Monday through Friday. Such shift shall be in accordance with the provisions of subsection 5(a) of this Section. Provided, however, if by direction of the Contracting Authority, the bid specifications require it, or congestive traffic conditions on Fridays are such that work conditions would be unsafe for employees, or counter-productive to the performance of work, the special single shift may commence on Sunday with double time (2x) to be paid from the start of the shift to 8:00 p.m. and the applicable straight-time rate paid from 8:00 p.m. until completion of the eight (8) hour special single shift.

Special single shifts may be used in conjunction with any other shifts. The special single shift premium shall only apply to that work that is mandated to be performed outside of the normal shift hours. All other work on the project performed during the normal day shift hours shall be paid at the regular rate of pay.





*NOTE: Special Single Shift rates area "A" $3.00/hr., area "B" $2.85/hr. over classification.

(c) Four-ten (4 x 10) Hour Work Week: An Individual Employer may establish a work week of four (4) consecutive days of ten (10) consecutive hours. Applicable overtime rate shall be paid for all work before a shift begins, after ten (10) hours, and on Saturdays, Sundays and holidays. In the event two (2) shifts are employed, ten (10) consecutive hours' work, (on the 2nd shift) exclusive of meal period, shall constitute a shift's work for which ten (10) hours shall be paid. Provided, further, all shifts are worked the same four (4) consecutive days during a four-ten (4 x 10) hour day work week, except as may be changed by mutual agreement. All hours in excess of forty (40) hours in any one (1) week shall be compensated at the applicable overtime rate.

(d) In the event that work cannot be performed Monday through Friday or Monday through Thursday four-ten (4 x 10) hour day work week) because of inclement weather, major mechanical breakdown or lack of materials beyond the control of the Individual Employer, employees (at their option) may make up such day on Friday or Saturday, whichever the case may be, and shall be paid at the applicable straight time rate.

(e) Notwithstanding the above, it shall not be a violation of this Agreement to start individual employees at no more than one (1) hour prior to the regularly established starting time.

3. On shift work, the day shift, eight (8) hours' work for eight (8) hours' pay. When two (2) shifts are employed for five (5) or more consecutive days, eight (8) consecutive hours (exclusive of meal period), shall constitute a day of work, for which eight (8) times the straight time hourly rate shall be paid at the Second Shift Premium rate. When three (3) shifts are employed for five (5) or more consecutive days, seven and one-half (7½) consecutive hours (exclusive of meal period) shall constitute a day of work, for which eight (8) times the straight time hourly rate shall be paid for the second shift. The third shift shall be seven (7) hours for eight (8) hours pay. On two (2) shift operations, the first shift shall have a regular starting time not earlier than 5:00 a.m., and not later than 8:00 a.m. On three (3) shift operations, the first shift shall start at 8:00 a.m. Shifts shall run consecutively with not more than one (1) hour between shifts.

Two Shift Operations. The second shift differential is ($3.00/hr – Area A and $2.85/hr – Area B) incorporated in Supplement No. 1 of this Agreement.

The Friday graveyard shift, though coming off work Saturday morning, is to be considered working Friday.

Work performed after 8:00 a.m. Saturday morning shall be deemed Saturday work.

The Saturday graveyard shift, though coming off work Sunday morning, is to be considered working Saturday. Work performed after 8:00 a.m. Sunday morning shall be deemed Sunday work. The Sunday graveyard shift, though coming off work Monday morning, is to be considered working Sunday, with the exception that a graveyard shift employee who has worked seven (7) or more hours prior to the scheduled starting time of the Monday day shift and continues to work after starting time shall continue to receive the double time (2x) wage





rate.

4. Weekends and Holidays. One and one-half (1½) times the regular straight time hourly rate shall be paid for all work on Saturdays (except make-up day) and before a shift begins and after it ends. Double the regular straight time hourly rate shall be paid for all work on Sundays and holidays. On two shift operations, Laborers working a complete second shift of shift work on Saturdays, Sundays and holidays shall be paid eight (8) hours of pay at the appropriate overtime rate for eight (8) hours of work. For work on Saturdays, Sundays and holidays on a three-shift operation, Laborers working a complete second shift shall be paid eight (8) hours of pay at the appropriate overtime rate for seven and one-half (7-1/2) hours of work. Laborers working a complete third shift shall be paid eight (8) hours of pay at the appropriate rate for seven (7) hours of work.

5. Minimum Hours

(a) From April 1 to November 14, the hours of employment shall be reckoned by the day and half day. From November 15 to March 31, the hours of employment shall be reckoned by the day, three-quarter day and half day. The fraction of a half or three quarter day to be paid for as a half or three-quarter day. Overtime hours, Monday through Friday, shall be reckoned by the hour and half hour. If after work is begun, work is suspended on account of weather conditions, not less than four (4) hours (or five (5) hours on a four-ten (4 x 10) shift) at the applicable rate shall be paid for work performed and any time thereafter shall be reckoned by the hour.

(b) Whenever a Laborer is called out to work on Saturdays, Sundays or holidays (except on make-up days), he/she shall be paid at least four (4) hours, five (5) hours on a four-ten (4 x 10) hour shift, at the applicable overtime rate. All time worked beyond the first four (4) consecutive hours, five (5) consecutive hours on a 4 x 10 shift, on Saturdays, Sundays and holidays shall be reckoned by the hour at the applicable overtime rate.

On shift work, the above shall apply to Laborers called out to work on the day shift and second shift of a two (2) shift operation only. If three (3) shifts are employed, the above shall apply except that three and one-half (3½) hours worked shall be paid as four (4) hours worked, seven (7) hours worked shall be paid as eight (8) hours worked, and hours worked in excess of three and one-half (3½) hours but less than seven (7) hours shall be paid on a pro rata basis, except as modified by a four-ten (4 x 10) hour day work week.

NOTE: Shift differential applies only to the second shift of a two (2) shift operation. Shift differential is as follows: area "A" $3.00/hr., area "B" $2.85/hr. over the appropriate classification rate.

6. Tide Work: When an employee or employees are called out to work tide work, the employee shall receive a guarantee of a full shift at straight time. The overtime rate for Saturday, Sunday and holidays or work in excess of eight (8) hours in any twenty-four (24) hour period shall be the same rate of overtime pay as set forth in this Agreement. The hours between 8:00 a.m. and 5:00 p.m. shall be worked at straight time. Work performed between 5:00 p.m. and 8:00 a.m. shall be considered overtime work.





7. Exceptions: Watchpersons may be required to work any five (5) days out of the week on any shift and may also be required to do job office clean-up work. The overtime rates provided in paragraph 4 of this Section 20A shall apply only to watchpersons, cleaning and washing windows, service landscape laborers for work in excess of eight (8) hours in any one (1) day, or forty (40) hours per week.

   Employees cleaning and washing windows (after initial cleaning) and service landscape laborers (establishment warranty period), may be required to work any five (5) days out of the week on any shift.

   When the Individual Employer sets up a camp or boarding house on a project, the charge made to the employee for board and room shall not exceed the subsistence rate incurred during a calendar week.

8. Flagpersons: Any employees such as a flagperson shall be furnished adequate relief for use of toilet facilities.

## Section 20B Parking

In the event free parking facilities are not available within five (5) blocks of a job site, the Individual Employer will provide such parking facilities and the Individual Employer shall have the right to designate parking areas to be used. Where, because of congested parking conditions, it is necessary to use public parking facilities, the Individual Employer will reimburse the employees for the cost of such parking upon being presented with a receipt or voucher certifying to the cost thereof, submitted weekly. Such reimbursement is to be made on a weekly basis or at the conclusion of the project, whichever occurs earlier.

On remote jobs when the access to where the work is being performed (at a job or project or within a job or project) is unsuitable, and no parking facilities are provided within a five (5) minute walk from where the work is being performed, the Individual Employer shall transport the employees to and from the place where the work is being performed, and such transporting shall be one-half (½) on the Individual Employer's time and one-half (½) on the employee's time.

## Section 21 Status of Foremen

When the Individual Employer determines that a foreman is required to supervise a crew of Laborers, he/she shall be or become a member of this Union in accordance with Section 3A of this Agreement.

## Section 22 Steward

A. The Union may select an employee on the job as a Steward and he/she shall be a working employee. Written notification shall be given to the Individual Employer of such assignment. The Union agrees that the Steward's duties shall be performed as expeditiously as possible and the Individual Employer agrees to allow him/her a reasonable amount of time for the performance of his/her duties. The Individual Employer will give the Union forty-eight (48) hours advance written notice before terminating the Steward unless the job is completed or he/she is discharged for cause.

B. The Steward shall be limited to and shall not exceed the following duties and activities:





(1) Check the dispatch of each employee dispatched under the terms of this Agreement.

(2) Report to his/her Business Representative all violations of this Agreement.

(3) Report to his/her Business Representative any employee covered by this Agreement who, during his/her shift, leaves the job site without giving the Individual Employer and the Steward prior notice.

C. The Steward shall not:

(1) Stop the Individual Employer's work for any reason or tell any workers or any employee covered by this Agreement that he/she cannot work on the job.

Infraction of either of the two rules set forth above in (C) (1) shall be cause for immediate dismissal of the Steward without any prior notice.

## Section 23 Recognized Holidays

The following days are recognized as holidays: Every Saturday and Sunday in the year, except as otherwise provided herein: New Year's Day, President's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, Day After Thanksgiving Day and Christmas Day.

If any of the above holidays fall on Sunday, the Monday following shall be considered a holiday.

Martin Luther King Day will become a recognized holiday when and if the five basic crafts adopt it as a holiday.

## Section 24 Gunite, Shot Crete, Panel Crete and Similar Type Work including all Placing, Finishing and Patching of Shot Crete or Gunite

The wages and certain other conditions not specifically enumerated elsewhere in this Agreement for the Gunite, Shot Crete, Panel Crete and similar type work including all placing, finishing and patching of shot crete or gunite are set forth in Supplement No. 2, attached hereto and made a part hereof, as if set out in full herein covering the territory in which the Agreement is to apply.

## Section 25 Wrecking Work; Gardening, Horticultural and Landscaping Work

The wages and certain other conditions not specifically enumerated elsewhere in this Agreement for Wrecking Work are set forth in Supplement No. 3; for Gardening, Horticultural and Landscaping Work are set forth in Supplement No. 4. Each of the Supplements referred to herein is made a part hereof, as if set forth in full herein.

## Section 26 Liability of the Parties





It is mutually understood and agreed that neither the Employer, any Individual Employer, the Union nor any Local Union shall be liable for damages caused by the acts or conduct of any individual or group of individuals who are acting or conducting themselves in violation of the terms of this Agreement without authority of the respective party, provided that such action or conduct has not been specifically authorized, participated in, fomented or condoned by the Employer, the Individual Employer, the Union or the Local Union, as the case may be.

In the event of any unauthorized violation of the terms of this Agreement, responsible and authorized representatives of the Union, Local Union, the Employer or the Individual Employer, as the case may be, shall promptly take such affirmative action as is within their power to correct and terminate such violation for the purpose of bringing such unauthorized persons into compliance with the terms of this Agreement. Such individuals acting or conducting themselves in violation of the terms of this Agreement shall be subject to discipline, up to and including discharge.

## Section 27 Employees Not To Be Discharged For Recognizing Authorized Picket Lines

The parties to this Agreement recognize that it is vital to the unionized segment of the construction industry that the work opportunities of the employee and the Individual Employer signatory to this Agreement proceed without interruption because of disputes involving unions not signatory to an Agreement with the Employer.

No employee covered hereby may be discharged by any Individual Employer for refusing to cross a picket line established by a Local Union of the basic crafts.

## Section 28A Health and Welfare Plan, Pension/Annuity Plan, Vacation-Holiday-Dues Supplement Plan, Training-Retraining/Apprenticeship Plan

In continuation of the Laborers' Health and Welfare Trust Fund for Northern California, the Laborers' Pension/Annuity Trust Fund for Northern California, the Laborers' Vacation-Holiday-Dues Supplement Trust Fund for Northern California and the Laborers' Training-Retraining/Apprenticeship Trust Fund for Northern California (provided for in Trust Agreements dated March 4, 1953, August 2, 1963, April 1, 1985, June 4, 1963, November 19, 1968 and December 31, 1975, respectively, as amended and modified, and the appropriate plans adopted thereunder), each Individual Employer shall pay hourly contributions for each hour paid for and/or worked, including overtime pay, shift pay, show-up time pay and similar payments in accordance with the schedule specified in this Section, as follows:





| | 6/26/06 | 6/25/07 | 6/30/08 | 6/29/09 |
|---|---|---|---|---|
| Health & Welfare | $5.14 | $ * | $ * | $ * |
| Retiree Health & Welfare | $ .30 | $ * | $ * | $ * |
| Pension | $3.26 | $ * | $ * | $ * |
| Annuity | $1.01 | $ * | $ * | $ * |
| Vacation/Holiday/Dues Supplement | $2.28 | $ * | $ * | $ * |
| **Training-Retraining/Apprenticeship/LECET | $ .34 | $ * | $ * | $ * |
| Engineering & Utility Contractors Association Industry Promotion Fund | $ .10 | $ * | $ * | $ * |
| ***Industry Stabilization Fund | $ .11 | $ * | $ * | $ * |
| ****Joint Marketing Trust Fund | $ .02 | $ * | $ * | $ * |

*The Union and the Employer will meet at least ninety (90) days prior to the effective date of the negotiated future increases to mutually agree on the allocation of the increases. Allocation shall become effective thirty (30) days after mutual allocation notice is received, but in no event earlier than June 26, 2006, June 25, 2007, June 30, 2008 or June 29, 2009.

**Effective 6/26/06 four cents ($.04) per hour is earmarked for Laborers-Employers Cooperation And Education Trust (L.E.C.E.T.)

***Effective 9/01/07 eight cents ($.08) per hour is earmarked for California Alliance for Jobs and one cent ($.01) per hour is earmarked for the Construction Industry Force Account Council (CIFAC).

****To be earmarked for California Alliance for Jobs.

Each Individual Employer shall be subject to and entitled to the benefits of all of the provisions of the Trust Agreements specified herein establishing said Funds and any amendment or modification thereto. In order to provide for benefits to employees without disruption during periods of contract negotiations and to assure an orderly means of collecting Trust Fund contributions during such periods, each signatory employer agrees that he/she shall be obligated to contribute to each and every Trust Fund referred to in this Agreement for any period following their termination date of this Agreement unless and until a lawful impasse occurs or until a successor Agreement is negotiated. Each signatory employer further agrees that any and all said Trust Funds may enforce this obligation by action to collect such delinquent contributions filed in any court of competent jurisdiction.

The Health & Welfare Plan shall be supplemented to provide that the Trustees shall apply amounts from the contributions specified in this Agreement to such Plan for the purpose of providing benefits to employees retired pursuant to the provisions of the Laborers Pension Trust Fund for Northern California.





The parties agree that the Trustees of the Vacation-Holiday-Dues Supplement Trust Fund may allocate up to twenty-five percent (25%) of the applicable contributions for Holiday pay.

The Union and the Employer agree that the Individual Employers covered by the Master Agreement may continue the coverage of their supervisory personnel above the rank of foreman in the Laborers' Health & Welfare Trust Fund for Northern California, the Laborers' Pension/Annuity Trust Fund for Northern California, the Laborers' Vacation-Holiday-Dues Supplement Trust Fund for Northern California, the Laborers' Training-Retraining/Apprenticeship Trust Fund for Northern California by paying into all Trusts monthly on the basis of one hundred seventy (170) hours per month in accordance with the schedules set forth in the Master Agreement, regardless of the hours worked by any such employee in a month, provided, however, the Individual Employer having made one (1) payment on an employee shall continue to make such a payment so long as the employee is in his employ.

### Section 28B Delinquency Withdrawals

In the event that the Board of Trustees of a fund into which the Individual Employers are required to pay, determine that an Individual Employer is delinquent in the making of any payments required by Section 28A hereof, it shall not be a violation of this Agreement, so long as such delinquency continues, if the Union takes economic action against such Individual Employer and such economic action shall not be a strike or work stoppage within the terms of this Agreement. In the event that any employees of any Individual Employer should be withdrawn pursuant to any similar clause in any agreement between the Collective Bargaining Representative of the Employer and any other Union, then the Union may respect such withdrawal, and for the period thereof, may refuse to perform any work for such Individual Employer and such refusal for such period shall not be a violation of this Agreement. Any employees so withdrawn or refusing to perform any work as herein provided shall not lose their status as employees but no such employee shall be entitled to claim or receive any wages or other compensation for any period during which he has been so withdrawn or refused to perform any work.

### Section 28C Security For Individual Employer Payments Into Trust Funds

Each Individual Employer delinquent by one (1) or more months in making the payments set forth in Section 28A above shall be notified by mail by the Administrator of the Trust or Trusts applicable of such delinquency. Copies of such notices shall be sent to the Employer and to the Union. Each such delinquent Individual Employer shall, within five (5) days of the receipt of such notice (by certified mail), give a satisfactory bond in a sum equal to two (2) times the amount of the delinquency. Such amounts are to be determined by the Administrator of the Trust or Trusts applicable. Such bond is not in any way to be construed as in lieu of any payments required under this Agreement.

All such bonds shall be deposited with the Administrator and shall be in a form acceptable by the Administration of the various Trusts.

If the bond must be used to make any payments under Section 28A, the money shall be prorated among the amounts owed by such Individual Employer, with the first priority to the Vacation-Holiday- Dues Supplement Trust Fund, and the balance dispersed equally to the Health & Welfare, Pension/Annuity and Training-Retraining/Apprenticeship Trusts.





Whenever an Individual Employer fails to deposit a satisfactory bond within the time provided by this Section, if the notice herein provided for has been given, the Local Union shall not be required to dispatch employees, and further economic action by the Union to obtain compliance of this Section will not be a violation of Section 8 of this Agreement.

