IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER PEREZ ESCOBAR, MARGARITA GONZALEZ and FRANCISCO CISNEROS-ZAVALA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WHITESIDE CONSTRUCTION CORPORATION, NMS SUPPLY INC., J.W. CONSTRUCTION, INC., and DAVID R. WHITESIDE,<br><br>Defendants. | No. C 08-01120 WHA<br><br>**ORDER GRANTING MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT AND GRANTING MOTION FOR CERTIFICATION OF A COLLECTIVE ACTION** |

**INTRODUCTION**

In this putative class action, plaintiffs Walter Perez Escobar, Margarita Gonzalez, and Francisco Cisneros-Zavala sued defendants Whiteside Construction Corporation, NMS Supply Inc., J.W. Construction, Inc., and David R. Whiteside for unpaid wages. Plaintiffs now move to amend their complaint by adding an eighth claim pursuant to the Labor Code Private Attorneys General Act. They also move to certify a collective action. For the reasons stated below, plaintiffs' motion for leave to file a first amended complaint is **GRANTED**, and their motion for certification of a collective action is **GRANTED**.

**STATEMENT**

Plaintiffs worked as employees of defendant corporation Whiteside Construction Corporation, NMS Supply Inc., and/or J.W. Construction, Inc. David Whiteside is the

1  president of these companies. According to the complaint, defendants required plaintiffs to
2  report to the Whiteside construction yard at 6:00 a.m. every workday. Whiteside management
3  would then direct plaintiffs to where they were being assigned to work that particular day.
4  Work schedules generally began at 7:00 a.m. and ended at 3:30 p.m.

5  Plaintiffs allege that they were not paid for any time spent before 7:00 a.m. or for the
6  time spent traveling between the Whiteside construction yard and wherever plaintiffs would
7  ultimately work that day. They further allege that they were rarely — if ever— compensated
8  for the frequent occasions they spent working past 3:30 p.m. and for travel time from the
9  construction site back to the Whiteside construction yard.

10  Nor did plaintiffs receive enough breaks. They were rarely provided with a ten-minute
11  break within the first four hours of their workday. They were never provided with a ten-minute
12  break during the second four hours of their workday. Oftentimes, plaintiffs had to either skip or
13  prematurely end their lunch breaks. Although plaintiffs were required to drive their personal
14  vehicles from the construction yard to the construction site, they were never paid a mileage
15  stipend or compensation for gas money or bridge tolls.

16  Furthermore, plaintiffs contend that defendants failed to provide them with the
17  information required by the California Labor Code. This included the legal name and address
18  of the employer, the hours worked by the employee, and wages earned due to meal and rest
19  penalties, and time and unpaid wages for pre- and post-shift work.

20  On February 25, 2008, plaintiffs filed suit against defendants, asserting the following
21  claims: (i) defendants failed to provide one hour of pay for each work shift longer than four
22  hours during which they were not provided a 10-minute rest period as required by the California
23  Labor Code; (ii) defendants willfully failed to compensate plaintiffs in accordance with the
24  California Labor Code; (iii) defendants failed to provide plaintiffs with the information required
25  by the California Labor Code; (iv) defendants failed to provide overtime compensation under
26  the California Labor Code; (v) defendants failed to provide minimum and overtime wages
27  pursuant to the Fair Labor Standards Act; (vi) defendants engaged in unfair practices under the
28  California Unfair Competition Law; and (vii) defendants failed to reimburse plaintiffs for costs

2

1  and depreciation of vehicles used to travel between the construction site and Whiteside
2  construction yard.
3      The Court entered a case management scheduling order on June 19. It stated that leave
4  to add any new parties or pleading amendments had to be sought by July 10. Plaintiffs did so;
5  they filed a motion for leave to file a first amended complaint on July 10. A few days later,
6  they also moved to certify a class.

## ANALYSIS

### 1. LEAVE TO AMEND COMPLAINT.

9      Leave to amend a complaint "shall be freely given when justice so requires" under
10  Rule 15(a). This standard is applied liberally. "In the absence of any apparent or declared
11  reason — such as undue delay, bad faith, or dilatory motive on the part of the movant,
12  repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the
13  opposing party by virtue of allowance of the amendment, etc. — the leave sought should, as the
14  rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).[1]
15      Rule 15(a) does not apply, however, when the party seeking leave to amend after the
16  date specified in a Rule 16 scheduling order. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d
17  604, 607–608 (9th Cir. 1992). Here, the more liberal standards of Rule 15(a) govern because
18  plaintiffs sought leave to amend the complaint by the deadline set forth in the scheduling order.
19      Plaintiffs request that they be granted leave to add an eighth claim to the complaint
20  pursuant to the Labor Code Private Attorneys General Act, California Labor Code § 2698 *et
21  seq*. Plaintiffs wish to seek civil penalty recovery under this provision. In accordance with the
22  procedures set forth in California Labor Code § 2699.3, plaintiffs sent written notice on June 20
23  to the California Labor and Workforce Development Agency of the specific provisions of the
24  code alleged to have been violated. The agency must notify the employer and aggrieved
25  employee or representative by certified mail that it does not intend to investigate the alleged
26  violation within 30 calendar days of the postmark date of the sent notice. If no notice were
27  provided within 33 calendar days of the postmark date, the aggrieved employee could then

---

[1] Unless indicated otherwise, internal citations are omitted from all quoted authorities in this order.