Any employees so withdrawn or refusing to perform any work as herein provided, shall not lose their status as employees, but no such employee shall be entitled to claim or receive any wages or other compensation for any period during which he/she has been so withdrawn or refused to perform any work.

Whenever any Employer covered by this Agreement is delinquent with respect to the payment of any contributions or other sum of money due to any Trust Fund specified in this Agreement, the Union may withdraw workers and place appropriate pickets at the premises of the Employer or places where said Employer is performing work.

### Section 28E Supplemental Dues

Effective for all work performed on and after June 26, 2006, it is agreed that upon authorization as required by law, the amount of sixty-three cents ($.63) per hour for each hour paid for or worked shall be transmitted from the Vacation-Holiday benefit of each Laborer and shall be remitted directly to the Union. This amount of sixty-three cents ($.63) shall not be deemed to be part of the Vacation-Holiday benefit but is an amount specifically agreed to as a Supplemental Dues benefit. The amount of the Supplemental Dues transmittal shall be specified on a statement sent to the Laborer. Such remittance shall be made to the Union not less than twice per year.

### Section 28F Wage and Fringe Increase

It is agreed effective June 26, 2006, thirty (30) cents per hour will be allocated to Health & Welfare, and seventy (70) cents per hour will be allocated to Pension.

There shall be an additional one (1) dollar and ninety-five (95) cents per hour increase effective on 6/25/07; an additional one (1) dollar and eighty-five (85) cents per hour increase effective on 6/30/08; and an additional one (1) dollar and eighty (80) cents per hour increase effective on 6/29/09. Entry Level Laborer wage rate will be frozen for the duration of the Agreement, except for fringe benefit increases which will be paid for by the Employer.

The Union may elect at its option upon ninety (90) days notice to the Employer, prior to 6/25/07, 6/30/08, or 6/29/09, to allocate each increase to any or all of the following:

1. Wages
2. Health and Welfare
3. Retiree Health and Welfare
4. Pension/Annuity
5. Vacation-Holiday-Dues Supplement
6. Training-Retraining/Apprenticeship
7. Industry Stabilization Fund





8. Joint Marketing Trust Fund
9. Laborers-Employers Cooperation and Education Trust (L.E.C.E.T.)

provided, if any or all of the allocation is made to Fringe Benefits, such Fringe Benefits shall be effective on 6/25/07, 6/30/08, or 6/29/09 as applicable.

In the event the Laborers Health and Welfare Trust Fund falls below a six (6) month reserve, any package increase negotiated by the collective bargaining parties, shall be reviewed at least ninety (90) days prior to the effective date of such increase, and by mutual agreement such monies as are deemed necessary to provide sufficient reserve (not less than six (6) months), shall be allocated to the Health and Welfare Trust Fund. Such monies as are determined appropriate for this allocation shall have as their intent to build a six (6) month reserve.

## Section 29 General Saving Clause

It is not the intent of either party hereto to violate laws, rulings or regulations of any governmental authority or agency having jurisdiction of the subject matter or of this Agreement, and the parties hereto agree that in the event any provisions of this Agreement are finally held or determined to be illegal or void as being in contravention of any such laws, rulings or regulations; nevertheless, the remainder of the Agreement shall remain in full force and effect, unless the parts so found to be void are wholly inseparable from the remaining portion of this Agreement. The clauses hereof relating to "Hiring," Section 3A hereof, and "No Cessation of Work," Section 8 hereof, are intended to be inseparable and mutually interdependent. Should either of such sections be held or determined to be illegal or void for any reason, then both of said clauses shall forthwith become of no further force or effect, and neither party shall by implication be bound thereby. The parties agree that if and when any provisions of this Agreement are finally held or determined to be illegal or void, they will then promptly enter into lawful negotiations concerning the substance thereof.

It is the intent of the parties to this Agreement that each and every, all and singular, of the provisions of this Agreement be fully in accordance with Federal and State Law. Its interpretation and the interpretation of each of the provisions of this Agreement is therefore intended to apply no broader than that permitted by law.

## Section 30 Change of Name or Style

This Agreement is binding upon each Individual Employer regardless of whether he/she or it changes the name or style or address of his/her or their business. Each Individual Employer shall give notice in writing to said District Council of any intent to change the name, style or address of his/her or its business, or to perform business under more than one name or style or at more than one address, prior to the adoption of a new or different name, style or address, or the addition of new names or styles or addresses, as specified herein.

Nothing in this paragraph shall be construed as adding to the scope of work covered by this Agreement.

## Section 31 Warranty

Each of the persons executing this Agreement on behalf of their respective Employers or Unions hereby warrants





his/her authority to execute this Agreement and to bind the respective party on whose behalf he/she signs.

## Section 32 Effective and Termination Date

This Agreement shall be effective as of the 26th day of June 2006, and remain in effect without reopening for any purpose until the 30th day of June 2010, and shall continue from year to year thereafter, unless either of the Collective Bargaining Representatives shall give written notice to the other of a desire to change the wages, hours and working conditions hereof not more than ninety (90) and not less than sixty (60) days prior to June 30 of any succeeding year.

The parties to this Agreement recognize the necessity of assuring the competitive position of the parties within the industry during the term of this Agreement. Consistent with that recognition, the parties will continually monitor the effectiveness of this Agreement relative to specific geographic or market area and will endeavor, by mutual agreement, to initiate such modifications to the Agreement during its term as may be necessary to assure the work opportunities of the employees and the competitive position of the Individual Employers.

It is agreed that in the event either party should exercise its rights under the paragraph first above set out, they will for a period of sixty (60) days prior to the 30th day of June, 2010, or June 30th of any succeeding year bargain with each other with respect to all wage rates, working conditions and hours of employment for the work herein covered.

Should an impasse be reached during the course of future negotiations to amend and/or extend the present Agreement, or during the course of negotiations over a new agreement, either party may submit the items in dispute to the Dispute Settlement Board established in the AGC-Basic Trades Joint Labor Management Committee Impasse Settlement Plan for resolution. The findings of the Dispute Settlement Board shall be binding on the parties.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals by respective officers duly authorized to do so, this 26th day of June, 2006.

FOR THE EMPLOYER:

ENGINEERING & UTILITY CONTRACTORS ASSOCIATION

By:______________________________
Bob Spinardi, Chairman
Laborers Negotiating Committee

By:______________________________
Mark Breslin, Chief Executive Officer

FOR THE UNION:

NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA

By:______________________________
José A. Moreno, Business Manager

## SUPPLEMENT NO. 1 LABORERS WAGE RATES

**WAGE RATES:** In each group, two (2) different wage rates will apply for each classification.

**Wage Rate A** - will apply to the following six (6) counties:

Alameda, Contra Costa, Marin, San Francisco, San Mateo and Santa Clara.

**Wage Rate B** - will apply to the following forty (40) counties:

Alpine, Amador, Butte, Calaveras, Colusa, Del Norte, El Dorado, Fresno, Glenn, Humboldt, Kings, Lake, Lassen, Madera, Mariposa, Mendocino, Merced, Modoc, Monterey, Napa, Nevada, Placer, Plumas, Sacramento, San Benito, San Joaquin, Santa Cruz, Sierra, Shasta, Siskiyou, Solano, Sonoma, Stanislaus, Sutter, Tehama, Trinity, Tulare, Tuolumne, Yolo and Yuba.

Labor Foremen - shall receive one ($1.00) dollar per hour above any classification of this Agreement working under his direction.

A $3.00/hour premium (shift differential) shall be added to the base rate of Wage Rate A and a $2.85/hour premium (shift differential) shall be added to the base rate of Wage Rate B for the second shift of two (2) shift operations and for special single shifts as defined in Section 20A.

Premiums (shift differential) are not applicable to three (3) shift operations.

A $3.00/hour premium (zone pay) shall be added to the base rate of Wage Rate B for worked performed outside the geographic area as defined in Supplement No. 6.

**CONSTRUCTION SPECIALIST – WAGE RATE**

| EFFECTIVE DATE | 6/26/06 | 6/25/07 | 6/30/08 | 6/29/09 |
|---|---|---|---|---|
| RATE A | $24.84 | $25.84 | $ * | $ * |
| RATE B | $23.84 | $24.84 | $ * | $ * |

**CLASSIFICATIONS OF CONSTRUCTION SPECIALIST**

Asphalt Ironers and Rakers
Chainsaw
Laser Beam in connection with Laborers' work
Masonry and Plasterer Tender
Cast in place manhole form setters





Pressure pipelayers
Davis Trencher - 300 or similar type (and all small trenchers)
State Licensed Blaster as designated
Diamond Drillers
Multiple Unit Drills
Hydraulic Drills
Certified Welder
New or additional classification subject to Section 14A of this Agreement

**GROUP 1 – WAGE RATE**

| **EFFECTIVE DATE** | **6/26/06** | **6/25/07** | **6/30/08** | **6/29/09** |
|---|---|---|---|---|
| **RATE A** | $24.14 | $25.14 | $ * | $ * |
| **RATE B** | $23.14 | $24.14 | $ * | $ * |

**CLASSIFICATIONS OF GROUP 1**

Asphalt Spreader Boxes (all types)
Barko, Wacker and Similar Type Tampers
Buggymobile
Caulkers, Banders, Pipewrappers, Conduit Layers, Plastic Pipe Layers
Certified Asbestos & Mold Removal Worker
Certified Hazardous Waste Worker (Including Lead Abatement)
Compactors of all types
Concrete and Magnesite Mixer and ½ yard
Concrete Pan Work
Concrete Sanders, Concrete Saw
Cribbers and/or Shoring
Cut Granite Curb Setter
Directional Boring Machine – Microtunneling
Dri Pak it Machine
Faller, Logloader and Bucker
Form Raisers, Slip Forms
Green Cutters
Headerboard Men, Hubsetters, Aligners by any method
High Pressure Blow Pipe (1 ½" or over, 100 lbs pressure/over)
Hydro Seeder & Similar Type
Jackhammer Operators
Jacking of Pipe over 12 inches
Jackson and Similar Type Compactors
Kettlemen, Potmen and men applying asphalt, Lay Kold, Creosote, lime, caustic and similar type materials, (applying





means applying dipping or handling of such materials)
Lagging, Sheeting, Whaling, Bracing, Trenchjacking, Lagging hammer
Magnesite, Epoxy Resin, Fiber Glass and Mastic Workers (wet/dry)
No joint pipe and stripping of same, including repair of voids
Pavement Breakers and Spaders, including tool grinder
Perma Curbs
Pipelayers (including grade checking in connection with pipe-laying)
Precast manhole setters
Pressure Pipe Tester
Post Hole Diggers - Air, Gas and Electric Power Broom Sweepers
Power Tampers of all types, except as shown in Group 2
Ram Set Gun and Stud Gun
Riprap - Stonepaver and Rock slinger, including placing of sacked concrete and/or sand (wet or dry) and Gabions and similar type
Rotary Scarifier or Multiple Head Concrete Chipping Scarifier
Roto and Ditch Witch
Rototiller
Sand Blasters, Potmen, Gunmen and Nozzlemen
Self-Propelled Brooms under 65hp
Signaling and Rigging
Tank Cleaners
Tree Climbers
Trenchless Technology Laborer – Pipe installation, bursting, relining or similar
Turbo Blaster
Vibra Screed Bull float in connection with Laborers' work
Vibrators

**GROUP 1(a) – WAGE RATE**

| EFFECTIVE DATE | 6/26/06 | 6/25/07 | 6/30/08 | 6/29/09 |
|---|---|---|---|---|
| RATE A | $24.36 | $25.36 | $ * | $ * |
| RATE B | $23.36 | $24.36 | $ * | $ * |

**CLASSIFICATIONS OF GROUP 1(a)**

Joy Drill Model TWM 2A
Gardener Denver Model DH 143 and similar type drills. (In accordance with Memorandum of Understanding between Laborers and Operating Engineers dated at Miami, Florida, February 3, 1954.)
Track Drillers
Jack Leg Drillers
Wagon Drillers






ENGINEERING & UTILITY CONTRACTORS ASSOCIATION

Mechanical Drillers - All types regardless of type or method of power
Mechanical Pipe Layer - All types regardless of type or method of power
Blasters and Powderman
All work of loading, placing and blasting of all powder and explosives of whatever type, regardless of method used for such loading and placing
High Scalers (including drilling of same)
Tree Topper
Bit Grinder

**GROUP 1(b) – WAGE RATE**

Sewer Cleaners shall receive four ($4.00) dollars per day above Group 1 wage rates. "Sewer Cleaner" means any workman who handles or comes in contact with raw sewage in small diameter sewers. Those who work inside recently active, large diameter sewers, and all recently active sewer manholes shall receive five ($5.00) dollars per day above Group 1 wage rates.

**GROUP 1(c) – WAGE RATE**

| EFFECTIVE DATE | 6/26/06 | 6/25/07 | 6/30/08 | 6/29/09 |
|---|---|---|---|---|
| RATE A | $24.19 | $25.19 | $ * | $ * |
| RATE B | $23.19 | $24.19 | $ * | $ * |

**CLASSIFICATIONS OF GROUP 1(c)**

Burning and welding in connection with Laborers' work Synthetic thermoplastics and similar type welding.

**GROUP 1(d) – WAGE RATE**

Maintenance and Repair Trackmen and Road Beds and all employees performing work covered by this Agreement shall receive twenty-five ($.25) cents per hour above their regular rate for all work performed on underground structures not specifically covered herein. This paragraph shall not be construed to apply to work below ground level in open cut. It shall apply to cut and cover work of subway construction after the temporary cover has been placed.

**GROUP 1(e) – WAGE RATE**

| EFFECTIVE DATE | 6/26/06 | 6/25/07 | 6/30/08 | 6/29/09 |
|---|---|---|---|---|
| RATE A | $24.69 | $25.69 | $ * | $ * |
| RATE B | $23.69 | $24.69 | $ * | $ * |

**CLASSIFICATIONS OF GROUP 1(e)**





Work on and/or in Bell Hole Footings and Shafts thereof, and work on and in Deep Footings (Deep Footing is a hole fifteen (15) feet or more in depth). In the event the depth of the footing is unknown at the commencement of excavation, and the final depth exceeds fifteen (15) feet, the contractor agrees to pay the deep footing wage rate to all employees for each and every day worked on or in the excavation of the footing from the date of inception.

All work in the construction of tunnels and shafts shall be performed in accordance with the provisions of the Laborers' Tunnel Master Agreement for Northern California and the Individual Employer agrees to comply with all of the provisions of said Tunnel Agreement in such work.

Shaft is an excavation over fifteen (15) feet deep of any type, generally vertical in nature, but may decline from the vertical, and whose depth is greater than its largest horizontal dimension. It is specifically understood that Bell Hole Footings and Deep Footings are subject to the provisions of this Agreement, and all Shafts, Stopes, Raises and Tunnels are subject to the provisions of the Tunnel Master Agreement specified herein.

**GROUP 1(f) – WAGE RATE**

Wire winding machine in connection with Guniting or Shot Crete. (See Supplement No. 2)

| EFFECTIVE DATE | 6/26/06 | 6/25/07 | 6/30/08 | 6/29/09 |
|---|---|---|---|---|
| Aligner- | | | | |
| **RATE A** | $24.72 | $25.72 | $ * | $ * |
| **RATE B** | $23.72 | $24.72 | $ * | $ * |
| Helper- | | | | |
| **RATE A** | $23.74 | $24.74 | $ * | $ * |
| **RATE B** | $22.74 | $23.74 | $ * | $ * |

**GROUP 1(g) – WAGE RATES FOR CONTRA COSTA COUNTY**

| EFFECTIVE DATE | 6/26/06 | 6/25/07 | 6/30/08 | 6/29/09 |
|---|---|---|---|---|
| **RATE** | $24.34 | $25.34 | $ * | $ * |

**CLASSIFICATIONS OF GROUP 1(g)**

Pipelayers (including grade checking in connection with pipelaying)
Caulkers
Banders
Pipewrappers
Conduit Layers
Plastic Pipe Layer
Pressure Pipe Tester





No joint pipe and stripping of same, including repair of voids
Precast Manhole Setters, cast in place manhole form setters

**GROUP 1(h) – WAGE RATES**

Laborers working off or with or from Bos'n Chairs, Swinging Scaffolds, or Belts shall receive twenty-five ($.25) cents per hour above the applicable wage rate. This premium rate shall be reckoned by the day and half day. This shall not apply to Laborers entitled to receive the wage rate set forth in Group 1(a).