3

commence a civil action pursuant to Section 2699.  Since the filing of this motion, plaintiffs have received written confirmation that the agency does not intend to investigate the alleged Labor Code violations (Harris Supp. Decl. ¶¶ 2–5).  Plaintiffs also seek leave to add more specific allegations regarding defendants' alleged violations of various labor codes.[2]

Defendants argue that leave to amend is unwarranted here.  A district court does not abuse its discretion in denying leave to amend where amendment would be "futile." *Flowers v. First Hawaiian Bank*, 295 F.3d 966, 976 (9th Cir. 2002).  Defendants assert that the amendment would be futile.  Section 2699.3(a)(1) provides that "[t]he aggrieved employee or representative shall given written notice by certified mail to the Labor and Workforce Development Agency *and the employer* of the specific provisions of this code alleged to have been violated."  Although the written notice was provided to defense counsel, defendants say, it was not sent to "the employer."  Citing California decisions, defendants argue that, because pre-lawsuit notice requirements in a statute are strictly interpreted, plaintiffs have failed to satisfy pre-filing requirements and their proposed amendment is therefore futile.

Defendants' argument is unpersuasive at this stage.  "The standard for granting leave to amend is generous . . . '[L]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect.'" *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 701 (9th Cir. 1990).  Plaintiffs sent the notice to defense counsel after the start of the lawsuit and defendants were already represented by counsel.  It is doubtful that plaintiffs are completely and permanently precluded from bringing a Private Attorneys General claim because they sent written notice to defendants' *attorney* rather than to their defendant employers themselves.  Furthermore, California Rule of Professional Conduct 2-100(A) prohibits such behavior: "While representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer."  Given the liberal standards of Rule 15, this order grants leave to amend the complaint.

---

[2] The supplemental declaration was filed the evening before the hearing set for August 21, 2008. Nonetheless, the filing was allowed for good cause. The California Labor and Workforce Development Agency had faxed these letters to plaintiffs on August 20.

4

### 2. COLLECTIVE ACTION.

Plaintiffs request that this action be certified as an "opt-in" collective action with respect to the fifth Fair Labor Standards Act claim. They ask that the class consist of all persons who were employed by Whiteside Construction Corporation, NMS Supply, Inc., and/or J.W. Construction at any time from February 25, 2004, through August 21, 2008. Employers are liable under the FLSA if they fail to pay overtime wages.

Plaintiffs say that they and the putative class members were not paid the full minimum and overtime wages owing to them. According to 29 U.S.C. 207(a)(1), "[e]xcept as otherwise provided in this section, no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." Employees working less than forty hours a week should receive the minimum hourly wage for hours worked. 29 U.S.C. 206(a)(1)(A).

Employees filing suit under the FLSA can bring a collective action on behalf of themselves or "other employees similarly situated." 29 U.S.C. 216(b). Neither the FLSA nor the Ninth Circuit has defined "similarly situated" yet. Most district courts in the Ninth Circuit apply a two-tiered approach. A court first decides, "based primarily on the pleadings and any affidavits submitted by the parties, whether the potential class should be given notice of the action." *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004) (Walker, J.). This determination "is usually made under a fairly lenient standard and typically results in conditional class certification." *Ibid*. The second stage occurs when discovery is complete and the case is ready to be tried. The party opposing class certification may then move for decertification. *Ibid*. Because the instant action is still in the first stage, this order will not address the factors needed to determine the propriety and scope of the class during the second stage. Certification is called "conditional" during the first stage because the opposing party could always (successfully) move for decertification.

The main issue is therefore whether plaintiffs' allegations and evidence are sufficient to satisfy the "fairly lenient standard" required to send a conditional class notice under the FLSA.

5

"Courts have held that conditional certification requires only that 'plaintiffs make substantial allegations that the putative class members were subject to a single illegal policy, plan or decision.' Under this lenient standard, 'the plaintiffs must show that there is some factual basis beyond the mere averments in their complaint for the class allegations.'" *Adams v. Inter-Con Sec. Systems, Inc.*, 242 F.R.D. 530, 536 (N.D. Cal. 2007) (Patel, J.).

This order finds that plaintiffs have met this burden. The complaint alleged that defendants systematically deprived their employees of their earned minimum and overtime wages in violation of the FLSA. Plaintiffs provided sworn declarations saying that they were employed by defendants. They also stated that they were required to show up at 6:00 a.m. and assigned to 7:00 a.m.–3:30 p.m. work schedules but were not paid for the time spent working before 7:00 a.m. They were not compensated for the time spent driving from construction sites back to the Whiteside yard or for when they helped unload trucks there (Cisneros-Zavala Decl. ¶¶ 7–8; Escobar Decl. ¶¶ 7–8; Gonzalez Decl. ¶¶ 7–8). Conditional certification of this collective action is therefore warranted.