**GROUP 2 – WAGE RATE**

| EFFECTIVE DATE | 6/26/06 | 6/25/07 | 6/30/08 | 6/29/09 |
|---|---|---|---|---|
| RATE A | $23.99 | $24.99 | $ * | $ * |
| RATE B | $22.99 | $23.99 | $ * | $ * |

**CLASSIFICATIONS OF GROUP 2**

Asphalt Shovelers
Cement Dumpers and handling dry cement or gypsum
Choke Setter and Rigger (clearing work)
Concrete Bucket Dumper and Chuteman
Concrete Chipping and Grinding
Concrete Laborers (wet or dry)
Drillers Helper, Chuck Tender, Nipper (One (1) Chuck Tender on single machine operation with minimum of one (1) Chuck Tender for each two (2) machines on multiple machine operations. Jackhammers are in no way involved in this item.
Guinea Chaser (Stakeman), Grout Crew
High Pressure Nozzlemen, Adductors
Hydraulic Monitor (over 100 lbs. pressure)
Loading and unloading, carrying and handling of all rods and materials for use in reinforcing concrete construction
Pittsburgh Chipper, and similar type brush shredders
Sloper
Single foot, hand held, pneumatic tamper
All Pneumatic, Air, Gas and Electric Tools not listed in Groups 1 through 1(f)
Jacking of Pipe under 12 inches

**GROUP 3 – WAGE RATE**

| EFFECTIVE DATE | 6/26/06 | 6/25/07 | 6/30/08 | 6/29/09 |
|---|---|---|---|---|
| RATE A | $23.89 | $24.89 | $ * | $ * |
| RATE B | $22.89 | $23.89 | $ * | $ * |

**CLASSIFICATIONS OF GROUP 3**

Construction Laborers, including Bridge Laborers and General Laborers
Dumpman, Load Spotter
Flagperson
Fire Watcher
Fence Erectors
Guardrail Erectors
Gardeners, Horticultural and Landscape Laborers (See Supplement No. 4)
Jetting
Limbers, Brush Loaders and Pilers
Pavement Markers (Button Setters)
Maintenance, Repair Trackmen and Road Beds
Streetcar and Railroad Construction Track Laborers
Temporary Air and Water Lines, Victaulic or similar
Tool Room Attendant (job site only)
Dry Utilities Laborer – Electrical and telecommunication conduit layer, joint utility trench Laborer including gas
Remediation/Land Restoration Laborer – Wetlands restoration, mitigation or re-vegetation of lands, (ornamental landscape is not included in this classification)

**GROUP 3(a) – WAGE RATE**

| EFFECTIVE DATE | 6/26/06 | 6/25/07 | 6/30/08 | 6/29/09 |
|---|---|---|---|---|
| RATE A | $23.89 | $24.89 | $ * | $ * |
| RATE B | $22.89 | $23.89 | $ * | $ * |

**CLASSIFICATION OF GROUP 3(a)**

Composite Crew Person - Shall apply only to the operation of vehicles, when operated in conjunction with Laborers' duties.

**GROUP 4 – WAGE RATE**





| EFFECTIVE DATE | 6/26/06 | 6/25/07 | 6/30/08 | 6/29/09 |
|---|---|---|---|---|
| RATE A | $17.58 | $18.58 | $ * | $ * |
| RATE B | $16.58 | $17.58 | $ * | $ * |

**CLASSIFICATION OF GROUP 4**

All final cleanup work of debris, grounds and building near the completion of the project including but not limited to street cleaners. It is agreed that the Group 4 Classification is not applicable to engineering or heavy highway projects.

Cleaning & Washing Windows (subject to provisions of Section 20A)
Brick Cleaners (job site only)
Watchman (Subject to provisions of Section 20A)
Material Cleaners (job site only)

The classification "Material Cleaner" is to be utilized under the following conditions:

A. At demolition sites for the salvage of the material.
B. At the conclusion of a job where the material is to be salvaged and stocked to be reused on another job.
C. The cleaning of salvage material at the Employer's job site or temporary job site yard.

The classification of "Material Cleaner" is not to be used to perform "form stripping cleaning and oiling and moving to the next point of erection."

**GROUP 5 (Entry Level Laborer) – WAGE RATE**

| EFFECTIVE DATE | 6/26/06 | 6/25/07 | 6/30/08 | 6/29/09 |
|---|---|---|---|---|
| 2,000 Hours | $12.90 | $12.90 | $ * | $ * |

*The Union and the Employer will meet at least ninety (90) days prior to the effective date of the negotiated future increases to mutually agree on the allocation of the increases. Allocation shall become effective thirty (30) days after mutual allocation notice is received, but in no event earlier than June 26, 2006, June 25, 2007, June 30, 2008 or June 29, 2009

At the discretion of the Employer, the scope of work includes, but is not limited to:

Tending other crafts
Watermeter Installer
Residential Laborer

An Individual Employer may employ two (2) Entry Level Laborers for every four (4) regular Laborers on his payroll. Provided further, the second (2nd) Entry Level Laborer would be permitted on a job or project only after four (4)





regular Laborers are on the job or project.

Each Entry Level Laborer who completes the Basic Laborer Training Course at the Laborers' Training School shall receive three (3) months* (five hundred ten (510) hours) credit towards becoming a regular Laborer under the terms of this Agreement. (*3 months at 170 hours per month = 510 hours)

All other terms and conditions of this Agreement shall apply to all Entry Level Laborers. The provisions of this Group 5 shall not apply to the Tunnel Master Agreement.





**SUPPLEMENT NO. 2** **GUNITE, SHOTCRETE, PANELCRETE AND SIMILAR TYPE WORK INCLUDING ALL PLACING, FINISHING AND PATCHING OF SHOTCRETE OR GUNITE**

Hours and working conditions and wages shall be the same as in this Master Agreement except those expressly herein provided.

**CLASSIFICATIONS/RATES PER HOUR:**

| **EFFECTIVE DATE** | **6/26/06** | **6/25/07** | **6/30/08** | **6/29/09** |
|---|---|---|---|---|
| Structural Nozzleman | | | | |
| **RATE A** | $25.10 | $26.10 | $ * | $ * |
| **RATE B** | $24.10 | $25.10 | $ * | $ * |
| Nozzleman, Gunman and Potman | | | | |
| **RATE A** | $24.60 | $25.60 | $ * | $ * |
| **RATE B** | $23.60 | $24.60 | $ * | $ * |
| Rodman | | | | |
| **RATE A** | $24.60 | $25.60 | $ * | $ * |
| **RATE B** | $23.60 | $24.60 | $ * | $ * |
| Groundman | | | | |
| **RATE A** | $24.60 | $25.60 | $ * | $ * |
| **RATE B** | $23.60 | $24.60 | $ * | $ * |
| Gunite Trainee** | | | | |
| **RATE A** | $17.58 | $18.58 | $ * | $ * |
| **RATE B** | $16.58 | $17.58 | $ * | $ * |
| Reboundman | | | | |
| **RATE A** | $24.01 | $25.01 | $ * | $ * |
| **RATE B** | $23.01 | $24.01 | $ * | $ * |
| General Laborers | | | | |
| **RATE A** | $23.89 | $24.89 | $ * | $ * |
| **RATE B** | $22.89 | $23.89 | $ * | $ * |





**One trainee shall be allowed for each three (3) Journeymen on a crew. In the absence of the Journeyman, the trainee shall receive the Journeyman scale.

| EFFECTIVE DATE | 6/26/06 | 6/25/07 | 6/30/08 | 6/29/09 |
|---|---|---|---|---|
| Gunite Foreman | | | | |
| RATE A | $25.60 | $26.60 | $ * | $ * |
| RATE B | $24.60 | $25.60 | $ * | $ * |

**Travel from Jurisdiction of One Area to Another Area:**

The Employer shall have the right to bring six (6) workers from one area into another area within the area covered by this Agreement. Such Employer shall notify the Local Union one day in advance of starting the job. Other workers will be obtained when available from the area where the work is to be performed.

**Travel, Driving and Out of Town Expense Allowance:**

On projects sixty (60) miles or more by the shortest and most direct regularly traveled route from the main office or permanently established area office of the individual employer, such employer shall provide each employee transportation either physically or by paying the cost of such transportation. If the employer chooses to pay the cost of such transportation the cost shall be determined at the rate of forty ($0.40) cents per mile for each mile in excess of sixty (60) miles. Additionally the employee will be compensated at rate of one-half (½) of his straight time wage rate both to and from the job less seventy-five (75) minutes each way.

Any employee operating or responsible for the control of a company vehicle being used to transport personnel, equipment and/or supplies from the employer's regularly established shop or yard to a jobsite shall be compensated at a rate of fifteen dollars and ninety-three cents ($15.93) per hour. Any employee who is a passenger in and not directly responsible for the control of a company vehicle is deemed to be in the vehicle voluntarily and is not subject to compensation other than discussed above. Employees assigned company vehicles will not be compensated for travel to and from the project to their homes unless it is in excess of sixty (60) miles from the regularly established shop or yard.

Travel & Driving time is not subject to Section 28 (Fringe Benefits).

Employees required to stay out of town will be compensated at the rate of sixty dollars ($60.00) per day for each night the employee is at the project location. If an employee arrives on a project on Monday and returns to his home on Friday he/she would be compensated for four (4) night's subsistence. At the employer's option on continuing projects the employee may be paid subsistence through the weekend or pay the travel to and from the project for every weekend that the employee return to such project. If the employer pays for the lodging the employee will be compensated at the rate of twenty dollars ($20.00) per day for food and other out of town expenses.





**SUPPLEMENT NO. 3 WRECKING WORK**

Hours and working conditions and wages shall be the same as in this Master Agreement, except those expressly herein provided.

**CLASSIFICATIONS/RATES PER HOUR:**

| **EFFECTIVE DATE** | **6/26/06** | **6/25/07** | **6/30/08** | **6/29/09** |
|---|---|---|---|---|
| Skilled Wrecker<br>Group No. 1<br>(Removing and salvaging of sash, windows, doors, plumbing and electric fixtures.) | | | | |
| **RATE A** | $24.14 | $25.14 | $ * | $ * |
| **RATE B** | $23.14 | $24.14 | $ * | $ * |
| Semi Skilled Wrecker<br>Group No. 2<br>(Salvaging of other building materials) | | | | |
| **RATE A** | $23.99 | $24.99 | $ * | $ * |
| **RATE B** | $22.99 | $23.99 | $ * | $ * |





## SUPPLEMENT NO. 4 GARDENERS, HORTICULTURAL & LANDSCAPE WORKERS

Hours and working conditions and wages shall be the same as in this Master Agreement, except those expressly herein provided.

**CLASSIFICATION/RATES PER HOUR:**

| EFFECTIVE DATE | 6/26/06 | 6/25/07 | 6/30/08 | 6/29/09 |
|---|---|---|---|---|
| Gardeners, Horticultural and Landscape Laborers (New Construction) | | | | |
| **RATE A** | $23.89 | $24.89 | $ * | $ * |
| **RATE B** | $22.89 | $23.89 | $ * | $ * |
| Service Landscape Laborers (Establishment Warranty Period) | | | | |
| **RATE A** | $17.58 | $18.58 | $ * | $ * |
| **RATE B** | $16.58 | $17.58 | $ * | $ * |

The overtime rates provided in paragraph 5 of Section 20A shall apply only to service landscape laborers (establishment warranty period) for work in excess of forty (40) hours in any one (1) week, or in excess of eight (8) hours in any one (1) day.

Service landscape laborers (establishment warranty period), may be required to work any five (5) days out of the week on any shift.

**LANDSCAPE LABORER TRAINEE**

A new classification, Landscape Laborer Trainee, is based on an eighteen (18) month training program, as follows:

| EFFECTIVE DATE | 6/26/06 | 6/25/07 | 6/30/08 | 6/29/09 |
|---|---|---|---|---|
| **RATE A** | | | | |
| 1st 6 mos. @ 70% | $16.72 | $17.42 | $ * | $ * |
| 2nd 6 mos. @ 80% | $19.11 | $19.91 | $ * | $ * |
| 3rd 6 mos. @ 90% | $21.50 | $22.40 | $ * | $ * |





| EFFECTIVE DATE | 6/26/06 | 6/25/07 | 6/30/08 | 6/29/09 |
|---|---|---|---|---|
| **RATE B** | | | | |
| 1st 6 mos. @ 70% | $16.02 | $16.72 | $ * | $ * |
| 2nd 6 mos. @ 80% | $18.31 | $19.11 | $ * | $ * |
| 3rd 6 mos. @ 90% | $20.60 | $21.50 | $ * | $ * |

**(The above rates are wages only. Fringe Benefits are the same as in Section 28A of the Laborers' Master Agreement.)**

Prior to employment, the Employer must submit in writing any request for employees from the Local Union; and, all employees must be referred by the Local Union in the area of work.

The ratio of Trainees shall be: One (1) in three (3), with the understanding that each Individual Contractor utilizing the Trainee Classification must employ at least one (1) Second Period Trainee in the Second Period of the Agreement and at least one (1) Third Period Trainee in the Third Period of the Agreement before being eligible to employ another First Period Trainee.

## SUPPLEMENT NO. 5 LABORERS' APPRENTICESHIP PROGRAM

1. **TERM OF APPRENTICESHIP:** The term of apprenticeship shall be three thousand (3,000) hours within eighteen (18) months. The first seven hundred fifty (750) hours, shall be a tryout or probationary period.

2. **RATIO:** A qualified Individual Employer may employ one (1) Apprentice when at least five (5) Journeymen are regularly employed, and one (1) additional Apprentice for each five (5) additional Journeymen.

3. **WORK TRAINING:** The Individual Employer shall see that all apprentices are under the supervision of a qualified Journeyman or instructor and shall provide the necessary diversified experience and training in order to train and develop the Apprentice into a skilled worker, proficient in all the work processes of a Construction Craft Laborer, as outlined herein. Apprentices shall also be trained in the use of new equipment, materials and processes as they come into use in the craft.

4. **WAGE/BENEFIT SCHEDULE:** Apprentices shall be paid not less that than the following percentages of the current Journeyman rate:

| Period | Hours | Wage Rate Percentage (%) | Fringe Benefits |
|---|---|---|---|
| 1st Period | 1-500 Hrs | 65% | Health & Welfare, Training-Retraining/Apprenticeship/LECET,Employer Trust Funds*, Supplemental Dues |
| 2nd Period | 501-1000 Hrs | 70% | Health & Welfare, Training-Retraining/Apprenticeship/LECET,Employer Trust Funds*, Supplemental Dues |
| 3rd Period | 1001-1500 Hrs | 75% | Health & Welfare, Training-Retraining/Apprenticeship/LECET,Employer Trust Funds*, Supplemental Dues |
| 4th Period | 1501-2000 Hrs | 80% | Full Benefits |
| 5th Period | 2001-2500 Hrs | 85% | Full Benefits |
| 6th Period | 2501-3000 Hrs | 90% | Full Benefits |

* Employer Trust Funds – Contract Administration, Industry Promotion Fund, and Industry Stabilization Fund





## SUPPLEMENT NO. 6 ZONE PAY

Zone pay at three dollars ($3.00) per hour will be added to the base rate for work performed outside the Free Zone described by the following boundaries along Township and Range lines.

**MAP DESCRIPTION FOR AREA FREE ZONE.**

The following is a description based upon township and Area free zones for all of Northern California within the following lines:

1. Commencing in the Pacific Ocean on the extension of the Southerly line of Township 19S, of the Mount Diablo Base and Meridian,
2. Thence Easterly along the Southerly line of Township 19S, to the Northwest corner of Township 20S, Range 6E,
3. Thence Southerly to the Southwest corner of Township 20S, Range 6E,
4. Thence Easterly to the Northwest corner of Township 21S, Range 7E,
5. Thence Southerly to the Southwest corner of Township 21S, Range 7E,
6. Thence Easterly to the Northwest corner of Township 22S, Range 9E,
7. Thence Southerly to the Southwest corner of Township 22S, Range 9E,
8. Thence Easterly to the Northwest corner of Township 23S, Range 10E,
9. Thence Southerly to the Southwest corner of Township 24S, Range 10E,
10. Thence Easterly to the Southwest corner of Township 24S, Range 31E,
11. Thence Northerly to the Northeast corner of Township 20S, Range 31E,
12. Thence Westerly to the Southeast corner of Township 19S, Range 29E,
13. Thence Northerly to the Northeast corner of Township 17S, Range 29E,
14. Thence Westerly to the Southeast corner of Township 16S, Range 28E,
15. Thence Northerly to the Northeast corner of Township 13S, Range 28E,
16. Thence Westerly to the Southeast corner of Township 12S, Range 27E,
17. Thence Northerly to the Northeast corner of Township 12S, Range 27E,
18. Thence Westerly to the Southeast corner of Township 11S, Range 26E,
19. Thence Northerly to the Northeast corner of Township 11S, Range 26E,
20. Thence Westerly to the Southeast corner of Township 10S, Range 25E,
21. Thence Northerly to the Northeast corner of Township 9S, Range 25E,
22. Thence Westerly to the Southeast corner of Township 8S, Range 24E,
23. Thence Northerly to the Northeast corner of Township 8S, Range 24E,
24. Thence Westerly to the Southeast corner of Township 7S, Range 23E,
25. Thence Northerly to the Northeast corner of Township 6S, Range 23E,
26. Thence Westerly to the Southeast corner of Township 5S, Range 20E,
27. Thence Northerly to the Northeast corner of Township 5S, Range 20E,
28. Thence Westerly to the Southeast corner of Township 4S, Range 19E,





29. Thence Northerly to the Northeast corner of Township 1S, Range 19E,
30. Thence Westerly to the Southeast corner of Township 1N, Range 18E,
31. Thence Northerly to the Northeast corner of Township 3N, Range 18E,
32. Thence Westerly to the Southeast corner of Township 4N, Range 17E,
33. Thence Northerly to the Northeast corner of Township 4N, Range 17E,
34. Thence Westerly to the Southeast corner of Township 5N, Range 15E,
35. Thence Northerly to the Northeast corner of Township 5N, Range 15E,
36. Thence Westerly to the Southeast corner of Township 6N, Range 14E,
37. Thence Northerly to the Northeast corner of Township 10N, Range 14E,
38. Thence Easterly along the Southern line of Township 11N, to the California/Nevada State Border,
39. Thence Northerly along the California/Nevada State Border to the Northerly line of Township 17N,
40. Thence Westerly to the Southeast corner of Township 18N, Range 10E,
41. Thence Northerly to the Northeast corner of Township 20N, Range 10E,
42. Thence Westerly to the Southeast corner of Township 21N, Range 9E,
43. Thence Northerly to the Northeast corner of Township 21N, Range 9E,
44. Thence Westerly to the Southeast corner of Township 22N, Range 8E,
45. Thence Northerly to the Northeast corner of Township 22N, Range 8E,
46. Thence Westerly to the Northwest corner of Township 22N, Range 8E,
47. Thence Northerly to the Southwest corner of Township 27N, Range 8E,
48. Thence Easterly to the Southeast corner of Township 27N, Range 8E,
49. Thence Northerly to the Northeast corner of Township 28N, Range 8E,
50. Thence Westerly to the Southeast corner of Township 29N, Range 6E,
51. Thence Northerly to the Northeast corner of Township 32N, Range 6E,
52. Thence Westerly to the Northwest corner of Township 32N, Range 6E,
53. Thence Northerly to the Northeast corner of Township 35N, Range 5E,
54. Thence Westerly to the Southeast corner of Township 36N, Range 3E,
55. Thence Northerly to the Northeast corner of Township 36N, Range 3E,
56. Thence Westerly to the Southeast corner of Township 37N, Range 1W,
57. Thence Northerly to the Northeast corner of Township 38N, Range 1W,
58. Thence Westerly to the Southeast corner of Township 39N, Range 2W,
59. Thence Northerly to the Northeast corner of Township 40N, Range 2W,
60. Thence Westerly to the Southeast corner of Township 41N, Range 4W,
61. Thence Northerly to the Northeast corner of Township 42N, Range 4W,
62. Thence Westerly to the Southeast corner of Township 43N, Range 5W,
63. Thence Northerly to the California/Oregon State Border,
64. Thence Westerly along the California/Oregon State Border to the Westerly Boundary of Township Range 8W,
65. Thence Southerly to the Southwest corner of Township 43N, Range 8W,
66. Thence Easterly to the Southeast corner of Township 43N, Range 8W,
67. Thence Southerly to the Southwest corner of Township 42N, Range 7W,
68. Thence Easterly to the Southeast corner of Township 42N, Range 7W,
69. Thence Southerly to the Southwest corner of Township 41N, Range 6W,
70. Thence Easterly to the Northwest corner of Township 40N, Range 5W,





71. Thence Southerly to the Southwest corner of Township 38N, Range 5W,
72. Thence Westerly to the Northwest corner of Township 37N, Range 6W,
73. Thence Southerly to the Southwest corner of Township 35N, Range 6W,
74. Thence Westerly to the Northwest corner of Township 34N, Range 10W,
75. Thence Southerly to the Southwest corner of Township 31N, Range 10W,
76. Thence Easterly to the Northwest corner of Township 30N, Range 9W,
77. Thence Southerly to the Southwest corner of Township 30N, Range 9W,
78. Thence Easterly to the Northwest corner of Township 29N, Range 8W,
79. Thence Southerly to the Southwest corner of Township 23N, Range 8W,
80. Thence Easterly to the Northwest corner of Township 22N, Range 6W,
81. Thence Southerly to the Southwest corner of Township 16N, Range 6W,
82. Thence Westerly to the Southeast corner of Township 16N, Range 9W,
83. Thence Northerly to the Northeast corner of Township 16N, Range 9W,
84. Thence Westerly to the Southeast corner of Township 17N, Range 12W,
85. Thence Northerly to the Northeast corner of Township 18N, Range 12W,
86. Thence Westerly to the Northwest corner of Township 18N, Range 15W,
87. Thence Southerly to the Southwest corner of Township 14N, Range 15W,
88. Thence Easterly to the Northwest corner of Township 13N, Range 14W,
89. Thence Southerly to the Southwest corner of Township 13N, Range 14W,
90. Thence Easterly to the Northwest corner of Township 12N, Range 13W,
91. Thence Southerly to the Southwest corner of Township 12N, Range 13W,
92. Thence Easterly to the Northwest corner to Township 11N, Range 12W,
93. Thence Southerly into the Pacific Ocean, and,
94. Commencing in the Pacific Ocean on the extension of the Humboldt Base Line,
95. Thence Easterly to the Northwest corner of Township 1S, Range 2E,
96. Thence Southerly to the Southwest corner of Township 2S, Range 2E,
97. Thence Easterly to the Northwest corner of Township 3S, Range 3E,
98. Thence Southerly to the Southwest corner of Township 5S, Range 3E,
99. Thence Easterly to the Southeast corner of Township 5S, Range 4E,
100. Thence Northerly to the Northeast corner of Township 4S, Range 4E,
101. Thence Westerly to the Southeast corner of Township 3S, Range 3E,
102. Thence Northerly to the Northeast corner of Township 5N, Range 3E,
103. Thence Easterly to the Southeast corner of Township 6N, Range 5E,
104. Thence Northerly to the Northeast corner of Township 7N, Range 5E,
105. Thence Westerly to the Southeast corner to Township 8N, Range 3E,
106. Thence Northerly to the Northeast corner of Township 9N, Range 3E,
107. Thence Westerly to the Southeast corner of Township 10N, Range 1E,
108. Thence Northerly to the Northeast corner of Township 13N, Range 1E,
109. Thence Westerly into the Pacific Ocean, excluding that portion of Northern California contained within the following lines:
110. Commencing at the Southwest corner of Township 12N, Range 11E, of the Mount Diablo Base and Meridian,
111. Thence Easterly to the Southeast corner of Township 12N, Range 16E,





112. Thence Northerly to the Northeast corner of Township 12N, Range 16E,
113. Thence Westerly to the Southeast corner of Township 13N, Range 15E,
114. Thence Northerly to the Northeast corner of Township 13N, Range 15E,
115. Thence Westerly to the Southeast corner of Township 14N, Range 14E,
116. Thence Northerly to the Northeast corner of Township 16N, Range 14E,
117. Thence Westerly to the Northwest corner of Township 16N, Range 12E,
118. Thence Southerly to the Southwest corner of Township 16N, Range 12E,
119. Thence Westerly to the Northwest corner of Township 15N, Range 11E,
120. Thence Southerly to the point of beginning at the Southwest corner of Township 12N, Range 11E.

**Zone Pay and map changes shall apply for work bid after June 26, 2006.**

**All areas other than free zones shall be subject to the payment of Zone Pay.**

The Individual Employer shall not be required to pay Zone Pay to employees employed by an Individual Employer in a permanent yard or shop or plant and employees employed by an Individual Employer on residential construction projects (not camps); subdivisions; buildings of three (3) stories or less including utilities and site work related to these buildings; streets, roadways and utilities which are a part of a residential construction project.

**Zone pay shall not be applicable within the city limits of the following cities or towns:**

Auburn, Coalinga, Crescent City, Exeter, Grass Valley, Greenfield, Jackson, Jamestown, Lindsay, Mariposa, Nevada City, Placerville, Porterville, Sonora, Strathmore, Terrabella, Tuolumne, Twain Harte, Woodlake or Yreka.

Zone Pay shall apply to publicly financed camps, highways, dams, tunnels, power facilities, defense facilities, utilities (except as provided above), sewage disposal plants and heavy engineering projects together with the camps, warehouses, offices or facilities constructed in connection with such latter projects.

No Zone Pay shall be paid on a job located within the right of way of a road or highway forming part of the boundary of the Zone Pay area.

If a road or highway forming part of the boundary of a Zone Pay Area is relocated, such relocated road or highway upon being officially opened shall form a part of the boundary of the Zone Pay Area in place of the old road.

When the work is to be performed in the Zone Pay Area, each employee employed to perform work covered by this Agreement shall receive the Zone Pay specified herein.

When the work to be performed is in the Free Zone, such employees shall not be entitled to receive Zone Pay; provided, however, if two or more hours of compensable time (straight time or premium time) are worked by said employee in the Zone Pay Area, he/she shall be entitled to be paid appropriate Zone Pay for all hours worked.





**SCHEDULE "A" DISTRICT COUNCIL OF LABORERS HIRING HALL LOCATIONS**

| Local | City | Street Address | Phone Number | Dispatch Hours |
|---|---|---|---|---|
| **36** | Daly City | 6229-A Mission St. | 650-756-6651 | 7:00-9:00 a.m. |
| **67*** | Oakland | 8400 Enterprise Way, #119 | 510-569-4761 | 7:00-9:00 a.m. |
| **67*** | Sacramento | 2717 Cottage Way, #12 | 916-482-2607 | 7:00-9:00 a.m. |
| **73** | Stockton | 2841 E. Myrtle St. | 209-466-3356 | 7:00-9:00 a.m. |
| **139** | Santa Rosa | 81 Barham Avenue | 707-542-1107 | 7:00-9:00 a.m. |
| **166** | Oakland | 8400 Enterprise Way, Rm 109 | 510-568-0141 | 7:00-9:00 a.m. |
| **185** | Sacramento | 1320 W. National Drive | 916-928-8300 | 7:00-9:00 a.m. |
| **185** | Redding | 2865 Churn Creek Rd., #D | 530-221-0961 | 7:00-9:00 a.m. |
| **185** | Yuba City | 1650 Sierra Ave., #206 | 530-674-4707 | 7:00-9:00 a.m. |
| **261** | San Francisco | 3271 18th Street | 415-826-4550 | 7:00-9:00 a.m. |
| **270** | San Jose | 509 Emory St. | 408-297-2620 | 7:00-9:00 a.m. |
| **270** | Santa Cruz | 640 Eaton St. | 831-475-7058 | 7:00-9:00 a.m. |
| **291** | San Rafael | 4174 Redwood Highway | 415-492-0936 | 7:00-9:00 a.m. |
| **294** | Fresno | 5431 East Hedges Ave | 559-255-3019 | 7:00-9:00 a.m. |
| **294** | Visalia | 319 N. Church St | 559-734-9426 | 7:00-9:00 a.m. |
| **297** | Salinas | 117 Pajaro St | 831-422-7077 | 7:00-9:00 a.m. |
| **297** | Monterey | 254 Casa Verde Way | 831-648-1081 | 7:00-9:00 a.m. |
| **304** | Hayward | 29475 Mission Blvd | 510-581-4681 | 7:00-9:00 a.m. |
| **304** | Oakland | 425 Roland Way | 510-562-2662 | 7:00-9:00 a.m. |
| **304** | Livermore | 2063 Research Drive. | 925-455-8292 | 7:00-9:00 a.m. |
| **324** | Martinez | 611 Berrellesa St. | 925-228-0930 | 7:00-9:00 a.m. |
| **324** | Pittsburg | 1085 Cumberland | 925-439-1021 | 7:00-9:00 a.m. |
| **324** | Richmond | 101 S. 12th St. | 510-234-1069 | 7:00-9:00 a.m. |
| **324** | Vallejo | 2920 Sonoma Blvd, Ste B | 707-643-7214 | 7:00-9:00 a.m. |
| **389** | San Mateo | 300 – 7th Ave. | 650-344-7168 | 7:00-9:00 a.m. |
| **886** | Oakland | 8400 Enterprise Way, Rm 110 | 510-632-0161 | 7:00-9:00 a.m. |
| **1130** | Modesto | 2549 Yosemite Blvd., Ste K | 209-521-9883 | 7:00-9:00 a.m. |

*Asbestos

**Northern California District Council of Laborers**
**Union Plaza**
**4780 Chabot Drive, Suite 200**
**Pleasanton, CA 94588**
**Telephone 925-469-6800**
**Facsimile 925-469-6900**
**Office Hours: 7:00 a.m. to 5:00 p.m. Monday through Friday**





# EXHIBIT 3

# 2005-2009
# MASTER AGREEMENT

# for

# NORTHERN CALIFORNIA

# between

# ENGINEERING & UTILITY CONTRACTORS ASSOCIATION

# and

# CEMENT MASONS





# TABLE OF CONTENTS

| Section | Title | Page |
|---|---|---|
| **SECTION 1 - GENERAL PROVISIONS** | | **4** |
| A. | DEFINITIONS | 4 |
| B. | COVERAGE AND DESCRIPTION OF CEMENT MASONS' WORK | 5 |
| C. | SUBCONTRACTING | 6 |
| **SECTION 2 - BARGAINING REPRESENTATIVES** | | **8** |
| A. | UNION'S RECOGNITION OF COLLECTIVE BARGAINING REPRESENTATIVE OF EMPLOYER | 8 |
| B. | EMPLOYER'S RECOGNITION OF UNIONS AS BARGAINING AGENTS | 8 |
| **SECTION 3 - UNION SECURITY AND HIRING** | | **9** |
| A. | UNION SECURITY | 9 |
| B. | EMPLOYMENT | 9 |
| **SECTION 4 - NO CESSATION OF WORK** | | **14** |
| **SECTION 5 - GRIEVANCE PROCEDURE** | | **14** |
| **SECTION 5A- CONTRACT ADMINISTRATION FUND** | | **16** |
| **SECTION 6 - JURISDICTIONAL DISPUTES** | | **17** |
| **SECTION 7 - WORKING RULES** | | **17** |
| A. | WORK DAY | 17 |
| B. | WORK WEEK | 18 |
| | *Four by Ten Work-Week (4 x 10)* | *18* |
| C. | CHANGE IN WORK DAY OR WORK-WEEK | 18 |
| | *Saturday Make Up Day* | *18* |
| D. | SHIFT WORK | 19 |
| E. | OVERTIME | 19 |
| F. | SHOW-UP TIME | 19 |
| G. | RECOGNIZED HOLIDAYS | 20 |
| H. | PRE-JOB CONFERENCE | 20 |
| I. | EMPLOYEE'S TOOLS | 20 |
| J. | OWNERS | 20 |
| **SECTION 8 - WAGE SCALES, HEALTH AND WELFARE, PENSION, VACATION/HOLIDAY, APPRENTICESHIP FUND AND SUPPLEMENTAL DUES** | | **20** |
| A. | WAGE SCALES | 21 |
| | *Public Works Projects* | *22* |
| B. | HEALTH AND WELFARE | 23 |
| C. | PENSION PLAN | 23 |
| D. | VACATION/HOLIDAY/SUPPLEMENTAL DUES PLAN | 24 |
| | *Supplemental Dues* | *24* |
| E. | APPRENTICESHIP FUND AND TRAINING FUND | 24 |
| G. | AUDIT | 25 |
| **SECTION 9 - GENERAL CONDITIONS** | | **26** |
| A. | OTHER CONDITIONS | 26 |
| B. | CONSTITUTION AND BYLAWS | 26 |





C. CONFLICTING BYLAWS TO BE AMENDED ..... 26
D. CONTRACTING ..... 26
E. PAYMENT OF WAGES ..... 27
F. ELIMINATION OF RESTRICTIONS ON PRODUCTION ..... 27
G. COOPERATION WITH EMPLOYER'S SAFETY MEASURES ..... 27
H. VISITS TO JOBSITE ..... 27
I. STEWARD ..... 27
J. PROTECTIVE CLOTHING ..... 28
K. PARKING ..... 28

**SECTION 10 - EFFECT ON EXISTING AND OTHER AGREEMENTS ..... 28**
**SECTION 11(A) - EMPLOYER'S MEMBERSHIP ..... 29**
**SECTION 11(B) - AGREEMENT BINDING UPON PARTIES ..... 29**
**SECTION 12 - LIABILITY OF THE PARTIES ..... 29**
**SECTION 13 - EFFECT OF APPROVAL BY INTERNATIONAL UNION ..... 29**
**SECTION 14 - GENERAL SAVINGS CLAUSE ..... 29**
**SECTION 15 - TRAVEL EXPENSE/TRAVEL CENTERS ..... 30**
**SECTION 16 - EXPENSE OUT OF TOWN ..... 31**
**SECTION 17 - GEOGRAPHIC AND MARKET CONDITIONS ..... 31**
**SECTION 18 - EFFECTIVE TERMINATION DATE ..... 31**
**ATTACHMENT A - LETTER OF AGREEMENT ..... 33**
**ATTACHMENT B - SUBSTANCE ABUSE POLICY ..... 34**
RANDOM DRUG TESTING ..... 34
TIME OF DISPATCH SCREENING ..... 34
**ATTACHMENT C - HEAVY, HIGHWAY COMMITTEE SIDE LETTER ..... 36**





# CEMENT MASONS' MASTER AGREEMENT

## 2005-2009

THIS AGREEMENT, made and entered into May 1, 2005, between the ENGINEERING & UTILITY CONTRACTORS ASSOCIATION (EUCA), hereinafter referred to as Collective Bargaining representative of Employer, and the DISTRICT COUNCIL OF PLASTERERS' AND CEMENT MASONS' OF NORTHERN CALIFORNIA, herein and after referred to as the Union.

WITNESSETH:

## SECTION 1 - GENERAL PROVISIONS

### A. Definitions

(1) The term "Employer" as used herein shall refer to the Engineering & Utility Contractors Association.

(2) The term "Individual Employer" as used herein shall refer to any person, firm, or entity including registered Joint Ventures who have authorized or subsequently authorize the Employer to represent them with respect to collective bargaining with the District Council of Plasterers' and Cement Masons' of Northern California.

(3) The term "Employee" as used herein shall refer to a journeyperson Cement Mason, who is herein defined as an Employee who is qualified by experience and ability to perform Cement Masons' work, and to any apprentice Cement Mason, who is herein defined as an Employee undergoing a system or course of training in Cement Mason work.

(4) The term "Local Union" as used herein shall, as the context requires, refer to one of the following local unions of the Operative Plasterers' and Cement Masons' of Northern California:

**Local Union No. 300, Area Offices 188, 337, 355, 429, 580, 583, 594, and 825**

**Local Union No. 400, Area Offices: Sacramento Main Office, San Jose, Vallejo, Stockton, and Chico/Redding**

(5) This Agreement shall apply to any Employee who performs work falling within the presently recognized jurisdiction of those local unions affiliated with the District Council of Plasterers' and Cement Masons' of Northern California which District Council is affiliated with the Operative Plasterers' and Cement Masons' International Association of the United States and Canada.





(6) This Agreement shall apply to Northern California which term is intended to mean that portion of the State of California above the Northern Boundary of Kern County, the Northern Boundary of San Luis Obispo County and the Westerly Boundaries of Inyo and Mono Counties, consisting of the following forty-six (46) Counties: Alameda, Alpine, Amador, Butte, Calaveras, Contra Costa, Colusa, Del Norte, El Dorado, Fresno, Glenn, Humboldt, Kings, Lake, Lassen, Madera, Marin, Mariposa, Mendocino, Merced, Modoc, Monterey, Napa, Nevada, Placer, Plumas, Sacramento, San Benito, San Francisco, San Joaquin, San Mateo, Santa Clara, Santa Cruz, Shasta, Sierra, Siskiyou, Solano, Sonoma, Stanislaus, Sutter, Tehama, Trinity, Tulare, Tuolumne, Yolo and Yuba.

**B. Coverage and Description of Cement Masons' Work**

This Agreement shall cover all work coming within the recognized jurisdiction of the Operative Plasterers' and Cement Masons' International Association of the United States and Canada.

Work shall be assigned in accordance with the terms of this Agreement. The Individual Employer shall, in his sole and unlimited discretion, determine the need for and number of Employees necessary to perform any work covered hereby.

Without limiting the scope of the work covered hereby, it is agreed that Cement Masons work shall include but shall not be limited to all the following construction work:

(1) All building construction, including but not limited to the construction, erection, alteration, repair, modification, demolition, addition or improvement in whole or in part of any building structure.

(2) All heavy highway and engineering construction, including but not limited to the construction, improvement modifications and demolition of all or part of any streets and highways (including sidewalks, curbs and gutters), bridges, viaducts, railroads, tunnels, airports, water supply, irrigation, flood control and drainage systems, sewers and sanitation projects, wharves, docks, break-waters or rip-rap stone, or operation incidental to such heavy construction work.

Subject to the foregoing provision of this Section and to the provisions of Section 6 of this Agreement, the work to be performed by Cement Masons' shall include but not be limited to the following, when tools of the Cement Masons' trade are used or required:

Setting screeds, screed pins, curb forms and curb and gutter forms, rodding, spreading and tamping concrete, hand application of curing compounds, applying topping (wet or dry) colors or grits; using Darby and push floats, hand troweling or hand floating; marking edging, brooming or brushing, using base cover or step tools; chipping, and stoning, patching or sacking; dry packing; spreading and finishing gypsum, operating mechanical finishers (concrete) such as Clary, Jackson, Bidwell Bridge Deck Paver or similar types; grinding machines, troweling machines, floating machines, powered concrete saws; finishing of epoxy and resin materials, bush hammering and exposed finishes for architectural work.





Operation of skill saw, chain saw, Laser Screed, Laser Level, Curb and Slipform machines, Epoxy Type Injection pumps, stamps or other means of texturing, any new devices which are beneficial to the construction of or with concrete or related products.

The foregoing shall apply to temporary yards established off the jobsite, to service a particular job, for the duration of that job.

C. **Subcontracting**

For jobs bid on or after July 1, 1980, the following provisions apply:

(1) The term "Subcontractor" means any person, corporation, or other entity, other than an employee covered by this Agreement, who agrees, orally, or in writing, to perform for, or on behalf of, the Individual Employer, any part or portion of the work covered by this Agreement.

(2) The terms and conditions of this Agreement, insofar as it affects the Individual Employer, shall, as specified below, be applied to any subcontractor of any tier under the control of, or working under oral or written contract with such Individual Employer on any work covered by this Agreement to be performed at the jobsite or job-yard, and said subcontractor with respect to such work shall be considered an Individual Employer covered by this Agreement.

(a) The Individual Employer has the primary obligation for performance of all conditions of this Agreement. This obligation cannot be relieved, evaded or diminished by subcontracting. Should the Individual Employer elect to subcontract, the Individual Employer shall continue to have such primary obligation. Said primary obligation shall be deemed conclusive evidence of the Union's majority status for the purpose of establishing the obligation of the Individual Employer to bargain collectively pursuant to Section 8(a)(5) of the National Labor Relations Act as amended with the Union upon expiration of this Agreement but for no other statute, rule, regulation or law.

(3) If an Individual Employer shall subcontract work herein defined, such subcontract shall be in writing and shall state that such subcontractor agrees to comply with all the terms and provisions of this Agreement including wage rates and fringe benefits. In event of a dispute on a delinquency in payments as required in Section 8A, B, C, or D, and E or an alleged violation of any other agreement, the dispute shall be submitted to a Board of Adjustment on demand.

(4) An Individual Employer, who provides in the subcontract that the subcontractor will pay the wages and benefits and will observe the hours and all other terms and conditions of this Agreement, shall not be liable for any delinquency by such subcontractor in the payment of any wages or fringe benefits provided herein, including payments required by Section 8A, B, C, D, and E except as provided in Paragraph (5) below. A copy of the subcontract or the binding clause shall be submitted to the Union





on demand.

(5) The Individual Employer will give written notice to the Union of any subcontract involving the performance of work covered by this Agreement within five (5) days of entering such contract, or prior to commencement of work by the subcontractor, and shall specify the name and address of the subcontractor. Notice at a pre-job conference as set forth in Section 7H shall be written notice under this provision provided that such notice is accurate and complete.

(a) If thereafter the Union or an appropriate Local Union thereof should make demand in writing for exercise of this Section 1C(5)(a), the Individual Employer will require that any subcontractor of the Individual Employer specified in the demand will, if he has not already done so, post a surety bond in the amount of fifteen thousand dollars ($15,000) to cover payment of wages and contributions to the Trust Funds specified in this Agreement in Section 8A, B, C, D, and E. Failure of the Individual Employer to comply with Section 1C(5)(a) will make the Individual Employer liable for the delinquencies of the subcontractor in conformance with Section 1C(5)(b) following.

(b) If thereafter such subcontractor shall become delinquent in the payment of any wages or benefits as above specified, the Union shall promptly give written notice within ten (10) days of knowledge of delinquency to the Individual Employer and to the subcontractor. If written notice within ten (10) days of knowledge of delinquency is received, the Individual Employer shall pay and satisfy the amount of any such delinquency by such subcontractor occurring on the Individual Employer's specific construction project within seventy-five (75) days prior to the receipt of said notice from the Union, and said Individual Employer may withhold the amount claimed to be delinquent out of the sums due and owing by the Individual Employer to such subcontractor.

(6) If the Individual Employer fails to give written notice as required in Paragraph (5) above he shall, until such time as notice is given, assume liability for any violation by the subcontractor of the terms and conditions of this Agreement as may be determined pursuant to the provisions of Section 5 provided, however, these provisions notwithstanding the Individual Employer shall not be liable for contract violations other than those set forth in Paragraph (5)(b) by the subcontractor if such subcontractor is signatory to an agreement with the Union.

(7) Regardless of anything in this Section 1C to the contrary, if any Local Union having knowledge of the delinquency continues to dispatch men to any subcontractor of an Individual Employer when such subcontractor is delinquent in the payment of any wages or fringes and the subcontractor has failed to post a surety bond required in Section 1C(5) (a), then the Individual Employer shall not be liable for any such delinquencies.

(8) If any Employee covered by this Agreement knowingly cooperates with any Individual Employer to defeat the payment of wages and fringe benefits as required by this Agreement, said employee will be





liable for such penalties as may be determined by the Board of Adjustment as outlined in Section 5.

(9) It is the intent of the parties hereto that the provisions of this subcontracting clause be applied only to the extent permitted by law.

(10) Notwithstanding any provision of this Agreement to the contrary, the provisions of this subcontracting clause shall not be enforced by strike or job action.

(11) The above provisions notwithstanding, in the event an Individual Employer subcontracts work covered by this Agreement to a subcontractor who is not signatory to this Agreement or an appropriate agreement with the Union, the Individual Employer shall assume an additional responsibility as follows:

If the subcontractor shall be found in violation of the Hiring provisions of this Agreement, pursuant to Section 5 and the Union is unable to collect the liability determined to be owing for such violation from the subcontractor, the Individual Employer shall then become liable for the payment of such liability. The total of this liability shall be for no more than five (5) days' violation or the total of the subcontractor's retention, whichever is greater.

## SECTION 2 - BARGAINING REPRESENTATIVES

### A. Union's Recognition of Collective Bargaining Representative of Employer

The Union hereby recognizes and acknowledges that the Collective Bargaining Representative of the Employer includes in its membership a majority of the individual employers in the highway, general building and heavy construction industry and said employers are performing the greater percentage of work therein. By reason of such facts, the Union hereby recognizes that the Collective Bargaining Representative of the Employer, as herein above referred to, is the Collective Bargaining Representative for all Individual Employers who authorize the Employer to represent them with respect to Collective Bargaining with the District Council of Plasterers' and Cement Masons' of Northern California. A list of said Individual Employers shall be furnished to the Union at the commencement of negotiations and the Employer shall furnish the Union with a complete monthly report of any additions and deletions to the list of Individual Employers represented by the Employer.

### B. Employer's Recognition of Unions as Bargaining Agents

The Union having unequivocally demanded recognition as the majority representative of the employees and the Union having submitted satisfactory evidence to the Employer that the Union represents, has the support of and has been authorized to represent said employees by a majority of the employees working in the classifications within the jurisdiction of the Union, the Employer herby unequivocally recognizes the Union as the sole and exclusive majority representative for collective bargaining purposes for such employees, under Section 9(a) of the National Labor Relations Act, as amended.





## SECTION 3 - UNION SECURITY AND HIRING

### A. Union Security

(1) Every person performing work covered by this Agreement who is a member of the Union and in the employment of an Individual Employer on work covered by this Agreement on the effective date of this Subsection 3A shall, as a condition of employment or continued employment, remain a member in good standing of the Union in the appropriate Local Union of the Union. Every other person covered by this Agreement and employed to perform work covered by this Agreement shall be required as a condition of employment, to apply for and become a member of and to maintain membership in good standing in the Union, in the appropriate Local Union of the Union which has territorial jurisdiction of the area in which such person performing work, on or after the expiration of eight (8) continuous or accumulative days of employment on such work with any Individual Employer following the beginning of such employment, or the effective date of this Subsection 3A, whichever is later. Membership in any such Local Union shall be available to any such person on the same terms and conditions as generally applicable to other members.

If Federal Law is hereafter amended to permit a lesser requirement for union membership or union membership as a condition of employment than provided in this Subsection, the Collective Bargaining Representative of Employer and the Union will promptly enter into negotiations with regard to such subject.

(2) Upon written notice from the Union or Local Union stating all pertinent facts that show an employee's noncompliance with this Subsection 3A, the Individual Employer shall be required to discharge that employee within twenty-four (24) hours.

### B. Employment

(1) The Local Unions shall establish and maintain open and nondiscriminatory employment lists for the use of workmen desiring employment on work covered by this Agreement and such workmen shall be entitled to use such list. It is mutually agreed by the Employer and the Union to fully comply with all the provisions of Title 7 of the Civil Rights Act of 1964, Presidential Executive Order #11246 and California Fair Employment Practices Act, to the end that no person shall on the grounds of sex, race, color or national origin, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination by not having full access to the contents of Section 3 of this Agreement. Pursuant to Title 7 of the Civil Rights Act of 1964, Executive Order #11246 and directives as issued by the Office of Federal Contract Compliance, the employer may request necessary workers to enable the employer to comply with the above mentioned laws and directives.

Wherever any words are used in this Agreement in the masculine gender, they shall be construed as though they were also used in the feminine gender in all situations where they so apply.





(2) The Individual Employer shall first call upon the appropriate Local Union having work and area jurisdiction for all such men as he or it may from time to time need, and such Local Union shall furnish the Individual Employer the required number of competent workmen and skilled mechanics of the classifications needed by the Individual Employer, in accordance with the provisions of this Subsection 3B, if available.

(3) It shall be the responsibility of the Individual Employer when ordering men to give the appropriate Local Union all of the pertinent information regarding the workmen's employment.

(4) The appropriate Local Union shall furnish in accordance with the request of the Individual Employer such competent workmen and skilled mechanics, if available, of the classifications needed from among those entered on said lists to the Individual Employer by use of a written referral to jobs on a nondiscriminatory basis.

(a) Workmen specifically requested by name, who have been laid off or terminated in the geographic area of the appropriate Local Union having work and area jurisdiction within one (1) year before such request by a requesting Individual Employer or Individual Employer members of a registered joint venture now desiring to re-employ the same workmen in the same area, provided they are available for employment. Such request shall be confirmed in writing within twenty-four (24) hours after the request is made.

(b) Workmen who, within the two (2) years immediately before the Individual Employer's order for men, have performed work of the type covered by this Agreement in the geographic area of the Agreement as defined in Section 1, provided such workmen are available for employment.

(c) Workmen whose names are entered on said lists and who are available for employment.

5) When ordering workmen of the skills required the Individual Employer will give notice to the appropriate Local Union, if possible, not later than 2:30 p.m. of the day prior (Monday through Friday), or in any event, not less than seventeen and one half (17-1/2) hours, if possible, before the required reporting time. In the event that forty-eight (48) hours after such notice (Saturdays, Sundays and recognized holidays excluded), the Local Union shall not furnish such workmen, the Individual Employer may procure workmen from any source. If workmen are so employed, the Individual Employer shall promptly report in writing to the appropriate Local Union having work and area jurisdiction, each such workman by name. In emergency cases workmen may be dispatched other than at such dispatching time.

(6) Subject to the provisions of this Agreement, the Individual Employer shall have complete freedom of selectivity in hiring and the Individual Employer retains the right to reject any job applicant referred by the Union for any reason. No applicant for employment will be required to sign a medical statement as a condition of employment. The Individual Employer may discharge any employee for any cause which he or it may deem sufficient, provided there shall be no discrimination on the part of the





Individual Employer against any Employee for activities on behalf of, or representation of the Union, not interfering with the proper performance of his duties. Whenever an Individual Employer discharges an employee, he shall submit a written notice to the employee stating the reason for the discharge.

(7) The Individual Employer shall be the sole judge of the qualifications of all his employees and may upon such grounds discharge any of them. No employee may be discharged without "just cause". In the event of discharge without "just cause", the Employee may be reinstated with payment for time lost. In the event of a dispute, the existence of "just cause" shall be determined under the Grievance Procedure provided for in Section 5 hereof. An Individual who is rejected or discharged for cause by the Individual Employer, including, but not limited to drug and alcohol pre-employment testing, shall not be referred to such Individual Employer for a period of one (1) year from the date of rejection or discharge.

(8) Any individual desiring employment in a particular area shall register at the appropriate Local Union office by appearing personally and shall indicate his name, address, telephone number, Social Security Account Number, qualifications, type of work desired and the date of such registration.

(9) Available for employment shall mean: all individuals eligible for referral shall be present at the appropriate Local Union office during dispatching hours; however, they may be present at a location where they can be reached by telephone if they live in a remote area, or, due to extenuating circumstances, cannot be personally present.

(10) Dispatching hours shall be from 7:00 a.m. to 9:00 a.m. daily (Saturday, Sunday and recognized holidays excluded).

(11) Each individual, upon being referred, shall receive a referral slip to be transmitted to the employer representative at the jobsite, indicating his name, address and Social Security Account Number, type of job, date of proposed employment, applicable wage rate, date of referral and the time of day dispatched from the union hall.

(12) To insure the maintenance of a current registration list all individuals who do not re-register within one (1) week of their previous registration shall be removed from the registration list. If such individuals re-register pursuant to the provisions of this Section they shall maintain their previous positions on such list.

(13) Persons shall be eliminated from the registration list for the following reasons:

(a) Dispatched to the job-except that any person who is rejected by the Individual Employer or fails to complete one (1) full day's work shall retain his position on said list.

(b) Failing to accept suitable employment one time during the current week at the time of





dispatch.

(c) Unavailable for employment during the current week.

(d) Any individual dispatched to a job who fails to report for work shall be placed at the bottom of the list provided he re-registers.

(14) No individual who is rejected by the Individual Employer shall be referred to such Individual Employer with respect to the same request pursuant to which he was initially referred.

(15) The Local Unions and the Union shall post in places where notices to applicants for employment with the Individual Employers are customarily posted, all provisions set forth in this Section, and each Individual Employer shall similarly post in places where notices to employees and applicants for employment are customarily posted, a notice of the hiring arrangements set forth in this Section.

(16) Selections of applicants for referral to jobs pursuant to this Agreement shall be on a nondiscriminatory basis and shall not be based on, or in any way affected by union membership, bylaws, rules, regulations, constitutional provisions or any other aspect or obligation of union membership, policies or requirements, provided that the provisions hereof shall not modify or qualify the provisions of Section 3A.

(17) Any person, including an Individual Employer, aggrieved by the operation of the hiring hall provisions of this Section has the right to submit his grievance to permanent hiring hall mutual arbitrator who shall be Gerald McKay, provided such submission is made in writing, stating the reasons for the grievance, within ten (10) working days after the occurrence of the grievance. The neutral hiring hall arbitrator shall have full power to adjust the grievance and his decision thereon shall be final and binding upon the person submitting the grievance and all parties hereto. Forms for the submission of any such grievance shall be available at all times in the office of each Local Union or District Council. Notices required by this submission of any such grievance shall be available at all times in the office of each Local Union or District Council. Notices required by this Subsection shall be mailed or delivered to District Council of Plasterers' and Cement Masons' of Northern California, Local 400 at 810 W. Stadium Lane Sacramento, CA 95834 and Local 300 at 703 South B. Street, Room 200 San Mateo, CA 94401. The date of the postmark or the date of delivery of the grievance, whichever is later, shall stop the running of the ten (10)-day period. The costs of arbitration should be borne equally by the Employer and the Union regardless of which Local Union, District Council or Individual Employer is involved.

(18) The Individual Employer will notify the Local Union having area jurisdiction, of the name and Social Security Number of his employees that are to work in the area other than his own local. It is also agreed the Individual Employer shall have the right to designate the first (1st), third (3rd), fifth (5th) man, etc., up to fifty percent (50%) but not more than fifty percent (50%) shall be brought in other than the odd man. At no time shall the percentage be increased during the duration of such job. Any person





who is hired under the fifty percent (50%) clause as described in this Subsection 3B(18) shall be considered for all purposes on that job as a person hired under that clause regardless of whether or not he is laid off or terminated and then rehired on the same job during the course of the job.

(19) Where there are four (4) or more Cement Masons' employed on one job, by one employer, one shall be designated Foreman. He shall receive Foreman's pay and work with his tools at the Individual Employer's discretion.

(20) An Individual Employer may employ apprentices to do all work performed by journeyperson in accordance with this Agreement. The ratio of apprentices to journeyperson shall be a mandatory one (1) apprentice for every five (5) journeyperson and may be as low as one (1) apprentice for every three (3) journeyperson at the option of the Individual Employer.

(21) Notwithstanding the provisions of this Subsection 3B, upon notice in writing being given to the appropriate Local Union of the Union, the Individual Employer shall have complete freedom to employ one (1) qualified student employee per construction project. A qualified student employee is defined as one who is enrolled in an EUCA-sponsored or approved construction management program. The qualified student employee is not deemed to be covered by the Terms, Conditions and Economics of this Agreement, including Section 3(a), unless he is employed for a period of over 500 hours during any one calendar year.

(22) Notwithstanding the above, effective June 16, 1997, the mobility of all employees who have been employees of the Individual Employer for the period of the immediate two (2) months shall not be restricted for any reason subject to Section 3A, Union Security. In order for the Individual Employer to exercise the mobility provisions set forth in this paragraph, the Individual Employer shall:

(a) Provide the appropriate Local Union, when requested in writing, with a current list of names and Social Security numbers of those employees who are eligible for mobility; and

(b) The Individual Employer shall notify the appropriate Local Union of a job or project of more than one day's duration.

(c) In cases where an individual employer is found to have dispatched certain employees not eligible for mobility to a job site as defined in 3B(22), then the local Union having jurisdiction in the project area shall notify the employer of such violation or error. The employer, upon notification by the Union, shall within 24 hours correct said violation or error to the satisfaction of the Union.

(d) No Employee of the employer shall suffer loss of mobility for a break in service of four (4) months or less with the employer if the break in service is due to illness or extended vacation.





**SECTION 4 - NO CESSATION OF WORK**

It is mutually understood and agreed that during the period when this Agreement is in force and effect, the Union or Local Union will not authorize any strike, slowdown or stoppage of work in any dispute, complaint or grievance arising under the terms and conditions of this Agreement, except such disputes, complaints or grievances as arise out of the failure of any Employer and Individual Employer to comply with the provisions of the hiring clause, Section 3B hereof, or the provisions of Section 8A, B, C, D, or E. As to any Individual Employer who shall fail or refuse to comply with the provisions of those sections, so long as such failure or refusal continues, it shall be a violation of this Agreement if the Union or any Local Union withdraws its members who are subject hereto from the performance of any work for such Individual Employer and such withdrawal for such period shall not be a strike or work stoppage within the terms of this Agreement. In the event that any employees of any Individual Employer should be withdrawn by reason of any dispute, complaint or grievance arising out of the violation of any similar hiring clause in any agreement between Employer and any other union, the Union or any Local Union may respect such withdrawal and for the period thereof may refuse to perform any work for such Individual Employer and such refusal shall not be a violation of this Agreement.

In the event the Board of Trustees of a Fund into which the Individual Employer is required to pay determines that an Individual Employer is delinquent in the making of any payments required by Section 3B, C, or E, thereof, it shall not be in violation of this Agreement so long as such delinquency continues, if the Union withdraws the Employees who are subject hereto from the performance of any work for such Individual Employer and such withdrawal for such period shall not be a strike or work stoppage within the terms of this Agreement. In the event that any employee of an Individual Employer should be withdrawn pursuant to any similar clause in any agreement between the Collective Bargaining Representative of the Employer and any other union, the Union may respect such withdrawal and for the period thereof may refuse to perform any work for such Individual Employer and such refusal for such period shall not be a violation of this Agreement. Any Employee so withdrawn or refusing to perform any work as herein provided shall not lose his status as Employee but no such Employee shall be entitled to claim or receive any wages or other compensation for any period during which he has been withdrawn or refused to perform any work.

A. Employee covered hereby may be discharged by any Individual Employer for refusing to cross a picket line established by an International Union affiliated with the Building and Construction Trades Department of the AFL-CIO or a Local Union thereof, or the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America or a Local Union thereof, which picket line has been authorized or sanctioned by the Local Building and Construction Trades Council having jurisdiction over the area in which the job is located, after the Individual Employer involved has been notified and has had an opportunity to be heard. Said notice shall be in writing and mailed to the Individual Employer involved at his address. This Section shall not apply to jurisdictional disputes.

**SECTION 5 - GRIEVANCE PROCEDURE**

Any dispute concerning any application or interpretations of this Agreement, other than jurisdictional disputes as referenced in Section 6, shall be subject to the following procedure:





A. In the event that a dispute arises on a job, it shall be first reported to the Individual Employer or in the case of a grievance of an Individual Employer to the Business Agent of the appropriate Local Union (or District Council) who shall then attempt to adjust said grievance or dispute at the job site level.

B. If said grievance or dispute is not satisfactorily adjusted by the appropriate Local Union (or District Council) or otherwise authorized Union Representative and the Individual Employer or his representative within three (3) days after submission to the Individual Employer, the matter may be submitted by either party to a permanent Board of Adjustment created for the settlement of such disputes by the Cement Masons Contract Administration Trust Fund.

C. The grieving parties shall specify in writing on a standard Trust Fund grievance form the date(s) of the alleged violation(s), the nature of the alleged violation(s), and the specific provision(s) of the Agreement applicable to the dispute. A dispute shall not be recognized as a grievance nor be subject to the grievance procedure, provided said dispute is outside the scope of the Agreement. No dispute, complaint or grievance, shall be recognized unless called to the attention of the Employer and the Union in writing within ten (10) calendar days (with exception of holidays) after the last date the alleged violation was committed.

In the event the grievance involves the issue of a subcontractor violation where the subcontractor is signatory directly to this agreement as an Individual Employer, a separate grievance shall be filed against said subcontractor and said grievance shall be processed to its final conclusion through these procedures prior to any grievance hearing against the prime contractor.

D. The Board of Adjustment shall be composed of two (2) members named by the Union, two (2) members named by the Employer, and an Impartial Arbitrator. At any point in the proceedings should the panel be unable to reach a majority vote, the Arbitrator shall participate and his decision shall be final and binding.

E. In Addition to any rule or procedure which the Cement Masons Contract Administration Trust Fund may adopt, the Board of Adjustment shall be governed by the following provisions:

(1) The parties shall select and utilize a permanent Impartial Arbitrator who is willing to abide by the procedures set forth herein. However, the Impartial Arbitrator may be changed or replaced at the request of either party.

(2) Neither side will utilize attorneys in these Boards of Adjustment proceedings unless advance written notice of a minimum of ten (10) working days is provided to the Employer and the Union, in which case both sides shall have that right.

(3) No briefs shall be submitted nor a transcript made of the hearing except by mutual agreement of the parties or by direction of the Arbitrator.

(4) In the case of a deadlock, the Arbitrator shall render his decision upon the conclusion of the case at the Board of Adjustment hearing, unless the time is extended by mutual agreement of the parties or at the





request of the Arbitrator. The Arbitrator shall not render an expanded opinion in any case unless requested by the parties.

F. The Board of Adjustment shall meet within thirty (30) days following written submission of the grievance to the Cement Masons Contract Administration Trust with the exception of discharge cases which must be heard at the earliest possible date not to exceed fifteen (15) days. Failure of either party to meet or to participate in the procedure shall relieve the charging party of further compliance with the grievance procedure.

G. In discharge cases if the Board of Adjustment fails to meet within fifteen (15) days due to the unavailability of the Union, the wage payment and Trust Fund contribution liability shall be limited to the above fifteen (15) days. If the Employer or Individual Employer is unavailable to meet, the wage payment and Trust Fund contribution liability shall be continuing until such time as the Board of Adjustment meets. Decisions of the Board of Adjustment or an Impartial Arbitrator shall be within the scope and terms of this Agreement and shall be final and binding upon all parties hereto.

H. In the event an Individual Employer fails to comply with any such decisions, the Union may withdraw employees or strike the Individual Employer, and such action shall not be a violation of this Agreement.

I. The Board of Adjustment shall settle any dispute or grievance involving a subcontractor as defined in Section 1C who has agreed under contract with the Employer, or any Individual Employer, or a subcontractor of the Employer, or any Individual Employer to perform on the job site any part or portion of the construction work covered by the prime contract, including the operation of equipment, performance of labor and installation of materials.

When liabilities are assessed against a subcontractor for hiring violations as a result of a Board of Adjustment held under the provisions of Paragraph I and said subcontractor fails to satisfy said obligations, the Union shall promptly give written notice to the Individual Employer and subcontractor and the Individual Employer shall pay such obligations from the retention of such subcontractor.

J. The expenses of the Joint Board of Adjustment and the Impartial Arbitrator shall be paid for by the Cement Masons Administration Trust Fund. Any additional expenses resulting from the use of attorneys such as court reporters, transcripts, etc., shall be borne equally by the Individual Employer and the Union.

**SECTION 5A- CONTRACT ADMINISTRATION FUND**

A Trust Fund entitled "The Contract Administration Trust Fund" shall be created to provide for the costs of the Employer for administering the provisions of this Section 5. The contribution into a Contract Administration Trust Fund shall not exceed five cents ($.05) per hour for each hour paid for or worked. The Trust Fund shall be administered solely by Trustees selected by the Employer in accordance with a Trust Agreement to be executed by the Employer. The contribution as described above shall commence with the work month following notice by the Fund Manager of the Trust to the Individual Employers. The Union shall have the right, not more than one time per year, to independently audit the Trust Fund.

All grievances involving individual employers who are not members of the EUCA shall be processed through the grievance procedure established in Section 5 of the Agreement provided that the right of an individual employer not a member of the EUCA may participate on his or its own behalf at the Board of Adjustment and that the final decision shall be made by the permanent Arbitrator if the panel cannot attentively agree.

**SECTION 6 - JURISDICTIONAL DISPUTES**

There shall be no cessation or interference in any way with any work of the Employer or any Individual Employer by reason of jurisdictional disputes between the Union and any other union affiliated with the AFL-CIO or the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America with respect to jurisdiction over any of the work covered by this Agreement. Such disputes will be settled by the Unions themselves, and if not settled then it shall be submitted to the International Presidents of the Unions involved in the dispute for determination and if not settled, the parties hereto agree that the dispute shall be submitted to the Impartial Jurisdictional Disputes Board for settlement in accordance with the plan adopted by the Building Trades Department, AFL-CIO. The Employer, the Individual Employer and the Union shall be and are bound by such determination and decision unless the other union shall refuse to abide by the determination and decision in which case the Union shall be and is authorized to proceed to enforce the decision by any lawful means in which case the work shall proceed as originally assigned by the Individual Employer until such decision is made.

**SECTION 7 - WORKING RULES**

**A. Work Day**

Eight (8) consecutive hours starting between 5:00 a.m. and 10:00 a.m., excluding lunch period, except as provided under shift work, shall constitute a regular day's work at straight time rates. However, different starting times may be established at individual jobsites by mutual consent of a majority of the Employees and the Individual Employer providing the Local Union is notified in writing.

No Employee shall be required to work continuously for more than five (5) hours from the beginning of the regular work shift without an opportunity to eat lunch. Each Employee covered by this Agreement shall be permitted to take not less than one-half (1/2) hour for lunch period and no work shall be performed by said Employee during the lunch period unless the applicable double time rate is paid. Eating periods, at the option of the Individual Employer may be staggered at any time after the first three (3) hours from the beginning of the regular shift.

No Employee shall be required to work continuously for more than two and one-half (2 1/2) hours after the end of his regular shift without being provided a reasonable time to eat dinner. The Individual Employer shall compensate such Employee ten dollars ($10.00) for the purchase of dinner. There shall be no loss of wages during the evening meal period. In the event, for reasons beyond the control of the Employer, it is not possible for the Employees to purchase an adequate meal, dinner may be provided by the employer. No work shall be performed by Employees during such dinner periods unless the applicable double time rate is paid.





Double time rate shall be paid to Employees required to work during or beyond a specified meal period. The double time rate shall be paid from the time the meal period starts until the Employee is afforded an opportunity to eat the applicable meal or the end of the shift, whichever occurs first.

Each Employee shall have eight (8) consecutive hours of rest in any twenty-four (24) hour period. Such twenty-four (24) hours shall be computed from the start of the Employee's assigned shift. If an employee is required by an Individual Employer to report to work without eight (8) consecutive hours of rest from the end of his regular or overtime shift, he shall be paid for all hours worked at the appropriate overtime rate until he has eight (8) consecutive hours of rest away from the job. Waiting time at the jobsite, when directed by the Individual Employer, without performance of work, shall not be considered a break within the meaning of this Section.

**B. Work Week**

The regular work-week shall consist of forty (40) hours, Monday through Friday, at straight time rates.

**Four by Ten Work-Week (4 x 10)**

An Individual Employer may establish a work-week of four (4) consecutive days of ten (10) consecutive hours. Applicable overtime rate shall be paid for all work before a shift begins, after ten (10) hours, and on Saturdays, Sundays and holidays. All hours in excess of forty (40) hours in any one (1) week shall be compensated at the applicable overtime rate.

On a job where a craft with whom the Employer has negotiated a short work-week terminates early on Friday, the Individual Employer will keep the Cement Mason employed the balance of work day when the employer determines that work is available. (See Letter of Agreement attached.)

**C. Change in Work Day or Work-Week**

When the Union and Employer consider and agree that conditions of the industry in the area covered by this Agreement warrant a shortened work day or work week, the Union and the Employer shall jointly give adequate consideration and discussion to such changes; provided, however, that any such changes in the work day or work week shall not be used to increase the basic hourly wage scales or to encourage the payment of overtime to a greater extent than that which is being paid at the time a change is made in the work day and work week.

**Saturday Make Up Day**

In the event that work cannot be performed Monday through Friday because of inclement weather or major mechanical breakdown (limited to curb and gutter machine, concrete pump, and concrete plant) Employees (at their option) may make up such a day on Saturdays and shall be paid at the applicable straight time rate. No





employee shall be disciplined or discharged for not working on Saturday make-up. The Employer, as a courtesy, shall notify the Union of any Saturday make-up day work prior to working same.

**D. Shift Work**

Where multiple shifts are worked, if the Individual Employer elects to work the day shift starting between the hours of 5:00 a.m. and 10:00 a.m., that shift shall work eight (8) hours and for such work they shall be paid the regular straight time rate for eight (8) hours; the second shift shall work seven and one-half (7-1/2) hours, and for such work they shall be paid the regular straight time rate for (8) hours; if a third (3rd) shift is worked, they shall work seven (7) hours and for such work they shall be paid eight (8) hours regular straight time pay. No multiple shift shall be established or started for less than five (5) consecutive work days.

On heavy, highway and engineering work only, where predetermined conditions exist as advertised by the bidding authority requiring a starting time outside of the established starting times, a special single shift differential of $3.00 per hour shall apply. (This provision shall not apply to building construction work.)

It is agreed that the Individual Employer and the Employees hereby affected may mutually agree, in writing, upon different starting or quitting times for any of the above-mentioned shift arrangements.

When, upon requirement of the awarding authority, the employer produces evidence in writing to the Union of a bona-fide job requirement or, due to safety conditions or other requirements, such work may be performed on single or double shift basis and an Employee shall work eight (8) consecutive hours for which he shall receive eight (8) hours' straight time pay, Monday through Friday. Any Employee who reports to work on such special shift and for whom work is provided shall receive not less than eight (8) hours' straight time pay. The employer shall notify the Local Union having area jurisdiction before starting such special shift and shall confirm the notice, in writing, within twenty-four (24) hours following the start of the special shift.

**E. Overtime**

On regular work days from Monday through Friday, time and one-half shall be paid for overtime worked in excess of eight (8) hours in any one (1) day. Time and one-half shall be paid for the first eight (8) hours worked on Saturdays unless Saturday is a make up day per Section 7(C). Double time shall be paid for all overtime worked after eight hours on Saturdays and for all time worked on Sundays and Holidays; and no Employee shall be required to work continuously for more than five (5) hours from the beginning of the regular work shift without opportunity to eat lunch. Each employee covered by the Agreement shall be permitted to take not less than one-half (1/2) hour for lunch period and no work shall be performed by said Employee during the lunch period unless the applicable double time rate is paid.

**F. Show-up Time**

Any workman reporting for work at the regular starting time and for whom no work is provided shall receive pay for two (2) hours at the stipulated rate for so reporting unless he has been notified before the end of his last





preceding shift not to report. Any Employee who reports to work and for whom work is provided shall receive not less than four (4) hours' pay and if more than four (4) hours are worked in any one (1) day shall receive not less than a full day's pay therefore, unless, prevented from working for reasons beyond the control of the Individual Employer, including but not limited by such factors as inclement weather or breakdown causing discontinuance of a major unit of the project during which time workmen are not required or requested to remain on the job by the Individual Employer or his agent.

Furthermore, on the first day of dispatch an individuals work day shall commence at 8:00 a.m. without regard to the earlier scheduled crew start time.

**G. Recognized Holidays**

The following are recognized holidays: New Year's Day, Martin Luther King Day, President's Day, Decoration Day (Memorial Day), Independence Day (Fourth of July), Labor Day, Thanksgiving Day, the day after Thanksgiving and Christmas Day.

If any of the above holidays fall on a Sunday, the following Monday shall be considered a legal holiday. If the holidays of Independence Day (Fourth of July), Christmas and New Year's Day fall on a Saturday, the preceding Friday shall be considered a legal holiday, when and if the basic crafts adopt this provision.

**H. Pre-job Conference**

There shall be a pre-job conference prior to the start of a job if requested by either party.

**I. Employee's Tools**

Cement Masons will be required to furnish the following "Bag of Tools": Three (3) trowels (varying in sizes to fit work); one (1) pointer (trowel); one (1) set of coving tools (1 nose and 1 cove); one (1) wood hand float; one (1) rubber float; one (1) hammer; one (1) sledge hammer; one (1) hand saw; three (3) hand edgers (1/4", 1/2" and 3/4" radius to match coving tools); one (1) set of knee pads; one (1) hand brush (paint brush); two (2) levels (1 pocket, 1-23" or longer); 300'nylon cord, one (1) pair pliers, w/side cutter; carpenter pencil and marking crayon. All tools are to be manufactured in the United States.

**J. Owners**

No more than one (1) owner of a firm or company which is an Individual Employer under this Agreement shall be permitted to perform work covered by this Agreement.

**SECTION 8 - WAGE SCALES, HEALTH AND WELFARE, PENSION, VACATION/HOLIDAY, APPRENTICESHIP FUND AND SUPPLEMENTAL DUES**





**A. Wage Scales**

Basic wage scales for Cement Masons and specialty classifications applicable for the period June 27, 2005 to June 30, 2008 are set forth as follows:

| | | 6/27/05 | 6/26/06 | 6/25/07 | 6/30/08 |
|---|---|---|---|---|---|
| (1) | Journeyperson | $24.88 | * | * | * |
| (2) | Swing or Slip Form Scaffolds | $25.63 | * | * | * |
| (3) | Mastic Magnesite Gypsum, Epoxy, Polyester, Resin and all Composition | $25.63 | * | * | * |

(4) Foreman - effective 6/27/2005 the Foreman shall receive $3.00 over journeyperson rate.

*increase to package to be allocated by the Union 6/26/06 $1.55, 6/25/07 $1.40, 6/30/08 $1.30

(5) Apprenticeship Work Hour's and Related Work Hour's with Language:

Apprentice's indentured on or after June 28, 1999 shall be covered under the following percentage rates.

| | | |
|---|---|---|
| First Period | 0 Work Hours-0 Related Training Hours | 65% of Journeyperson rate |
| Second Period | 700 W.H. & 72 R.T.H.* | 70% of Journeyperson rate |
| Third Period | 1400 W.H. & 144 R.T.H.* | 75% of Journeyperson rate |
| Fourth Period | 2100 W.H. & 216 R.T.H.* | 80% of Journeyperson rate |
| Fifth Period | 2800 W.H. & 288 R.T.H.* | 85% of Journeyperson rate |
| Sixth Period | 3500 W.H. & 360 R.T.H.* | 95% of Journeyperson rate |
| Journeyperson | 4200 W.H. & 432 R.T.H.* | 100% of Journeyperson rate |

Fringe Benefits: Health & Welfare only for the first six (6) months. Full fringes thereafter.
*Refers to any apprentice indentured will receive related training hour credit for the months of June, July and August for the purpose of wage increments as per the state standards of apprenticeship.

*Advance written notification to the Individual Employer shall be required regarding period advancement and/or eligibility for full fringe benefits prior to such individuals becoming eligible to receive an increase to either wages or fringes. The Individual Employer will not be held accountable for any retroactivity if not properly notified.

An Individual Employer who is entitled to employ apprentices may employ not more than one (1) apprentice for the first two (2) journeyperson regularly employed by him, and not more than one (1) additional apprentice for each three (3) additional journeyperson employed by him. The first





apprentice may not be employed until the Individual Employer regularly employs at least two (2) journeyperson. Any Individual Employer employing five (5) journeyperson shall, while employing five (5) journeyperson, also employ at least one (1) apprentice. For each additional five (5) journeyperson then in his employ, he shall employ at least one (1) additional apprentice.

Any new apprentice with proof of prior experience may be classified at more than 65% of journeyperson wages (with health and welfare only) for the first six months with the approval of the employer.

Upon at least sixty (60) days written notice to the Employer prior to any increase date specified in the contract, the union may elect at its option to allocate the increase to any or all of the following:

1. Wage Rates
2. Health and Welfare
3. Pension
4. Vacation/Holiday/Supplemental Dues
5. Apprenticeship Fund

Provided, however, if any or all of the monies are allocated to Fringe Benefits they shall become effective 6/27/05, 6/26/06, 6/25/07, 6/30/08.

If the Union fails to properly notify the Employer of an allocation of wages and benefits as outlined in Section 8, the allocation will not become effective until 30 days after notification, but in no event prior to the scheduled increase date.

Provided, further, the Union and Employer will meet to mutually agree on the allocation of increases referenced in this Collective Bargaining Agreement for Health and Welfare only under any of the following conditions:

1. Upon request of the Trustees.
2. Upon an actuarial report that there are less than 6 months reserve in the Health and Welfare Fund.
3. Upon mutual agreement of the parties.

**Public Works Projects**

On those public works projects where a prevailing wage determination by the State or Federal agencies prevails such wage and fringe rate referenced in the bid specs shall remain in effect for the duration of said project.

If the prevailing wage and fringe benefit rates for a specific job or project are less than the rates set forth in the Master Labor Agreement, and there are non-signatory prime bidders on the plan holders list or if there is no bid list published, the Individual Employer may bid said project in accordance with the wage rates, fringe benefit rates and other applicable provisions of the Prevailing Wage Determination incorporated in the bid specifications.





If no wage rates or fringe benefit rates are set forth in the bid documents, the Individual Employer may bid said project in accordance with wage rates, fringe benefit rates, and other applicable provisions of the Private Work Agreement. If the terms and conditions of the Private Work Agreement are not sufficiently competitive, the Union shall, upon an Individual Employer's request, establish more competitive wage rates, fringe benefit rates, and working conditions.

**B. Health and Welfare**

Health and Welfare contributions applicable for the period June 27, 2005 to June 30, 2008 are set forth in full herein:

| | 6/27/05 | 6/26/06 | 6/25/07 | 6/30/08 |
|---|---|---|---|---|
| Health and Welfare | $6.00 | * | * | * |

Subject to the provisions hereof, each Individual Employer covered by this Agreement will contribute such sums, as set forth for each hour paid for or worked by Cement Masons employed by such Individual Employer under said Agreement, to the Cement Masons Health and Welfare Trust Fund for Northern California and will be subject to and entitled to the benefits of all of the provisions of the Trust Agreement dated April 7, 1953 establishing that Fund, and any amendment or amendments thereto. It is understood and agreed that there shall be no duplicating contributions with respect to any employee or the work of any employer. Without limiting this general understanding, the parties agree that any subcontractor covered by this Agreement pursuant to Section 1C shall only be required to pay contributions into the Cement Masons Health and Welfare Trust Fund for Northern California with respect to such work covered by this Agreement. The Union and the Employer agree that this plan is and has been a defined contribution plan.

**C. Pension Plan**

Pension Plan contributions applicable for the period June 27, 2005 to June 30, 2008 are set forth in full herein:

| | 6/27/05 | 6/26/06 | 6/25/07 | 6/30/08 |
|---|---|---|---|---|
| Pension | $3.50 | * | * | * |

Each Individual Employer covered by this Agreement will contribute such sums, as set forth for each hour paid for or worked by Cement Masons employed by such Individual Employer under the Agreement, to the Cement Masons Pension Trust Fund for Northern California and will be subject to and entitled to the benefits of all the provisions of the Trust Agreement dated November 23, 1959 establishing that Fund, and any amendment or amendments thereto. The Union and the Employer agree that this plan is and has been a defined contribution plan.





**D. Vacation/Holiday/Supplemental Dues Plan**

Vacation/Holiday/Supplemental Dues Plan contributions applicable for the period June 27, 2005 to June 30, 2008 are set forth in full herein:

| | 6/27/05 | 6/26/06 | 6/25/07 | 6/30/08 |
|---|---|---|---|---|
| Vacation/Holiday | $3.25 | * | * | * |
| Supplemental Dues | $1.45 | * | * | * |

Each Individual Employer covered by this Agreement shall contribute such sums, as set forth for each hour paid for or worked by Cement Masons employed by such Individual Employer under the Agreement, to the Cement Masons Vacation/Holiday/ Supplemental Dues Plan and will be subject to, and entitled to the benefits of, all of the provisions of the Trust Agreement dated March 29, 1963, establishing the Cement Masons Vacation Trust Fund for Northern California, and any amendment or amendments thereto. The Union and the Employer agree that this plan is and has been a defined contribution plan. The parties agree that the Trustees of the Vacation/Holiday Trust Fund may allocate up to 25% of the applicable contributions for Holiday pay.

**Supplemental Dues**

Effective for all work performed on or after June 27, 2005, it is agreed that upon authorization as required by law, the amount of one dollar and forty-five cents ($1.45) per hour for each hour paid for or worked shall be transmitted from the vacation/holiday benefit of each workman and shall be remitted directly to the Union. This amount shall not be deemed to be a part of the Vacation/Holiday benefit, but is an amount specifically agreed to as a Supplemental Dues benefit. The amount of the Supplemental Dues transmittal shall be specified on a statement sent to the workman. Such remittance shall be made to the Union not less than four times per year.

**E. Apprenticeship Fund and Training Fund**

Apprenticeship contributions applicable for the period June 27, 2005 to June 30, 2008 are set forth in full herein:

| | 6/27/05 | 6/26/06 | 6/25/07 | 6/30/08 |
|---|---|---|---|---|
| Apprenticeship | $.28 | * | * | * |

Each Individual Employer covered by this Agreement shall contribute such sums, as set forth for each hour paid for or worked by Cement Masons' employed by such Individual Employer under this Agreement, to the Cement Masons Apprenticeship Fund and Training Fund and will be subject to, and entitled to the benefits of, all of the provisions of the Trust Agreement dated July 18, 1974, establishing the Cement Masons' Apprenticeship and Training Trust Fund for Northern California, and any amendment or amendments thereto. The Union and the Employer agree that this plan is and has been a defined contribution plan.





The Cement Masons Apprenticeship program shall be administered by the Cement Masons' Joint Apprenticeship Committee. The Committee shall consist of an equal number of representatives appointed by the Union and the Employer. The Committee shall have the authority to hire a Director, promulgate regulations, dispense monies generated by the Apprenticeship Fund and have final authority over all aspects of the training program. Local Joint Apprenticeship Committees may be established by the Cement Masons' Joint Apprenticeship Committee. Additional provisions will be added to the new Apprenticeship Fund language to establish an escrow account for fund contributions. The escrow account is in accordance with the procedure used in 1958 to set up the vacation plan.

**F.** The Union and the Employer agree that the Individual Employers covered by this Master Agreement may cover owners, partners or supervisory personnel above the rank of foreman in the Cement Masons' Health and Welfare Trust Fund for Northern California, the Cement Masons' Pension Trust Fund for Northern California, the Cement Masons' Vacation/Holiday Trust Fund for Northern California and the Cement Masons' Apprenticeship and Training Trust Fund for Northern California, by paying contributions with respect to the work of such an individual into all of these Funds monthly, on the basis of one hundred sixty (160) hours, in accordance with the hourly rates set forth in this Master Agreement, regardless of the hours worked by any such individual in a month, provided that such individual is performing work within the 46 Northern California area and that, if not an owner, partner or supervisor would be working as a journeyperson Cement Mason under the terms of this Agreement and provided further that the Individual Employer, having made one (1) payment with respect to the work of such an individual, shall continue to make such payments monthly so long as the individual continues to perform work for the Individual Employer within the 46 Counties area in the capacity of an owner, partner deemed an employee covered by this Agreement solely for the purpose of participating in said Funds and shall have no rights or privileges under the Agreement as an employee.

**G. Audit**

1. The Employer and the Individual Employer agree that upon a written request from the Union or the Employer to the Board of Directors of the Northern California Cement Masons' Funds Administration, Inc., the Board of Directors will direct an audit of the payroll account of any Individual Employer named in the request within ten (10) days. If the initial audit on the payroll account does not provide enough information to determine whether or not any delinquency exists, then the Board of Directors will direct a further audit of whatever records or accounts exist in order to determine the amount of the delinquency.

2. The Individual Employer who is found to be delinquent as a result of an audit will pay and satisfy such delinquency with accrued interest and in addition, pay liquidated damages. All delinquent contributions shall bear simple interest at the rate of one and one half percent (1.5%) per month until receipt of payment. Subject to accounting verification, liquidated damages shall be assessed

   On delinquent contributions at a flat rate of one hundred fifty ($150.00) dollars per month to reflect the internal administrative costs incurred by the trust administrators in monitoring and tracking such late





contributions. The cost of an audit shall be borne by the Individual Employer if the delinquency disclosed by the audit is in excess of one thousand dollars ($1,000.00) and is not the result of a clerical error. When economic conditions warrant, the Trustee of the Trust Funds specified in this Agreement are authorized to amend the liquidated damages and interest provision of this Agreement. Any adjustments implemented by the Trustees shall be reflective of true increases in the administrative and legal costs associated with the recovery of delinquent Trust Fund, contributions.

3. It is understood and agreed by the parties hereto that the foregoing provisions for liquidated damages with respect to audit shortages are independent of and in addition to any and all provisions for liquidated damages resulting from delinquencies contained in each of the Trust Agreements to which the Individual Employer is subject under this Agreement.

## SECTION 9 - GENERAL CONDITIONS

### A. Other Conditions

In the event that the District Council of Operative Plasterers and Cement Masons' of Northern California which is signatory hereto, or any Local Union, enters into any other agreement with other employers or employer associations which shall have terms more favorable to such employers or employer associations and the members thereof than this Agreement, then such more favorable provisions shall become a part of and apply to this Agreement.

This section shall not be applicable to agreements between the Union and Individual Employers covering work in bona fide permanent yards or shops.

### B. Constitution and Bylaws

The terms of this Agreement shall not be interpreted to abridge any of the constitution and bylaws of the Operative Plasterers and Cement Masons International Association or the constitution and bylaws of the Associated General Contractors of California, Inc.

### C. Conflicting Bylaws to be Amended

Where the bylaws of a Local Union subject hereto conflict with the provisions of this Agreement, it is agreed that this Agreement shall supersede any such bylaws.

### D. Contracting

No work will be let by piece, contract or lump sum direct with Journeyperson or Apprentices for labor services. Excessive amounts paid as hourly wages or under the guise of "travel pay" or "subsistence", where not required or permitted by this Agreement, shall be evidence of a violation of the Agreement.





E. **Payment of Wages**

All wages must be paid on the jobsite weekly. When men are laid off or discharged they must be paid wages due them at the time of layoff or discharge in accordance with the provisions of the Labor Code of California.

Each Individual Employer shall provide with each payroll check, an itemized check stub showing separately the date of issuance, the payroll period, straight time hours, overtime hours, the Individual Employer's name and home office location and all legally required deductions.

F. **Elimination of Restrictions on Production**

No rules, customs, or practices shall be permitted that limit production or increase the time required to do any work. There shall be no limitation or restriction of the use of machinery, tools or other labor-saving devices supplied by any Individual Employer.

G. **Cooperation with Employer's Safety Measures**

Local Unions shall cooperate (1) with the Individual Employer in the carrying out of all such employer's safety measures and practices for accident prevention and (2) Employees shall perform their duties in each operation in such a manner as to promote efficient operation of each particular duty and of any job as a whole. Each Individual Employer must post the name and address of his doctor and of the compensation insurance carrier on the jobsite.

Each Employee shall be required to participate in the Individual Employer's accident prevention program as required by CAL/OSHA.

H. **Visits to Jobsite**

A business agent or special representative shall have access to the project during working hours for the purpose of checking the manner in which the terms of this Agreement are being complied with.

He shall make an effort to advise the Individual Employer or his representative of his presence on the project and shall not stop or interfere with the work of any workmen without the permission of the Individual Employer or his representative. No business agent or special representative shall be discriminated against for performing his duties under this Agreement.

I. **Steward**

A Steward shall be a working journeyperson Employee appointed by the Union who shall, in addition to his work as a journeyperson, be permitted to perform during working hours such of his Union duties as cannot be performed at other times. The Union agrees that such duties shall be performed as expeditiously as possible and the Employers agree that the Steward shall be allowed a reasonable amount of time for the performance of





such duties. The Union shall notify the Individual Employer of the appointment of each Steward.

No Steward shall be discharged or laid off except for just cause as described in Section 3B (7). Violation of this Section by the Individual Employer and discharge of a Steward shall be subject to grievance pursuant to Section 5. A Steward shall carry on his union duties in such a manner so as not to interfere with the performance of the work.

If the Individual Employer has been notified in writing of the appointment of a Job Steward the appropriate Local Union shall be given a one (1) day notice before a Cement Masons' Steward is laid off, unless the Cement Masons' work is finished.

**J. Protective Clothing**

The Individual Employer shall furnish the necessary goggles, hard hats, or other protective clothing pertaining to work with caustic materials. Rainwear will be issued as necessary. Such equipment shall be furnished, as necessary, by the Individual Employer free of charge and returned by the Employee immediately upon completion of the work and in the same condition as received subject to reasonable wear and tear. Such equipment shall be sanitized before reissue. No additional rain gear or other protective clothing will be reissued to the Employee unless and before he returns all original items issued.

**K. Parking**

In the event parking facilities are not available within three (3) blocks of a jobsite, the Employer will provide such facilities and the Employer shall have the right to designate parking areas to be used. Where, because of congested parking conditions it is necessary to use public facilities, the Employer shall reimburse the employee for the cost of such parking upon being presented with a receipt or voucher certifying to the cost thereof; such reimbursement to be made on a weekly basis or at the conclusion of the project, whichever occurs earlier. The area covered by this Agreement shall be the City of Sacramento, City and County of San Francisco, and the Counties of Alameda, San Mateo, Marin, Contra Costa, and Santa Clara.

**SECTION 10 - EFFECT ON EXISTING AND OTHER AGREEMENTS**

This Agreement between the Engineering & Utility Contractor Association and the District Council of Plasterers' and Cement Masons' of Northern California shall supersede the 1999-2005 Master Labor Agreement between all parties, except for those Individual Employers who have given their power of attorney to the Employer for the 1999-2005 Agreement, and who have not given their power of attorney to the Employer for this Agreement.

When an Individual Employer works on a job that is covered by a project labor agreement to which the Union is signatory, the Individual Employer may work under the parties' Master Agreement for Northern California or the Project Agreement, whichever is more favorable to the Individual Employer.





**SECTION 11(A) - EMPLOYER'S MEMBERSHIP**

This Agreement is made for and on behalf of, and shall be binding upon, all persons, firms or corporations who at the time of execution of this Agreement have given or subsequently give bargaining authorization to the Employer as defined in Section 2A.

**SECTION 11(B) - AGREEMENT BINDING UPON PARTIES**

This Agreement shall be binding upon the heirs, executors, administrators, successors, purchasers, and assigns of the parties hereto.

**SECTION 12 - LIABILITY OF THE PARTIES**

It is mutually understood and agreed that neither the Employer, any Individual Employer, the Union, nor any Local Union, shall be liable for damages caused by the acts or conduct of any individuals who are acting or conducting themselves in violation of the terms of this Agreement without authority of the respective party, provided that such action or conduct has not been specifically authorized, participated in, fermented or condoned by the Employer, the Individual Employer, the Union, or the Local Union, as the case may be.

In the event of any unauthorized violation of the terms of this Agreement, responsible and authorized representatives of the Union, Local Union, the Employer, or the Individual Employer, as the case may be, shall promptly take such affirmative action as is within their power to correct and terminate such violation for the purpose of bringing such unauthorized persons into compliance with the terms of this Agreement. Such individuals acting or conducting themselves in violation of the terms of this Agreement shall be subject to discipline up to and including discharge.

**SECTION 13 - EFFECT OF APPROVAL BY INTERNATIONAL UNION**

It is agreed by and between the parties to this Agreement that the act of the Operative Plasterers and Cement Masons International Association (hereinafter called International Association) in approving this contract as to form and substance, as provided in the paragraph below, the International Association, its

officers, and agents shall not in any manner thereby become a party to this Agreement, nor is there any duty, liability or obligation imposed upon the International Association, its officers or agents, respecting the terms and conditions of this contract in any manner whatsoever.

It is further agreed that the approval by the International Association as to form and substance is only for the purpose of indicating that the International Association certifies that the said contract is not in violation of the International Constitution and Bylaws and is approved as to form and substance for that purpose only and no other.

**SECTION 14 - GENERAL SAVINGS CLAUSE**

It is not the intent of either party hereto to violate any laws, rulings or regulations of any governmental authority or





agency having jurisdiction of the subject matter of this Agreement, and the parties hereto agree that in the event that any provisions of this Agreement are finally held or determined to be illegal or void as being in contravention of any such laws, rulings or regulations, nevertheless, the remainder of the Agreement shall remain in full force and effect unless the parts so found to be void are wholly inseparable from the remaining portion of this Agreement. The clauses hereof relating to hiring, Section 3A and "No Cessation of Work", Section 4 are intended to be inseparable and mutually interdependent. Should either of such Sections be held or determined to be illegal or void for any reason, then both of said clauses shall forthwith become of no further force or effect and neither party shall by implication be bound thereby. The parties agree if and when any provisions of this Agreement are held or determined to be illegal or void they will then promptly enter into lawful negotiations concerning the substance thereof.

It is the intent of the parties to this Agreement that each and every; all and singular, of the provisions of this Agreement be fully in accordance with Federal and State Law. Its interpretation of each of the provisions of this Agreement is therefore intended to apply no broader than that permitted by law.

**SECTION 15 - TRAVEL EXPENSE/TRAVEL CENTERS**

For jobs bid on or after June 15, 2005, the following provisions apply:

"Travel Expense" is defined as reimbursement for gas, oil, tires and auto maintenance and is not a wage or reimbursement for time spent in travel to or from the jobsite. No employee shall be disciplined for refusing to travel in a company vehicle to or from the jobsite.

"Traveling Centers" are defined as those area dispatch offices that exist on June 28, 1999.

Effective June 15, 2005, any job located fifty (50) miles or less from a Traveling Center shall not be subject to travel expense pay.

Each employee covered by this Agreement who travels over fifty (50) miles to the place of reporting for work from his residence or the location of the Area Dispatch Office having jurisdiction over the project, whichever is closer, shall be paid at the Federal Reimbursement rate per mile for all miles traveled outside the fifty (50) road miles and return to the fifty (50) mile mark only.

It is understood that travel expenses shall be paid for each day a worker travels and is employed in work covered by this Agreement, but no later than once a week or upon termination whichever is sooner.

On Canal and Highway jobs the geographical midpoint of the job shall be considered as the reporting point for the purpose of travel expense pay. On all other jobsites, the project office shall be considered as the place of reporting for work for the purpose of travel expense pay.

The Employer agrees that no project office will be established in an area closer than fifty (50) miles in an effort to defeat the travel expense procedure herein established.





## SECTION 16 - EXPENSE OUT OF TOWN

The Individual Employer, when transporting an Employee from his home area dispatch office to localities outside the jurisdiction of the Employee's home area dispatch office, requiring the Employee to live away from home for "jobs of short duration" shall reimburse the Employee for board and room expenses, or may, at employer's option, pay the Employee per diem of $65.00 per day for each day he is required to spend the night and is available for work.

For the application of this Section only, "jobs of short duration" shall be interpreted to mean jobs of two (2) months or less. In the event the job or project is more than two (2) months in duration, the employer will have the option of: (1) continuing the Employee and reimbursing as outlined above, or (2) lay off the Employee without any restriction options of accepting layoff or transferring to the Local Area dispatch office and provide return travel expenses to his home base; or, the Employee will have the option of accepting layoff or transferring to the Local Area having jurisdiction over the job and receiving travel and/or subsistence applicable to the Employee member of the Local Area dispatch office.

## SECTION 17 - GEOGRAPHIC AND MARKET CONDITIONS

The parties to the Agreement recognize the necessity of assuring the competitive position of the parties within the industry during the term of this Agreement. Consistent with that recognition, Labor and Management will continually monitor the effectiveness of this Agreement relative to specific geographic or market areas and will endeavor, by mutual agreement, to initiate such modifications to the Agreement during its term as may be necessary to assure the work opportunities of the employees and the competitive position of the Individual employers.

## SECTION 18 - EFFECTIVE TERMINATION DATE

This Agreement shall be effective as of June 15, 2005, and shall remain in effect until June 15, 2009 and shall be renewed from year to year thereafter unless either of the Collective Bargaining Representatives shall give written notice to the other of a desire to change at least sixty (60) days prior to the date of the expiration of this Agreement.

The parties agree further that this Agreement is closed on all items until June 15, 2009 and all of the terms and provisions of said Agreement shall be and continue in full force and effect without further opening or change until June 15, 2009.

The Union agrees that in the event that in 2005 or any succeeding year either party should exercise its right under the first paragraph of this section, the parties shall, within thirty (30) days after receipt of written notice, meet and submit the changes desired and for a period of thirty (30) days prior to June 15th of any such year, bargain with respect to those changes. If no Agreement has been entered into between the parties hereto by June 15th or any year in which such notice shall have been given, then this Agreement shall thereupon cease and terminate.

In all other respects, the terms of the Master Agreement remain unchanged.





IN WITNESS WHEREOF, the parties hereto have hereunto executed this Agreement as of the date hereof by their respective representative duly authorized to do so this 1st day of May 2005.

**EMPLOYER:**

ENGINEERING & UTILITY CONTRACTORS ASSOCIATION

/s/ Leslie Lord
Deputy Director

**UNION:**

DISTRICT COUNCIL OF PLASTERERS' AND CEMENT MASONS' OF NORTHERN CALIFORNIA

/s/ Steven Scott
Steven Scott
Business Manager Local 300

/s/ Karl Bik
Karl Bik
Business Manager Local 400





## ATTACHMENT A - LETTER OF AGREEMENT

It is understood between the EUCA and the Cement Masons' District Council that Section 7B, concerning the employment of Cement Masons' on Fridays afternoon, shall be interpreted to mean that if patching and packing work is available on Monday morning, then such work was also available on Friday Afternoon.





## ATTACHMENT B - SUBSTANCE ABUSE POLICY

Management Rights Regarding Substance Abuse: Notwithstanding any other provisions of this agreement, the Employer expressly reserves the right, in its discretion, to undertake the following measures:

A. In the sole discretion of the employer, requiring covered employees to submit to an examination by competent medical personnel to determine whether there is a probability that the employee is suffering from any impairment which might cause the employee to be a safety hazard to himself or others, or which might cause the employee to be unable to perform assigned tasks within the coverage of this agreement in a prompt and competent manner. Such test may include, in the discretion of the employer, such test of the employee's bodily fluids as the employer may reasonably believe will elicit evidence of the employee's use of substances which are reasonably likely to alter or impair the employee's ability to perform his duties in a prompt, competent and safe manner. Approve the application and utilization of a quick screen oral testing device as a method of per-hire drug screening.

A pre-employment quick screen oral fluid test may be utilized by a trained representative of the Individual Employer. Non-negative test results shall immediately be shown to the tested applicant. A "non-negative" test result shall be designated as "inconclusive" and shall be confirmed by a test of the employee's bodily fluids conducted by competent medical personnel pursuant to the paragraph above.

**Random Drug Testing**

An Individual Employer may initiate a random testing program a selection process where affected Employees are selected for testing and each Employee has an equal chance of being selected for testing. The selection process shall be in accordance with DOT testing procedures. If an Individual Employer initiates such testing, all covered Employees shall be subjected to such testing. An Individual Employer who initiates random testing shall specifically state in its notice to the Union and its notice to Employees that Employees will be subject to random testing. The Individual Employer shall give thirty (30) days notice to the Union and Employees prior to implementing a random drug screen program.

**Time of Dispatch Screening**

The parties shall establish a joint committee to determine whether there is a feasible means by which the Local Union can conduct the drug/alcohol screen before dispatching an Employee so that only Employees with a negative test will be referred.

B. Implementation of rules regarding the discipline an/or discharge of any employees that the employer determines, as a result of the tests describe in subparagraph (a), are reasonable likely to become voluntarily impaired or disable form the safe performance of their work tasks as a result of the ingestion of alcohol or performance impairing drugs.





C. Implementation of a voluntary employee assistance program, to provide counseling, therapy and monitoring of these employees who request employer assistance in controlling and overcoming problems related to the use of drugs and alcohol.

The individual employer shall have no obligation to compensate any individual who tests positive. If the individuals test is negative, the individual employer shall be responsible for not less than 2 hours of show up pay.

Disputes arising from the implementation of the provisions of this paragraph shall be subject to the grievance procedures set forth in this Agreement.





## ATTACHMENT C - HEAVY, HIGHWAY COMMITTEE SIDE LETTER

The parties, along with the other Heavy and Highway crafts, will establish a Heavy and Highway Committee if the other Heavy and Highway crafts agree.

**EMPLOYER:**

ENGINEERING & UTILITY CONTRACTORS
ASSOCIATION

/s/ Leslie Lord
Deputy Director

**UNION:**

DISTRICT COUNCIL OF PLASTERERS' AND
CEMENT MASONS' OF NORTHERN CALIFORNIA

/s/ Karl Bik
Karl Bik
Business Manager Local 400

/s/ Steven Scott
Steven Scott
Business Manager Local 300





# EXHIBIT 4

NMS SUPPLY INC.
1151 HENSLEY STREET, RICHMOND CA 94801
510.234.6681. Fax 510.234.2938

ALL EMPLOYEES

Please see the following addendum to your employment agreement. The purpose of this addendum is to clarify company policies. After you read and understand this addendum, please sign in the space provided below. If you do not understand and or agree with this addendum, please contact the office immediately.

1. **Working hours:**
**Start** time is 7 AM. You must be on the job site, ready to work, at 7 AM unless specifically scheduled to start work at another time. **Break-** State law requires you to take a 10 minute paid for break for every four hour working period. This is an in place break. The time when this break is taken is taken is at the discretion of the employer. The job foreman will decide when to take breaks. **Lunch-** 12:00 noon to 12:30 PM, lunch period will be staggered if needed to accommodate work schedule. **End** of work day 3:30 PM. **Tool pick up** 3:25 PM. **Overtime** is often required.

2. **Scheduling:**
Job schedules are written on a daily basis for the following work day. It is your responsibility to know where you are scheduled and to be on site ready to work at the starting time. **The schedule is posted at the yard, 631 Marina Way So. Richmond Ca., every day by 3 PM. This schedule will show the following work day schedule only.** You may either come to the yard and look at the schedule or telephone the main office to get the schedule information.

3. **Company owned vehicles:**
If you are assigned a company vehicle to drive during the work day, **you must obey all driving rules.** You are responsible for all vehicle code violations. It is understood that you will not be compensated for your commute to the job site.

**Initial** WBR

# EXHIBIT 5




631 Marina Way South • Richmond, CA 94804-3732
510.234.6681 • Fax 510.234.2938
Cal. Lic.#577719

ALL EMPLOYEES

PLEASE SEE THE FOLLOWING ADDENDUM TO YOUR EMPLOYMENT AGREEMENT. THE PURPOSE OF THIS ADDENDUM IS TO CLARIFY COMPANY POLICIES. AFTER YOU READ AND UNDERSTAND THIS ADDENDUM, PLEASE SIGN IN THE SPACE PROVIDED BELOW. IF YOU DO NOT UNDERSTAND OR AGREE WITH THIS ADDENDUM, PLEASE CONTACT THE OFFICE IMMEDIATELY.

**1. Working hours :**
**START** time is 7 AM. You must be on the job site, ready to work, at 7 AM unless specifically scheduled to start work at another time. **BREAK** - State law requires you to take a 10 minute paid for break for every four hour working period. This is an in place break. The time when this break is taken is at the discretion of the employer. The job foreman will decide when to take breaks. **LUNCH** - 12:00 noon to 12:30 PM, lunch period will be staggered if needed to accommodate work schedule. **END** of work day 3:30 PM. **Tool pick up** 3:25 PM. **OVERTIME** is often required.

**2. Scheduling :**
Job schedules are written on a daily basis for the following work day. It is your responsibility to know where you are scheduled and to be on site ready to work at the starting time. **The schedule is posted at the YARD, 631 Marina Way So., Richmond Ca., every day by 3 PM. This schedule will show the following work day schedule** only. You may either come to the yard and look at the schedule or telephone the main office to get the schedule information.

**3. Company owned vehicles :**
If you are assigned a company vehicle to drive during the work day, **you must obey all driving rules.** You are responsible for all vehicle code violations. It is understood that you will not be compensated for your commute to the job site.

**4. Time keeping :**
Foremen will keep time for the employees on his job. Upon receipt of your pay check, it is your responsibility the verify that the hours paid are correct. If you do not agree with the hours paid, contact Roxanne Torguson at the main office immediately, she will investigate and correct any discrepancy within two working days. **You must report any payroll discrepancies no later than five days after you receive your pay check. We assume,** after **five working days, you have no discrepancies in the hours paid and you accept the hours reported on the time cards.**

**5. " At Will " Employment :**
It is understood that Whiteside Construction Corporation does not offer tenured or guaranteed employment. Either Whiteside Construction Corporation or the employee ( you ) can terminate the employment relationship at any time, with or without cause, with or without notice. This at will employment relationship exists regardless of any other written statements or policies contained in the handbook or any other company documents or any verbal statement to the contrary.

I HAVE READ THE AFOREMENTIONED ADDENDUM TO MY EMPLOYMENT AGREEMENT. I FULLY UNDERSTAND THE ENTIRE ADDENDUM AND AGREE WITH ITS TERMS.

X Signed.............................................Printed Name. Margarito Gonzalez .........Date. 5-22-06

# EXHIBIT 6

NMS SUPPLY INC.
1151 HENSLEY STREET, RICHMOND CA 94801
510.234.6681. Fax 510.234.2938

**ALL EMPLOYEES**

Please see the following addendum to your employment agreement. The purpose of this addendum is to clarify company policies. After you read and understand this addendum, please sign in the space provided below. If you do not understand and or agree with this addendum, please contact the office immediately.

1. **Working hours:**

**Start** time is 7 AM. You must be on the job site, ready to work, at 7 AM unless specifically scheduled to start work at another time. **Break-** State law requires you to take a 10 minute paid for break for every four hour working period. This is an in place break. The time when this break is taken is taken is at the discretion of the employer. The job foreman will decide when to take breaks. **Lunch**- 12:00 noon to 12:30 PM, lunch period will be staggered if needed to accommodate work schedule. **End** of work day 3:30 PM. **Tool pick up** 3:25 PM. **Overtime** is often required.

2. **Scheduling:**

Job schedules are written on a daily basis for the following work day. It is your responsibility to know where you are scheduled and to be on site ready to work at the starting time. **The schedule is posted at the yard, 631 Marina Way So. Richmond Ca., every day by 3 PM. This schedule will show the following work day schedule only.** You may either come to the yard and look at the schedule or telephone the main office to get the schedule information.

3. **Company owned vehicles:**

If you are assigned a company vehicle to drive during the work day, **you must obey all driving rules.** You are responsible for all vehicle code violations. It is understood that you will not be compensated for your commute to the job site.

**Initial** FCZ