Defendants oppose certification of a collective action on various grounds. They first argue that the Portal to Portal Act, 29 U.S.C. 256, states that employers do not have to pay minimum wage for travel. An employer would not be liable under the FLSA for "(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." 29 U.S.C. 256(a). Travel is clearly not compensable, defendants say. This is not enough to deny certification, however. Aside from unpaid travel time, plaintiffs have also alleged and provided sworn declarations supporting their claim of not being paid for working before and after their work schedules.

Another problem defendants point to is that plaintiffs purportedly failed to demonstrate harm from a common company policy, plan, or decision. *See Adams*, 242 F.R.D. at 536.

6

1  Although plaintiffs say that defendants required them to report to the Whiteside yard by
2  6:00 a.m. each workday, plaintiffs presented no further details. Instead, defendants proffered
3  sworn declarations from plaintiffs' co-workers, one of the supervisors, and president/defendant
4  David Whiteside saying that employees were not required to report to the yard before or after
5  their shifts (Whiteside Decl. ¶¶7–10). In short, plaintiffs have sworn declarations saying that
6  they were required to report to the yard. Defendants have sworn declarations saying otherwise.
7  So it is a he-said-she-said situation. This order finds that plaintiffs have shown enough
8  evidence to justify certification. It may be true that the evidence will later negate plaintiffs'
9  claims, but this order will not deny conditional certification at this stage in the proceedings.

10  Defendants further argue that the FLSA claims require numerous individualized
11  inquiries that render them inappropriate for conditional certification. These fact-specific
12  inquiries include whether individual employees did in fact report to the yard before going to
13  jobsites, whether they merely met at the yard to carpool with other employees, whether they
14  performed any work while at the yard, and whether employees who went to the yard performed
15  de minimis or compensable work. Not so. Here, the standard is "fairly lenient." All plaintiffs
16  had to do was to make the substantial allegation that putative class members were victims to a
17  single illegal policy, plan, or decision. That they did — they claim that they were required to
18  arrive early to the construction yard and work more than their shifts required, without
19  commensurate compensation.

20  Finally, defendants say that plaintiffs' proposed class is overbroad. Plaintiffs seek
21  certification of all persons employed by Whiteside Construction Corporation, NMS Supply,
22  Inc., and/or J.W. Construction at any time from February 25, 2004, through August 21, 2008.
23  The class period will be limited to three years, however, due to the three-year statute of
24  limitations. Defendants say that the class would then include overtime exempt employees,
25  office and clerical employees, and field supervisors. Again, that is not the case. Plaintiffs
26  request that a collective action be certified "for employees whose minimum and overtime wages
27  were underpaid due to Defendants' routine practice of denying the payment of wages to
28  employees who were forced to work before and/or beyond their scheduled hours" (Br. 2).

7

1  Office workers are excluded; the class is primarily limited to laborers and truck drivers.
2  Plaintiffs estimate that there are about 292 potential class members (Harris Decl. ¶7, Exh. 5).
3  They are also amenable to adding more limiting language to its proposed notice.

### 3. NOTICE TO POTENTIAL CLASS MEMBERS.

Plaintiffs also request that, following conditional certification, defendants should be ordered to disclose the identities and last-known addresses of employee class members. Plaintiffs should then be allowed to send out a court-approved form of notice to class members. They have attached a proposed form of notice that explains (i) the purpose of the notice, (ii) the nature of the litigation and counsel, (iii) how to participate in the lawsuit and the consequences thereof, (iv) what happens if recipients do not respond to the notice, and (v) how to obtain additional information (Harris Decl. Exh. 4).

In response to defendants' objections that the class is too large, plaintiffs suggested adding language in their proposed notice to make it clear that the collective action is only for employees who alleged underpayment of their minimum and overtime wages (Reply 1). Class members would not include office workers.

The Supreme Court has held that district courts have the discretion, in appropriate cases, to implement 29 U.S.C. 216(b) "by facilitating notice to potential plaintiffs." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989). This order finds that the plaintiffs have fulfilled the requirements of conditional certification. Notice can therefore be facilitated to potential plaintiffs in this action.

Plaintiffs also recommend that Gilardi & Co., LLC, be appointed the class action claims administrator. The Court finds that appointing Gilardi is an unnecessary expenditure at this point in the proceedings. Plaintiffs' counsel is responsible for sending notice to class members.

**CONCLUSION**

For the foregoing reasons, plaintiffs' motions for leave to amend and for certification of collective action are **GRANTED**.  The class period has been changed to cover only three years — from August 21, 2005, through August 21, 2008.  Defendants must provide plaintiffs with an electronic list of the California class members by **SEPTEMBER 4, 2008.**  The amended complaint is due by **SEPTEMBER 11, 2008.**  Notice should then be sent to class members by **SEPTEMBER 18, 2008**.  In order to timely opt in, class members must fill out and sign the opt-in form by **NOVEMBER 17, 2008**.

**IT IS SO ORDERED.**

Dated:  August 21, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE